15

United States District Court
Southern District of Texas
FILED

MAY 0 9 2003

Michael N. Milby
Clerk of Court

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

SAN BENITO CISD                     §
                                    §
                                    §
vs.                                 §     CIVIL ACTION NO. B-003-047
                                    §
COMPANION LIFE INSURANCE, ET AL     §

---

### DEFENDANTS MBA OF WYOMING, INC. AND MANAGED BENEFITS ADMINISTRATOR AND INSURANCE CONSULTANTS, INC.'S INITIAL DISCLOSURES

---

**To:**  Plaintiff, San Benito Consolidated Independent School District
by and through its attorney of record:
Stephen E. Walraven
SHADDOX, COMPERE, WALRAVEN & GOOD, P.C.
1250 N.E. Loop 410, Ste. 725
San Antonio, Texas 78209.

Defendants MBA of Wyoming, Inc. and Managed Benefits Administrator and Insurance Consultants, Inc. make this their Initial Disclosures, pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure, as attached hereto.

Signed May 9, 2003.

Respectfully submitted,

**THE GARCIA LAW FIRM, P.C.**
201 North First Street
Harlingen, Texas 78550
Telephone: (956) 412-7055
Facsimile: (956) 412-7105

By: _Cindy A. Garcia_
Cindy A. Garcia
State Bar No. 07631710
Federal Bar No. 6476
**Attorneys for Defendants Managed
Benefits Administrator and Insurance
Consultants, Inc. and MBA of
Wyoming, Inc.**

**(1)**    **Initial Disclosures**

    (A)    **The name and, if known, the address and telephone number of each individual likely to have discoverable information relevant to disputed facts alleged with particularly in the pleadings, identifying the subjects of the information.**

        The following are witnesses who may have knowledge of facts alleged by Plaintiff or defenses asserted by Defendants in this action:

        Leo Ramirez
San Benito Consolidated Independent School District
240 North Crockett
San Benito, Texas 78586
(956) 361-6110
Has knowledge of facts surrounding Plaintiff's insurance and reinsurance agreements.

        Hector Leal
San Benito Consolidated Independent School District
240 North Crockett
San Benito, Texas 78586
(956) 361-6110
President of Board of Trustees and has knowledge of facts surrounding Plaintiff's insurance and reinsurance agreements.

        Manuel Gonzalez
San Benito Consolidated Independent School District
240 North Crockett
San Benito, Texas 78586
(956) 361-6110
Secretary of Board of Trustee and has knowledge of facts surrounding Plaintiff's insurance and reinsurance agreements.

        Mario Silva
San Benito Consolidated Independent School District
240 North Crockett
San Benito, Texas 78586
(956) 361-6110
Has knowledge of facts surrounding Plaintiff's insurance and reinsurance agreements.

        Oscar De La Fuente
San Benito Consolidated Independent School District
240 North Crockett

San Benito, Texas 78586
(956) 361-6110
Board of Trustees Member and has knowledge of facts surrounding
Plaintiff's insurance and reinsurance agreements.

Gilbert Montalvo
San Benito Consolidated Independent School District
240 North Crockett
San Benito, Texas 78586
(956) 361-6110
Has knowledge of facts surrounding Plaintiff's insurance and reinsurance
agreements.

Joe G. Gonzalez
San Benito Consolidated Independent School District
240 North Crockett
San Benito, Texas 78586
(956) 361-6110
Has knowledge of facts surrounding Plaintiff's insurance and reinsurance
agreements.

Lorenzo Sanchez
Assistant Superintendent for Finance/Human Resources
San Benito Consolidated Independent School District
240 North Crockett
San Benito, Texas 78586
(956) 361-6110
Has knowledge of facts surrounding Plaintiff's insurance and reinsurance
agreements.

Janie Gonzalez
Insurance Coordinator
San Benito Consolidated Independent School District
240 North Crockett
San Benito, Texas 78586
(956) 361-6110
Has knowledge of facts surrounding Plaintiff's insurance and reinsurance
agreements.

Arnie Oliverez
Insurance Associates of the Valley, Inc.
521 South 77 Sunshine Strip
Harlingen, Texas 78550
(956) 425-6788
Acted as Plaintiff's insurance agent of record and insurance consultant
and has knowledge of facts surrounding Plaintiff's procurement of

insurance and reinsurance agreements.

Michael N. Swetnam, Jr.
148 North Sam Houston Blvd., Suite 1A
San Benito, Texas 78586
(956) 399-4190 Telephone
(956) 399-4476 Fax
Has knowledge of facts surrounding Plaintiff's procurement of insurance
and reinsurance agreements.

Don Merrill
Executive Vice President
MBA of Wyoming, Inc.
3625 South Temple, Suite 200
Salt Lake City, Utah 84115
(801) 268-3334
(801) 266-2581 Fax
Has knowledge of facts surrounding Plaintiff's insurance and reinsurance
agreements.

Phyllis Merrill
Chief Operations Officer
MBA of Wyoming, Inc.
3625 South Temple, Suite 200
Salt Lake City, Utah 84115
(801) 268-3334
(801) 266-2581 Fax
Has knowledge of facts surrounding Plaintiff's insurance and reinsurance
agreements.

J. Allan Hall
President & Managing General Underwriter
J. Allan Hall & Associates
55 Monument Circle, Suite 1115
Indianapolis, IN 46204
(317) 264-0020
(317) 264-9038 Fax
Responsible for paying stop loss claims and has knowledge of facts
surrounding Plaintiff's insurance and reinsurance agreements.

Marianne Miceli
Policy Issue Coordinator
J. Allan Hall & Associates
55 Monument Circle, Suite 1115
Indianapolis, IN 46204
(317) 264-0020

(317) 264-9038 Fax
Has knowledge of facts surrounding Plaintiff's insurance and reinsurance agreements.

Jeanette L. Galvan
J. Allan Hall & Associates
55 Monument Circle, Suite 1115
Indianapolis, IN 46204
(317) 264-0020
(317) 264-9038 Fax
Has knowledge of facts surrounding Plaintiff's insurance and reinsurance agreements.

Randy Scott
J. Allan Hall & Associates
55 Monument Circle, Suite 1115
Indianapolis, IN 46204
(317) 264-0020
(317) 264-9038 Fax
Has knowledge of facts surrounding Plaintiff's insurance and reinsurance agreements.

Douglas C. Routh
Assistant Vice President
The Consolidated Companies
2835 Townsgate Road, Suite 200
Westlake Village, CA 913161
(805) 497-4777
(805) 497-0077
Has knowledge of facts surrounding the consideration and securing of Plaintiff's stop loss insurance.

Patrick Zunini
Executive Vice President
Consolidated General Insurance Services
1495 Ridgeview Drive, Suite 210
Reno, Nevada 89509
Has knowledge of facts surrounding the consideration and securing of Plaintiff's stop loss insurance.

Smith Reagan Insurance Agency
148 North Sam Houston Blvd.
San Benito, Texas 78586
Has knowledge of facts surrounding the coordination of service and representation for the reinsurance contracts.

B.    **A copy of, or description by category and location of all documents, data compilations and tangible things in the possession, custody, or control of the party that are relevant to disputed facts alleged with particularity in the pleadings.**

Please see attached Exhibit "A".  Defendant reserves the right to supplement.

C.    **A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.**

Defendant is not seeking damages.

D.    **For inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

Please see attached Exhibit "B".

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing, Defendants MBA of Wyoming, Inc. and Managed Benefits Administrator and Insurance Consultants, Inc.'s Initial Disclosures, has been served on all counsel of record, to wit:

Stephen E. Walraven
Shaddox, Compere, Walraven & Good, P.C.
1250 N.E. Loop 410, Suite 725
San Antonio, Texas 78209
**ATTORNEYS FOR PLAINTIFF SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT**

Celeste Guerra
Law Offices of Rene Ramirez
1906 Tesoro
Pharr, Texas 78577
**ATTORNEYS FOR PLAINTIFF SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT**

Shelby J. Bush
Piper Rudnick
1717 Main Street, Suite 4600
Dallas, Texas 75201-4605
**ATTORNEYS FOR DEFENDANT COMPANION LIFE INSURANCE COMPANY**

Roberta Hegland
Bracewell & Patterson, L.L.P.
2000 Once Shoreline Plaza, South Tower
800 N. Shoreline Blvd.0
Corpus Christ, Texas 78403-3700
**ATTORNEYS FOR DEFENDANT J. ALLAN HALL & ASSOCIATES, INC.**

by depositing same in the care and custody of the United States Postal Service, by regular mail, unless otherwise specifically specified herein, on May 9, 2003.

*Cindy Garcia by SE*

CINDY A. GARCIA

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SAN BENITO CISD | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-003-047 |
| | § | |
| COMPANION LIFE INSURANCE, ET AL | § | |

# Exhibit "A"

# MEMORANDUM

TO:        Janie

FROM:    Don Merrill

DATE:    September 5, 2002

We offer the following explanation as background and to assist. The amount disallowed for the Garza and Cruz claim centered around not the fact that the specific claims were not eligible for payment, but that J. Allan Hall & Associates elected to say that the claims were not funded until after 08-31-2001, and that the stop loss contract was a reimbursement contract.

Review the 07-05-2002 letter and attachments relative to the advance funding of a specific claim. Advance funding was followed by J. Allan Hall & Associates for many years, and we were told by them that all contracts they represented would reimburse claims that were shown as processed and paid by the computer and submitted to them, not that the policyholder needed to pay the claims in total, and then have the claim reimbursed.

Because the J. Allan Hall organization had become very slow in the processing of all specific claim payments on all contracts for us and other organizations we know it may have been that they had accepted some of the risk, and because of the number of specific claims did not have funds to release them timely. We tried contacting them so many times, and yet they did not return a call even though we were associated with them for some ten years where advance funding was the norm.



A FULL SERVICE EMPLOYEE BENEFIT ADMINISTRATOR

July 5, 2002

Deliver:
3625 So. West Temple
Salt Lake City, UT 84115
Mail:
P.O. Box 651109
Salt Lake City, UT 84165-1109
800-877-3727
Fax: (801) 266-2581
www.mba.to

Janie Gonzalez
San Benito Consolidated Independent School District
240 North Crockett
San Benito, TX 78586

Dear Janie:

The following should provide for you the information which you requested. As indicated previously MBA is eager to assist the district and therefore it would be helpful in knowing specifically the approach being followed, for without this we can't be of much help.

Our attorney has made a number of calls to the school's legal council without response. In a letter Phyllis outlined specific information to the district council as it appeared that there were some lack of understanding.

Yet, without question, we believe that the J. Allan Hall & Associates, Inc. who were responsible to pay specific stop loss claims for the insurance carrier should have taken care of the specific claim submissions by now.

Let us offer two documents; one from our files relative to advance funding of claims and the second confirming the visit to our MBA office by J. Allan Hall.

The entities we worked with for consideration and securing the stop loss insurance included:

1.      The Consolidated Companies (located in California for many years)
        Doug Routh, Sales Representative
        250 Bel Marin Keys, Suite F-200
        Novato, CA 94949

The organization has now moved to Reno, Nevada. Mr. Routh elected not to make the move and therefore no longer works for Consolidated. The Reno address is:

        Patrick Zunini, Exec. Vice President
        Consolidated General Insurance Services
        1495 Ridgeview Drive, Suite 210
        Reno, NV 89509

MBA 00002

MANAGED BENEFITS ADMINISTRATOR & INSURANCE CONSULTANTS, INC.

Consolidated secured all specific and aggregate quotes which came from Managing General Underwriters who provided underwriting and paid stop loss claims for several carriers.  One being Companion Life.

2.      J. Allan Hall & Associates, Inc.
        J. Allan Hall, President & Managing General Underwriter
        Circle Tower
        55 Monument Circle, Suite 1115
        Indianapolis, IN 46204

Responsible for paying stop loss claims and has provided this service working with MBA for in excess of seven or eight years.

3.      Smith Reagan Insurance Agency
        148 N. Sam Houston Blvd.
        San Benito, TX 78586

The local organization which coordinated service and representation for the contracts.

Please let us know how this progresses.


Sincerely,


Don W. Merrill
President

cc:     Joe Gonzales, Superintendent

# J. ALLAN HALL & ASSOCIATES, INC.

June 3, 1999

Mr. Don Merrill
Merrill Bostrom Associates
1121 East 3900 South, Suite C-101
Salt Lake City, UT  84124

Re:   MGU Questionnaire

Dear Don:

It was a pleasure to meet with you and your staff last week at your office.  Enclosed you will find a questionnaire that one of my associates has developed.  Hopefully, you can incorporate some of the questions on the enclosed into your final document.

If you have any questions, please do not hesitate to contact me.

Sincerely,

J. Allan Hall
President

JAH/aah

Enclosure

# MEMORANDUM

TO:        File

FROM:    Don Merrill

SUBJECT:   J. Allan Hall's visit to MBA (3900 South 1100 East)

---

Tuesday, May 25, 1999 at 4 p.m. (as recorded in my monthly schedule calendar).

During that visit we discussed the advance funding of specific claim funding on an advance basis. We were assured that J. Allan Hall's position was that as long as the claim checks were processed and paid per computer, they could be held awaiting specific reimbursement assuming also funds for the specific deductible amount were available for payment.

In attendance: Doug Routh, J. Allan Hall, Don, Clark, and Phyllis Merrill

To confirm our discussion and the questionnaire we were working on with Allan, he responded in his letter of June 3, 1999.

MBA 00005



A FULL SERVICE EMPLOYEE BENEFIT ADMINISTRATOR

September 4, 2002

Deliver
3625 So. West Temple
Salt Lake City, UT 84115
Mail:
P.O. Box 651109
Salt Lake City, UT 84165-1109
800-877-3727
Fax: (801) 266-2581
www.mba.to

Janie Gonzalez
San Benito C.I.S.D.
240 North Crockett
San Benito, TX 78586
Email: jgonzalez@mail.sanbenito.k12.tx.us

Dear Janie:

The information requested to provide background for Stephen E. Walraven, SHADDOX, COMPERE, WALRAVEN and TOOD is included.

    1. A copy of the signed MBA administrative contract.

    2. A copy of the monthly aggregate report. This report, which was forwarded to the district monthly, summarizes the contract period and shows the activity of the eligible paid claims compared to the maximum attachment point. The attachment amount year to date is the aggregate factor (composite basis) of $346.25 x the number of covered participants x the number of months. The large claims, (amounts in excess of the specific $75,000.00 deductible) are deducted from the aggregate portion of the stop loss contract, therefore the aggregate contract did not come into play. The aggregate number referenced in the letter was probably the expected claim maximum. Regardless, the actual eligible paid claims of $3,383,706.54 did not exceed the point at which the contract could reimburse the plan.

    3. Documentation relative to the paid and unpaid claims still due the district by J. Allan Hall & Associates is outlined in the enclosed.

We have also included information, which will provide additional background and should assist in the release of the refunds due to San Benito C.I.S.D. medical plan.

For explanation, please call Phyllis Merrill, Director of Operations or myself.

Sincerely,

Don W. Merrill

MBA 00006



A FULL SERVICE EMPLOYEE BENEFIT ADMINISTRATOR

December 31, 2001

Deliver:
3625 So. West Temple
Salt Lake City, UT 84115
Mail:
P.O. Box 651109
Salt Lake City, UT 84165-1109
800-877-3727
Fax: (801) 266-2581
www.mba.to

Cara Porter, Attorney at Law
Christensen & Jensen
50 South Main Street, Suite 1500
Salt Lake City, UT 84144

Via Facsimile 355-3472

Dear Cara:

The following file is on the reinsurance matter we talked about.

J. Allan Hall has declined to pay claims based upon the time frame in which the client released checks.

Please note the payment for claims on Agapito Rodriguez was paid yet fit the same scenario.

The school district has previously provided a statement to the carrier which shows funds availability on all claims waiting pre-funded from J. Allan Hall.

Documents Included:
- Joe Garza Reimbursement and explanation of payment
- Silvestre Cruz Reimbursement and explanation of payment
- Agapito Rodriguez Reimbursement and explanation of payment
- Memo to Gloria Boyce
- Worksheet of claims payments on specific claims
- Reinsurance contract for San Benito Consolidated Independent School District

Please call with any questions you may have.

Sincerely,

Phyllis Merrill
Chief Operations Officer

Enclosures

MBA 00007

MANAGED BENEFITS ADMINISTRATOR & INSURANCE CONSULTANTS, INC.

**J. ALLAN HALL & ASSOCIATES, INC. / COMPANION LIFE-CLMS ACCT 2000 UW YR**

**1341**

Joe Garza

San Benito Consolidated ISD

Check Number:  1341
Check Date:  Nov 28, 2001

Check Amount: $11,337.11

| Item to be Paid - Description | Discount Taken | Amount Paid |
|---|---|---|
| 112701 | | 11,337.11 |

*2001*

J. ALLAN HALL & ASSOCIATES, INC.
COMPANION LIFE-CLMS ACCT 2000 UW YR

THE NATIONAL BANK OF INDIANAPOLIS
INDIANAPOLIS, IN 46240

DATE          AMOUNT
Nov 28, 2001    $11,337.11

Memo Joe Garza

Eleven Thousand Three Hundred Thirty-Seven and 11/100 Dollars

San Benito Consolidated ISD

AUTHORIZED SIGNATURE

⑈⑈001341⑈⑈ ⑈074006674⑈ 1188648⑈⑈

MBA 00008

EXHIBIT I

Date: November 27, 2001

Claimant :    Joe Garza
Insured   :    San Benito Consolidated ISD
Diagnosis:    Acute MI

Submitted Claim:

| | | | |
|---|---|---|---|
| Total Paid | : | $ | 500,704.15 |
| Less:  Specific Retention | : | ( | 75,000.00) |
| Subtotal | : | $ | 425,704.15 |
| Reinsurance Factor | : | | x 100% |
| Reimbursement Requested | : | $ | 425,704.15 |

Reviewer Claim:

| | | | |
|---|---|---|---|
| Total Paid | : | $ | 500,704.15 |
| Less:  Specific Retention | : | ( | 75,000.00) |
| Pending | : | ( | 0.00) |
| Deductions | : | ( | 414,367.04)[1] |
| Reinsurance Factor | : | | x 100% |
| Recommended Reimbursement | : | $ | 11,337.11 |

[1]    $414,367.04 represents the following payments which were not paid within the policy period
of October 1, 2000, through August 31, 2001:

| Claim Number | Provider | Amount Paid |
|---|---|---|
| 12057268-01 | Brownsville Medical Ctr. | $72,057.33 |
| 12057268-03 | Brownsville Medical Ctr. | $93,749.93 |
| 12057268-04 | Brownsville Medical Ctr. | $85,111.64 |
| 12059484-01 | Howard Frazier MD | $8,100.00 |
| 12060091-01 | St. Luke=s Episcopal Hosp. | $40,647.50 |
| 12060091-02 | St. Luke=s Episcopal Hosp. | $114,700.64 |

LMP/01-147NN-340

MBA 00009

EXHIBIT I

Date:  November 27, 2001

Claimant :   Joe Garza
Insured   :   San Benito Consolidated ISD
Diagnosis:   Acute MI

Submitted Claim:
| | | | |
|---|---|---|---|
| Total Paid | : | $ | 500,704.15 |
| Less:  Specific Retention | : | ( | 75,000.00) |
| Subtotal | : | $ | 425,704.15 |
| Reinsurance Factor | : | | x 100% |
| Reimbursement Requested | : | $ | 425,704.15 |

Reviewer Claim:
| | | | |
|---|---|---|---|
| Total Paid | : | $ | 500,704.15 |
| Less:  Specific Retention | : | ( | 75,000.00) |
| Pending | : | ( | 0.00) |
| Deductions | : | ( | 414,367.04)[1] |
| Reinsurance Factor | : | | x 100% |
| Recommended Reimbursement | : | $ | 11,337.11 |

[1]    $414,367.04 represents the following payments which were not paid within the policy period
of October 1, 2000, through August 31, 2001:

| Claim Number | Provider | Amount Paid |
|---|---|---|
| 12057268-01 | Brownsville Medical Ctr. | $72,057.33 |
| 12057268-03 | Brownsville Medical Ctr. | $93,749.93 |
| 12057268-04 | Brownsville Medical Ctr. | $85,111.64 |
| 12059484-01 | Howard Frazier MD | $8,100.00 |
| 12060091-01 | St. Luke=s Episcopal Hosp. | $40,647.50 |
| 12060091-02 | St. Luke=s Episcopal Hosp. | $114,700.64 |

LMP/01-147NN-340

MBA 00010

J. ALLAN HALL & ASSOCIATES, INC. / COMPANION LIFE-CLMS ACCT 2000 UW YR                    1367

.Silvestre Cruz

   San Benito Consolidated ISD

| | Check Number: | 1367 |
| | Check Date: | Nov 30, 2001 |

| Item to be Paid - Description | Check Amount: | $226,735.95 |
| | Discount Taken | Amount Paid |
| 12101 | | 226,735.95 |

J. ALLAN HALL & ASSOCIATES, INC.
COMPANION LIFE-CLMS ACCT 2000 UW YR
55 MONUMENT CIR STE 1115
INDIANAPOLIS, IN 46204

THE NATIONAL BANK OF INDIANAPOLIS
INDIANAPOLIS, IN 46204
20-667/740

1367

DATE   Nov 30, 2001   AMOUNT   *$226,735.95

Memo  Silvestre Cruz

Two Hundred Twenty-Six Thousand Seven Hundred Thirty-Five and 95/100 Dollars

THE
ORDER  San Benito Consolidated ISD

AUTHORIZED SIGNATURE

⑈SECURITY FEATURES INCLUDED. DETAILS ON BACK.

⑈"001367"⑈ ⑈074006674⑈ ⑈1168648⑈"

MBA 00011

EXHIBIT I

Date: November 21, 2001

Claimant :   Silvestre Cruz (Dependent of Nelda)
Insured   :   San Benito Consolidated ISD
Diagnosis:   Premature Newborn

Submitted Claim:

| | | | |
|---|---|---|---|
| Total Paid | : | $ | 1,000,000.00 |
| Less:  Specific Retention | : | ( | 75,000.00) |
| Subtotal | : | $ | 925,000.00 |
| Reinsurance Factor | : | | x 100% |
| Reimbursement Requested | : | $ | 925,000.00 |
| Previously Requested | : | ( | 227,414.92) |
| Current Request | : | $ | 697,585.08 |

Reviewer Claim:

| | | | |
|---|---|---|---|
| Total Paid | : | $ | 1,000,000.00 |
| Less:  Specific Retention | : | ( | 75,000.00) |
| Pending | : | ( | 250.00)[1] |
| | : | ( | 11,185.60)[2] |
| Deductions | : | ( | 532.20)[3] |
| | : | ( | 1,391.40)[4] |
| | : | ( | 3.00)[5] |
| | : | ( | 459,410.53)[6] |
| Reinsurance Factor | : | | x 100% |
| Recommended Reimbursement | : | $ | 452,227.27 |
| Previously Reimbursed | : | ( | 225,491.32) |
| Current Reimbursement | : | $ | 226,735.95 |

[1]    $250.00 represents the precertification non-compliance penalty for the Driscoll Children's Hospital confinement of August 13, 2001, through August 29, 2001.  Precertification documentation was not provided for our review;

[2]    $11,185.60 represents the payments for claim numbers 12042472-01, 12042533-01, 12048122-01, 12057868-01, 12059392-01, 12059787-02 and 12059791-01.  Itemized bills were not provided for our review;

[3]    $532.20 represents check number 65112 dated May 7, 2001.  According to the provider billing, the patient is Angel Flores;

LMP/01-1471F-340

MBA 00012

[4]    $1,391.40 represents the additional discount we believe should have been withheld from check numbers 65581 and 65582, dated May 18, 2001.  According to the repricing sheet, the discount totaled $10,627.12; however, only $9,235.72 was withheld;

[5]    $3.00 represents the discount amount that should have been applied to claim number 12052586-01; and

[6]    $459,410.53 represents the following payments which were not paid within the policy period of October 1, 2000, through August 31, 2001:

| Claim Number | Provider | Amount Paid |
|---|---|---|
| 1205780-01 | Valley Baptist Med. Ctr. | $99,308.00 |
| 1205780-02 | Valley Baptist Med. Ctr. | $44,179.60 |
| 1205870-03 | Valley Baptist Med. Ctr. | $82,125.26 |
| 1205870-04 | Valley Baptist Med. Ctr. | $48,649.84 |
| 12057599-01 | Driscoll Children's Hosp. | $84,018.66 |
| 12057599-02 | Driscoll Children's Hosp. | $93,233.95 |
| 12057599-03 | Driscoll Children's Hosp. | $7,895.22 |

LMP/01-1471F-340

J. ALLAN HALL & ASSOCIATES, INC. / COMPANION LIFE-CLMS ACCT 2000 UW YR

Check Number:          1227
Check Date:     Oct 19, 2001

Agapito Rodriguez

San Benito Consolidated ISD

Check Amount:    $7,992.99
Discount Taken          Amount Paid

Item to be Paid - Description

101701                                                      7,992.99

---

J. ALLAN HALL & ASSOCIATES, INC.                                        1227
COMPANION LIFE-CLMS ACCT 2000 UW YR
55 MONUMENT CIR., STE. 1115
INDIANAPOLIS, IN 46204

Memo: Agapito Rodriguez

PAY   Seven Thousand Nine Hundred Ninety-Two and 99/100 Dollars

TO THE
ORDER    San Benito Consolidated ISD
OF

THE NATIONAL BANK OF INDIANAPOLIS
INDIANAPOLIS, IN 46204
20-867/740

DATE          AMOUNT
Oct 19, 2001    ***$7,992.99

AUTHORIZED SIGNATURE

⑈001227⑈ ⑆074006674⑆ ⑈1886768⑈

SECURITY FEATURES INCLUDED. DETAILS ON BACK.

MBA 00014

EXHIBIT I

Date:  October 17, 2001

Claimant :  Agapito Rodriguez (Dependent of Maria)
Insured   :  San Benito Consolidated ISD
Diagnosis:  Renal Failure, Diabetes

Submitted Claim:

| | | | |
|---|---|---|---|
| Total Paid | : | $ | 83,369.99 |
| Less:  Specific Retention | : | ( | 75,000.00) |
| Subtotal | : | $ | 8,369.99 |
| Reinsurance Factor | : | | x 100% |
| Reimbursement Requested | : | $ | 8,369.99 |

Reviewer Recommended Claim:

| | | | |
|---|---|---|---|
| Total Paid | : | $ | 83,369.99 |
| Less:  Specific Retention | : | ( | 75,000.00) |
| Pending | : | ( | 0.00) |
| Deductions | : | ( | 377.00)[1] |
| Reinsurance Factor | : | | x 100% |
| Recommended Reimbursement | : | $ | 7,992.99 |

$331.00 represents claim number 02077352-01, paid with check number 00058604 for $46.00, claim number 12000031-01, paid with check number 00059571 for $46.00, and claim number 12010434-01, paid with check number 00061846 for $285.00, for John Howe, MD.  Vision care expenses are not covered under the terms of the excess contract.

NJW/01-147OP-340

MBA 00015

# MEMO

To:     Gloria H. Boyce, Vice President
        Niis/Apex

From:   Phyllis K. Merrill
        MBA

Re:     Advance Funding

On August 7, 1998 MBA had a brief carrier evaluation form completed by Consolidated Companies, the MGU for J. Allen Hall & Associates with regard to claims turn around, audit and claims paying information.  (See attached.)

In late May or early June, 1999, Consolidated and J. Allen Hall met with myself and staff in our offices to discuss business, current and future.  In this meeting MBA asked pointedly about auditors, claims turn around and whether J. Allen Hall would advance fund specific claims for MBA.  We indicated this is the only type of arrangement which MBA found acceptable for its clients.  J. Allen Hall at that time pledged his support of the advance funding of claims submitted to his office.

As a result of that meeting, MBA put together a questionnaire (see attached) which required each of the carriers with which MBA did business to affirm the way they did business and handled contracts and claims.  As you can see, the form has specific questions relating to the funding of claims.

In our recent conversations with Doug Routh of Consolidated Companies, he indicated that he understood that J. Allen Hall & Associates handles claims in an advance funding format as do all the carriers with which he associates.

During the time between the initial filing of the claim on the Cruz baby and others, many contacts have been made with the office of J. Allen Hall & Associates to affirm our desire and expectation that this claim be paid in advance of sending out checks.  The client has, at this time, funded all of the claims associated with the specific claims in question to avoid political pressures from providers and to preserve discounts under the contracts.

They now await prompt payment of the claims which now instead of the expected advance funding becomes a reimbursement of the claim.

MBA 00016

Exhibit

## Specific Claims Review
### San Benito Consolidated ISD

Policy Period: October 1, 200_ through August 31, 200_ (14/i)

| Employee / Dependent SS Number | Claim Number | Payee | Check Number | Check Dated | Check Amount | Date Mailed | Check Deposit Date | Date Check Cleared Bank |
|---|---|---|---|---|---|---|---|---|
| GARZA, JOE 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 | 1205-7263-01 | Brownsville Med. Ctr. | 69726 | 8/8/01 | 20,050.31 | 9/1/01 | 10/1/01 | 12/26/01 |
| | 1205-7263-03 | Brownsville Med. Ctr. | 69725 | 8/8/01 | 24,709.93 | 9/1/01 | 9/1/01 | 12/26/01 |
| | 1205-7268-03 | Brownsville Med. Ctr. | 69726 | 8/8/01 | 31,709.93 | 9/1/01 | 10/1/01 | 12/26/01 |
| | 1205-7268-01 | Brownsville Med. Ctr. | 69727 | 8/8/01 | 35,111.65 | 9/1/01 | 10/1/01 | 12/26/01 |
| | 1205-9455-01 | Radiology Consultants | 70862 | 8/8/01 | 12,750.00 | 9/1/01 | 9/1/01 | 12/26/01 |
| | 1205-7451-01 | Hosted Frances | 70865 | 8/9/01 | 5,100.00 | 9/1/01 | 10/1/01 | 12/26/01 |
| | 1206-0091-01 | St. Lukes Episcopal Hosp | 70457 | 8/9/01 | 40,607.50 | | | |
| | 1206-0091-02 | St Lukes Episcopal Hosp | 70458 | 8/9/01 | 47,700.64 | | | |
| Byrd, Eunice 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 | 1205-3407-01 | Valley Baptist Med. Ctr | 69705 | 7/6/01 | 24,048.35 | 8/3/01 | 9/1/01 | 9/2/01 |
| | 1205-3892-01 | Marion Loulise | 70489 | 8/2/01 | 2,244.56 | 9/1/01 | 9/1/01 | 9/2/01 |
| | 1205-4848-01 | Casina | 70491 | 7/6/01 | 200.00 | 8/2/01 | 9/1/01 | 9/2/01 |
| Rodriguez, Maria / Agapito 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 | 1205-3404-01 | Valley Baptist Med. Ctr | 70141 | 8/2/01 | 2,327.86 | 8/2/01 | 9/1/01 | 9/2/01 |
| | 1205-4503-01 | Coufinos | 70141 | 8/2/01 | 764.94 | 9/1/01 | 9/1/01 | 9/2/01 |
| | 1205-8451-01 | Harlingen Diagnostic | 70368 | 8/2/01 | 10,488.28 | 9/1/01 | 10/1/01 | 9/1/01 |
| | 1205-9469-01 | Harlingen Diagnostic | 70369 | 8/2/01 | 3,855.58 | 9/2/01 | 9/1/01 | 9/1/01 |
| | 1205-8571-01 | Harlingen Diagnostic | 70800 | 8/2/01 | 3,808.31 | 9/1/01 | 10/1/01 | 9/2/01 |

Exhibit

Special Claims Reviewed
San Benito Consolidated I.S.D.
Policy Period October 1, 2000 through August 31, 2001 (¾)

| Prepared By | | Initials | Date |
|---|---|---|---|
| Approved By | | | |

| Employee/Dependent SS Number DOB | Claim Number | Payee | Check Number | Check Dated | Check Amount | Date Mailed | Check Upon Date | Date Check Cashed Date |
|---|---|---|---|---|---|---|---|---|
| Cruz, Nelda Silvestre | 1205780-01 | Valley Baptist Med Ctr | 64871 | 7/3/01 | 40,306.00 | 7/26/01 | 9/4/01 | 9/4/01 |
| 4161-29-4565 | 1205780-03 | Valley Baptist Med Ctr | 64872 | 7/3/01 | 4478.60 | 7/26/01 | 9/4/01 | 9/4/01 |
| | 1205780-02 | Valley Baptist Med Ctr | 64870 | 7/3/01 | 30,205.26 | 7/26/01 | 9/1/01 | 9/1/01 |
| | 1205780-04 | Valley Baptist Med | 64873 | 7/3/01 | 4803.84 | 11/5/01 | | |
| | 1205749-01 | Driscoll Children Hosp | 64995 | 7/6/01 | 30,866 | 11/9/01 | | |
| | 1205758-00 | Driscoll Ch Hosp | 64996 | 7/6/01 | 4283.95 | 11/9/01 | | |
| | 1205758-02 | Driscoll Children Hosp | 64997 | 7/6/01 | 7051.23 | 11/6/01 | 11/9/01 | 9/6/01 |
| | 1205851-01 | Driscoll Children Hosp | 70287 | 7/6/01 | 7145.10 | 9/2/01 | 9/4/01 | 9/4/01 |
| | 1205761-01 | Corpus Christi Medical Ctr | 71227 | 8/2/01 | 8,291.00 | 8/3/01 | 9/5/01 | 9/5/01 |
| | 1205775-01 | Driscoll Ch Hosp | 70296 | 8/6/01 | 46,753.57 | 8/3/01 | 9/1/01 | 9/1/01 |
| | 1205751-01 | Driscoll Children Hosp | 70294 | 8/6/01 | 28,809.88 | 8/3/01 | 9/1/01 | 9/1/01 |
| | 1205849-01 | Rajesh Shah MD | 70416 | 8/6/01 | 5125.29 | 9/2/01 | 9/1/01 | 9/1/01 |
| | 1205933-01 | Valley Regional Med Ctr | 70497 | 7/6/01 | 2706649 | 9/2/01 | 9/1/01 | 9/1/01 |
| | 1205891-01 | Emil Milan MD | 70299 | 8/6/01 | 4526 | 7/6/01 | 9/1/01 | 9/1/01 |
| | 1205939-01 | Emil Milan MD | 70300 | 8/6/01 | 1432 | 9/6/01 | 9/1/01 | 9/1/01 |
| | 1205934-01 | Emil Milan MD | 70301 | 8/6/01 | | 9/6/01 | | |
| | 1205939-01 | Emil Milan MD | 70302 | 7/3/01 | 9,1233 | 9/2/01 | 11/1/01 | 11/1/01 |
| | 1205939-01 | Emil Milan MD | 70303 | 8/6/01 | 3840.06 | 9/6/01 | 9/1/01 | 9/1/01 |
| | 1205840-01 | Emil Milan MD | 70302 | 8/6/01 | 425.88 | 8/6/01 | 9/1/01 | 9/1/01 |
| | 1205901-01 | Emil Milan MD | 70306 | 8/6/01 | 4,736.96 | 9/6/01 | 9/1/01 | 9/1/01 |
| | 1205842-01 | Emil Milan MD | 70307 | 7/3/01 | 1681.00 | 9/6/01 | 9/1/01 | 9/1/01 |
| | 1205943-01 | Emil Rosado MD | 70308 | 7/3/01 | 2031.69 | 9/6/01 | 9/1/01 | 9/1/01 |
| | 1205943-01 | Driscoll Children Hosp | 70313 | 8/6/01 | 3,834.30 | 9/6/01 | 9/6/01 | 9/1/01 |
| | 1205848-01 | Driscoll Children Hosp | 70293 | 7/6/01 | 6309.28 | 9/3/01 | 9/1/01 | 9/1/01 |

MBA 00018



A FULL SERVICE EMPLOYEE BENEFIT ADMINISTRATOR

March 27, 2002

Deliver
3625 So. West Temple
Salt Lake City, UT 84115
Mail:
P.O. Box 651109
Salt Lake City, UT 84165-1109
800-877-3727
Fax: (801) 266-2581
www.mba.to

Celeste Guerra
Law Offices of Rene Ramirez

*Via Facsimile 956-783-7884*

Re:   San Benito CISD/Eunice Byrd, Joe Garza, Silvestre Cruz
      and Agapito Rodriguez

Dear Celeste:

The attached are the held check lists which were retrieved from our archives.

The letter dated November 20, 2001 which states "all these claims were processed as they arrived at MBA and released on the next day except for the ones waiting for authorization of release from the District as shown on the *weekly held check list*[11] refers to the weekly report of claims held for funding. As you can see from the documents provided here, the held checks came on and went off (were released) per the district's instructions.

Carolyn Gale is not a contact you should be using. Please direct your questions to me in the future. If you have any questions on this please call.

We hope this is helpful.

Sincerely,

Phyllis Merrill
Chief Operations Officer

MBA 00019

Oct 19 , 2001

SAN BENITO CISD     SPEC HELD CHECK LIST

| DESCRIPTION | CHECK RUN AMOUNT | SUBTOTAL PER MONTH | TOTAL HELD CHECKS |
|---|---|---|---|
| 69773 | $82,125.26 | | |
| 69774 | $48,649.84 | | |
| 69775 | $84,018.66 | | |
| 69776 | $93,233.95 | | |
| 70498 | $114,700.64 | | |
| 70497 | $40,647.50 | | |
| TOTAL SPEC CHECK HELD LIST | | $463,375.85 | |



Oct 15 , 2001

SAN BENITO CISD     SPEC HELD CHECK LIST

| DESCRIPTIO | CHECK RUN AMOUNT | SUBTOTAL PER MONTH | TOTAL HELD CHECKS |
|---|---|---|---|
| 69773 | $82,125.26 | | |
| 69774 | $48,649.84 | | |
| 69775 | $84,018.66 | | |
| 69776 | $93,233.95 | | |
| 70498 | $114,700.64 | | |
| 70497 | $40,647.50 | | |
| TOTAL SPEC CHECK HELD LIS | | $463,375.85 | |

MBA 00021

Sep 28 , 2001

N BENITO CISD     SPEC HELD CHECK LIST

| DESCRIPTIO | CHECK RUN AMOUNT | SUBTOTAL PER MONTH | TOTAL HELD CHECKS |
|---|---|---|---|
| 69772 | $44,179.60 | | |
| 69773 | $82,125.26 | | |
| 69774 | $48,649.84 | | |
| 69775 | $84,018.66 | | |
| 69776 | $93,233.95 | | |
| 70498 | $114,700.64 | | |
| 70497 | $40,647.50 | | |
| | | | |
| TOTAL SPEC CHECK HELD LIS | | $507,555.45 | |

MBA 00022

Sep 21 , 2001

N BENITO CISD     SPEC HELD CHECK LIST

| DESCRIPTIO | CHECK RUN AMOUNT | SUBTOTAL PER MONTH | TOTAL HELD CHECKS |
|---|---|---|---|
| 69714 | $72,057.33 | | |
| 69716 | $93,749.93 | | |
| 69717 | $85,111.64 | | |
| 69771 | $99,308.00 | | |
| 69772 | $44,179.60 | | |
| 69773 | $82,125.26 | | |
| 69774 | $48,649.84 | | |
| 69775 | $84,018.66 | | |
| 69776 | $93,233.95 | | |
| 70498 | $114,700.64 | | |
| 70497 | $40,647.50 | | |
| TOTAL SPEC CHECK HELD LIS | $857,782.35 | | |

MBA 00023

Sep 14 , 2001

SAN BENITO CISD      SPEC HELD CHECK LIST

| te | DESCRIPTIO | CHECK RUN AMOUNT | SUBTOTAL PER MONTH | TOTAL HELD CHECKS |
|---|---|---|---|---|
| | 69714 | $72,057.33 | | |
| | 69716 | $93,749.93 | | |
| | 69717 | $85,111.64 | | |
| | 69771 | $99,308.00 | | |
| | 69772 | $44,179.60 | | |
| | 69773 | $82,125.26 | | |
| | 69774 | $48,649.84 | | |
| | 69775 | $84,018.66 | | |
| | 69776 | $93,233.95 | | |
| | 70292 | $8,247.00 | | |
| | 70294 | $62,637.57 | | |
| | 70295 | $28,889.58 | | |
| | 70296 | $5,121.25 | | |
| | 70297 | $27,662.49 | | |
| | 70365 | $8,100.00 | | |
| | 70498 | $114,700.64 | | |
| | 70368 | $10,080.28 | | |
| | 70370 | $8,080.31 | | |
| | 70497 | $40,647.50 | | |

TOTAL SPEC CHECK HELD LIS      $975,953.33

MBA 00024

Sep 07 , 2001     SAN BENITO CISD

| DESCRIPTION | CHECK RUN AMOUNT | SUBTOTAL PER MONTH | TOTAL HELD CHECKS |
|---|---|---|---|
| 69714 | $72,057.33 | | |
| 69716 | $93,749.93 | | |
| 69717 | $85,111.64 | | |
| 69771 | $99,308.00 | | |
| 69772 | $44,179.60 | | |
| 69773 | $82,125.26 | | |
| 69774 | $48,649.84 | | |
| 69775 | $84,018.66 | | |
| 69776 | $93,233.95 | | |
| 70292 | $8,247.00 | | |
| 70294 | $62,637.57 | | |
| 70295 | $28,889.58 | | |
| 70296 | $5,121.25 | | |
| 70297 | $27,662.49 | | |
| 70365 | $8,100.00 | | |
| 70498 | $114,700.64 | | |
| 70368 | $10,080.28 | | |
| 70370 | $8,080.31 | | |
| 70497 | $40,647.50 | | |

TOTAL SPEC CHECK HELD LIST     $975,953.33

MBA 00025

30 , 2001   San Benito CISD

Spec checks held

| CRIPTION | CHECK RUN AMOUNT | SUBTOTAL PER MONTH | TOTAL HELD CHECKS |
|----------|------------------|--------------------|--------------------|
| ł | $72,057.33 | | |
| } | $93,749.93 | | |
| ' | $85,111.64 | | |
| ł | $99,308.00 | | |
| ' | $44,179.60 | | |
| ; | $82,125.26 | | |
| ! | $48,649.84 | | |
| ' | $84,018.66 | | |
| ` | $93,233.95 | | |
| | $702,434.21 | | |
| | $702,434.21 | | |

MBA 00026

24 , 2001    San Benito CISD

Spec checks  held

| SCRIPTION | CHECK RUN AMOUNT | SUBTOTAL PER MONTH | TOTAL HELD CHECKS |
|---|---|---|---|
| 4 | $72,057.33 | | |
| 5 | $74,999.93 | | |
| 6 | $93,749.93 | | |
| 7 | $85,111.64 | | |
| 1 | $99,308.00 | | |
| 2 | $44,179.60 | | |
| 3 | $82,125.26 | | |
| 4 | $48,649.84 | | |
| 5 | $84,018.66 | | |
| ; | $93,233.95 | | |
| ; | $68,068.35 | | |
| ; | $46,516.26 | | |
| | | $892,018.75 | |

$892,018.75

g. 17 , 2001   San Benito CISD

Spec checks held

| ESCRIPTION | CHECK RUN AMOUNT | SUBTOTAL PER MONTH | TOTAL HELD CHECKS |
|---|---|---|---|
| 714 | $72,057.33 | *Garza* | |
| 716 | $93,749.93 | *Garza* | |
| 17 | $85,111.64 | *Garza* | |
| 71 | $99,308.00 | *Cruz* | |
| 772 | $44,179.60 | *Cruz* | |
| 773 | $82,125.26 | *Cruz* | |
| 774 | $48,649.84 | *Cruz* | |
| 775 | $84,018.66 | *Cruz* | |
| 776 | $93,233.95 | *Cruz* | |

$702,434.21

$702,434.21

MBA 00028

```
XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
                                                                        P. 01
                        TRANSACTION REPORT
                                                     MAR-27-2002 WED 02:59 PM
        FOR:  MBA              2

  DATE  START   RECEIVER        TX TIME   PAGES TYPE      NOTE         M#  DP

  MAR-27 02:57 PM 19567837884    1'28"     10   SEND      OK           266


                                     TOTAL :      1M 28S  PAGES:   10

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
```



A FULL SERVICE EMPLOYEE BENEFIT ADMINISTRATOR

March 27, 2002

Deliver:
3625 So. West Temple
Salt Lake City, UT 84115
Mail:
P.O. Box 651109
Salt Lake City, UT 84165-1109
800-877-3727
Fax: (801) 266-2581
www.mba.to

Celeste Guerra
Law Offices of Rene Ramirez

*Via Facsimile 956-783-7884*

Re:    San Benito CISD/Eunice Byrd, Joe Garza, Silvestre Cruz
       and Agapito Rodriguez

Dear Celeste:

The attached are the held check lists which were retrieved from our archives.

The letter dated November 20, 2001 which states "all these claims were processed as they arrived at MBA and released on the next day except for the ones waiting for authorization of release from the District as shown on the *weekly held check list*[1] refers to the weekly report of claims held for funding. As you can see from the documents provided here, the held checks came on

MBA 00029

**LAW OFFICES OF**
**RENE RAMIREZ**
1906 Tesoro Boulevard
Pharr, Texas 78577

RENE RAMIREZ
Celeste Guerra

MAR 25 2002            March 20, 2002

Ms. Carolyn Gale                                        Via Facsimile (801) 268-3335
MBA                                                           Regular Mail
P.O. Box 651109
Salt Lake City, UT 84165-1109

RE:    San Benito CISD/Eunice Byrd, Joe Garza, Silvestre Cruz and Agapito Rodriguez

Dear Ms. Gale:

  As I told you over the telephone, I am one of the attorneys for San Benito Independent School District. We are currently experiencing a problem in having our claims reimbursed by our stop loss insurance carrier Companion Life and I am trying to secure more information from both Companion Life and MBA with regard to this matter.

  You have informed me that you are now handling all matters for Carol Frandsen, whom is no longer employed by MBA. On November 20, 2001, Ms. Frandsen wrote a letter to the District stating that MBA processed claims and released checks "except for the ones waiting for authorization of release from the district as shown on the weekly held check list". I requested a copy of the referenced "weekly held check list", but you informed me that you needed authorization from Don or Phyllis Merrill and that they were on vacation until next week. Please advise me immediately of when I can expect to have a copy of the referenced list and/or let me know who else I need to speak to with regard to this matter.

  Thank you for your attention to this matter.

Sincerely,

*[signature]*

CELESTE GUERRA

CG/ag

MBA 00030

Telephone (956)783-7880 • Facsimile (956)783-7884

03/20/2002  16:57     9567837884                    LAW OFFICES                    PAGE  01

# LAW OFFICES OF RENE RAMIREZ
### 1906 Tesoro Boulevard •Pharr, Texas 78577
### Tel: (956) 783-7880  Fax: (956) 783-7884

*Fax Transmittal Form*

To:

Name: Ms. Carolyn Dale

From: Angie Quajardo
RENE RAMIREZ / Celeste Guerra

Firm/
Dept. MBA

Phone:
Fax: (801) 268-3335

Phone:  (956) 783-7880
Fax:    (956) 783-7884

☐ Urgent
☐ For Review
☐ Please Comment
☐ Please Reply
☐ FYI

Date Sent: 3/20/02

Time Sent: 4:50 P.m.

Number of Pages:  2
(Including Cover)

☐ Original Will *Not* Follow
☒ Original Will Follow:
  ☒ Regular Mail      ☐ Overnight Delivery
  ☐ Certified Mail      ☐ Hand Delivery

THE INFORMATION CONTAINED IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE TO DELIVER IT TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS FAX IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS VIA THE U.S. POSTAL SERVICE AT OUR EXPENSE.

*Message:*

MBA 00031

03/20/2002  16:57    9567837884    LAW OFFICES    PAGE  02

**LAW OFFICES OF
RENE RAMIREZ**
1906 Tesoro Boulevard
Pharr, Texas 78577

RENE RAMIREZ
Celeste Guerra

March 20, 2002

Ms. Carolyn Gale                                           Via Facsimile (801) 268-3335
MBA                                                              Regular Mail
P.O. Box 651109
Salt Lake City, UT 84165-1109

RE:    San Benito CISD/Eunice Byrd, Joe Garza, Silvestre Cruz and Agapito Rodriguez

Dear Ms. Gale:

As I told you over the telephone, I am one of the attorneys for San Benito Independent School District.  We are currently experiencing a problem in having our claims reimbursed by our stop loss insurance carrier Companion Life and I am trying to secure more information from both Companion Life and MBA with regard to this matter.

You have informed me that you are now handling all matters for Carol Frandsen, whom is no longer employed by MBA.  On November 20, 2001, Ms. Frandsen wrote a letter to the District stating that MBA processed claims and released checks "except for the ones waiting for authorization of release from the district as shown on the weekly held check list".  I requested a copy of the referenced "weekly held check list", but you informed me that you needed authorization from Don or Phyllis Merrill and that they were on vacation until next week. Please advise me immediately of when I can expect to have a copy of the referenced list and/or let me know who else I need to speak to with regard to this matter.

Thank you for your attention to this matter.

Sincerely,

CELESTE GUERRA

CG/ag

Telephone (956)783-7880 • Facsimile (956)783-7884                          MBA 00032

02/26/02  16:37  FAX 956 361 6187     RISK MANAGEMENT     ☑01

## RISK MANAGEMENT DEPARTMENT

## SAN BENITO CISD
240 North Crockett, San Benito, Texas 78586

# FAX

| | |
|---|---|
| Date: | **February 26, 2002** |
| Number of pages including cover sheet: | 9 |

**To:**

MBA     Don Merrill

Phone:     1-800-877-3727

Fax phone:     (801) 266-2581

CC:

**From:**

SAN BENITO CISD     *Janie Gonzalez*
*Insurance Coordinator*

Phone:     210-361-6186

Fax phone:     210-361-6187

**REMARKS:**   ☒ Urgent       For your review   ☐ Reply ASAP   ☐ Please comment

Don,

Per Janie's request, please find the correspondence from Companion Life to Celeste Guerra and the Letter that Celeste Guerra sent to Companion Life. Janie is also requesting a copy of the letter from MBA's attorney to Companion Life for our records, which can be faxed to her.

Thank you,

Lucy

MBA 00033

02/26/02  16:37  FAX 956 361 6187          RISK MANAGEMENT                        ☑02
02/25/2002  09:53   956783    4            LAW OFFICES                    PAGE  02



**Companion Life**

P.O. Box 100102, Columbia, SC 29202-3102
7909 Parklane Road, Suite 200, Columbia, SC 29223-5666
(803) 735-1251  •  (800) 753-0404

February 14, 2002

Celeste Guerra
Law Offices of Rene Ramirez
1906 Tesoro Boulevard
Pharr, Texas 78577

Re:   Companion Contract No. CLI 3044
      Contractholder:  San Benito Consolidated Independent School District
      Underlying Claims:

| Claim Number | Provider | Amount |
| --- | --- | --- |
| 12057268-01 | Brownsville Medical Ctr. | $ 72,057.33 |
| 12057268-03 | Brownsville Medical Ctr. | $ 93,749.93 |
| 12057268-04 | Brownsville Medical Ctr. | $ 85,111.64 |
| 12059484-01 | Howard Frazier MD | $  8,100.00 |
| 12060091-01 | St. Luke's Episcopal Hosp. | $ 40,647.50 |
| 12050091-02 | St. Luke's Episcopal Hosp. | $114,700.64 |
| 1205780-01 | Valley Baptist Med. Ctr. | $ 99,308.00 |
| 1205780-02 | Valley Baptist Med. Ctr. | $ 44,179.60 |
| 1205870-03 | Valley Baptist Med. Ctr. | $ 82,125.26 |
| 1205870-04 | Valley Baptist Med. Ctr. | $ 48,649.84 |
| 12057599-01 | Driscoll Children's Hosp. | $ 84,018.66 |
| 12057599-02 | Driscoll Children's Hosp. | $ 93,233.95 |
| 12057599-03 | Driscoll Children's Hosp. | $  7,895.22 |

Dear Ms. Guerra:

This is in response to your letter of November 27, 2001.  Companion has requested that this
Department respond setting forth the company's position on these claims.

The referenced claims under the Companion policy are denied as they are for medical expenses
which were not paid by San Benito CISD, as required by the terms and provisions of the
Companion policy.  The Application, which is a part of the Policy at section 11.(l) provides:

IT IS UNDERSTOOD AND AGREED, AS CONDITIONS PRECEDENT TO THE
APPROVAL OF THIS APPLICATION, THAT:  (Continued)

(l)   Applicant acknowledges that the Contract which is the subject of
      this Application is a reimbursement Contract.  Applicant must first
      pay claims before submitting them for reimbursement.

MBA 00034

02/26/02  16:37  FAX 956 361 6187          RISK MANAGEMENT                    ☑03
02/25/2002  09:53    956783    4            LAW OFFICES
                                                                      PAGE  03

Ms. Celeste Guerra
February 14, 2002
Page 2

The Companion policy also contains the following pertinent terms and provisions.

## SCHEDULE OF EXCESS LOSS INSURANCE

8.    GENERAL SCHEDULE OPTIONS:

    (a)    Aggregate Benefit
        Aggregate Contract Basis:  Employee Benefit Plan expenses must be
        Incurred from 07/01/00 through 08/31/01, and
        Paid from 10/01/00 through 08/31/01.

    (b)
    (c)
    (d)
    (e)    Specific Benefit
        Specific Contract Basis:  Employee Benefit Plan expenses must be
        Incurred from 07/01/00 through 08/31/01, and
        Paid from 10/01/00 through 08/31/01.

## DEFINITIONS

**Eligible Claims Payments** means expenses of the Employee Benefit Plan qualifying for coverage under the terms and conditions of this Contract.

**Employee Benefit Plan** means the master plan document of the Contractholder to provide medical expense benefits to the Contractholder's covered plan participants and dependents of such plan participants in effect on the Effective Date of this Contract, a copy of which is attached to and made a part of this Contract.

**Incurred** refers to the date on which a covered medical service was rendered, the date disability benefit payments become due, or a covered medical purchase was made for a Covered Person under the Employee Benefit Plan.

**Paid** means that funds are actually disbursed by the Contractholder or his Agent.  Payment of a claim is the unconditional and direct payment of a claim to a Covered Person or their health care providers.  Payment will be deemed made on the date that both (1) the payor directly tenders payment by mailing (or otherwise delivering) a draft or check, and (2) the account upon which the payment is drawn contains, and continues to contain, sufficient funds to permit the check or draft to be honored.  Should the account upon which payment is drawn not contain sufficient funds to cover all outstanding checks and drafts on the account, then the Company may consider, in its sole discretion, any particular checks or drafts as not having been paid, but only to the total

MBA 00035

Ms. Celeste Guerra
February 14, 2002
Page 3

amount representing the difference between the funds in the account and the total of outstanding checks and drafts.

**Schedule** means the Schedule of Excess Loss Insurance.

**Specific Benefit** means the amount the Company will pay to the Contractholder for eligible claims Paid by the Contractholder over and above the Contractholder's Specific Deductible Per Person, and pursuant to the terms, conditions and limitations of the Contract.

**Specific Contract Basis** identifies the dates during which Employee Benefit Plan expenses must be incurred and must be Paid to be considered eligible for reimbursement as Specific Benefits.

## BENEFITS

The Company will pay, subject to the terms, conditions and limitations of the Contract, the following benefits, if shown in the Schedule, to the Contractholder within a reasonable time upon receipt of a fully executed Proof of Loss:

### Aggregate

The Aggregate Benefit for the Contract Period, or fraction thereof, is the total of the Eligible Claim Payments, on an Incurred and/or Paid basis as shown in the Aggregate Contract Basis of the Schedule:

    a.    less the Aggregate Deductible or Minimum Aggregate Deductible, whichever is greater; and

    b.    less the amount of the claims Paid by the Contractholder in excess of the Maximum Eligible Claim Expense Per Person as shown in the Schedule; and

    c.    less amounts recovered from other sources;

    d.    multiplied by the Aggregate Payable Percentage.

Aggregate Benefits are not payable until after the end of the Paid basis shown in the Aggregate Contract Basis of the Schedule. If this Contract should terminate prior to the end of the Contract Period, the Company shall not be liable for Aggregate Benefits for expenses Incurred or Paid by the Contractholder after the termination date.

In no event will the Aggregate Benefit exceed the Maximum Aggregate Benefit shown in the Schedule.

### Specific

The Specific Benefit with regard to each Covered Person is the total of the Eligible Claim Payments, on an Incurred and/or Paid basis as shown in the Specific Contract Basis of the Schedule:

MBA 00036

02/26/02  16:37  FAX 956 361 6187        RISK MANAGEMENT                    ☑05
02/25/2002  09:53    956763    4          LAW OFFICES                  PAGE  05

Ms. Celeste Guerra
February 14, 2002
Page 4

    a.    less the Specific Deductible; and
    b.    less amounts recovered from other sources;
    c.    multiplied by the Specific Payable Percentage

The Contractholder shall not be entitled to any Specific Benefit unless and until the Contractholder has actually Paid the full amount of the Specific Deductible as set forth in the Schedule for the Covered Person(s) for which the Specific Benefit is sought. The Contractholder shall only be entitled to a Specific Benefit up to the amount actually Paid by Contractholder over and above the Specific Deductible.

If this Contract should terminate prior to the end of the Contract Period, the Company shall not be liable for Specific Benefits for expenses Incurred or Paid by the Contractholder after the termination date.

In no event will the Specific Benefit with regard to any covered person exceed the Maximum Specific Benefit shown in the Schedule.

## CLAIMS PROVISIONS

1.    **Payment of Claim:** All benefits as they become payable under this Contract will be paid to the Contractholder. All expenses as they become payable under the Employee Benefit Plan shall be Paid by the Contractholder. The Company shall pay claim within a reasonable time after receiving fully executed Proofs of Loss and the documentation reasonably necessary to evaluate the eligibility and extent of the claim.

2.    **Warranty:** Upon presentation of Proof of Loss to the Company for Aggregate or Specific Benefits, the Contractholder warrants that all monies necessary to pay for services and supplies have been paid to the respective providers of medical services or supplies to which the claim for reimbursement relates.

## MISCELLANEOUS PROVISIONS

1.    **Liability:** The Company will have neither the right nor the obligation under this Contract to directly pay any Covered Person or providers of professional or medical services for any benefit which the Contractholder has agreed to provide under the terms of the Employee Benefit Plan. The Company's sole liability hereunder is to the Contractholder, subject to the terms, conditions and limitations of this contract. Nothing in this Contract shall be construed to permit a Covered Person to have a direct right of action against the Company.

2.    **Grace Period:** A Grace Period of thirty (30) days will be allowed for the payment of each premium after the first premium. Should a premium otherwise due not be paid during the Grace Period, this Contract will terminate without further notice retroactive to

MBA 00037

Ms. Celeste Guerra
February 14, 2002
Page 5

the date for which premiums were last paid. The liability of the Company will be limited to claims Paid by the Contractholder prior to the date of termination. There will be no refund of any premium shown in the Schedule.

3.   **Entire Contract:** This Contract Form as issued to the Contractholder, together with the Contractholder's Application and Contract Addenda or Riders (if any), constitute the entire contract. The Company has relied upon the underwriting information provided by the Contractholder or the Contractholder's Agent, in the issuance of this Contract. Should subsequent information become known which, if known prior to issuance of this Contract, would affect the rates, deductibles, terms or conditions for coverage hereunder, the Company will have the right to revise the rates, deductibles, terms or conditions as of the Effective Date of issuance, by providing written notice to the Contractholder.

4.   **Audits:** The Company will have the rights:  (1) to inspect and audit all records and procedures of the Contractholder and Designated Third Party Administrator and (2) to require, upon request, proof of records satisfactory to the Company that payment has been made to the Covered Person or the provider of such services or benefits which are the basis for any claim by the Contractholder hereunder.

5.   **Arbitration:** Any controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by Arbitration in accordance with the rules of the American Arbitration Association , with the express stipulation that the arbitrator(s) shall strictly abide by the terms of this Contract and shall strictly apply rules of law applicable thereto. All matters shall be decided by a panel of three (3) arbitrators. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. This provision shall survive the termination or expiration of this Contract. The parties hereto may alter any of the terms of this provision only by express written agreement, although such alteration may be before or after any rights or obligations arise under this provision.

The above quoted policy provisions make it clear that this policy provides benefits only up to the amount actually Paid by San Benito CISD over and above the aggregate and Specific Deductibles. This policy form was filed with, and approved by, the Texas Department of Insurance.

Companion's Managing General Underwriter's staff informs Companion that it did not offer Specific Advance Funding on this contract and that there was no advance funding provided on any claims filed in the 10/01/00 through 8/31/01 contract period.

Therefore, in view of the above information and policy provisions, Companion denies any liability for the referenced claims as they are for medical expenses which were not paid by San Benito CISD during the term of the policy.

Ms. Celeste Guerra
February 14, 2002
Page 6

We realize that your client may disagree with this claim determination, and we note that you have threatened to file suit unless Companion pays these claims.  We would point out that the policy, at paragraph 16, provides for arbitration of any claim or controversy arising out of, or related to, the policy contract.

Nothing in this letter should be construed as a waiver of any rights or defenses under the policy contract.  This determination has been made in good faith and without prejudice under the terms and conditions of the contract whether or not specifically mentioned herein.

Sincerely,

Clifford B. Chappell
Senior Deputy General Counsel

CBC/hkb

02/26/02  16:37  FAX 956 361 6187          RISK MANAGEMENT
02/26/2002  15:38   9567837  1                LAW OFFICES                    PAGE   02  08

**LAW OFFICES OF**
**RENÉ RAMIREZ**
1906 Tesoro Boulevard
Pharr, Texas 78577

RENÉ RAMIREZ
Celeste Guerra

November 27, 2001

Via Certified Mail RRR 7000 1530 0005 0023 7601
Facsimile (317) 264-9038

J. Allan Hall & Associates, Inc.
ATTN: Randy Scott
Circle Tower
55 Monument Circle, Suite 1115
Indianapolis, IN 46204

RE:    San Benito Independent School District Specific Claims Requests

Dear Mr. Scott:

I am writing to you in my capacity as the General Counsel for the San Benito Independent School District, hereinafter referred to as the District, with regard to the payment of claims of Joe Garza & Silvestre Cruz. As the District's reinsurer, Companion Life is obligated to pay these two claims and has provided no reasonable explanation as to why the claims have not been paid. You attempted to offer an excuse about a concern that the claims were not timely paid by the District. However, an audit of the District's third party administrator, MBA or Merrill Bostrom Associates, revealed that the claims requested for reimbursement were paid or funded for payment in a timely fashion. Even after it has been illustrated that your excuse not to pay has no factual basis, the District remains unpaid.

There have been several attempts made to resolve this matter amicably, but to no avail. The District continues to lose interest on money it has transferred from its general fund to cover these claims. The San Benito Independent School District is hereby demanding payment of the claims totaling $1,123,289.23 by December 3, 2001. If the District does not receive payment by that date, I have been authorized to file a claim against J. Allan Hall & Associates , Inc. and Companion Life.

Telephone (956)783-7880 • Facsimile (956)783-7884

MBA 00040

J. Allan Hall & Associates, Inc.
November 27, 2001
Page 2


        As part of a breach of contract claim, you will not only be responsible for the amount of the
claims, but for the interest lost on over $1 million as well as attorney fees. In addition to a breach
of contract claim, the District has legal grounds for recovering under a bad faith claim. Companion
Life & J. Allan Hall & Associates have clearly committed acts of bad faith by failing to timely pay the
District's claim and can be held liable for treble damages under the Insurance Code and the Deceptive
Trade Practices Act. For your reference, these are Texas statutes that protect policy holders from
arbitrary and capricious practices such as those you have committed. The contract between
Companion Life & the District clearly states that the contract is governed by the laws of the State of
Texas.

        The District regrets having to resort to threats of litigation, but is ready to pursue any and all
legal remedies to secure these payments that are legally due to them. Please contact me if you have
any questions with regard to this matter.

                                        Sincerely,


                                        CELESTE GUERRA


cc:     Lorenzo Sanchez
        Human Resources Administrator
        San Benito CISD

MBA 00041

Exhibit

Service Claims Reviewed

San Benito Consolidated ISD

Policy Period October 1, 2000 through August 31, 2001 (14/11)

| | Employee / Dependent SS Number | Claim Number | Payee | Check Number | Check Date | Check Amount | Date Mailed | Check Seq. Date | Date Check Cleared |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Cruz, Nelda / Silvestre | 1205 780-01 | Valley Baptist Med Ctr | 69721 | 8/3/01 | 89,382.03 | 8/31/01 | 9/4/01 | 9/5/01 |
| 2 | 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 | 1205 780-02 | Valley Baptist Med Ctr | 69722 | 8/3/01 | 4517.60 | 9/4/01 | 9/1/01 | 9/5/01 |
| 3 | | 1205 780-03 | Valley Baptist Med Ctr | 69723 | 8/6/01 | 32,185.06 | 9/6/01 | 9/1/01 | 9/5/01 |
| 4 | | 1205 780-04 | Valley Baptist Med Ctr | 69724 | 8/6/01 | 68,643.88 | 11/5/01 | | |
| 5 | | 1205 2299-01 | Driscoll Children Hosp | 69725 | 5/4/01 | 789,766 | 4/5/01 | | |
| 6 | | 1205 7598-00 | Driscoll Children Hosp | 69726 | 8/6/01 | 93,839.95 | 4/6/01 | | |
| 7 | | 1205 7598-03 | Driscoll Children Hosp | 69777 | 8/6/01 | 2205.63 | 9/6/01 | 9/3/01 | 9/26/01 |
| 8 | | 1205 751-01 | Driscoll Children Hosp | 70261 | 8/6/01 | 1745.50 | 8/3/01 | 9/6/01 | 9/26/01 |
| 9 | | 1205 761-15-01 | Cardio Vascular Medicine Inc | 70293 | 8/1/01 | 241,000 | 8/3/01 | 9/1/01 | 9/1/01 |
| 10 | | 1205 7257-01 | Driscoll Children Hosp | 70294 | 8/3/01 | 66,632.57 | 8/3/01 | 9/1/01 | 9/1/01 |
| 11 | | 1205 7257-02 | Driscoll Children Hosp | 70295 | 8/3/01 | 2882.58 | 8/3/01 | 9/1/01 | 9/1/01 |
| 12 | | 1205 8749-01 | Rudolfo Soliz MD | 70296 | 8/3/01 | 231.25 | 8/3/01 | 9/1/01 | 9/1/01 |
| 13 | | 1205 9383-01 | Valley Baptist Rehab Ctr | 70297 | 8/3/01 | 32,647.59 | 8/3/01 | 9/1/01 | 9/1/01 |
| 14 | | 1205 9391-01 | Emil M. Lang MD | 70300 | 8/3/01 | 124,899 | 8/3/01 | 9/1/01 | 9/1/01 |
| 15 | | 1205 9393-01 | Emil M. Lang MD | 70301 | 8/3/01 | 94,26 | 8/3/01 | 9/1/01 | 9/1/01 |
| 16 | | 1205 9394-01 | Emil M. Lang MD | 70302 | 8/3/01 | 2246.49 | 8/3/01 | 9/1/01 | 9/1/01 |
| 17 | | 1205 9395-01 | Emil M. Lang MD | 70303 | 8/3/01 | 9/2.83 | 4/1/01 | 9/1/01 | 9/1/01 |
| 18 | | 1205 9396-01 | Emil M. Lang MD | 70304 | 8/3/01 | 2892.06 | 8/3/01 | 9/1/01 | 9/1/01 |
| 19 | | 1205 9397-01 | Emil M. Lang MD | 70305 | 8/3/01 | 1255.98 | 8/3/01 | 9/1/01 | 9/1/01 |
| 20 | | 1205 9440-01 | Emil M. Lang MD | 70306 | 8/3/01 | 2299.93 | 8/3/01 | 9/1/01 | 9/1/01 |
| 21 | | 1205 5960-01 | Emil M. Lang MD | 70306 | 8/3/01 | 5736.98 | 8/3/01 | 9/1/01 | 9/1/01 |
| 22 | | 1205 960-02 | Emil M. Lang MD | 70307 | 8/3/01 | 1412.98 | 8/3/01 | 9/1/01 | 9/1/01 |
| 23 | | 1205 5952-01 | Drus Ruynado MD | 70310 | 8/3/01 | 237.65 | 8/3/01 | 9/1/01 | 9/1/01 |
| 24 | | 1205 5948-01 | Drus Ruynado MD | 70313 | 8/3/01 | 51,4034 | 9/3/01 | 9/3/01 | 9/1/01 |
| 25 | | 1205 5948-01 | Driscoll Children Hosp | 70593 | 8/3/01 | 5324.28 | 9/3/01 | 9/1/01 | 9/1/01 |
| 26 | | | | | | | | | |
| 27 | | | | | | | | | |
| 28 | | | | | | | | | |
| 29 | | | | | | | | | |
| 30 | | | | | | | | | |

Prepared By

Approved By

*Exhibit*

**Special Claims Review**
**San Benito Consolidated ISD**

p. 2

© WILSON JONES    G7110 BUFF    G7110 GREEN

**Policy Period:** October 1, 2000 (or until August 31, 2001 (14)

| | Employee / Dependent SS Number | Claim Number | Payee | Check Number | Check Dated | Check Amount | Date Mailed | Check Deposited | Date Check Cleared Bank |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Garza, Joe | 1205 7268-01 | Brownsville Med Ctr | 69714 | 8/43/01 | 20085.81 | 9/1/01 | 10/1/01 | 10/2/01 |
| 2 | 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 | 1205 7268-03 | Brownsville Med Ctr | 69715 | 8/43/01 | 08099.93 | 9/1/01 | 10/1/01 | 10/2/01 |
| 3 | | 1205 7268-02 | Brownsville Med Ctr | 69716 | 8/3/01 | 82099.93 | 9/1/01 | 10/1/01 | 10/2/01 |
| 4 | | 1205 7268-04 | Brownsville Med Ctr | 69717 | 8/3/01 | 85111.69 | 9/1/01 | 10/1/01 | 10/2/01 |
| 5 | | 1205 9055-01 | Cardiovascular Center | 70362 | 8/9/01 | 2700.0 | 8/3/01 | 9/2/01 | 9/3/01 |
| 6 | | 1205 9495-01 | Howard Frazier | 70145 | 8/9/01 | 8100.0 | 8/31/01 | 10/1/01 | 9/3/01 |
| 7 | | 1206 0091-01 | St. Luke's Episcopal Hos | 70477 | 8/3/01 | 60147.50 | | | |
| 8 | | 1206 0091-02 | St. Luke's Episcopal Hos | 70448 | 8/3/01 | 117300.68 | | | |
| 9 | | | | | | | | | |
| 10 | | | | | | | | | |
| 11 | Byrd, Eunice | 1205 2405-01 | Valley Baptist Medical | 69765 | 8/04/01 | 62068.35 | 8/27/01 | 9/1/01 | 9/3/01 |
| 12 | 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 | 1205 9893-01 | Marion Lewis | 70489 | 8/3/01 | 2398.56 | 9/1/01 | 9/4/01 | 9/4/01 |
| 13 | | 1205 9898-01 | Castigue | 70491 | 8/9/01 | 200.00 | 8/31/01 | 10/1/01 | 10/1/01 |
| 14 | | | | | | | | | |
| 15 | | | | | | | | | |
| 16 | Rodriguez, Maria / Agapito | 1205 2404-01 | Valley Baptist Medical | 70191 | 8/07/01 | 2237.94 | 8/31/01 | 9/1/01 | 9/1/01 |
| 17 | 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 | 1205 9503-01 | Castigue | 70061 | 8/9/01 | 960.74 | 8/31/01 | 9/4/01 | 9/4/01 |
| 18 | | 1205 9494-01 | Harlingen Diagnostic | 70368 | 8/9/01 | 10300.33 | 9/1/01 | 10/1/01 | 10/1/01 |
| 19 | | 1205 9499-01 | Harlingen Diagnostic | 70369 | 8/9/01 | 1855.57 | 9/1/01 | 9/1/01 | 9/3/01 |
| 20 | | 1205 9501-01 | Harlingen Diagnostic | 70370 | 8/9/01 | 8408.31 | 9/1/01 | 10/1/01 | 10/1/01 |
| 21 | | | | | | | | | |
| 22 | | | | | | | | | |
| 23 | | | | | | | | | |
| 24 | | | | | | | | | |
| 25 | | | | | | | | | |
| 26 | | | | | | | | | |
| 27 | | | | | | | | | |
| 28 | | | | | | | | | |
| 29 | | | | | | | | | |
| 30 | | | | | | | | | |

Prepared By ____
Approved By ____
Initials | Date

MBA 00043



A FULL SERVICE EMPLOYEE BENEFIT ADMINISTRATOR

January 28, 2002

Denver
3625 So. West Temple
Salt Lake City, UT 84115
Mail
P.O. Box 651109
Salt Lake City, UT 84165-1109
800-877-3727
Fax. (801) 266-2581
www.mba.to

Cara Porter, Attorney at Law
Christensen & Jensen
50 South Main Street, Suite 1500
Salt Lake City, UT 84144

Re:    San Benito Consolidated Independent School District

Dear Cara:

The following claims were paid by J. Allan Hall in the three cases highlighted checks were held. In all cases, J. Allan Hall did not verify whether claims were funded before reimbursing. We are checking on the three to find the date of funding.

Sincerely,

Phyllis Merrill
Chief Operations Officer

MBA 00044

MANAGED BENEFITS ADMINISTRATOR & INSURANCE CONSULTANTS, INC.

**SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT**

| Manuel Garcia | $101,849.87 | 12/19/00 |
| Juan Vicinaiz | $56,560.00 | 3/20/00 |
| Juan Vicinaiz | $33,944.10 | 4/27/00 |
| Juan Vicinaiz | $54,204.84 | 6/29/00 |

**UTE INDIAN TRIBE**

| Mary Wyasket | $32,802.51 | 12/19/00 |
| Nataline Santio | $21,219.07 | 5/4/00 |

**YOUNG ELECTRIC SIGN COMPANY**

| Denise Blair | $75,312.15 | 8/22/00 |
| Denise Blair | $20,583.22 | 6/29/00 |
| Emma Lee White | $51,196.36 | 6/23/00 |
| Nicholas Lazzaro | $55,082.80 | 5/26/00 |
| John Roberts | $30,671.31 | 12/21/99 |
| Amelia Rolfe | $62,726.83 | 11/15/99 |
| John Roberts | $91,831.00 | 11/1/99 |

MBA 00045

```
*******************************************************************************
X                                                                    P. 01   X
X               TRANSACTION REPORT                                           X
X                                              JAN-28-2002 MON 03:26 PM      X
X     FOR:  MBA                   8012662581              —                  X
X                                                                            X
X   DATE  START    RECEIVER      TX TIME  PAGES TYPE       NOTE      M#  DP  X
X  JAN-28 03:26 PM 3553472        22″      2  SEND         OK        779     X
X                                                                            X
X                                    TOTAL :       22S PAGES:    2           X
X                                                                            X
*******************************************************************************
```



A FULL SERVICE EMPLOYEE BENEFIT ADMINISTRATOR

January 28, 2002

Deliver:
3625 So. West Temple
Salt Lake City, UT 84115
Mail:
P.O. Box 651109
Salt Lake City, UT 84165-1109
800-877-3727
Fax: (801) 266-2581
www.mba.to

Cara Porter, Attorney at Law
Christensen & Jensen
50 South Main Street, Suite 1500
Salt Lake City, UT 84144

Re:    San Benito Consolidated Independent School District

Dear Cara:

The following claims were paid by J. Allan Hall in the three cases highlighted checks were held.
In all cases, J. Allan Hall did not verify whether claims were funded before reimbursing.  We are
checking on the three to find the date of funding.


Sincerely,

MBA 00046

TO _Cara Porter_

**MBA**

Merrill Bostrom Associates
P O. Box 651109, Salt Lake City, Utah 84165-1109
(801) 268-3334

FAX 355 3472

2 pgs

SUBJECT. _San Benito Consolidated ISD_          DATE: _1-29-2002_

_Please see this item of Research On SAllen Hall_

PLEASE REPLY TO ► SIGNED _Phyllis Merrill_

DATE.              | SIGNED:

MBA 00047

J. Allen Hall

UTE

| | Claim # | | | |
|---|---|---|---|---|
| Nataline Santio | 02018812-01 | 31,138.13 | 3/24/00 | 00005133 |
| ($ 21,219.07 5/4/00) | 02018163-01 | 14,461.25 | 3/24/00 | 00005132 |
| Spec. check | | | | |
| Mary Wyasket | 02053465-01 | 10,979.30 | 9/29/00 | 00006444 |
| ($ 32,802.51 12/19/00) | | | | |
| Spec. check | | | | |

YESCO

| | Claim # | Check Amt | Issue date | check # |
|---|---|---|---|---|
| Nicholas Lazzaro | 02005445-01 | 29,020.50 | 1/31/00 | 00063662 |
| | 02005445-02 | 47,779.50 | 1/31/00 | 00063663 |
| $ 55,082.80 5/26/00 | 02004828-01 | 2367.23 | 1/31/00 | 00063587 |
| Spec. check issued | 02004828-02 | 26,782.77 | 1/31/00 | 00063588 |
| by carrier | | | | |

Phyllis –

Carolyn G. checked out the above claims to see if any of them may have been held by MBA and not released until after the Specific Reimbursement monies had been received from the carrier. It would appear the "Lazzaro" claims listed above were held as you will note from the dates.

① Issue date of MBA/YESco checks was 1/31/00
② Issue date of $55,082.80 check from J. A. Hall was 5/26/00 ( We would have received in early June – n date stamp showing)
③ MBA/YESco checks cleared bank 7/13/00 as researched by Carolyn Gale.

MBA 00048

Gale 1/29/02

# MBA

3625 So. West Temple, 2nd Floor
Salt Lake City, UT  84115-4409
P. O. Box 651109
Salt Lake City, UT  84165-1109
(801) 268-3334 FAX (801) 266-2581

## FAX  TRANSMITTAL

**Date:** _1/15/2002_

**To:** _Cara Porter_

**Company:** _____

**Fax#:** _355 3472_

**Time:** _____

**Re:** _____

**From:** _Phyllis Newell_

**Number of Pages** _6_
(Including This Page)

**Comments:** _____
_____
_____
_____
_____

MBA 00049

# MEMORANDUM

TO:        File

FROM:      Don Merrill

SUBJECT:   J. Allan Hall's visit to MBA (3900 South 1100 East)

========================================================

Tuesday, May 25 at 4 p.m. (as recorded in my monthly schedule calendar).

During that visit we discussed the advance funding of specific claim funding on an advance basis and we were assured that that was J. Allan Hall's position that as long as the checks were processed and paid per computer that they could be held awaiting specific reimbursement - the specific deductible amount must be available for payment.

In attendance: Doug Routh, J. Allan Hall, Don, Clark and Phyllis Merrill

To confirm our discussion and the questionnaire we were working with Allan responded in his letter of June 3, 1999.

# J. ALLAN HALL & ASSOCIATES, INC.

June 3, 1999

Mr. Don Merrill
Merrill Bostrom Associates
1121 East 3900 South, Suite C-101
Salt Lake City, UT 84124

Re:  MGU Questionnaire

Dear Don:

It was a pleasure to meet with you and your staff last week at your office.  Enclosed you will find a questionnaire that one of my associates has developed.  Hopefully, you can incorporate some of the questions on the enclosed into your final document.

If you have any questions, please do not hesitate to contact me.

Sincerely,

J. Allan Hall
President

JAH/aah

Enclosure

MBA 00051

# STOP LOSS COVERAGE
# QUESTIONNAIRE

1.  Is there an annual aggregate limit of liability under your specific stop loss coverage? If so, what is the limit?

2.  Are there limits of liability under your specific and or aggregate stop loss coverages for any particular medical conditions or diagnosis? If so, what are the conditions or diagnosis and respective limits?

3.  Are there any penalties for cancellations prior to the anniversary date?

4.  How soon do you require notification by the administrator of a potential claim?

5.  How soon after an individual claim surpasses the specific stop loss attachment point do you begin payments?

6.  Will you provide specific and aggregate stop loss coverage to members and their dependents continuing medical coverage under COBRA?

7.  Please provide a sample contract of the type you would implement.

8.  What affect, if any, would the following have on your specific and/or aggregate stop loss premium rates if the average number of monthly participants:
    - Increases 10%
    - Decreases 10%
    - Increases 20%
    - Decreases 20%

9.  Please provide a detailed definition of the criteria used to determine when a claim(s) exceed(s) the specific attachment point, i.e., basis upon incurred and paid within the policy period, issued within the policy period, etc.

10. Describe your runoff liability for claims exceeding the specific and/or aggregate stop loss attachment point.

11. Does your specific or aggregate stop loss coverage include any type of pre-existing conditions limitation? If so, please describe.

12. How do you pay claims if R&C cutbacks are included?

13. How soon after claims exceed the aggregate attachment point do you make reimbursement?

14. Will you provide a long run-in period under specific stop loss, i.e., paid, incurred in 24 months and paid in 12 months? If so please indicate the impact on stop loss premiums.

15. Are all of your EDP systems Year 2000 compliant?

MBA 00052



# MBA

## Stop Loss Qualification Form

*It is important for you to complete and return this form with your quote.*

We will evaluate all quotes based on your answers to this questionnaire along with the stop loss plan and numbers. Effective administration, speedy turnaround and contract provisions have become an important aspect which we will communicate to the client.

We have learned that all contracts are not the same and some carriers and claims processing organizations can overburden us with an additional workload. It is important for us to make wise decisions with the carriers selection, therefore, your answers are important.

Group:_____
Proposing MGU or Co._____
Stop Loss Insurance Carrier:_____
Carriers Rating: Best_____ Moody_____ Standard & Poors_____
What percent of the risk is the primary carrier holding?_____
Who is carrying the balance of the risk?_____
Is there a third organization? □ Yes  □No
What percent of risk do they have?_____
List the ratings of number 2 carriers? Best____ Moody____ Standard & Poors____
List the ratings of number 3 carriers? Best____ Moody____ Standard & Poors____

Claims are paid by:_____
Claims Managers Name:_____

The auditing firms to be used when necessary are:_____
_____
_____
If MBA disputes using a particular auditing firm can another be used    □Yes  □No

Once all requirements are met the contract that will be issued will include:

- **Advance Funding Provisions**                                     □Yes    □No

- **A provision that a claim is considered as a paid claim once so indicated by the TPA's automated computer system**                                              □Yes    □No

Stop Loss Qualification Form

**The number of group lives single, family etc. enrolled the first contract month will establish the minimum attachment point based on:**

- **100% of that month times 12** ☐**Yes** ☐**No**
- **or based on _____% of the first months enrollment times 12** ☐**Yes** ☐**No**
- **or other; Explain:_____**

- **The carriers contract includes an established time frame when Specific stop loss completed claims will be processed** ☐**Yes** ☐**No**

Outline your present turn around time and explain claim process if unable to answer yes. State of Utah Insurance rule requires response within 30 days (R590-89-12)

- **Does the carriers stop loss contract contain any benefit limitations which would not be determined by the master plan document:** ☐**Yes** ☐**No**

   **If yes, identify benefit limitations_____**
   _____
   _____

- **All large case management utilization review expenses are considered as a covered charge under the claims contract as considered in the MBA's plan document** ☐**Yes** ☐**No**

- **Are all PPO's listed in the plan booklet eligible as a PPO benefit and so considered:** ☐**Yes** ☐**No**

- **Are PPO access fees considered part of the claims expense** ☐**Yes** ☐**No**
  **Please explain:_____**
   _____
   _____
   _____

**Are there any additional advantages your contract provides that would allow us to improve your sales position?_____**
_____
_____
_____
_____

Underwriter's Signature_____    Date_____

Name_____

2

MBA 00054

M BA - Managed Benefits Administrator
P.O. Box 651109 ● Salt Lake City, UT 84165-1109
3625 South West Temple Ste 200● Salt Lake City,  UT  84115
Phone: (801) 268-3334 ● Fax: (801) 266-2581

## F A X   T R A N S M I T T A L

| | |
|---|---|
| Date: | November 19, 2001 |
| To: | Janie |
| Company: | San Benito C.I.S.D. |
| Fax #: | 956-361-6187 |
| Regarding: | specific information |
| Number of Pages: | 4 |
| Senders Name: | Carol Frandsen |

● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ● ●

Janie

Here is the specific claims information requested by you.

Call me if you have any questions

Thanks

Carol Frandsen

MBA 00055



A FULL SERVICE EMPLOYEE BENEFIT ADMINISTRATOR

November 20, 2001

Deliver
3625 So. West Temple
Salt Lake City, UT 84115
Mail:
P.O. Box 651109
Salt Lake City, UT 84165-1109
800-877-3727
Fax: (801) 266-2581
www.mba.to

Janie Gonzalez
San Benito CISD
240 North Crockett
San Benito, TX 78586

Dear Janie:

Per your request, I have put together a spreadsheet with information regarding the specific claims of Eunice Byrd, Joe Garza, Silvestre Cruz and Agapito Rodriguez. Please keep in mind that all these claims were processed as they arrived at MBA and were released on the next day except for the ones waiting for authorization of release from the district as shown on the weekly held check list.

Also, attached is a spreadsheet the auditor for J. Allan Hall prepared showing the timing of claims payments and the funding of the same. Please bear in mind MBA had to especially request bills for each of these participants prior to the plan year ending of 08/31/01 in order to process them and have them included as payable claims under the J. Allan Hall contract.

Please note the timing of checks processed through the bank on Agapito Rodriguez. They seem similar to funding timing on the other claims. His claims have all been paid, except for a remaining $440.09, probably because of the smaller dollar amount.

Should you have any questions in regards to this letter please call and we will go over the numbers together.

Sincerely,

Carol Frandsen
Group Admin.

MBA 00056

Nov. 20, 2001
Janie Gonzalez
San Benito CISD

Page 2

**Eunice Byrd ss# 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**

| | |
|---|---|
| Total Claims | $100,872.03 |
| 09/06/01 Specific Reimbursement filed | $6,728.14 |
| Provider refund requested | $19,143.89 |
| **Balance Due from J. Allan Hall** | **$6,728.14** |

**Joe Garza ss# 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**

| | |
|---|---|
| Total Claims | $500,704.15 |
| 09/06/01 Specific Reimbursement filed | $425,704.15 |
| **Balance Due from J. Allan Hall** | **$425,704.15** |

**Silvestre Cruz**
**Dependent of Nelda Cruz ss# 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**

| | |
|---|---|
| Total Claims | $1,000,000.00 |
| 06/14/01 Specific Reimbursement filed | $14,178.64 |
| 06/28/01 Specific Reimbursement filed | $213,236.28 |
| 09/13/01 Specific Reimbursement filed | $697,585.08 |
| 09/18/01 Specific Reimbursement receive | ($225,491.32) |
| 09/20/01 Provider refund requested | $1,923.60 |
| **Balance Due from J. Allan Hall** | **$697,585.08** |

**Agapito Rodriguez ss# 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**

| | |
|---|---|
| Total Claims | $83,369.99 |
| 09/14/01 Specific Reimbursement filed | $8,369.99 |
| 10/24/01 Specific Reimbursement receive | ($7,929.90) |
| 10/25/01 Appeal filed for balance | $440.09 |
| **Balance Due from J. Allan Hall** | **$440.09** |

MBA 00057

ov. 02, 2001

**SAN BENITO CISD**
**SPEC HELD CHECK LIST**

| CLAIM # | DESCRIPTION | DATE PAID | CK # | CHECK RUN AMOUNT | TOTAL HELD CHECKS |
|---------|-------------|-----------|------|------------------|-------------------|
| 2057580-04 | Silvestre Cruz | 08/24/01 | 69774 | $48,649.84 | |
| 2057599-01 | Silvestre Cruz | 08/24/01 | 69775 | $84,018.66 | |
| 2057599-02 | Silvestre Cruz | 08/24/01 | 69776 | $93,233.95 | |
| 2060091-02 | Joe Garza | 08/31/01 | 70498 | $114,700.64 | |
| 2060091-01 | Joe Garza | 08/31/01 | 70497 | $40,647.50 | |
| | | | | | $381,250.59 |

MBA 00058

Oct 26 , 2001

### SAN BENITO CISD
### SPEC HELD CHECK LIST

| DESCRIPTION | CHECK RUN AMOUNT | TOTAL HELD CHECKS |
|---|---|---|
| 69774 | $48,649.84 | |
| 69775 | $84,018.66 | |
| 69776 | $93,233.95 | |
| 70498 | $114,700.64 | |
| 70497 | $40,647.50 | |
| | | |
| TOTAL SPEC CHECK HELD LIST | | $381,250.59 |

The Solid Source
For Solid Solutions

# The Consolidated Companies

**Consolidated General Insurance Services, Inc.**

Consolidated Special Risk Managers, Inc.

Health Program Marketing, Inc.

Consolidated Reinsurance Corporation

January 12, 2001

Mr. Don Merrill
MBA of Salt Lake
3625 South West Temple,  Suite 200
Salt Lake City, UT. 84115

RE: San Benito Consolidated ISD

Dear Don

Enclosed you will find the Reinsurance Agreement for the captioned account's stop loss coverage. One copy is for your records, and one is to forward on to the account. **Please review the contract carefully.** If the terms and conditions of the enclosed reflect accurately the result of our negotiation based on your records, please forward this Reinsurance Agreement to the account.

If you or the account have any questions, please do not hesitate to contact me. We do appreciate your business.

Sincerely,

Douglas C. Routh
Assistant Vice President

Enclosure

MBA 00060

## COMPANION LIFE INSURANCE

Companion Life Insurance Company, Columbia, South Carolina agrees to pay Excess Loss Insurance benefits under the provisions of this Contract to the Contractholder listed in the Schedule of Excess Loss Insurance.

## READ YOUR CONTRACT CAREFULLY

This Contract is legally binding between the Contractholder and Companion Life Insurance Company ("Company"). The consideration for this Contract includes, but is not limited to, the Application and the payment of premiums as provided hereinafter.

The Company will pay the [Aggregate and Specific Benefits] provided in this Contract. Payment is subject to the conditions, limitations and exceptions of this Contract.TheContractholder agrees to pay premiums when due and to comply with Contract provisions.The Contractholder understands the liability assumed under the portion of the employee benefit plan which he is self-insuring and further understands that he is exempted from Article 1.14-1 of the Texas Insurance Code only if a qualified employee benefits plan has been filed and meets the requirements of the Employees Retirement Income Security Act.

This is not a policy of workers' compensation insurance. The Contractholder does not become a subscriber to the workers' compensation system by purchasing this policy, and if the Contractholder is a non-subscriber, the Contractholder loses those benefits which would otherwise accrue under the workers' compensation laws. The Contractholder must comply with the workers' compensation law as it pertains to non-subscribers and the required notification that must be filed and posted.

This Contract takes effect on the Effective Date shown in the Schedule, which will be the date of issue, and terminates on the end of the Contract Period shown in the Schedule unless it is renewed. All periods indicated in the Contract begin and end at 12:01 A.M. standard time at the Contractholder's office.

This Contract Form is governed by the laws of the state of Texas.

The sections set forth on the following pages are a part of this Contract and take effect on the Effective Date.

IN WITNESS WHEREOF Companion Life Insurance Company has caused this Contract to be executed by its President and Secretary at Columbia, South Carolina.

*M. Edward Sellers*

President

Policy Providing Excess Loss Insurance
Nonparticipating

COMPANION LIFE INSURANCE
51 CLEMSON ROAD, SUITE C
Columbia, SC 29223

**COMPANION LIFE INSURANCE COMPANY**
**SCHEDULE OF EXCESS LOSS INSURANCE**

1.  Contract Number: _____ San Benito Consolidated ISD _____

2.  Contractholder: _____ CLI-3044-100100 _____

3.  Address: ___ 240 North Crockett _____

    City: ___ San Benito _____ State: __ TX ___ Zip Code: 78586 ___

4.  Subsidiary or affiliated companies (companies under common control through stock ownership, contract, or otherwise) to be included (list legal name and addresses):
    _____ N/A _____
    _____

5.  Name and address of Designated Third Party Administrator
    MBA of Wyoming, Inc. 3625 S. West Temple, Salt Lake City, UT 84115 _____

6.  Effective Date: _____ October 1, 2000 _____

7.  **GENERAL SCHEDULE OPTIONS:**

    (a)  Contract Period  10/01/00 _____ to ____ 10/01/00 _____

    (b)  Disabled Persons      [ X ] are     [  ] are not covered.
         Retired Employees     [ X ] are     [  ] are not covered.

    (c)  Aggregate Benefit      [ X ] Yes      [  ] No

         Aggregate  __ 07/01/00 __ through _ 08/31/01 __ , and
         Paid from __ 10/01/00 __ through __ 08/31/01 _____ .
         Claims Incurred prior to the Contract Effective Date are limited to $ __ N/A ____ .

         Aggregate eligible expenses include:
         [ X ] Medical          [ X ] Prescription Card Service
         [ X ] Dental Care       [  ] Weekly (Disability) Income
         [  ] Vision Care        [  ] Other

|  | Med /Dental /Drug |
|---|---|
| Aggregate Monthly Factor per single Employee: | $ |
| Family: | $ |
| Composite: | $ 295.65/11.54/39.06 |
| Aggregate Payable Percentage (excess of Deductible): | 100 % |
| Maximum Eligible Claim Expense Per Covered Person: | $ 75,000 |
| Minimum Aggregate Deductible: | $ 4,253,870 |
| Maximum Aggregate Benefit (excess of Deductible): | $ 1,000,000 |

7.   **GENERAL SCHEDULE OPTIONS: (Continued)**

(d)   Monthly Aggregate Accommodation                    [  ] Yes     [ X ] No

(e)   Terminal Liability                                             [  ] Yes     [ X ] No

(f)   Specific Benefit                                               [ X ] Yes     [  ] No
      Specific Contract Basis: Employee Benefit Plan expenses must be
               Incurred from ___07/01/00___ through ___08/31/01___ .
               Paid from ___10/01/00___ through ___8/31/01___ .
      Claims Incurred prior to the Contract Effective Date are
      limited to:                                                  $   N/A
      Specific Eligible Expense: Medical Only
      Specific Deductible (per person):                            $  75,000  *
   *  **Major human organ transplants subject to plan max. of $150K per individual.
      Lung cancer limited to $50,000 LTM if smoking for 5 years or more at time
      of diagnosis**

      Specific Payable Percentage (excess of Deductible):              100          %

      Maximum Specific Benefit (per person in excess of
                       Specific Deductible):                        $ 925,000

8.   **PREMIUMS:**

(a)   Aggregate Premium
      Premium Per Month Per Unit:                                  $   1.70
      Minimum Annual Aggregate Premium                             $   N/A
      Monthly Aggregate Accommodation
      Premium Per Month Per Unit:                                  $   N/A
               Annual Premium in Advance:                          $   N/A
      Terminal Liability
               Premium Per Month Per Unit:                         $   N/A
               Annual Premium in Advance:                          $   N/A

(b)   Specific Premium
      Premium Per Month Per Single Employee:                       $   18.45
                             Family:                               $   44.06
                          Composite:                               $
      Minimum Monthly Specific Premium:                            $   N/A

9.   **SPECIAL RISK LIMITATIONS:**

Contract will be based upon the current employee benefits as defined in the Employee Benefit
Plan by reference or by attachment, except as noted below:

Specific:    ___N/A___

Aggregate:   ___N/A___

## I.    DEFINITIONS

As used in this Contract, the following definitions shall be applicable:

**Agent,** when referring to the Contractholder, means the Contractholder's representative, including but not limited to its Designated Agent, Broker, or Third Party Administrator.

**Aggregate Benefit** means the amount that the Company agrees to pay the Contractholder after the end of the Contract Period for eligible claims Paid by the Contractholder as set forth in the Schedule and pursuant to the terms, conditions and limitations of the Contract.

**Aggregate Contract Basis** identifies the dates during which Employee Benefit Plan expenses must be incurred and must be paid to be considered eligible for reimbursement as Aggregate Benefits.

**Aggregate Deductible Per Month** means the Aggregate Monthly Factor shown in the Schedule multiplied by the Number of Covered Units.

**Aggregate Deductible** means the sum of each Aggregate Deductible Per Month for each month during the Contract Period or fraction thereof.

**Minimum Aggregate Deductible** means the lowest possible Aggregate Deductible applicable to the Contract Period or fraction thereof.  This amount is set forth in the Schedule.

**Continuation Beneficiary** is a Covered Unit which elects to extend its group health coverage under the Employee Benefit Plan entitled under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA).

**Contract** means the entire agreement between the Contractholder and the Company, specifically including the Contract Application, the Contract Form, the Contract Addenda (if any), and a copy of the Contractholder's Employee Benefit Plan.

**Contract Month** means a period measured from the Effective Date of this Contract, while this Contract is in force.  Each new Contract Month will begin on a day which corresponds to the Effective Date.  If there is no such day in any applicable month, then the last day of the month will be used.

**Contract Period** is stated in the Schedule.

**Contractholder** is named in the Schedule.

**Covered Person** refers to each person, individually, who is a Covered Unit, or, in the case of a dependent, a member of a Covered Unit.  In no event will coverage for a dependent become effective before the Effective Date of Coverage of the plan participant under the EmployeeBenefit Plan.

**Covered Unit**, for purposes of calculation of the premiums and the Aggregate Deductible Per Month, means a plan participant, a plan participant with dependents, or such other defined unit as agreed upon between the Company and the Contractholder, provided such plan participant, dependents or such other defined unit is covered under the Employee Benefit Plan.

I.   **DEFINITIONS (Continued)**

**Dependent** means a person who is defined as a dependent under the Employee Benefit Plan.

**Disabled Person** is a plan participant not actively at work or, in the case of a dependent or Continuation Beneficiary, is by disability unable to perform his or her normal functions of a person of like sex and age on the Effective Date of this Contract or the date such person becomes eligible for coverage under the Employee Benefit Plan.

**Eligible Claims Payments** means expenses of the Employee Benefit Plan qualifying for coverage under the terms and conditions of this Contract.

**Employee** means a person who is defined as an employee under the Employee Benefit Plan.

**Employee Benefit Plan** means the master plan document of the Contractholder to provide medical expense benefits to the Contractholder's covered plan participants and dependents of such plan participants in effect on the Effective Date of this Contract, a copy of which is attached to and made a part of this Contract.

**Incurred** refers to the date on which a covered medical service was rendered, the date disability benefit payments become due, or a covered medical purchase was made for a Covered Person under the Employee Benefit Plan.

**Maximum Aggregate Benefit** means the amount set forth in the Schedule as the maximum total Aggregate Benefit payable under the terms, conditions and limitations of this Contract during the Contract Period.

**Maximum Eligible Claim Expense Per Person**, as it relates to aggregate coverage, means the maximum dollar value of claims Paid on any one Covered Person that can apply toward satisfaction of an Aggregate Deductible, or that can apply toward the calculation of the Aggregate Benefit for a Contract Period.

**Maximum Specific Benefit** means the amount set forth in the Schedule that is the maximum total Specific Benefit payable under the terms, conditions and limitations of this Contract during the period an individual is a Covered Person under the Employee Benefit Plan, regardless of the number of years the Covered Person is eligible under the Employee Benefit Plan and regardless of whether expenses for this Covered Person were Incurred and/or Paid during this Contract Period. In the context of the definition of Maximum Specific Benefit, references to "Employee Benefit Plan" include all predecessors and successors of the particular plan in effect on the Contract's Effective Date.

**Number of Covered Units** means the total number of Covered Units existing in any Contract Month.

**Paid** means that funds are actually disbursed by the Contractholder or his Agent. Payment of a claim is the unconditional and direct payment of a claim to a Covered Person or their health care providers. Payment will be deemed made on the date that both (1) the payor directly tenders payment by mailing (or otherwise delivering) a draft or check, and (2) the account upon which the payment is drawn contains, and continues to contain, sufficient funds to permit the check or draft to be honored.

## I.   DEFINITIONS (Continued)

Should the account upon which payment is drawn not contain sufficient funds to cover all outstanding checks and drafts on the account, then the Company may consider, in its sole discretion, any particular checks or drafts as not having been paid, but only to the total amount representing the difference between the funds in the account and the total of outstanding checks and drafts.

**Payable Percentage** means the percentage payable as shown in the Schedule.  The calculation of Specific Benefits may be subject to a different Payable Percentage than the calculation of Aggregate Benefits.

**Plan Participant** means an employee, a dependent or any other person who is eligible and who is covered under the Employee Benefit Plan.  No plan participant may be covered by this contract prior to the date his or her coverage is effective under the Employee Benefit Plan or after the date his or her coverage under the Employee Benefit Plan Ends.

**Proof of Loss** is the form authorized by the Company to be used for the submission of claims as well as the supporting documentation reasonably necessary for the Company's independent evaluation of the legitimacy and extent of the claim. Claims for expenses not specifically identified in previously submitted Proofs of Loss must be accompanied by separate Proofs of Loss.

**Schedule** means the Schedule of Excess Loss Insurance.

**Specific Benefit** means the amount the Company will pay to the Contractholder for eligible claims Paid by the Contractholder over and above the Contractholder's Specific Deductible Per Person, and pursuant to the terms, conditions and limitations of the Contract.

**Specific Contract Basis** identifies the dates during which Employee Benefit Plan expenses must be Incurred and must be Paid to be considered eligible for reimbursement as Specific Benefits.

**Specific Deductible** means the per Covered Person deductible as shown in the Schedule.]

## II.   BENEFITS

The Company will pay, subject to the terms, conditions and limitations of the Contract, the following benefits, if shown in the Schedule, to the Contractholder within a reasonable time upon receipt of a fully executed Proof of Loss:

### 1.   Aggregate

The Aggregate Benefit for the Contract Period, or fraction thereof, is the total of the Eligible Claim Payments, on an Incurred and/or Paid basis as shown in the Aggregate Contract Basis of the Schedule:

    a.   less the Aggregate Deductible or Minimum Aggregate Deductible, whichever is greater; and
    b.   less the amount of the claims Paid by the Contractholder in excess of the Maximum Eligible Claim Expense Per Person as shown in the Schedule; and
    c.   less amounts recovered from other sources;
    d.   multiplied by the Aggregate Payable Percentage.

II.     **BENEFITS (Continued)**

Aggregate Benefits are not payable until after the end of the Paid basis shown in the Aggregate Contract Basis of the Schedule. If this Contract should terminate prior to the end of the Contract Period, the Company shall not be liable for Aggregate Benefits for expenses Incurred or Paid by the Contractholder after the termination date.

In no event will the Aggregate Benefit exceed the Maximum Aggregate Benefit shown in the Schedule.

2.     **Specific**

The Specific Benefit with regard to each Covered Person, is the total of the Eligible Claim Payments, on a Incurred and/or Paid basis as shown in the Specific Contract Basis of the Schedule;

a.   less the Specific Deductible; and
b.   less amounts recovered from other sources;
c.   multiplied by the Specific Payable Percentage.

The Contractholder shall not be entitled to any Specific Benefit unless and until the Contractholder has actually Paid the full amount of the Specific Deductible as set forth in the Schedule for the Covered Person(s) for which the Specific Benefit is sought.  The Contractholder shall only be entitled to a Specific Benefit up to the amount actually Paid by Contractholder over and above the Specific Deductible.

If this Contract should terminate prior to the end of the Contract Period, the Company shall not be liable for Specific Benefits for expenses Incurred or Paid by the Contractholder after the termination date.

In no event will the Specific Benefit with regard to any Covered Person exceed the Maximum Specific Benefit shown in the Schedule.

III.    **LIMITATIONS**

1.   This Contract will not pay the Contractholder for any loss or expense caused by or resulting from any of the following:

   a.   Expenses incurred while the Employee Benefit Plan is not in force with respect to the Covered Person.

   b.   Expenses resulting from weekly (disability) income, dental, vision or any prescription card service, unless shown in the Schedule.

   c.   Liability assumed by the Contractholder under any contract or service agreement other than the Employee Benefit Plan.

   d.   Expenses as the result of extra-contractual damages; compensatory damages; or punitive damages.

### III.    LIMITATIONS (Continued)

e.    Expenses resulting from services which are billed in excess of the general level of charges being made by other providers of services in the locality where the service is rendered.

f.    Expenses for benefits for accidental bodily injury or sickness arising out of or in the course of any occupation for wage or profit, or for which the Covered Person would be entitled to benefits under any Worker's Compensation, U. S. Longshoremen and Harbor Worker's or other occupational disease legislation or policy, whether or not such policy is actually in force.

g.    Expenses which (1) are not accepted as standard medical treatment for the illness, disease or injury being treated by physicians practicing the suitable medical specialty; (2) are the subject of scientific or medical research or study to determine the item's effectiveness and safety; (3) have not been granted, at the time services were rendered, any required approval by a federal or state governmental agency, including without limitation, the Federal Department of Health and Human Services, Food and Drug Administration, or any comparable state governmental agency, and the Federal Health Care Finance Administration as approved for reimbursement under Medicare Title XVIII; or (4) are performed subject to the Covered Person's informed consent under a treatment protocol that explains the treatment or procedure as being conducted under a human subject study or experiment.

h.    Cost of the administration of claim payments or expense of litigation with individual claimants.

i.    Expenses for benefits to any Covered Person with coverage under any other plan, including Medicare, which, when combined with the benefits payable by such other plan, would cause the total to exceed 100% of the Covered Person's actual expenses.

j.    Payments under the Employee Benefit Plan arising out of or caused by or contributed to or in consequence of war, hostilities (whether war be declared or not), invasion or civil war.

2.    If the Schedule shows disabled persons are not covered, no benefits will be paid under the Contract for expenses Incurred or Paid under the Employee Benefit Plan for a Disabled Person until:

a.    if a plan participant, he or she returns to active, full-time employment for at least one (1) full working day; or

b.    if a dependent or Continuation Beneficiary, he or she is able to perform the normal functions of a person of like sex and age.

MBA 00068

III.   **LIMITATIONS (Continued)**

3.   Newborn children of plan participants who have previously enrolled and continue to cover their eligible dependents under the Employee Benefit Plan will be eligible under the Contract on the date of the child's birth. Employees who have not previously enrolled for dependent coverage will be eligible for newborn child coverage as defined within the Employee Benefit Plan.

4.   Retired plan participants and their dependents, who are eligible under the Employee Benefit Plan, will be eligible for coverage under the Contract only if so indicated in the Schedule.

IV.   **CLAIMS PROVISIONS**

1.   **Payment of Claim:** All benefits as they become payable under this Contract will be paid to the Contractholder. All expenses as they become payable under the Employee Benefit Plan shall be Paid by the Contractholder. The Company shall pay claim within a reasonable time after receiving fully executed Proofs of Loss and the documentation reasonably necessary to evaluate the eligibility and extent of the claim.

2.   **Warranty:** Upon presentation of Proof of Loss to the Company for Aggregate[ or Specific] Benefits, the Contractholder warrants that all monies necessary to pay for services and supplies have been paid to the respective providers of medical services or supplies to which the claim for reimbursement relates.

3.   **Notice of Claim:** The Contractholder shall give written notice of claims to the Company on the Company's customary notice (Proof of Loss form), within thirty (30) days of the date the Contractholder becomes aware of the existence of facts which would reasonably suggest the possibility that benefits will be incurred which are covered by this Contract and which are equal to or exceed fifty percent (50%) of the Specific Deductible.

In addition, the Contractholder shall notify the Company immediately of the expenses of any Covered Person which meet any of the following criteria:

a.   continuous hospitalization for more than one month, or
b.   a claim for any one of the following disabilities: mental disorder requiring hospitalization, brain injury, spinal injury resulting in real or suspected paralysis of the limbs, serious burns involving ten percent (10%) or more of the body with third degree burns or thirty percent (30%) or more of the body with second degree burns, multiple or serious fractures, crushing or massive internal injuries, premature births, Acquired Immune Deficiency Syndrome (AIDS).

The Contractholder shall submit on a timely basis proofs, reports, and supporting documents including, but not limited to, a monthly summary of all Eligible Claims Payments processed by the Contractholder.

## V.  CONTRACT TERMINATION

The Contract and all benefits hereunder will terminate upon the earliest of the following dates:

1.  The termination date specified in writing by the Contractholder provided that the Company is notified not less than 31 days in advance of the termination date.

2.  The end of any period for which premiums were paid and subsequent premiums are not paid.

3.  The end of the Contract Period.

4.  The date of termination of the Employee Benefit Plan.

5.  The date of cancellation of the administrative agreement between the Contractholder and the Designated Third Party Administrator, unless the Company has, prior to such cancellation, consented in writing to the Contractholder's designation of a successor Third Party Administrator.

6.  This Contract will automatically terminate if the Contractholder does not pay claims or make available funds to pay claims as required by the Contract.

## VI.  MISCELLANEOUS PROVISIONS

1.  **Liability:**  The Company will have neither the right nor the obligation under this Contract to directly pay any Covered Person [or provider of professional or medical services] for any benefit which the Contractholder has agreed to provide under the terms of the Employee Benefit Plan.  The Company's sole liability hereunder is to the Contractholder, subject to the terms, conditions and limitations of this Contract.  Nothing in this Contract shall be construed to permit a Covered Person to have a direct right of action against the Company.

2.  **Payment of Premiums:**  Each Premium for this Contract is payable on or before its due date as set forth in the Schedule to the Company or to this authorized representative. Payment of a premium will not maintain this Contract in force beyond the period for which such premium is paid, except as otherwise stated in the Grace Period.

    If the Effective Date of this Contract is other than the first day of a calendar month, premiums payable under this Contract are due and payable on the first of each calendar month.

3.  **Grace Period:**  A Grace Period of thirty (30) days will be allowed for the payment of each premium after the first premium.  Should a premium otherwise due not be paid during the Grace Period, this Contract will terminate without further notice retroactive to the date for which premiums were last paid.  The liability of the Company will be limited to claims Paid by the Contractholder prior to the date of termination.  There will be no refund of any premium shown in the Schedule.

MBA 00070

**VI.    MISCELLANEOUS PROVISIONS   (Continued)**

4.  **Entire Contract:**  This Contract Form as issued to the Contractholder, together with the Contractholder's Application, Contract Addenda (if any), and a copy of the Contractholder's Employee Benefit Plan, constitute the entire contract.  The Company has relied upon the underwriting information provided by the Contractholder or the Contractholder's Agent, in the issuance of this Contract.  Should subsequent information become known which, if known prior to issuance of this Contract, would affect the rates, deductibles, terms or conditions for coverage hereunder, the Company will have the right to revise the rates, deductibles, terms or conditions as of the Effective Date of issuance, by providing written notice to the Contractholder.

5.  **Concealment, Fraud:**  This entire Contract will be void if, whether before or after a claim or loss, the Contractholder or its Agent has concealed or misrepresented any material fact or circumstance concerning this Contract or the subject thereof, including any claim thereunder or in any case of fraud by the Contractholder or its Agent relating thereto.

6.  **Clerical Error:**   Clerical error, whether by the Contractholder or by the Company, in keeping any records pertaining to the coverage, will not invalidate coverage otherwise validly in force nor continue coverage otherwise validly terminated.

7.  **Audits:**   The Company will have the right: (1) to inspect and audit all records and procedures of the Contractholder and Designated Third Party Administrator; and (2) to require, upon request, proof of records satisfactory to the Company that payment has been made to the Covered Person or the provider of such services or benefits which are the basis for any claim by the Contractholder hereunder.

8.  **Notice of Appeal:**  Any objection, notice of legal action, or complaint received on a claim process by the Contractholder or the Third Party Administrator, and on which it reasonably appears a benefit will be payable to the Contractholder under this Contract shall be brought to the immediate attention of the claims department of the Company.

9.  **Changes:**  Only the President or Executive Officer of the Company have the authority to alter this Contract, or to waive any of the Company's rights and then only in writing.  No such alteration of this Contract shall be valid unless endorsed on or attached to this Contract.  No Agent, Broker, or Third Party Administrator has the authority to alter this Contract or to waive any of its provisions.

10. **Notice:**  For the purpose of any notice required from the Company under the provisions of this Contract, notice to the Contractholder's Designated Third Party Administrator shall be considered notice to the Contractholder.

**VI.    MISCELLANEOUS PROVISIONS (Continued)**

11. **Amendments to the Employee Benefit Plan:** The Employee Benefit Plan shall not be changed while this Contract is in force without the prior written consent of the Company. Notice of any amendment to the Employee Benefit Plan must be given to the Company or its authorized representative at least thirty (30) days prior to the Effective Date of the amendment. The Company will have the sole option to accept the amendment to the Employee Benefit Plan, and if accepted, the Company reserves the right to revise the rates, deductibles, terms or conditions of the Contract as of the Effective Date of the amendment. If such amendment is not agreed to in writing, the Company will be liable to pay benefits as if the Employee Benefit Plan was not changed.

12. **Responsibilities of the Contractholder's Designated Third Party Administrator:** Without waiving any of its rights under this Contract, and without making the Designated Third Party Administrator a party to this Contract, the Company agrees to recognize the Designated Third Party Administrator as respects the normal administration of the Contractholder's Plan subject to:

   a.   The Third Party Administrator being responsible on behalf of the Contractholder for auditing, calculating and processing all claims eligible under the Employee Benefit Plan within a reasonable period of time, preparing periodic reports as required by the Company and maintaining and making available to the Company at all times such information as the Company may reasonably require for proof of payment of the claims(s) by the Contractholder;

   b.   The Third Party Administrator performing such other duties as may be reasonably required by the Company, including but not limited to, maintaining an accurate record of eligible Covered Persons of the Contractholder;

   c.   The Company will not be responsible for any compensation due the Designated Third Party Administrator for functions performed in relation to this Contract; and

   d.   This Contract will not be deemed to make the Company a party to any agreement between the Contractholder and the Designated Third Party Administrator.

13. **Hold Harmless:**

   a.   The Contractholder agrees to indemnify and hold the Company harmless for any legal expenses incurred, reasonable settlements made, or judgment(s) awarded, arising out of any dispute involving a plan participant or former plan participant of the Contractholder's Employee Benefit Plan provided such legal expenses, settlements, or judgments were not incurred as a result of the sole negligence or intentional wrongful acts of the Company.

   The Company, following any notification of its being, or likely to be, named as a defendant on any action concerning the aforementioned dispute will, within a reasonable time, in writing, notify the Contractholder of the dispute. The Company will cooperate with the Contractholder in matters pertaining to the dispute, however, such cooperation with the Contractholder will not waive the right of the Company to solely defend or settle any action in a manner it deems prudent.

**VI.    MISCELLANEOUS PROVISIONS (Continued)**

      b.   The Contractholder shall be responsible for any State premium taxes incurred with respect to funds paid to or by the Contractholder under the Employee Benefit Plan. Taxes incurred with respect to premiums paid for the Contract will be the responsibility of the Company.

14.  **Offset:**  The Company will be entitled to offset claim reimbursements to the Contractholder against premiums due and unpaid by the Contractholder.

15.  **Assignments:**  The Contractholder shall not assign any of its rights under this Contract without the prior written consent of the Company, and any assignment without prior written consent shall be void.

16.  **Subrogation:**  The Contractholder shall prosecute any and all valid claims that the Contractholder may have against third parties arising out of any occurrence resulting in a loss payment by the Contractholder and to account for any amounts recovered. Should the Contractholder fail to prosecute any valid claims against third parties and the Company thereupon becomes liable to make payments to the Contractholder under the terms and conditions of this Contract, then the Company shall assume all the Contractholder's rights to prosecute any valid claims against third parties, and the Contractholder will be responsible for any reasonable legal expenses incurred in the course of the prosecution.

17.  **Recoveries:**  The Company shall be entitled to recover first up to its full share of reimbursed claims before the Contractholder shares in any amount so recovered whether by way of subrogation or otherwise.

18.  **Arbitration:**  Any controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by Arbitration in accordance with the rules of the American Arbitration Association, with the express stipulation that the arbitrator(s) shall strictly abide by the terms of this Contract and shall strictly apply rules of law applicable thereto. All matters shall be decided by a panel of three (3) arbitrators. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. This provision shall survive the termination or expiration of this Contract. The parties hereto may alter any of the terms of this provision only by express written agreement, although such alteration may be before or after any rights or obligations arise under this provision.

19.  **Insolvency:**  The insolvency, bankruptcy, financial impairment, receivership, voluntary plan of arrangement with creditors, or dissolution of the Contractholder or the Contractholder's Designated Third Party Administrator shall not impose upon the Company any liability other than the liability defined in this Contract. In particular, the insolvency of the Contractholder shall not make the Company liable to the creditors of the Contractholder, including Covered Persons.

20.  **Severability Clause:**  Any clause deemed void, voidable, invalid, or otherwise unenforceable, whether or not such a provision is contrary to public policy, shall not render any of the remaining provisions of the Contract invalid.

21.  **Renewal:**  Renewal is not automatic but is available if permitted by the Company. Renewal may be subject to new premium rates, new underwriting terms, and new Contract terms.

MBA 00073

**VI.**    **MISCELLANEOUS PROVISIONS (Continued)**

22. **Group Specifications - Changes:**   The Company reserves the right to revise rates, deductibles, terms or conditions of the Contract on any of the following dates:

    1.    When the Contractholder adds or deletes a subsidiary or affiliate;

    2.    When there is a change in the geographical area in which the Contractholder is located;

    3.    When there is a change in the nature of business in which the Contractholder is engaged;

    4.    When there is an increase or decrease in the number of Covered Units which exceeds 10% in any one month or 20% over any period of three consecutive months.

MBA 00074

DEC-27-2000  11:54        CORP OFFICES                    801 266 2581    P.02/02

# APPLICATION TO
# COMPANION LIFE INSURANCE COMPANY
# COLUMBIA, SC 29223
# FOR
# AGGREGATE AND SPECIFIC EXCESS LOSS INSURANCE

Application is hereby made to the Companion Life Insurance Company ("Company") for Excess Loss Insurance. This Application must be accepted and approved by the Company or its authorized representative prior to any Contract being in existence.

1.   Full Legal Name of Applicant:   San Benito Consolidated ISD

2.   Address:   240 North Crockett

     City:   San Benito                              State:   TX          Zip Code:   78586

3.   If employee benefit plans of subsidiary or affiliated companies (companies under common control through stock ownership, contract, or otherwise) are to be included, list legal name and addresses of such companies.

4.   Enter the full name of your Employee Benefit Plan(s) - (A copy of such Employee Benefit Plan(s) must be attached.

5.   Name and address of Designated Third Party Administrator:

     MBA of Wyoming, Inc. , 3625 S. West Temple, Salt Lake City, Utah  84115

6.   Effective Date:                              October 1, 2000

7.   Estimated Initial Enrollment (will be used as the Number of Covered Units during the first Contract Month):

     1,020 Singles and  294  Families (or)  _____  Composite

8.   **GENERAL SCHEDULE OPTIONS:**

     (a)   Disabled Persons         [X] are   [ ] are not covered.
           Retired Employees        [X] are   [ ] are not covered.

     (b)   Aggregate Benefit        [X] Yes   [ ] No

     Aggregate Contract Basis: Employee Benefit Plan Expenses must be
          Incurred from  07/01/00   through  08/31/01        , and
          Paid from   10/01/00    through   08/31/01    .
          Claims Incurred prior to the Contract Effective Date are limited to  $ N/A

RECEIVED
DEC  1 2000

MBA 00075

CLXLAPP (TX)                              -1-                    Applicant Initials



TOTAL P.02

# APPLICATION TO
# COMPANION LIFE INSURANCE COMPANY
## COLUMBIA, SC  29223
## FOR
## AGGREGATE AND SPECIFIC EXCESS LOSS INSURANCE

Application is hereby made to the Companion Life Insurance Company ("Company") for Excess Loss Insurance. This Application must be accepted and approved by the Company or its authorized representative prior to any Contract being in existence.

1.  Full Legal Name of Applicant:  ___San Benito Consolidated ISD_____

2.  Address:  __240 North Crockett_____

City:  San Benito_____     State:  _TX___     Zip Code:  78586_____

3.  If employee benefit plans of subsidiary or affiliated companies (companies under common control through stock ownership, contract, or otherwise) are to be included, list legal name and addresses of such companies.

_____

4.  Enter the full name of your Employee Benefit Plan(s) - (A copy of such Employee Benefit Plan(s) must be attached.

_____

5.  Name and address of Designated Third Party Administrator:

_____

6.  Effective Date:_____October 1, 2000_____

7.  Estimated Initial Enrollment (will be used as the Number of Covered Units during the first Contract Month):

_1,020_ Singles and  _294__ Families (or)  _____ Composite

8.  **GENERAL SCHEDULE OPTIONS:**

(a)    Disabled Persons        [ X ] are    [   ] are not covered.
       Retired Employees       [ X ] are    [   ] are not covered.

(b)    Aggregate Benefit        [ X ] Yes  [   ] No

Aggregate Contract Basis: Employee Benefit Plan Expenses must be
Incurred from _07/01/00__ through _08/31/01___, and
Paid from __10/01/00____ through __08/31/01____.
Claims Incurred prior to the Contract Effective Date are limited to $_N/A____

RECEIVED

DEC  1 2000

MBA 00076

8.    **GENERAL SCHEDULE OPTIONS**: (Continued)

Aggregate eligible expenses include:
[ X ] Medical          [ X ] Prescription Card Service
[ X ] Dental Care      [   ] Weekly (Disability) Income
[   ] Vision Care      [   ] Other

|  | Med/Dental/Drug |
|---|---|
| Aggregate Monthly Factor per single Employee: | $ _____ |
| Family: | $ _____ |
| Composite: | $ 295.65/11.54/39.06 |
| Aggregate Payable Percentage (excess of Deductible): | 100 % |
| Maximum Eligible Claim Expense Per Covered Person: | $ 75,000 |
| Minimum Aggregate Deductible: | $ 4,253,870 |
| Maximum Aggregate Benefit (excess of Deductible): | $ 1,000,000 |

(c )    Monthly Aggregate Accommodation                    [   ] Yes    [ X ] No

(d)    Terminal Liability                                            [   ] Yes    [ X ] No

(e)    Specific Benefit                                            [ X ] Yes    [   ] No
Specific Contract Basis: Employee Benefit Plan expenses must be
        Incurred from __07/01/00__ through _8/31/01_____.
        Paid from __10/01/00_____ through __8/31/01__.
Claims Incurred prior to the Contract Effective Date are
limited to:                                                              $___N/A_____
Specific Eligible Expense:  Medical  Only
Specific Deductible (per person):                             $ 75,000  *
    * **Major human organ transplants subject to plan max. of $150K per individual.**
    **Lung cancer limited to $50,000 LTM if smoking for 5 years or more at time of diagnosis.**

Specific Payable Percentage (excess of Deductible):          100  %
Maximum Specific Benefit (per person in excess of
        Specific Deductible):                                    $ 925,000

9.    **PREMIUMS:**

(a)    Aggregate Premium
        Premium Per Month Per Unit:                            $  1.70
        Minimum Annual Aggregate Premium                      $   N/A

        Monthly Aggregate Accommodation
        Premium Per Month Per Unit:                            $   N/A
        Annual Premium in Advance:                             $   N/A

        Terminal Liability
        Premium Per Month Per Unit:                            $   N/A
        Annual Premium in Advance:                             $   N/A

(b)    Specific Premium
        Premium Per Month Per Single Employee:                 $  18.45
        Family:                                                $  44.06
        Composite:                                             $
        Minimum Monthly Specific Premium:                      $   N/A

CLXLAPP (TX)                          -2-                   Applicant Initials

10. **SPECIAL RISK LIMITATIONS**:

Contract will be based upon the current employee benefits as defined in the Employee Benefit Plan by reference or by attachment, except as noted below:

Specific:  N/A

Aggregate:  N/A

11. **IT IS UNDERSTOOD AND AGREED, AS CONDITIONS PRECEDENT TO THE APPROVAL OF THIS APPLICATION, THAT:**

(a)    All documentation requested by the Company must be submitted prior to any approval of this Application and must be received by the Company within ninety (90) days of the requested Effective Date.

(b)    If the Schedule shows disabled persons are not covered, no benefits will be paid under the Contract for expenses Incurred or Paid under the Employee Benefit Plan for a disabled person until:

(1)    if an employee, he or she returns to active, full-time employment for at least one (1) full working day; or

(2)    if a dependent or Continuation Beneficiary, he or she is able to perform the normal functions of a person of like sex and age.

(c )    Issuance of the Contract is in reliance upon the information provided by the Applicant or its Agent. Should subsequent information become known which, if known prior to issuance of the Contract, would have affected the rates, deductibles, terms or conditions for coverage, the Company will have the right to revise the rates, deductibles, terms or conditions as of the Effective Date of issuance, by providing written notice to the Insured.

(d)    The Contract, if issued, may be void, if whether before or after a claim or loss, any material fact or circumstance was concealed or misrepresented on behalf of the Applicant, or if the Applicant or its Agent, committed fraud.

(e)    Receipt of a premium and its deposit in connection with the Application shall not constitute an acceptance of liability.  In the event that Companion Life Insurance Company disapproves this Application, its sole obligation shall be to refund such sum to the Applicant.

(f)    If a Contract is issued and later rescinded, the sum of all benefits paid will be deducted from the sum of all premiums paid.  If the result is positive, such amount will be paid by the Company to the Applicant.  If the result is negative, such amount will be paid by the Applicant to the Company.

(g)    The initial premium will be paid on or before the Effective Date, and subsequent premiums are due no later than the first day of each calendar month during the Contract Period.

(h)    This Contract contains a binding arbitration provision. In making this Application, the Contractholder both acknowledges and accepts such a provision, and agrees it will be the basis upon which any controversy or claim, arising out of or relating to the Contract, shall be settled.

MBA 00078

**11.  IT IS UNDERSTOOD AND AGREED, AS CONDITIONS PRECEDENT TO THE APPROVAL OF THIS APPLICATION, THAT: (Continued)**

(I)     Applicant acknowledges that the Contract which is the subject of this Application is a reimbursement Contract.  Applicant must first pay claims before submitting them for reimbursement.

(j)     Oral Statements not expressly incorporated herein are not part of this Contract.  Only the President or Executive Officer of the Company may make changes to the Contract Form or Addenda on behalf of the Company.  All changes to this Contract must be in writing and attached to this Contract.

(k)     NEITHER THIS APPLICATION NOR THE TERMS OF THIS APPLICATION MAY BE ALTERED.

In making this Application, the Applicant represents that, to the best of its knowledge and belief, such information accurately reflects the true facts and that the undersigned has authority to bind the Applicant to the proposed Contract.  Accordingly, this Application will be a part of the Contract if accepted by the Company or its authorized representative.

Dated at_____ this **21ST** day of **NOVEMBER**, 20 **00** .

Applicant:_____- San Benito Consolidated ISD

Tax ID #_____

Witness:_____     By_____

Signature of Licensed                           (Officer/Partner)
Resident Agent

Title: **ASST.SUPT. FOR FINANCE & HUMAN RESOURCE**

Licensed Resident Agent:  _Michael M Swefator Jr_
(Type or Print)

Address:  _Box 1008_

City:  _San Benito_  State:  _TX_  Zip:  _78586_

Social Security or Tax ID #  _45006 1456_

**ACCEPTANCE**

Accepted on behalf of the Company, this **8th** day of **January** , 200**1**

By:  _____

Title:  _____President_____

Contract No.: CLI-3044-100100_____     Effective Date:_____October 1, 2000_____

MBA 00079

CLXLAPP (TX)                              -4-                         Applicant Initials



MERRILL BOSTROM ASSOCIATES

November 28, 2000


J. Allan Hall
J. Allan Hall & Associates
55 Monument Circle, Suite 1115
Indianapolis, IN 46204

RE:    San Benito Aggregate and Specific Stop Loss Insurance Application

Dear Allan:

Enclosed is the original signed Aggregate and Specific Excess Loss Insurance
application for San Benito Consolidated Independent School District.

Please retain for your files.


Sincerely,

Don W. Merrill
Executive Vice President


MBA 00080

# APPLICATION TO
## COMPANION LIFE INSURANCE COMPANY
## COLUMBIA, SC  29223
## FOR
## AGGREGATE AND SPECIFIC EXCESS LOSS INSURANCE

Application is hereby made to the Companion Life Insurance Company ("Company") for Excess Loss Insurance. This Application must be accepted and approved by the Company or its authorized representative prior to any Contract being in existence.

1.  Full Legal Name of Applicant:  ___San Benito Consolidated ISD_____

2.  Address:  __240 North Crockett_____

    City:  San Benito_____  State:  TX___   Zip Code:  78586____

3.  If employee benefit plans of subsidiary or affiliated companies (companies under common control through stock ownership, contract, or otherwise) are to be included, list legal name and addresses of such companies.

    _____

4.  Enter the full name of your Employee Benefit Plan(s) - (A copy of such Employee Benefit Plan(s) must be attached.

    _____

5.  Name and address of Designated Third Party Administrator:

    _____

6.  Effective Date:_____October 1, 2000_____

7.  Estimated Initial Enrollment (will be used as the Number of Covered Units during the first Contract Month):

    _____ Singles and _____ Families (or) _____ Composite

8.  **GENERAL SCHEDULE OPTIONS:**

    (a)  Disabled Persons       [ X ] are   [   ] are not covered.
         Retired Employees      [ X ] are   [   ] are not covered.

    (b)  Aggregate Benefit      [ X ] Yes   [   ] No

         Aggregate Contract Basis: Employee Benefit Plan Expenses must be
         Incurred from _07/01/00__ through _08/31/01_____, and
         Paid from __10/01/00____ through __08/31/01____.
         Claims Incurred prior to the Contract Effective Date are limited to  $_N/A___

                                                            MBA 00081

Applicant Initials 

8.    **GENERAL SCHEDULE OPTIONS**: (Continued)

Aggregate eligible expenses include:
[ X ] Medical           [ X ] Prescription Card Service
[ X ] Dental Care       [    ] Weekly (Disability) Income
[    ] Vision Care      [    ] Other

| | Med/Dental/Drug |
|---|---|
| Aggregate Monthly Factor per single Employee: | $_____ |
| Family: | $_____ |
| Composite: | $ 295.65/11.54/39.06 |
| Aggregate Payable Percentage (excess of Deductible): | 100 % |
| Maximum Eligible Claim Expense Per Covered Person: | $ 75,000 |
| Minimum Aggregate Deductible: | $ 4,253,870 |
| Maximum Aggregate Benefit (excess of Deductible): | $ 1,000,000 |

(c )    Monthly Aggregate Accommodation          [    ] Yes    [ X ] No

(d)     Terminal Liability                       [    ] Yes    [ X ] No

(e)     Specific Benefit                         [ X ] Yes    [    ] No
        Specific Contract Basis: Employee Benefit Plan expenses must be
            Incurred from   07/01/00   through  8/31/01   .
            Paid from   10/01/00   through   8/31/01   .
        Claims Incurred prior to the Contract Effective Date are
        limited to:                                     $   N/A
        Specific Eligible Expense:  Medical  Only
        Specific Deductible (per person):               $  75,000   *
        *  **Major human organ transplants subject to plan max. of $150K per individual.**
           **Lung cancer limited to $50,000 LTM if smoking for 5 years or more at time of diagnosis.**

        Specific Payable Percentage (excess of Deductible):        100   %
        Maximum Specific Benefit (per person in excess of
            Specific Deductible):                        $ 925,000

9.    **PREMIUMS:**

(a) .    Aggregate Premium
            Premium Per Month Per Unit:                  $   1.70
            Minimum Annual Aggregate Premium             $   N/A

         Monthly Aggregate Accommodation
            Premium Per Month Per Unit:                  $   N/A
            Annual Premium in Advance:                   $   N/A

         Terminal Liability
            Premium Per Month Per Unit:                  $   N/A
            Annual Premium in Advance:                   $   N/A

(b)      Specific Premium
            Premium Per Month Per Single Employee:       $  18.45
                                            Family:      $  44.06
                                         Composite:      $_____
            Minimum Monthly Specific Premium:            $   N/A

MBA 00082



10. **SPECIAL RISK LIMITATIONS:**

Contract will be based upon the current employee benefits as defined in the Employee Benefit Plan by reference or by attachment, except as noted below:

Specific:  N/A

Aggregate:  N/A

11. **IT IS UNDERSTOOD AND AGREED, AS CONDITIONS PRECEDENT TO THE APPROVAL OF THIS APPLICATION, THAT:**

(a)   All documentation requested by the Company must be submitted prior to any approval of this Application and must be received by the Company within ninety (90) days of the requested Effective Date.

(b)   If the Schedule shows disabled persons are not covered, no benefits will be paid under the Contract for expenses Incurred or Paid under the Employee Benefit Plan for a disabled person until:

(1)   if an employee, he or she returns to active, full-time employment for at least one (1) full working day; or

(2)   if a dependent or Continuation Beneficiary, he or she is able to perform the normal functions of a person of like sex and age.

(c )   Issuance of the Contract is in reliance upon the information provided by the Applicant or its Agent. Should subsequent information become known which, if known prior to issuance of the Contract, would have affected the rates, deductibles, terms or conditions for coverage, the Company will have the right to revise the rates, deductibles, terms or conditions as of the Effective Date of issuance, by providing written notice to the Insured.

(d)   The Contract, if issued, may be void, if whether before or after a claim or loss, any material fact or circumstance was concealed or misrepresented on behalf of the Applicant, or if the Applicant or its Agent, committed fraud.

(e)   Receipt of a premium and its deposit in connection with the Application shall not constitute an acceptance of liability.  In the event that Companion Life Insurance Company disapproves this Application, its sole obligation shall be to refund such sum to the Applicant.

(f)   If a Contract is issued and later rescinded, the sum of all benefits paid will be deducted from the sum of all premiums paid.  If the result is positive, such amount will be paid by the Company to the Applicant.  If the result is negative, such amount will be paid by the Applicant to the Company.

(g)   The initial premium will be paid on or before the Effective Date, and subsequent premiums are due no later than the first day of each calendar month during the Contract Period.

(h)   This Contract contains a binding arbitration provision. In making this Application, the Contractholder both acknowledges and accepts such a provision, and agrees it will be the basis upon which any controversy or claim, arising out of or relating to the Contract, shall be settled.

MBA 00083

**CLXLAPP (TX)**                                     -3-                          Applicant Initials 

11. **IT IS UNDERSTOOD AND AGREED, AS CONDITIONS PRECEDENT TO THE APPROVAL OF THIS APPLICATION, THAT: (Continued)**

(I) Applicant acknowledges that the Contract which is the subject of this Application is a reimbursement Contract. Applicant must first pay claims before submitting them for reimbursement.

(j) Oral Statements not expressly incorporated herein are not part of this Contract. Only the President or Executive Officer of the Company may make changes to the Contract Form or Addenda on behalf of the Company. All changes to this Contract must be in writing and attached to this Contract.

(k) NEITHER THIS APPLICATION NOR THE TERMS OF THIS APPLICATION MAY BE ALTERED.

In making this Application, the Applicant represents that, to the best of its knowledge and belief, such information accurately reflects the true facts and that the undersigned has authority to bind the Applicant to the proposed Contract. Accordingly, this Application will be a part of the Contract if accepted by the Company or its authorized representative.

Dated at_____ this **21st** day of **November**, 20**00**_____.

Applicant: ____**SAN BENITO CISD**_____

Tax ID #_____

Witness:_____    By_____
Signature of Licensed                           (Officer/Partner)
Resident Agent

Title: **ASST. SUPT. FOR FINANCE & HUMAN RESOUR**

Licensed Resident Agent: MICHAEL N SWETNAM JR
(Type or Print)

Address: Box 1008_____

City: San Benito  State: Tx  Zip: 78586

Social Security or Tax ID # 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

## ACCEPTANCE

Accepted on behalf of the Company, this _____ day of _____, 2000.

By: _____

Title: _____President_____

Contract No.:_____ Effective Date:_____

MBA 00084

11. **IT IS UNDERSTOOD AND AGREED, AS CONDITIONS PRECEDENT TO THE APPROVAL OF THIS APPLICATION, THAT: (Continued)**

(I)     Applicant acknowledges that the Contract which is the subject of this Application is a reimbursement Contract.  Applicant must first pay claims before submitting them for reimbursement.

(j)     Oral Statements not expressly incorporated herein are not part of this Contract.  Only the President or Executive Officer of the Company may make changes to the Contract Form or Addenda on behalf of the Company.  All changes to this Contract must be in writing and attached to this Contract.

(k)     NEITHER THIS APPLICATION NOR THE TERMS OF THIS APPLICATION MAY BE ALTERED.

In making this Application, the Applicant represents that, to the best of its knowledge and belief, such information accurately reflects the true facts and that the undersigned has authority to bind the Applicant to the proposed Contract.  Accordingly, this Application will be a part of the Contract if accepted by the Company or its authorized representative.

Dated at_____ this **21ST** day of **NOVEMBER** , 20 **00**_____ .

Applicant:_____ San Benito Consolidated ISD_____
                                 Tax ID #_____

Witness:_____     By_____
           Signature of Licensed                                    (Officer/Partner)
           Resident Agent

                                                         Title: **ASST. SUPT. FOR FINANCE & HUMAN RESOURCI**

Licensed Resident Agent: _Michael M Surefrior Jr_____
                                           (Type or Print)

Address: _Box 1008_____

City: _San Benito_ State: _TX_ Zip: _78586_

Social Security or Tax ID #_450 06 1456_

## ACCEPTANCE

Accepted on behalf of the Company, this _____ day of _____, 2000.

By:          _____

Title:  _____ President_____

Contract No.: _CLI-3044-100100_____     Effective Date: _____October 1, 2000_____

MBA 00085

**CLXLAPP (TX)**                                    -4-                          Applicant Initials_____



MERRILL BOSTROM ASSOCIATES

November 16, 2000

Lorenzo Sanchez
San Benito Consolidated Independent School District
240 North Crockett
San Benito, TX 78586

RE:     Original Stop Loss Application
        Companion Life Insurance Co.

Dear Lorenzo:

We received the final application yesterday. This application should be signed immediately after you have reviewed (Ref #11). Note that each page needs to be initialed also.

Please have Michael Swetnam sign as Resident Agent. I have called Michael about doing this. There are two pages with the number 4 on the bottom. Please sign both.

Our review shows that it was filled out according to the original proposal less the 10% commission discount requested. It is an eleven month contract with three months run in.

After signing and dating please return to our office. We in turn will overnight to J. Allan Hall and Associates, the acting underwriter for Companion Life.

Thank you for all of your assistance.

Sincerely,

Don W. Merrill
Executive Vice President

MBA 00086

The Solid Source
For Solid Solutions

# The Consolidated Companies

**Consolidated General Insurance Services, Inc.**
Consolidated Special Risk Managers, Inc.
Health Program Marketing, Inc.
Consolidated Reinsurance Corporation

NOV 15 2000

November 6, 2000

Don Merrill
MBA of salt Lake
P.O. Box 651109
Salt Lake City, UT. 84116

*Sent over night to Jerems 11/10/00*

RE: San Benito Consolidated ISD

Dear Don

We received notification that our previous offer was accepted by San Benito Consolidated ISD with an effective date of October 1,2000. In order for coverage to be bound, we require the following information be submitted within 90 days following the effective date:

- Original signed stop loss application. The enclosed application has been completed with the information provided to-date. Please review and complete in full all sections not completed;
- A signed and dated document is required within 90 days of the effective date. We use the current plan document in our renewal file, unless advised that a new plan document is forthcoming.
- Commissions/Fees are to be paid to whom (if more than one person, please break out)?

We have also enclosed for your convenience a claims kit and supply of monthly premium statement forms.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Douglas C Routh
Assistant Vice President

MBA 00087

NNOV 15 '00  10:49AM CONSOLIDATED CO. 415 8830675                    3112845050  P.3/3



## J. Allan Hall & Associates, Inc.

November 1, 2000

Doug Routh
The Consolidated Companies
2835 Townsgate Rd., Suite 200
Westlake Village, CA 91361

Re: San Benito Consolidated ISD
    Proposed Effective Date: October 1, 2000

Dear Doug,

We received notification that our previous offer was accepted by San Benito Consolidated ISD with an effective date of October 1, 2000. In order for coverage to be bound, we require the following information be submitted within 90 days following the effective date:

- Original signed stop loss application. The enclosed application has been completed with the information provided to-date. Please review and complete in full all sections not completed;
- A signed and dated plan document is required within 90 days of the effective date. We use the current plan document in our renewal file, unless advised that a new plan document is forthcoming.
- Commissions/Fees are to be paid to whom (if more than one person, please break out)?

We have also enclosed for your convenience a claims kit and a supply of monthly premium statement forms.

Please call if there are any questions. We are happy to be of service.

Sincerely,

Marianne Micell
Policy Issue Coordinator


Enclosures

*We received in the mail yesterday Nov 15 00 The original Stop Loss App. This will be forwarded to SBCISD for signature requesting immediate attention. Thanks*

MBA 00088

Circle Tower
55 Monument Circl
Suite 111
Indianapolis, IN 4620
Phone: 317-264-002

55 Monument Circle, Suite 1115
Indianapolis, IN 46204
Phone: 317/264-0020
Fax  317/264-8038

**J. Allan Hall &
Associates, Inc.**

# Fax                    # First Notice

| To: | Doug Routh | From: | Marianne Miceli |
|---|---|---|---|
| | The Consolidated Companies | | Policy Issue Coordinator |
| | | Pages: | 2 |
| Fax | SD | Date: | 11/15/00 |
| Re: | San Benito Consolidated ISD | CC: | |
| | Proposed Effective Date: 10/01/00 | | |

Doug,

We recently forwarded the attached letter with a request for additional information to be submitted in order for coverage to be bound.

To date, all of this information has not been received. We will be providing bi-weekly requests in order to assist you in providing the necessary information.

If you should have any questions or need assistance, please contact our office.

Marianne

*Faxed original 11/15*

MBA 00089

## MBA of Wyoming, Inc.

3625 So. West Temple, Suite 200
Salt Lake City, UT 84115-4409
P. O. Box 651109
Salt Lake City, UT 84165-1109
(801) 268-3334 FAX (801) 266-2581

## F A X   T R A N S M I T T A L

Date: _10-19-00_          Time: _____

To: _Doug Ronek_          Re: _SPEISD_

Company: _____   From: _Don Meville_

Fax#: _____     Number of Pages _____
                          (Including This Page)

=========================================================

Comments: _New sign application -0- cars._

_Please fax to Allan_

_Thanks_

MBA 00090

10/19/00  14:37  FAX 956 361 ^187        RISK MANAGEMENT

*RISK MANAGEMENT DEPARTMENT*        **SAN BENITO CISD**

240 North Crockett, San Benito, Texas 78586

# FAX

| | |
|---|---|
| Date: | **10/18/00** |
| Number of pages including cover sheet: | **7** |

**To:**

MBA        Don & Phyllis Merrill

Phone:        1-800-877-3727

Fax phone:    (801) 266-2581

CC:

**From:**

*SAN BENITO CISD*        *Janie Gonzalez*

*Insurance Coordinator*

Phone:        210-361-6186

Fax phone:    210-361-6187

**REMARKS:**    ☒ Urgent        For your review    ☐ Reply ASAP    ☐ Please comment

Don & Phyllis,

Please find signed & initialed corrected Stop Loss application. I will mail you the original as well. On another issue I am faxing a letter from Mr. Sanchez instructing you to furnish us with Mr. John Handy's requested information. If you have any questions, please give me a call.

Thanks

Janie



MERRILL BOSTROM ASSOCIATES

October 18, 2000

Lorenzo Sanchez, MBA, CPA
San Benito Consolidated Independent School District
240 North Crockett
San Benito, TX 78586
FAX (956) 361-6187

RE:    Application for Insurance

Dear Lorenzo:

Enclosed is the corrected Stop Loss Application which reduced the 10% commission
from the contract.  The attached summary sheet shows the corrected difference from
the signed copy we had originally signed while we were there.

Please sign this and return to me for the carrier to complete the renewal contract.

Thanks so much.

Sincerely,

Don W. Merrill
Executive Vice President

MBA 00092

OCT 16 '00  12:16PM CONSOLIDATED CO. 415 8650675                    P.1/4

**The Consolidated Companies**
2835 Townsgate Road Suite 200
Westlake Village, CA. 91361      –
Phone: 805-497-4777
Fax:     805-497-0077
E-Mail: drouth@consolidatedco.com

# facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** Don Merrill | | **Fax:** | |
| **From:** Doug Routh | | **Date:** 10/16/00 | |
| **Re:** San Benito School | | **Pages:** 4 | |
| **CC:** | | | |

☐ **Urgent** ☐ **For Review**     ☐ **Please Comment**     ☐ **Please Reply**     ☐ **Please Recycle**

**Notes**    Here's revised quote with 10% commission taken out. You can white out commission and forward to San Benito for signature.

Thanks,



MERRILL BOSTROM ASSOCIATES

October 18, 2000

Lorenzo Sanchez, MBA, CPA
San Benito Consolidated Independent School District
240 North Crockett
San Benito, TX 78586
FAX (956) 361-6187

RE:    Application for Insurance

Dear Lorenzo:

Enclosed is the corrected Stop Loss Application which reduced the 10% commission
from the contract.  The attached summary sheet shows the corrected difference from
the signed copy we had originally signed while we were there.

Please sign this and return to me for the carrier to complete the renewal contract.

Thanks so much.

Sincerely,

Don W. Merrill
Executive Vice President

MBA 00094

OCT-18-2000  15:49                    RP OFFICES                                801 266 2581   P.02/05

OCT 2 4 2000

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

*sent to Allan Hall + Christie*

10/16/00

THE CONSOLIDATED COMPANIES
2835 TOWNSGATE DRIVE, #200
WESTGATE VILL., CA.  91361-

Fax #: (805) 497-0077

RE: SAN BENITO CONS INDEP.SCHOOLS
Proposed Effective Date: 10/01/00.

Dear   ,

We are pleased to present you with the attached proposal(s) for Excess Loss
coverage provided by COMPANION LIFE.
We reserve the right to modify factors and/or premium rates quoted after our
review of the information requested on the following pages.

* THIS IS FOR 11 MONTH CONTRACT.
  MAJOR HUMAN ORGAN TRANSPLTS SUBJ. TO PLAN MAX. OF $150K PER INDIVIDUAL.
  LUNG CANCER LIMITED TO $50,000 LTM IF SMOKING FOR 5 YEARS OR MORE AT TIME
  OF DIAGNOSIS.

Our rates include - 0 - commission, unless noted otherwise, and the
quote is valid for 60 days from the date of this quote.

We thank you for providing us with the opportunity to serve you.
Please let us know of any questions or comments.
F THIS OFFER IS ACCEPTED BY THE ACCOUNT, PLEASE HAVE AN OFFICER SIGN THE
CCEPTANCE LINE BELOW, CIRCLE THE OPTION DESIRED ON PAGE 2 (EXCESS LOSS
ROPOSAL) AND INITIAL PAGE 2 AND PAGE 3 (CONTINGENCIES AND QUALIFICATIONS),
ND RETURN IT TO US WITH A DEPOSIT PREMIUM (ONE MONTH'S PREMIUM).

Sincerely,                                       ACCEPTED

TONY WIRKUS
Underwriter

MBA 00095

OCT-18-2000  15:49    CONSOLI   C   P OFFICES                    801 266 2581   P.03/05

**J. ALLAN HALL & ASSOCIATES, INC.**
**55 MONUMENT CIRCLE, SUITE 1115**
**INDIANAPOLIS, INDIANA 46204-5910**
**(317) 264-0020 (VOICE)**
**(317) 264-9038 (FAX)**

EXCESS LOSS PROPOSAL

GROUP NAME: SAN BENITO CONS INDEP.SCHOOLS                    INITIAL

ADMINISTRATOR: THE CONSOLIDATED COMPANIES

DATE PREPARED: 10/16/00              EFFECTIVE DATE: 10/01/00

Specific:
           Option1
Retention     $  75,000
Contract         15/11
/T Maximum   1,000,000

Rates:
    Single    $  18.45
    Family    $  44.06
  Composite   $  24.18

Annual Premium  349,499

Aggregate Factor(s):
    Medical   $ 295.65
    Dental    $  11.54
    Drug      $  39.06
                        346.25

AAP*         5,004,553
Contract        15/11
Employee Rate $   1.70

Annual Premium   24,572

Reinsurance provided by: COMPANION LIFE

Underwriting assumptions:
    This proposal is based on the following enrollment:
                    Medical   Single:  1,020   Family:   294   1314 TOTAL
                    Dental    Single:  1,020   Family:   294
        Prescription Drugs    Single:  1,020   Family:   294

MBA 00096

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

INITIAL

## QUALIFICATIONS AND CONTINGENCIES

Our proposal is contingent and subject to change upon receipt and review
of the following information:
   ACTIVELY AT WORK PROVISIONS HAVE BEEN WAIVED.

* COVERAGE EXCLUDES PROCEDURES CONSIDERED TO BE EXPERIMENTAL, INVESTIGATIONAL
  OR NOT CONSIDERED TO BE REASONABLE OR NECESSARY ACCORDING TO THE HEALTH
  CARE FINANCING ADMINISTRATION (HCFA).

* THE MINIMUM AGGREGATE ATTACHMENT POINT IS 85% OF THE AMOUNT SHOWN ON THE
  PREVIOUS PAGE.

* MENTAL & NERVOUS, ALCOHOLISM & DRUG ADDICTION TREATMENT ARE LIMITED TO THE
  LESSER OF THE PLAN BENEFITS OR 10,000. STATE OR FEDERAL STATUTES MAY
  SUPERCEDE THIS LIMITATION.

* IN ADDITION TO THE RATES SHOWN, YOU MUST ADD THE APPROPRIATE STATE SURPLUS
  LINES TAX IF THE COVERAGE IS WRITTEN BY A NON-ADMITTED CARRIER.

* QUOTE ASSUMES THAT LARGE CASE MANAGEMENT WILL BE USED. THE LCM FIRM MUST BE
  APPROVED BY ALL PARTIES.

* QUOTE ASSUMES THAT PREADMISSION CERTIFICATION WILL BE USED AND PENALTIES
  WILL BE IMPOSED FOR FAILURE TO USE.

* QUOTE ASSUMES THE USE OF CONCURRENT HOSPITAL REVIEW.

* QUOTE ASSUMES THE USE OF DISCHARGE PLANNING.

* QUOTE IS BASED ON THE FULL UTILIZATION OF A PPO WHICH HAS BEEN APPROVED BY
  ALL PARTIES.

Please submit the above information within 60 days from the effective date
of coverage, if sold. Please make the premium check payable to J. Allan Hall
& Associates, Inc. or the carrier.

      ***    THIS IS NOT A CONTRACT OR BINDER OF INSURANCE    ***

The persons presenting this proposal to the client are agents of the
client and not of the insurer, reinsurer, or J. Allan Hall & Assoc.
This proposal is non-occupational and the Excess Reinsurance Agreement
will be issued when all the required information has been submitted to
J. ALLAN HALL & ASSOCIATES.

                                              TOTAL P.23

MBA 00097

OCT 16 '00  12:16PM CONSOLI  ED CO. 415 8830675                    P.2/4

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
 (317) 264-0020 (VOICE)
 (317) 264-9038 (FAX)

10/16/00

THE CONSOLIDATED COMPANIES
2835 TOWNSGATE DRIVE, #200
WESTGATE VILL., CA.  91361-

Fax #: (805) 497-0077

RE: SAN BENITO CONS INDEP.SCHOOLS
Proposed Effective Date: 10/01/00.

Dear   ,

We are pleased to present you with the attached proposal(s) for Excess Loss
Coverage provided by COMPANION LIFE.
We reserve the right to modify factors and/or premium rates quoted after our
review of the information requested on the following pages.

* THIS IS FOR 11 MONTH CONTRACT.
  MAJOR HUMAN ORGAN TRANSPLTS SUBJ. TO PLAN MAX. OF $150K PER INDIVIDUAL.
  LUNG CANCER LIMITED TO $50,000 LTM IF SMOKING FOR 5 YEARS OR MORE AT TIME
  OF DIAGNOSIS.


Our rates include - 0 - commission, unless noted otherwise, and the
quote is valid for 60 days from the date of this quote.

We thank you for providing us with the opportunity to serve you.
Please let us know of any questions or comments.
IF THIS OFFER IS ACCEPTED BY THE ACCOUNT, PLEASE HAVE AN OFFICER SIGN THE
ACCEPTANCE LINE BELOW, CIRCLE THE OPTION DESIRED ON PAGE 2 (EXCESS LOSS
PROPOSAL) AND INITIAL PAGE 2 AND PAGE 3 (CONTINGENCIES AND QUALIFICATIONS),
AND RETURN IT TO US WITH A DEPOSIT PREMIUM (ONE MONTH'S PREMIUM).

Sincerely,                              ACCEPTED

TONY WIRKUS
Underwriter                             _____

MBA 00098

OCT 16 '00  12:16PM CONSOL? TED CO. 415 8830675                          P.3/4

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

EXCESS LOSS PROPOSAL

GROUP NAME: SAN BENITO CONS INDEP.SCHOOLS                    INITIAL_____

ADMINISTRATOR: THE CONSOLIDATED COMPANIES

DATE PREPARED: 10/16/00                    EFFECTIVE DATE: 10/01/00


Specific:
                Option1
Retention     $  75,000
Contract         15/11
L/T Maximum   1,000,000

Rates:
      Single   $ 18.45
      Family   $ 44.06
   Composite   $ 24.18

Annual Premium  349,499

Aggregate Factor(s):
      Medical  $ 295.65
      Dental   $  11.54
      Drug     $  39.06   346.25

MAAP*          5,004,553
Contract          15/11
Employee Rate  $   1.70

Annual Premium   24,572


Reinsurance provided by: COMPANION LIFE

Underwriting assumptions:
      This proposal is based on the following enrollment:
            Medical     Single:  1,020   Family:   294    1314 total
            Dental      Single:  1,020   Family:   294
      Prescription Drugs Single:  1,020   Family:   294

MBA 00099

OCT 16 '00  12:16PM CONSOL~~~TED CO. 415 8830675                    31720490030 P.2/4

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

INITIAL_____

QUALIFICATIONS AND CONTINGENCIES

Our proposal is contingent and subject to change upon receipt and review
of the following information:
ACTIVELY AT WORK PROVISIONS HAVE BEEN WAIVED.

* COVERAGE EXCLUDES PROCEDURES CONSIDERED TO BE EXPERIMENTAL, INVESTIGATIONAL
  OR NOT CONSIDERED TO BE REASONABLE OR NECESSARY ACCORDING TO THE HEALTH
  CARE FINANCING ADMINISTRATION (HCFA).

* THE MINIMUM AGGREGATE ATTACHMENT POINT IS 85% OF THE AMOUNT SHOWN ON THE
  PREVIOUS PAGE.

* MENTAL & NERVOUS, ALCOHOLISM & DRUG ADDICTION TREATMENT ARE LIMITED TO THE
  LESSER OF THE PLAN BENEFITS OR 10,000. STATE OR FEDERAL STATUTES MAY
  SUPERCEDE THIS LIMITATION.

* IN ADDITION TO THE RATES SHOWN, YOU MUST ADD THE APPROPRIATE STATE SURPLUS
  LINES TAX IF THE COVERAGE IS WRITTEN BY A NON-ADMITTED CARRIER.

* QUOTE ASSUMES THAT LARGE CASE MANAGEMENT WILL BE USED. THE LCM FIRM MUST BE
  APPROVED BY ALL PARTIES.

* QUOTE ASSUMES THAT PREADMISSION CERTIFICATION WILL BE USED AND PENALTIES
  WILL BE IMPOSED FOR FAILURE TO USE.

* QUOTE ASSUMES THE USE OF CONCURRENT HOSPITAL REVIEW.

* QUOTE ASSUMES THE USE OF DISCHARGE PLANNING.

* QUOTE IS BASED ON THE FULL UTILIZATION OF A PPO WHICH HAS BEEN APPROVED BY
  ALL PARTIES.

Please submit the above information within 60 days from the effective date
of coverage, if sold. Please make the premium check payable to J. Allan Hall
& Associates, Inc. or the carrier.

*** THIS IS NOT A CONTRACT OR BINDER OF INSURANCE ***

The persons presenting this proposal to the client are agents of the
client and not of the insurer, reinsurer, or J. Allan Hall & Assoc.
This proposal is non-occupational and the Excess Reinsurance Agreement
will be issued when all the required information has been submitted to
J. ALLAN HALL & ASSOCIATES.

MBA 00100

**J. ALLAN HALL & ASSOCIATES, INC.**
**55 MONUMENT CIRCLE, SUITE 1115**
**INDIANAPOLIS, INDIANA 46204-5910**
**(317) 264-0020 (VOICE)**
**(317) 264-9038 (FAX)**

10/16/00

THE CONSOLIDATED COMPANIES
2835 TOWNSGATE DRIVE, #200
WESTGATE VILL., CA.  91361-

Fax #: (805) 497-0077

RE: SAN BENITO CONS INDEP.SCHOOLS
Proposed Effective Date: 10/01/00.

Dear   ,

We are pleased to present you with the attached proposal(s) for Excess Loss
Coverage provided by COMPANION LIFE.
We reserve the right to modify factors and/or premium rates quoted after our
review of the information requested on the following pages.

* THIS IS FOR 11 MONTH CONTRACT.
  MAJOR HUMAN ORGAN TRANSPLTS SUBJ. TO PLAN MAX. OF $150K PER INDIVIDUAL.
  LUNG CANCER LIMITED TO $50,000 LTM IF SMOKING FOR 5 YEARS OR MORE AT TIME
  OF DIAGNOSIS.

Our rates include -0- commission, unless noted otherwise, and the
quote is valid for 60 days from the date of this quote.

We thank you for providing us with the opportunity to serve you.
Please let us know of any questions or comments.
P THIS OFFER IS ACCEPTED BY THE ACCOUNT, PLEASE HAVE AN OFFICER SIGN THE
.CCEPTANCE LINE BELOW, CIRCLE THE OPTION DESIRED ON PAGE 2 (EXCESS LOSS
ROPOSAL) AND INITIAL PAGE 2 AND PAGE 3 (CONTINGENCIES AND QUALIFICATIONS),
AND RETURN IT TO US WITH A DEPOSIT PREMIUM (ONE MONTH'S PREMIUM).

Sincerely,                              ACCEPTED

TONY WIRKUS
Underwriter

MBA 00101

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1116
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

EXCESS LOSS PROPOSAL

INITIAL

GROUP NAME: SAN BENITO CONS INDEP.SCHOOLS

ADMINISTRATOR: THE CONSOLIDATED COMPANIES

DATE PREPARED: 10/16/00           EFFECTIVE DATE: 10/01/00

Specific:
         Option1
Retention    $   75,000
Contract        15/11
L/T Maximum   1,000,000

Rates:
     Single   $ 18.45
     Family   $ 44.06
  Composite   $ 24.18

Annual Premium   349,499

Aggregate Factor(s):
    Medical   $ 295.65
    Dental    $ 11.54
     Drug     $ 39.06   346.25

MAAP*        5,004,553
Contract        15/11
Employee Rate $   1.70

Annual Premium   24,572

Reinsurance provided by: COMPANION LIFE

Underwriting assumptions:
    This proposal is based on the following enrollment:
         Medical     Single:   1,020   Family:   294    1314 TOTAL
         Dental      Single:   1,020   Family:   294
    Prescription Drugs   Single:   1,020   Family:   294

MBA 00102

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

INITIAL

## QUALIFICATIONS AND CONTINGENCIES

Our proposal is contingent and subject to change upon receipt and review
of the following information:
  ACTIVELY AT WORK PROVISIONS HAVE BEEN WAIVED.

* COVERAGE EXCLUDES PROCEDURES CONSIDERED TO BE EXPERIMENTAL, INVESTIGATIONAL
  OR NOT CONSIDERED TO BE REASONABLE OR NECESSARY ACCORDING TO THE HEALTH
  CARE FINANCING ADMINISTRATION (HCFA).

* THE MINIMUM AGGREGATE ATTACHMENT POINT IS 85% OF THE AMOUNT SHOWN ON THE
  PREVIOUS PAGE.

* MENTAL & NERVOUS, ALCOHOLISM & DRUG ADDICTION TREATMENT ARE LIMITED TO THE
  LESSER OF THE PLAN BENEFITS OR 10,000. STATE OR FEDERAL STATUTES MAY
  SUPERCEDE THIS LIMITATION.

* IN ADDITION TO THE RATES SHOWN, YOU MUST ADD THE APPROPRIATE STATE SURPLUS
  LINES TAX IF THE COVERAGE IS WRITTEN BY A NON-ADMITTED CARRIER.

* QUOTE ASSUMES THAT LARGE CASE MANAGEMENT WILL BE USED. THE LCM FIRM MUST BE
  APPROVED BY ALL PARTIES.

* QUOTE ASSUMES THAT PREADMISSION CERTIFICATION WILL BE USED AND PENALTIES
  WILL BE IMPOSED FOR FAILURE TO USE.

* QUOTE ASSUMES THE USE OF CONCURRENT HOSPITAL REVIEW.

* QUOTE ASSUMES THE USE OF DISCHARGE PLANNING.

* QUOTE IS BASED ON THE FULL UTILIZATION OF A PPO WHICH HAS BEEN APPROVED BY
  ALL PARTIES.

Please submit the above information within 60 days from the effective date
of coverage, if sold. Please make the premium check payable to J. Allan Hall
& Associates, Inc. or the carrier.

    ***    THIS IS NOT A CONTRACT OR BINDER OF INSURANCE    ***

The persons presenting this proposal to the client are agents of the
client and not of the insurer, reinsurer, or J. Allan Hall & Assoc.
This proposal is non-occupational and the Excess Reinsurance Agreement
will be issued when all the required information has been submitted to
J. ALLAN HALL & ASSOCIATES.

MBA 00103

**J. ALLAN HALL & ASSOCIATES, INC.**
**55 MONUMENT CIRCLE, SUITE 1115**
**INDIANAPOLIS, INDIANA 46204-5910**
**(317) 264-0020 (VOICE)**
**(317) 264-9038 (FAX)**

### EXCESS LOSS PROPOSAL

GROUP NAME: SAN BENITO CONS INDEP.SCHOOLS                INITIAL

ADMINISTRATOR: THE CONSOLIDATED COMPANIES

DATE PREPARED: 10/16/00                EFFECTIVE DATE: 10/01/00

Specific:

|  | Option1 |
|---|---|
| Retention | $  75,000 |
| Contract | 15/11 |
| /T Maximum | 1,000,000 |

Rates:
| Single | $  18.45 |
|---|---|
| Family | $  44.06 |
| Composite | $  24.18 |

Annual Premium  349,499

Aggregate Factor(s):
| Medical | $  295.65 |
|---|---|
| Dental | $  11.54 |
| Drug | $  39.06 | 346.25 |

AAP*        5,004,553
Contract        15/11
Employee Rate $    1.70

Annual Premium    24,572


Reinsurance provided by: COMPANION LIFE

Underwriting assumptions:
    This proposal is based on the following enrollment:
| Medical | Single: | 1,020 | Family: | 294 | 1314 total |
|---|---|---|---|---|---|
| Dental | Single: | 1,020 | Family: | 294 | |
| Prescription Drugs | Single: | 1,020 | Family: | 294 | |



RECEIVED
OCT 30 2000

MBA 00104

OCT-18-2000  15:49       CORP OFFICES                    801 266 2581    P.04/05

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

                                        INITIAL

              QUALIFICATIONS AND CONTINGENCIES

Our proposal is contingent and subject to change upon receipt and review
of the following information:
    ACTIVELY AT WORK PROVISIONS HAVE BEEN WAIVED.

*  COVERAGE EXCLUDES PROCEDURES CONSIDERED TO BE EXPERIMENTAL, INVESTIGATIONAL
   OR NOT CONSIDERED TO BE REASONABLE OR NECESSARY ACCORDING TO THE HEALTH
   CARE FINANCING ADMINISTRATION (HCFA).

*  THE MINIMUM AGGREGATE ATTACHMENT POINT IS 85% OF THE AMOUNT SHOWN ON THE
   PREVIOUS PAGE.

*  MENTAL & NERVOUS, ALCOHOLISM & DRUG ADDICTION TREATMENT ARE LIMITED TO THE
   LESSER OF THE PLAN BENEFITS OR 10,000. STATE OR FEDERAL STATUTES MAY
   SUPERCEDE THIS LIMITATION.

*  IN ADDITION TO THE RATES SHOWN, YOU MUST ADD THE APPROPRIATE STATE SURPLUS
   LINES TAX IF THE COVERAGE IS WRITTEN BY A NON-ADMITTED CARRIER.

*  QUOTE ASSUMES THAT LARGE CASE MANAGEMENT WILL BE USED. THE LCM FIRM MUST BE
   APPROVED BY ALL PARTIES.

*  QUOTE ASSUMES THAT PREADMISSION CERTIFICATION WILL BE USED AND PENALTIES
   WILL BE IMPOSED FOR FAILURE TO USE.

*  QUOTE ASSUMES THE USE OF CONCURRENT HOSPITAL REVIEW.

*  QUOTE ASSUMES THE USE OF DISCHARGE PLANNING.

*  QUOTE IS BASED ON THE FULL UTILIZATION OF A PPO WHICH HAS BEEN APPROVED BY
   ALL PARTIES.

Please submit the above information within 60 days from the effective date
of coverage, if sold. Please make the premium check payable to J. Allan Hall
& Associates, Inc. or the carrier.

        ***   THIS IS NOT A CONTRACT OR BINDER OF INSURANCE   ***

The persons presenting this proposal to the client are agents of the
client and not of the insurer, reinsurer, or J. Allan Hall & Assoc.
This proposal is non-occupational and the Excess Reinsurance Agreement
will be issued when all the required information has been submitted to
J. ALLAN HALL & ASSOCIATES.



TOTAL P.23

MBA 00105

OCT 06 '00  08:23AM CONSOL?  TED CO. 415 8858673

**The Consolidated Companies**
2835 Townsgate Road Suite 200_
Westlake Village, CA. 91361
Phone: 805-497-4777
Fax:    805-497-0077
E-Mail: drouth@consolidatedco.com

# facsimile transmittal

| | | | |
|---|---|---|---|
| **To:** | Don Merrill | **Fax:** | 10/6/00 |
| **From:** | Doug Routh | **Date:** | 8/29/00 |
| **Re:** | San Benito Schools | **Pages:** | 4 |
| **CC:** | | | |

☐ **Urgent** ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

**Notes**   Here's quote for 15/11 or 11/15 , quote can be used either way.

Thanks,

OCT 06 '00  08:23AM CONSOL⌐ ┐TED CO. 415 8830675                    P.2/4

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
 (317) 264-0020 (VOICE)
 (317) 264-9038 (FAX)

08/29/00

THE CONSOLIDATED COMPANIES
2835 TOWNSGATE DRIVE, #200
WESTGATE VILL., CA.  91361-

Fax #: (805) 497-0077

RE: SAN BENITO CONS INDEP.SCHOOLS
Proposed Effective Date: 10/01/00.

Dear   ,

We are pleased to present you with the attached proposal(s) for Excess Loss
Coverage provided by COMPANION LIFE.
We reserve the right to modify factors and/or premium rates quoted after our
review of the information requested on the following pages.

* THIS IS FOR 11 MONTH CONTRACT.
  MAJOR HUMAN ORGAN TRANSPLTS SUBJ. TO PLAN MAX. OF $150K PER INDIVIDUAL.
  LUNG CANCER LIMITED TO $50,000 LTM IF SMOKING FOR 5 YEARS OR MORE AT TIME
  OF DIAGNOSIS.

Our rates include 12.5% commission, unless noted otherwise, and the
quote is valid for 60 days from the date of this quote.

We thank you for providing us with the opportunity to serve you.
Please let us know of any questions or comments.
IF THIS OFFER IS ACCEPTED BY THE ACCOUNT, PLEASE HAVE AN OFFICER SIGN THE
ACCEPTANCE LINE BELOW, CIRCLE THE OPTION DESIRED ON PAGE 2 (EXCESS LOSS
PROPOSAL) AND INITIAL PAGE 2 AND PAGE 3 (CONTINGENCIES AND QUALIFICATIONS),
AND RETURN IT TO US WITH A DEPOSIT PREMIUM (ONE MONTH'S PREMIUM).

Sincerely,                              ACCEPTED

AL HALL
Underwriter                    _____

OCT 06 '00  08:24AM CONSOLIDATED CO. 415 8830675                     P.3/4

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

EXCESS LOSS PROPOSAL

GROUP NAME: SAN BENITO CONS INDEP.SCHOOLS                INITIAL_____

ADMINISTRATOR: THE CONSOLIDATED COMPANIES

DATE PREPARED: 08/29/00                 EFFECTIVE DATE: 10/01/00

Specific:
                 Option1
Retention    $   75,000
Contract         15/12
L/T Maximum  1,000,000

Rates:
        Single  $  18.95
        Family  $  45.26
     Composite  $  24.84

Annual Premium  391,625

Aggregate Factor(s):
        Medical  $ 297.74
        Dental   $  11.64
          Drug   $  39.40

MAAP*       5,499,406
Contract        15/12
Employee Rate $  1.92

Annual Premium  30,275

Reinsurance provided by: COMPANION LIFE

Underwriting assumptions:
    This proposal is based on the following enrollment:
                Medical    Single:  1,020   Family:   294
                Dental     Single:  1,020   Family:   294
        Prescription Drugs Single:  1,020   Family:   294

MBA 00108

OCT 06 '00  08:24AM CONSOL~~DATED CO. 415 8830675                    P.3/4

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

EXCESS LOSS PROPOSAL

GROUP NAME: SAN BENITO CONS INDEP. SCHOOLS                    INITIAL_____

ADMINISTRATOR: THE CONSOLIDATED COMPANIES

DATE PREPARED: 08/29/00                    EFFECTIVE DATE: 10/01/00


Specific:
                Option1
Retention    $  75,000
Contract        15/12
L/T Maximum  1,000,000

Rates:
        Single  $  18.95
        Family  $  45.26
      Composite $  24.84

Annual Premium  391,625

Aggregate Factor(s):
        Medical  $ 297.74
        Dental   $  11.64
        Drug     $  39.40

MAAP*         5,499,406
Contract          15/12
Employee Rate $    1.92

Annual Premium    30,275


Reinsurance provided by: COMPANION LIFE

Underwriting assumptions:
        This proposal is based on the following enrollment:
                Medical     Single:  1,020   Family:   294
                Dental      Single:  1,020   Family:   294
        Prescription Drugs  Single:  1,020   Family:   294


MBA 00109

# San Benito CISD

## Claims Lag Report
An estimate of the incurred but not reported (IBNR) claims

The Lag Report is an estimate of liability which has been incurred but not considered by the claims payor. It is an estimate of claims liability based on the recent history of the group.

Claims lag is calculated on the average number of days that it takes for a claim to get processed from the time that the service is rendered. The average claims lag for San Benito CISD calculated over the period starting October 1, 1999 to September 30, 2000 is 49.44 days.

The estimate of the IBNR is based on the average number days that each claim lags and the average amount paid per claim. The two together produce an estimate of the liability which the employer might face if the plan was terminated at any point. The current IBNR for San Benito CISD is $560,133.27.

The weighted IBNR estimate, uses the size of the claim in conjunction with the number of days that it takes for the claim to be paid. This is assuming that larger bills will take longer to process and smaller bills less time. This gives a view of the IBNR weighted for types of claims. The current Weighted IBNR for San Benito CISD is $669,148.38.

Summary:

| | |
|---|---|
| Claims Lag Based on Past 12 Months Lag Times | 49.44 days |
| Estimate of Incurred But Not Reported (IBNR) Claims | $ 560,133.27 |
| Estimate of Weighted IBNR Claims | $ 669,148.36 |

To extrapolate these numbers an inflationary factor would need to be employed. Based on current medical cost trends this inflationary factor is approximately 11% per year or 0.91667% per month.

Prepared By:

Keith Klingler
Actuarial Support Services

Prepared For: CPA Auditing Firm for San Benito CISD, October 16, 2000

MBA 00110

## MBA of Wyoming, Inc.

3625 So. West Temple, Suite 200
Salt Lake City, UT  84115-4409
P. O. Box 651109
Salt Lake City, UT  84165-1109
(801) 268-3334 FAX (801) 266-2581

# F A X   T R A N S M I T T A L

Date: _10/16/2000_____  Time: _____

To: _Jane Gonzales_____  Re: _____

Company: _____  From: _Phyllis Merrill_____

Fax#: _956-361-6187_____  Number of Pages _____
(Including This Page)

==================================================================

Comments: _Here is the information you requested.____
_____
_____
_____
_____
_____

MBA 00111

# San Benito Consolidated Independent School District

### Insured / Stop Loss Summary for October 1, 2000
#### (Year October 2000 thru August 31, 2001, 11 Months)

| | | Unit Rate | Monthly Rate |
|---|---|---|---|
| I. | Group Life | $ 0.22/1000 ($15,000) | $ 3.30 |
| | Group AD&D | $ 0.03/1000 ($15,000) | $ 0.45 |
| | | | $ 3.75 |
| | | | |
| II. | Vision (Voluntary Card) | | $ 2.00 |

III. Medical & Rx (review attached 8/25/00 Summary)
TOTAL:

| | | |
|---|---|---|
| Admin, Reinsurance Fee, Hospital UR & PPO Access | $23.60 | ✓ accepted 10/9/00 |

IV. Specific Aggregate Premium ($75,000) October 2000

| Contract | | 15/12 or 12/15 | 15/11 or 11/15 | 14/15 or 15/15 |
|---|---|---|---|---|
| Specific | Single | $ 18.81 | $ 18.95  *18.45* | $ 22.74 |
| | Family | $ 44.93 | $ 45.26  *44.06* | $ 54.31 |
| Aggregate Composite | | $  1.92 | $  1.92  *1.70* | $  2.30 |
| | | | | |
| Total III & IV | Single | $ 44.33 | $ 44.47 | $ 48.64 |
| | Family | $ 70.45 | $ 70.78 | $ 80.21 |

V. Aggregate Factors
(Composite #'s)

| | | | | |
|---|---|---|---|---|
| Medical | $ 297.74 | $ 297.74  *295⁶⁵* | $ 357.29 |
| Rx | $  39.40 | $  39.40  *39 ⁰⁶* | $  47.28 |
| Sub Total | $ 337.14 | $ 337.14 | $ 404.57 |
| Dental | $  11.64 | $  11.64  *11⁵⁴* | $  13.97 |
| TOTAL | $ 348.78 | $ 348.78 | $ 418.54 |

MBA 00112

**COMPANION LIFE INSURANCE COMPANY**
**SCHEDULE OF EXCESS LOSS INSURANCE**

1.  Contract Number: _____San Benito Consolidated ISD_____

2.  Contractholder: _____CLI-3044-100100_____

3.  Address: ___240 North Crockett_____

    City:___San Benito_____ State:__TX____ Zip Code:_78586____

4.  Subsidiary or affiliated companies (companies under common control through stock ownership, contract, or otherwise) to be included (list legal name and addresses):
    ___N/A_____
    _____

5.  Name and address of Designated Third Party Administrator
    MBA of Wyoming, Inc.  3625 S. West Temple,  Salt Lake City, UT  84115

6.  Effective Date: _____October 1, 2000_____

7.  **GENERAL SCHEDULE OPTIONS:**

    (a)  Contract Period__10/01/00_____ to ___10/01/00_____

    (b)  Disabled Persons        [ X ] are      [ ] are not covered.
         Retired Employees      [ X ] are      [ ] are not covered.

    (c)  Aggregate Benefit       [ X ] Yes     [ ] No

         Aggregate   __07/01/00__ through _08/31/01___, and
         Paid from __10/01/00__ through__08/31/01_____.
         Claims Incurred prior to the Contract Effective Date are limited to $__N/A_____.

         Aggregate eligible expenses include:
         [ X ] Medical               [ X ] Prescription Card Service
         [ X ] Dental Care          [ ] Weekly (Disability) Income
         [ ] Vision Care            [ ] Other

| | Med /Dental /Drug |
|---|---|
| Aggregate Monthly Factor per single Employee: | $ |
| Family: | $ |
| Composite: | $ 295.65/11.54/39.06 |
| Aggregate Payable Percentage (excess of Deductible): | 100      % |
| Maximum Eligible Claim Expense Per Covered Person: | $ 75,000 |
| Minimum Aggregate Deductible: | $ 4,253,870 |
| Maximum Aggregate Benefit (excess of Deductible): | $   1,000,000 |

7.  **GENERAL SCHEDULE OPTIONS: (Continued)**

(d)  Monthly Aggregate Accommodation          [ ] Yes    [ X ] No

(e)  Terminal Liability                            [ ] Yes    [ X ] No

(f)  Specific Benefit                          [ X ] Yes    [ ] No
     Specific Contract Basis: Employee Benefit Plan expenses must be
                Incurred from ___07/01/00___ through___08/31/01___.
                Paid from ___10/01/00___ through___8/31/01___.
     Claims Incurred prior to the Contract Effective Date are
     limited to:                             $ ___N/A___
     Specific Eligible Expense: Medical Only
     Specific Deductible (per person):           $ 75,000 *
  *  **Major human organ transplants subject to plan max. of $150K per individual.
     Lung cancer limited to $50,000 LTM if smoking for 5 years or more at time
     of diagnosis**

     Specific Payable Percentage (excess of Deductible):      100      %

     Maximum Specific Benefit (per person in excess of
                      Specific Deductible):         $ 925,000

8.  **PREMIUMS:**

(a)  Aggregate Premium
     Premium Per Month Per Unit:                  $ 1.70
     Minimum Annual Aggregate Premium           $ N/A
     Monthly Aggregate Accommodation
     Premium Per Month Per Unit:                  $ N/A
          Annual Premium in Advance:          $ N/A
     Terminal Liability
          Premium Per Month Per Unit:        $ N/A
          Annual Premium in Advance:        $ N/A

(b)  Specific Premium
          Premium Per Month Per Single Employee:    $ 18.45
                                   Family:    $ 44.06
                          Composite:    $
          Minimum Monthly Specific Premium:    $ N/A

9.  **SPECIAL RISK LIMITATIONS:**

Contract will be based upon the current employee benefits as defined in the Employee Benefit Plan by reference or by attachment, except as noted below:

Specific:     N/A

Aggregate:     N/A

MBA 00114

**Monthly Aggregate Report**
Carrier: J. Allan Hall

Group: San Benito
Aggregate Factors:
Specific Deductible: $75,000.00

Group Number: 7699
Spec Contract Type:

| | Deductible Single | Deductible Family |
|---|---|---|

Agg Con Type 15/11
Composite 15/11          $346.25

Effective: 10/2000
Min Attach:
Covered: Dent, Med & RxCard

| Month | Single | Family | Deductible Month | Deductible YTD | Run-in | Claims Monthly | Claims YTD | Inel | Specific | Net Claims | Over Ag | Agg Re | % of Agg |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Oct. 2000 | 1057 | 294 | $467,783.75 | $467,783.75 | $133,461.34 | $27,169.33 | $160,630.67 | $0.00 | $0.00 | $160,630.67 | $0.00 | $0.00 | 34.34% |
| Nov. 200 | 1068 | 290 | $470,207.50 | $937,991.25 | $89,965.77 | $85,237.64 | $335,834.08 | $0.00 | $0.00 | $335,834.08 | $0.00 | $0.00 | 35.80% |
| Dec. 200 | 1048 | 283 | $460,858.75 | $1,398,850.00 | $35,680.36 | $196,389.75 | $567,904.19 | $0.00 | $0.00 | $567,904.19 | $0.00 | $0.00 | 40.60% |
| Jan. 2001 | 1034 | 292 | $459,127.50 | $1,857,977.50 | $13,895.52 | $241,006.77 | $822,806.48 | $0.00 | $0.00 | $822,806.48 | $0.00 | $0.00 | 44.29% |
| Feb. 2001 | 1039 | 285 | $458,435.00 | $2,316,412.50 | $9,201.84 | $439,388.00 | $1,271,396.32 | $0.00 | $0.00 | $1,271,396.32 | $0.00 | $0.00 | 54.89% |
| Mar. 2001 | 1044 | 293 | $462,936.25 | $2,779,348.75 | $1,808.66 | $278,300.29 | $1,551,505.27 | $0.00 | $0.00 | $1,519,876.57 | $0.00 | $0.00 | 54.68% |
| Apr. 2001 | 1037 | 290 | $459,473.75 | $3,238,822.50 | $602.38 | $202,393.75 | $1,754,501.40 | $0.00 | $31,628.70 | $1,722,872.70 | $0.00 | $0.00 | 53.19% |
| May 2001 | 1031 | 295 | $459,127.50 | $3,697,950.00 | $5,246.04 | $456,423.87 | $2,216,171.31 | $0.00 | $0.00 | $2,182,146.61 | $0.00 | $0.00 | 59.01% |
| June 200 | 1001 | 289 | $446,662.50 | $4,144,612.50 | $2,037.33 | $428,551.97 | $2,646,760.61 | $0.00 | $2,396.00 | $2,364,129.01 | $0.00 | $0.00 | 57.04% |
| July 2001 | 999 | 292 | $447,008.75 | $4,591,621.25 | $2,832.11 | $250,119.52 | $2,899,712.24 | $0.00 | $248,606.90 | $2,608,463.60 | $0.00 | $0.00 | 56.81% |
| Aug 2001 | 1014 | 289 | $451,163.75 | $5,042,785.00 | $206.00 | $1,904,121.95 | $4,804,040.19 | $0.00 | $8,617.04 | $3,383,706.54 | $0.00 | $0.00 | 67.10% |
| Total | 11372 | 3192 | $5,042,785.00 | $5,042,785.00 | $294,937.35 | $4,509,102.84 | $4,804,040.19 | $0.00 | $1,129,085.01 | $3,383,706.54 | $0.00 | $0.00 | 67.10% |

# Monthly Aggregate Report

**Carrier** _Don Brock_

Group Number _2699_    Agg Contract Type _15/11_    Effective _Oct. 00_

Family _____    Composite _396.25_    Run in Max _____

Spec Contract Type _15/11_    Covered _D, M, + Rx Cond_

Aggregate Factors: Single _____

Specific Deductible _$25,000_

| Mo. | # Single | # Family | Aggregate Ded Month | YTD | Run In | Total Paid Claims Monthly | YTD | Reductions Inel | Specific | Net Claims | Amount Over Agg | Agg Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9-00 | 1057 | 294 | | | 133,461,327,169.33 | | | | | | | |
| 10-00 | 1068 | 290 | | | 89,965.22 | 55,827.64 | | | | | | |
| 11-00 | 1068 | 290 | | | 35,680,361.96,389.25 | | | | | | | |
| 12-00 | 1048 | 283 | | | 13,895,565,41,006.22 | | | | | | | |
| 1-01 | 1054 | 283 | | | 9,801.84 438,388.00 | | | | | | | |
| 2-01 | 1035 | 285 | | | 1,808.66 278,300.38 | | | 81,636.70 | | | | |
| 3-01 | 1044 | 293 | | | 602.38 202,333.36 | | | 2,396.00 | | | | |
| 4-01 | 1037 | 290 | | | 5,346.09 456,423.82 | | | 248,606.90 | | | | |
| 5-01 | 1031 | 295 | | | 2,037.33 458,555.92 | | | 8,817.04 | | | | |
| 6-01 | 1001 | 289 | | | 2,833.11 250,119.52 | | | | | | | |
| 7-01 | 999 | 282 | | | | | | | | | | |
| 8-01 | 1014 | 289 | | | 206.00 1,904,179.52 | | | 1,729,085.01 | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Totals | | | | | | | | | | | | |

Minimum Attachment Point _5,004,553_    Monthly Minimum _$412,046.09_    Prior Year's Specific Contract _15/12_

60\forms\adminagg_mon.96

MBA 00116

```
                                          MBA                                              —
        Date:  09/05/2001            P a i d   C l a i m s   A n a l y s i s              Page:   259
                                       Wednesday September 05, 2001                        rpc
        Group:     7699        SAN BENITO C.I.S.D.
        Benefit Totals Recap
        Paid Period:  08/01/2001  Thru  08/31/2001
        Incurred Period:  10/01/2000  Thru  08/31/2001
```

| | Claims | Total Charges | Inelig Charges | Copay Amount | Benefit Deduct | Co-ins Deduct | Basic Co ins | Maj Med Co ins | COB Reimb | COB Savings | Payment Reduction | Discount | Amount Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ntal** | | | | | | | | | | | | | |
| r | 120 | 5,838.53 | 23,561.00 | 0.00 | 1,730.00 | 0.00 | 0.00 | 4,686.14 | 0.00 | 0.00 | 0.00 | 0.00 | 11,306.33 |
| s | 8 | 2,986.60 | 4,174.00 | 0.00 | 150.00 | 0.00 | 0.00 | 402.60 | 0.00 | 0.00 | 0.00 | 0.00 | 634.80 |
| ep | 39 | 1,239.48 | 5,696.75 | 0.00 | 684.00 | 0.00 | 0.00 | 933.16 | 0.00 | 0.00 | 0.00 | 0.00 | 2,840.11 |
| t | 167 | 10,064.61 | 33,431.75 | 0.00 | 2,564.00 | 0.00 | 0.00 | 6,021.90 | 0.00 | 0.00 | 0.00 | 0.00 | 14,781.24 |
| **dical** | | | | | | | | | | | | | |
| r | 1546 | 390,612.87 | 1,499,789.49 | 30,444.33 | 0.00 | 0.00 | 0.00 | 65,628.18 | 0.00 | 0.00 | 0.00 | 0.00 | 1,013,104.11 |
| s | 130 | 48,449.06 | 131,658.55 | 2,558.88 | 0.00 | 0.00 | 0.00 | 9,108.79 | 5.84 | 1,207.43 | 0.00 | 0.00 | 70,340.23 |
| ep | 559 | 370,527.50 | 1,138,888.89 | 3,585.01 | 0.00 | 0.00 | 0.00 | 5,066.50 | 0.00 | 0.00 | 0.00 | 0.00 | 759,709.88 |
| t | 2235 | 809,589.43 | 2,770,336.93 | 36,588.22 | 0.00 | 0.00 | 0.00 | 79,803.47 | 5.84 | 1,207.43 | 0.00 | 0.00 | 1,843,154.22 |
| **x card payment** | | | | | | | | | | | | | |
| r | 1 | 0.00 | 46,186.49 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 46,186.49 |
| s | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| p | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| t | 1 | 0.00 | 46,186.49 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 46,186.49 |
| **xed costs** | | | | | | | | | | | | | |
| nr | 0 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| s | 1 | 0.00 | 33,656.74 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 33,656.74 |
| ep | 11 | 0.00 | 35,730.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 35,730.94 |
| t | 12 | 0.00 | 69,387.68 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 69,387.68 |

MBA 00117

```
                                          MBA
   Date:  09/05/2001          P a i d   C l a i m s   A n a l y s i s              Page:    260
                                Wednesday September 05, 2001                       rpc
   Group:     7699          SAN BENITO C.I.S.D.
   Benefit Totals Recap
    Paid Period:  08/01/2001  Thru  08/31/2001
  Incurred Period: 10/01/2000  Thru  08/31/2001
```

| | Total Claims Charges | Inelig Charges | Copay Amount | Benefit Deduct | Co-ins Deduct | Basic Co ins | Maj Med Co ins | COB Reimb | COB Savings | Payment Reduction | Discount | Amount Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| tal all: | | | | | | | | | | | | |
| r | 1667 396,451.40 | | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 1,070,596.93 |
| | 1,569,536.98 | 30,444.33 | | | 1,730.00 | | 70,314.32 | | 0.00 | | 0.00 | |
| s | 139 51,435.66 | | | 0.00 | | 0.00 | | 5.84 | | 0.00 | | 104,631.77 |
| | 169,489.29 | 2,558.88 | | | 150.00 | | 9,511.39 | | 1,207.43 | | 0.00 | |
| p | 609 371,766.98 | | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 798,280.93 |
| | 1,180,316.58 | 3,585.01 | | | 684.00 | | 5,999.66 | | 0.00 | | 0.00 | |
| t | 2415 819,654.04 | | | 0.00 | | 0.00 | | 5.84 | | 0.00 | | 1,973,509.63 |
| | 2,919,342.85 | 36,588.22 | | | 2,564.00 | | 85,825.37 | | 1,207.43 | | 0.00 | |

MBA 00118

```
                                              MBA
        Date:  09/05/2001            P a i d   C l a i m s   A n a l y s i s                Page:     13
                                       Wednesday September 05, 2001                         rpc
        Group:      7699        SAN BENITO C.I.S.D.
        Benefit Totals Recap
        Paid Period:  08/01/2001  Thru  08/31/2001
    Incurred Period:  07/01/2000  Thru  09/30/2000
```

|  | Claims | Total Charges | Inelig Charges | Copay Amount | Benefit Deduct | Co-ins Deduct | Basic Co ins | Maj Med Co ins | COB Reimb | COB Savings | Payment Reduction | Discount | Amount Paid |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| dical |
| r | 5 | | 306.93 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 70.25 |
| | | 420.79 | | 30.00 | | 0.00 | | 13.61 | | 0.00 | | 0.00 | |
| s | 0 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | |
| p | 4 | | 142.39 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 135.75 |
| | | 312.08 | | 0.00 | | 0.00 | | 33.94 | | 0.00 | | 0.00 | |
| t | 9 | | 449.32 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 206.00 |
| | | 732.87 | | 30.00 | | 0.00 | | 47.55 | | 0.00 | | 0.00 | |
| tal all: |
| r | 5 | | 306.93 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 70.25 |
| | | 420.79 | | 30.00 | | 0.00 | | 13.61 | | 0.00 | | 0.00 | |
| s | 0 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 |
| | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | |
| p | 4 | | 142.39 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 135.75 |
| | | 312.08 | | 0.00 | | 0.00 | | 33.94 | | 0.00 | | 0.00 | |
| t | 9 | | 449.32 | | 0.00 | | 0.00 | | 0.00 | | 0.00 | | 206.00 |
| | | 732.87 | | 30.00 | | 0.00 | | 47.55 | | 0.00 | | 0.00 | |

MBA 00119

```
                                           MBA
        Date:  09/05/2001          I n d i v i d u a l   P a y m e n t   R e p o r t          Page:     8
                                   Wednesday September 05, 2001                               rip
Group     :  7699        SAN BENITO C.I.S.D.
Incurred  :  07/01/2000 - 08/31/2001
Paid      :  10/01/2000 - 08/31/2001
Enrollee  :  EN BYRD          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
Member    :  e  EUNICE N
Member ID :  0005268
**Member Totals**
```

| aim no en | Tot Chg | Paid Ineligible | Incurred From-To Copay | Base Ded | Received M.M. Ded | Processed Base Paid | M.M. Paid | COB Reimb | Batch # Amt Paid | Ref # | Agg Spec |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 125155.75 | 19243.72 | 1540.00 | 0.00 | · 0.00 | 530.00 | 100342.03 | 0.00 | 100872.03 | | |

MBA 00120

```
                                        MBA
        Date:  09/05/2001       I n d i v i d u a l   P a y m e n t   R e p o r t        Page:    44
                                Wednesday September 05, 2001                             rip
Group    :  7699        SAN BENITO C.I.S.D.
Incurred :  07/01/2000 - 08/31/2001
Paid     :  10/01/2000 - 08/31/2001
Enrollee :  N  CRUZ                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
Member   :  5  SILVESTRE
Member ID :
**Member Totals**
```

| aim no en | Tot Chg | Paid Ineligible | Incurred From-To Copay | Base Ded | Received M.M. Ded | Processed Base Paid | M.M. Paid | COB Reimb | Batch # Amt Paid | Ref # | Agg Spec |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1381820.87 | 376960.87 | 1360.00 | 0.00 | 0.00 | 3100.00 | 996900.00 | 0.00 | 1000000.00 | | |

MBA 00121

```
                                          MBA
      Date:  09/05/2001        I n d i v i d u a l   P a y m e n t   R e p o r t        Page:      6
                                   Wednesday September 05, 2001                         rip
Group    :  7699        SAN BENITO C.I.S.D.
Incurred :  07/01/2000 - 08/31/2001
Paid     :  10/01/2000 - 08/31/2001
Enrollee :  JA GARZA              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
Member   :  e  JOE
Member ID :  0005461
**Member Totals**
```

| im no n | Tot Chg | Paid Ineligible | Incurred From-To Copay | Base Ded | Received M.M. Ded | Processed Base Paid | M.M. Paid | COB Reimb | Batch # Amt Paid | Ref # | Agg Spec |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 662256.19 | 156052.04 | 2000.00 | 0.00 | 0.00 | 1290.00 | 499414.15 | 0.00 | 500704.15 | | |

MBA 00122

```
                                              MBA                                    —
        Date:  09/05/2001          I n d i v i d u a l   P a y m e n t   R e p o r t        Page:    15
                                      Wednesday September 05, 2001                    rip

Group    :  7699        SAN BENITO C.I.S.D.
Incurred :  07/01/2000 - 08/31/2001
Paid     :  10/01/2000 - 08/31/2001
Enrollee :  C  LEAL              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
Member   :  e  CARLOS
Member ID :  0005628
**Member Totals**
```

| aim no | Tot Chg | Paid Ineligible | Incurred From-To Copay | Base Ded | Received M.M. Ded | Processed Base Paid | M.M. Paid | COB Reimb | Batch # Amt Paid | Ref # | Agg Spec |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 153346.69 | 37375.19 | 1684.02 | 0.00 | 0.00 | 1168.65 | 109218.83 | 0.00 | 110387.48 | | |

MBA 00123

```
                                              MBA
    Date:  09/05/2001          I n d i v i d u a l   P a y m e n t   R e p o r t          Page:     11
                                  Wednesday September 05, 2001                            rip
Group     :  7699        SAN BENITO C.I.S.D.
Incurred  :  07/01/2000 - 08/31/2001
Paid      :  10/01/2000 - 08/31/2001
Enrollee  :  MS RODRIGUEZ         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
Member    :  s  AGAPITO G
Member ID :
**Member Totals**
```

| im no | Tot Chg | Paid Ineligible | Incurred From-To Copay | Base Ded | Received M.M. Ded | Processed Base Paid | M.M. Paid | COB Reimb | Batch # Amt Paid | Ref # | Agg Spec |
|---|---|---|---|---|---|---|---|---|---|---|---|
| n | 110796.80 | 24499.61 | 920.00 | 0.00 | 0.00 | 3106.90 | 80263.09 | 0.00 | 83369.99 | | |

MBA 00124

```
                                        MBA
    Date 09/04/2001            S p e c i f i c   A n a l y s i s            — Page    8
                                 Tuesday September 04, 2001                   isa

surance Code: 76992      san benito                    Contract Type: Incurred & Paid
up:        7699          SAN BENITO C.I.S.D.           Fam. Specific Limit:      0.00
n:                       Combine Plan                  Ind. Specific Limit:  75,000.00
r:         2001          (For Policy Year 10/01/2000 - 09/30/2001)    Reporting On: Incurred & Paid
```

| tus Code/<br>llee | Member<br>Member Id | Enrollee<br>Soc Sec No | Run in<br>Amount | Paid<br>YTD | Over<br>Specific | Amount<br>Reimbursed | Amount<br>Open | Amount<br>Unreported | Pct Of<br>Specific |
|---|---|---|---|---|---|---|---|---|---|
| N BYRD | e EUNICE N<br>0005268 | 467427960 | 0.00 | 100,872.03 | 25,872.03 | 0.00 | 25,872.03 | 25,872.03 | 134.49 % |
| * | 1 Individuals In Family | | 0.00 | 100,872.03 | 25,872.03 | 0.00 | 25,872.03 | 25,872.03 | 134.49 % |
| CRUZ | 5 SILVESTR | 461294525 | 0.00 | 999,940.19 | 924,940.19 | 0.00 | 924,940.19 | 924,940.19 | 1333.25 % |
| * | 1 Individuals In Family | | 0.00 | 999,940.19 | 924,940.19 | 0.00 | 924,940.19 | 924,940.19 | 1333.25 % |
| A FLORES | e OLIVIA A<br>0005192 | 457807304 | 38.85 | 44,974.40 | 0.00 | 0.00 | 0.00 | 0.00 | 59.96 % |
| * | 1 Individuals In Family | | 38.85 | 44,974.40 | 0.00 | 0.00 | 0.00 | 0.00 | 59.96 % |
| A GARZA | e JOE<br>0005461 | 454355282 | 0.00 | 500,704.15 | 425,704.15 | 0.00 | 425,704.15 | 425,704.15 | 667.60 % |
| * | 1 Individuals In Family | | 0.00 | 500,704.15 | 425,704.15 | 0.00 | 425,704.15 | 425,704.15 | 667.60 % |
| E GATHRIGHT | e GORDON E<br>0006181 | 453247641 | 0.00 | 59,987.41 | 0.00 | 0.00 | 0.00 | 0.00 | 79.98 % |
| * | 1 Individuals In Family | | 0.00 | 59,987.41 | 0.00 | 0.00 | 0.00 | 0.00 | 79.98 % |
| E GUTIERREZ | e MARIA EL<br>0005572 | 460257731 | 7,523.04 | 53,435.35 | 0.00 | 0.00 | 0.00 | 0.00 | 71.24 % |
| * | 1 Individuals In Family | | 7,523.04 | 53,435.35 | 0.00 | 0.00 | 0.00 | 0.00 | 71.24 % |
| LAMBERT | 1 HECTOR | 461157651 | 0.00 | 74,820.44 | 0.00 | 0.00 | 0.00 | 0.00 | 99.76 % |
| * | 1 Individuals In Family | | 0.00 | 74,820.44 | 0.00 | 0.00 | 0.00 | 0.00 | 99.76 % |
| LEAL | e CARLOS<br>0005628 | 461623116 | 18,977.67 | 110,387.48 | 35,387.48 | 34,627.93 | 759.55 | 35,387.48 | 147.18 % |
| * | 1 Individuals In Family | | 18,977.67 | 110,387.48 | 35,387.48 | 34,627.93 | 759.55 | 35,387.48 | 147.18 % |
| J MADDOX | e MARY JAN<br>0005776 | 410462784 | 17,967.65 | 46,075.26 | 0.00 | 0.00 | 0.00 | 0.00 | 61.43 % |

```
                                            MBA
     Date 09/04/2001              S p e c i f i c   A n a l y s i s          ¯  Page    9
                                    Tuesday September 04, 2001                  isa

nsurance Code: 76992      san benito                    Contract Type: Incurred & Paid
up:          7699         SAN BENITO C.I.S.D.           Fam. Specific Limit:      0.00
n:                        Combine Plan                  Ind. Specific Limit:  75,000.00
r:           2001         (For Policy Year 10/01/2000 - 09/30/2001)  Reporting On:  Incurred & Paid
```

| tus Code/ ollee | Member Member Id | Enrollee Soc Sec No | Run in Amount | Paid YTD | Over Specific | Amount Reimbursed | Amount Open | Amount Unreported | Pct Of Specific |
|---|---|---|---|---|---|---|---|---|---|
| * | 1 Individuals In Family | | 17,967.65 | 46,075.26 | 0.00 | 0.00 | 0.00 | 0.00 | 61.43 % |
| ! MEANS | 1 REBEKAH | 466275622 | 0.00 | 45,303.35 | 0.00 | 0.00 | 0.00 | 0.00 | 60.40 % |
| * | 1 Individuals In Family | | 0.00 | 45,303.35 | 0.00 | 0.00 | 0.00 | 0.00 | 60.40 % |
| ) PADILLA | e DAVID 0007660 | 450375796 | 0.00 | 37,928.38 | 0.00 | 0.00 | 0.00 | 0.00 | 50.57 % |
| * | 1 Individuals In Family | | 0.00 | 37,928.38 | 0.00 | 0.00 | 0.00 | 0.00 | 50.57 % |
| :S RODRIGUEZ | s AGAPITO | 463586799 | 0.00 | 83,369.99 | 8,369.99 | 0.00 | 8,369.99 | 8,369.99 | 111.15 % |
| * | 1 Individuals In Family | | 0.00 | 83,369.99 | 8,369.99 | 0.00 | 8,369.99 | 8,369.99 | 111.15 % |
| M SANCHEZ | e MARY M 0006071 | 454662086 | 904.10 | 37,942.89 | 0.00 | 0.00 | 0.00 | 0.00 | 50.59 % |
| * | 1 Individuals In Family | | 904.10 | 37,942.89 | 0.00 | 0.00 | 0.00 | 0.00 | 50.59 % |
| ** | 0 Families In Year | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 % |
| ** | 13 Individuals In Year | | 45,411.31 | 2195,741.32 | 1420,273.84 | 34,627.93 | 1385,645.91 | 1420,273.84 | 225.20 % |

10/02/00  16:22  FAX 956 361 6187          RISK MANAGEMENT          @02



## San Benito Consolidated Independent School District

**Human Resource Office**
240 N. Crockett St. • San Benito, TX 78586 • Phone: (956)361-6150 • FAX: (956) 361-6291

*Board of Trustees*

Oscar De La Fuente, Jr.
President

Gilbert Montalvo
Vice-President

Joe G. Gonzalez
Secretary

Manuel Gonzales. Jr
Hector G. Leal
Leonel Ramirez
Mario Silva

*Administration*

Joe D Gonzalez
Superintendent

Celeste Sanchez
Assistant Superintendent
for Curriculum & Instruction

Lorenzo Sanchez
Administrator for
Human Resources and
Risk Management

Bob Tumberlinson
Business Manager

October 2, 2000


Don Merrill
MBA
P.O. Box 651109
Salt Lake City, UT 84165-1109
Fax 801-266-2581


Dear Don,

San Benito Consolidated Independent School District wishes to state its intent to renew the reinsurance contract with J. Allan Hall & Associates, Inc. effective October 1, 2000 based upon one of the options set forth on the attached summary that you have supplied. A decision will be made on which option to use in conjuction with our meeting scheduled for October 9th in San Benito.

Please advise the carrier of our intent in order to bind coverage as of today.

Sincerely

Lorenzo Sanchez
Assistant Superintendent for Finance & Human Resource

LS/jg


MBA 00127

C:\WINDOWS\Desktop\Health Insurance\REINSURANCE CONTRACT.doc

10/02/00  16:22  FAX 956 361 6187        RISK MANAGEMENT                                    ☒01

*FAX TO*   1. *Doug*
2. *J. Allan Hall*

**RISK**
**MANAGEMENT**
**DEPARTMENT**

### SAN BENITO CISD
240 North Crockett, San Benito, Texas 78586

# FAX

Date:   **10/2/00**

Number of pages including cover sheet:   **2**

**To:**

MBA        DON *MERRILL*

Phone:        1-800-877-3727
Fax phone:    (801) 266-2581
CC:

**From:**

*SAN BENITO*   *Janie Gonzalez*
*CISD*
              *Insurance Coordinator*

Phone:        210-361-6186
Fax phone:    210-361-6187

**REMARKS:**   ☒ Urgent        For your review   ☐ Reply ASAP   ☐ Please comment

Don,

Please find our letter of intent to continue our reinsurance coverage with J. Allan Hall & Associates.  Please give me a call to let me know that you have received this.

Thanks
*Janie*
Janie

MBA 00128

AUG-23-2000  15:25        J. ALLAN HALL & ASSOC.            3172649038    P.03/04

```
                    J. ALLAN HALL & ASSOCIATES, INC.
                    55 MONUMENT CIRCLE, SUITE 1115
                    INDIANAPOLIS, INDIANA 46204-5910
                    (317) 264-0020 (VOICE)
                    (317) 264-9038 (FAX)


                         EXCESS LOSS PROPOSAL
```

GROUP NAME: SAN BENITO CONS INDEP.SCHOOLS                INITIAL_____

ADMINISTRATOR: THE CONSOLIDATED COMPANIES

DATE PREPARED: 08/23/00                  EFFECTIVE DATE: 10/01/00


Specific:

| | Option1 | Option2 | Option3 |
|---|---|---|---|
| Retention | $ 75,000 | $ 100,000 | $ 75,000 |
| Contract | 24/12 | 24/12 | 15/12 |
| L/T Maximum | 1,000,000 | 1,000,000 | 1,000,000 |

Rates:

| | Option1 | Option2 | Option3 |
|---|---|---|---|
| Single | $ 18.81 | $ 13.79 | $ 18.25 |
| Family | $ 44.93 | $ 32.80 | $ 43.59 |
| Composite | $ 24.65 | $ 18.04 | $ 23.92 |

| Annual Premium | 388,747 | 284,508 | 377,166 |
|---|---|---|---|

Aggregate Factor(s):

| | Option1 | Option2 | Option3 |
|---|---|---|---|
| Medical | $ 303.88 | $ 318.85 | $ 297.74 |
| Dental | $ 11.88 | $ 11.88 | $ 11.64 |
| Drug | $ 40.18 | $ 40.18 | $ 39.40 |

| MAAP* | 5,612,778 | 5,848,825 | 5,499,406 |
|---|---|---|---|
| Contract | 24/12 | 24/12 | 15/12 |
| Employee Rate | $ 1.87 | $ 1.91 | $ 1.85 |

| Annual Premium | 29,486 | 30,117 | 29,171 |
|---|---|---|---|


Reinsurance provided by: COMPANION LIFE

Underwriting assumptions:
    This proposal is based on the following enrollment:

| | | Single: | | Family: | |
|---|---|---|---|---|---|
| Medical | Single: | 1,020 | Family: | 294 |
| Dental | Single: | 1,020 | Family: | 294 |
| Prescription Drugs | Single: | 1,020 | Family: | 294 |

MBA 00129

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

INITIAL_____

QUALIFICATIONS AND CONTINGENCIES

Our proposal is contingent and subject to change upon receipt and review
of the following information:
   ACTIVELY AT WORK PROVISIONS HAVE BEEN WAIVED.

* COVERAGE EXCLUDES PROCEDURES CONSIDERED TO BE EXPERIMENTAL, INVESTIGATIONAL
  OR NOT CONSIDERED TO BE REASONABLE OR NECESSARY ACCORDING TO THE HEALTH
  CARE FINANCING ADMINISTRATION (HCFA).

* THE MINIMUM AGGREGATE ATTACHMENT POINT IS 85% OF THE AMOUNT SHOWN ON THE
  PREVIOUS PAGE.

* MENTAL & NERVOUS, ALCOHOLISM & DRUG ADDICTION TREATMENT ARE LIMITED TO THE
  LESSER OF THE PLAN BENEFITS OR 10,000. STATE OR FEDERAL STATUTES MAY
  SUPERCEDE THIS LIMITATION.

* IN ADDITION TO THE RATES SHOWN, YOU MUST ADD THE APPROPRIATE STATE SURPLUS
  LINES TAX IF THE COVERAGE IS WRITTEN BY A NON-ADMITTED CARRIER.

* QUOTE ASSUMES THAT LARGE CASE MANAGEMENT WILL BE USED. THE LCM FIRM MUST BE
  APPROVED BY ALL PARTIES.

* QUOTE ASSUMES THAT PREADMISSION CERTIFICATION WILL BE USED AND PENALTIES
  WILL BE IMPOSED FOR FAILURE TO USE.

* QUOTE ASSUMES THE USE OF CONCURRENT HOSPITAL REVIEW.

* QUOTE ASSUMES THE USE OF DISCHARGE PLANNING.

* QUOTE IS BASED ON THE FULL UTILIZATION OF A PPO WHICH HAS BEEN APPROVED BY
  ALL PARTIES.

Please submit the above information within 60 days from the effective date
of coverage, if sold. Please make the premium check payable to J. Allan Hall
& Associates, Inc. or the carrier.

     ***   THIS IS NOT A CONTRACT OR BINDER OF INSURANCE   ***

The persons presenting this proposal to the client are agents of the
client and not of the insurer, reinsurer, or J. Allan Hall & Assoc.
This proposal is non-occupational and the Excess Reinsurance Agreement
will be issued when all the required information has been submitted to
J. ALLAN HALL & ASSOCIATES.

MBA 00130

ALAUG 29 '00  10:20AM CONSOL"DATED CO. 415 8830675                P. 4/4

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

INITIAL_____

QUALIFICATIONS AND CONTINGENCIES

Our proposal is contingent and subject to change upon receipt and review
of the following information:
    ACTIVELY AT WORK PROVISIONS HAVE BEEN WAIVED.

* COVERAGE EXCLUDES PROCEDURES CONSIDERED TO BE EXPERIMENTAL, INVESTIGATIONAL
  OR NOT CONSIDERED TO BE REASONABLE OR NECESSARY ACCORDING TO THE HEALTH
  CARE FINANCING ADMINISTRATION (HCFA).

* THE MINIMUM AGGREGATE ATTACHMENT POINT IS 85% OF THE AMOUNT SHOWN ON THE
  PREVIOUS PAGE.

* MENTAL & NERVOUS, ALCOHOLISM & DRUG ADDICTION TREATMENT ARE LIMITED TO THE
  LESSER OF THE PLAN BENEFITS OR 10,000. STATE OR FEDERAL STATUTES MAY
  SUPERCEDE THIS LIMITATION.

* IN ADDITION TO THE RATES SHOWN, YOU MUST ADD THE APPROPRIATE STATE SURPLUS
  LINES TAX IF THE COVERAGE IS WRITTEN BY A NON-ADMITTED CARRIER.

* QUOTE ASSUMES THAT LARGE CASE MANAGEMENT WILL BE USED. THE LCM FIRM MUST BE
  APPROVED BY ALL PARTIES.

* QUOTE ASSUMES THAT PREADMISSION CERTIFICATION WILL BE USED AND PENALTIES
  WILL BE IMPOSED FOR FAILURE TO USE.

* QUOTE ASSUMES THE USE OF CONCURRENT HOSPITAL REVIEW.

* QUOTE ASSUMES THE USE OF DISCHARGE PLANNING.

* QUOTE IS BASED ON THE FULL UTILIZATION OF A PPO WHICH HAS BEEN APPROVED BY
  ALL PARTIES.

Please submit the above information within 60 days from the effective date
of coverage, if sold. Please make the premium check payable to J. Allan Hall
& Associates, Inc. or the carrier.

    ***    THIS IS NOT A CONTRACT OR BINDER OF INSURANCE    ***

The persons presenting this proposal to the client are agents of the
client and not of the insurer, reinsurer, or J. Allan Hall & Assoc.
This proposal is non-occupational and the Excess Reinsurance Agreement
will be issued when all the required information has been submitted to
J. ALLAN HALL & ASSOCIATES.

MBA 00131

**MBA of Wyoming, Inc.**

3625 So. West Temple, Suite 200
Salt Lake City, UT  84115-4409
P. O. Box 651109
Salt Lake City, UT  84165-1109
(801) 268-3334 FAX (801) 266-2581

# F A X   T R A N S M I T T A L

Date: _10/11/00_

Time: _____

To: _Doug_

Re: _SBCFSD_

Company: _Consolidated_

From: _Dea_

Fax#: _____

Number of Pages _4 pages_
(Including This Page)

========================================================

Comments: _Renewal Application — The one I had signed showed 10% but I should have had the 12% commission one. They elected to use a 15/11 spec & aggr. Contract 25,000 Deductible & to reduce the rates 10%  The other 2% we would like to go to Consolidated & then have that reimbursed to MBA as an override  Thanks.  Have a new application sent to me_

MBA 00132

AUG-23-2000  15:25          ALLAN HALL & ASSOC.              317-264-9038    P.02

*newest*

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
 (317) 264-0020 (VOICE)
 (317) 264-9038 (FAX)

08/23/00

THE CONSOLIDATED COMPANIES
2835 TOWNSGATE DRIVE, #200
WESTGATE VILL., CA.  91361-

Fax #: (805) 497-0077

RE: SAN BENITO CONS INDEP.SCHOOLS
Proposed Effective Date: 10/01/00.

Dear   ,

We are pleased to present you with the attached proposal(s) for Excess Loss
Coverage provided by COMPANION LIFE.
We reserve the right to modify factors and/or premium rates quoted after our
review of the information requested on the following pages.

* THIS IS FOR 12 MONTH CONTRACT.
  MAJOR HUMAN ORGAN TRANSPLTS SUBJ. TO PLAN MAX. OF $150K PER INDIVIDUAL.
  LUNG CANCER LIMITED TO $50,000 LTM IF SMOKING FOR 5 YEARS OR MORE AT TIME
  OF DIAGNOSIS.


Our rates include 10.0% commission, unless noted otherwise, and the
quote is valid for 60 days from the date of this quote.

We thank you for providing us with the opportunity to serve you.
Please let us know of any questions or comments.
IF THIS OFFER IS ACCEPTED BY THE ACCOUNT, PLEASE HAVE AN OFFICER SIGN THE
ACCEPTANCE LINE BELOW, CIRCLE THE OPTION DESIRED ON PAGE 2 (EXCESS LOSS
PROPOSAL) AND INITIAL PAGE 2 AND PAGE 3 (CONTINGENCIES AND QUALIFICATIONS),
AND RETURN IT TO US WITH A DEPOSIT PREMIUM (ONE MONTH'S PREMIUM).

Sincerely,                        ACCEPTED

AL HALL
Underwriter                       *Joe D. Gonzalez, Superintendent 10-9-00*

MBA 00133

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

INITIAL

## QUALIFICATIONS AND CONTINGENCIES

ur proposal is contingent and subject to change upon receipt and review
f the following information:
ACTIVELY AT WORK PROVISIONS HAVE BEEN WAIVED.

COVERAGE EXCLUDES PROCEDURES CONSIDERED TO BE EXPERIMENTAL, INVESTIGATIONAL
OR NOT CONSIDERED TO BE REASONABLE OR NECESSARY ACCORDING TO THE HEALTH
CARE FINANCING ADMINISTRATION (HCFA).

THE MINIMUM AGGREGATE ATTACHMENT POINT IS 85% OF THE AMOUNT SHOWN ON THE
PREVIOUS PAGE.

MENTAL & NERVOUS, ALCOHOLISM & DRUG ADDICTION TREATMENT ARE LIMITED TO THE
LESSER OF THE PLAN BENEFITS OR 10,000. STATE OR FEDERAL STATUTES MAY
SUPERCEDE THIS LIMITATION.

IN ADDITION TO THE RATES SHOWN, YOU MUST ADD THE APPROPRIATE STATE SURPLUS
LINES TAX IF THE COVERAGE IS WRITTEN BY A NON-ADMITTED CARRIER.

* QUOTE ASSUMES THAT LARGE CASE MANAGEMENT WILL BE USED. THE LCM FIRM MUST BE
APPROVED BY ALL PARTIES.

* QUOTE ASSUMES THAT PREADMISSION CERTIFICATION WILL BE USED AND PENALTIES
WILL BE IMPOSED FOR FAILURE TO USE.

* QUOTE ASSUMES THE USE OF CONCURRENT HOSPITAL REVIEW.

* QUOTE ASSUMES THE USE OF DISCHARGE PLANNING.

* QUOTE IS BASED ON THE FULL UTILIZATION OF A PPO WHICH HAS BEEN APPROVED BY
ALL PARTIES.

Please submit the above information within 60 days from the effective date
of coverage, if sold. Please make the premium check payable to J. Allan Hall
& Associates, Inc. or the carrier.

   ***    THIS IS NOT A CONTRACT OR BINDER OF INSURANCE    ***

The persons presenting this proposal to the client are agents of the
client and not of the insurer, reinsurer, or J. Allan Hall & Assoc.
This proposal is non-occupational and the Excess Reinsurance Agreement
will be issued when all the required information has been submitted to
J. ALLAN HALL & ASSOCIATES.

MBA 00134

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

EXCESS LOSS PROPOSAL

INITIAL

ROUP NAME: SAN BENITO CONS INDEP.SCHOOLS

DMINISTRATOR: THE CONSOLIDATED COMPANIES

ATE PREPARED: 08/29/00                EFFECTIVE DATE: 10/01/00


pecific:
                        Option1
etention        $   75,000
ontract             15/12 (15/11) or 11/15 siv/til
/T Maximum    1,000,000

ates:
        Single   $  18.95
        Family   $  45.26
     Composite   $  24.84

nnual Premium    391,625

ggregate Factor(s):
        Medical  $ 297.74
        Dental   $  11.64
          Drug   $  39.40

MAAP*           5,499,406
Contract            15/12 (15/11) or 11/15 pv/til
Employee Rate $    1.92

nnual Premium    30,275


Reinsurance provided by: COMPANION LIFE

Underwriting assumptions:
     This proposal is based on the following enrollment:
                    Medical  Single:  1,020   Family:   294
                    Dental   Single:  1,020   Family:   294
          Prescription Drugs Single:  1,020   Family:   294

MBA 00135

JUL 18 '00  09:05AM CONSOLIDATED CO. 415 8830675                                    P.6/7

**J. ALLAN HALL & ASSOCIATES, INC.**
**55 MONUMENT CIRCLE, SUITE 1115**
**INDIANAPOLIS, INDIANA 46204-5910**
**(317) 264-0020 (VOICE)**
**(317) 264-9038 (FAX)**

EXCESS LOSS PROPOSAL

GROUP NAME: SAN BENITO CONS INDEP.SCHOOLS

ADMINISTRATOR: THE CONSOLIDATED COMPANIES

DATE PREPARED: 07/18/00                    EFFECTIVE DATE: 10/01/00

Specific:
|  | Option1 | Option2 |
|---|---|---|
| Retention | $ 75,000 | $ 100,000 |
| Contract | 24/12 | 24/12 |
| S/T Maximum | 1,000,000 | 1,000,000 |

Rates:
| Single | $ 18.81 | $ 13.79 |
|---|---|---|
| Family | $ 44.93 | $ 32.80 |
| Composite | $ 24.65 | $ 18.04 |

Annual Premium    388,747    284,508

Aggregate Factor(s):
| Medical | $ 330.64 | $ 349.89 |
|---|---|---|
| Dental | $ 11.35 | $ 11.35 |
| Drug | $ 42.08 | $ 42.08 |

MAAP*            6,056,489    6,360,023
Contract         24/12        24/12
Employee Rate $  1.94      $  1.99

Annual Premium   30,590       31,378

Reinsurance provided by: COMPANION LIFE

Underwriting assumptions:
    This proposal is based on the following enrollment:
| | | Single: | | Family: | |
|---|---|---|---|---|---|
| Medical | | 1,020 | | 294 | |
| Dental | | 1,020 | | 294 | |
| Prescription Drugs | | 1,020 | | 294 | |

MBA 00136

JUL 18 '00  09:05AM CONSOLIDATED CO. 415 8830675                    P.6/

**J. ALLAN HALL & ASSOCIATES, INC.**
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

EXCESS LOSS PROPOSAL

GROUP NAME: SAN BENITO CONS INDEP.SCHOOLS                    INITIAL _____

ADMINISTRATOR: THE CONSOLIDATED COMPANIES

DATE PREPARED: 07/18/00                    EFFECTIVE DATE: 10/01/00

Specific:

|  | Option1 | Option2 |
|---|---|---|
| Retention | $ 75,000 | $ 100,000 |
| Contract | 24/12 | 24/12 |
| L/T Maximum | 1,000,000 | 1,000,000 |

Rates:

|  | Option1 | Option2 |
|---|---|---|
| Single | $ 18.81 | $ 13.79 |
| Family | $ 44.93 | $ 32.80 |
| Composite | $ 24.65 | $ 18.04 |

Annual Premium  388,747    284,508

Aggregate Factor(s):

|  | Option1 | Option2 |
|---|---|---|
| Medical | $ 330.64 | $ 349.89 |
| Dental | $ 11.35 | $ 11.35 |
| Drug | $ 42.08 | $ 42.08 |
| MAAP* | 6,056,489 | 6,360,023 |
| Contract | 24/12 | 24/12 |
| Employee Rate $ | 1.94 | $ 1.99 |

Annual Premium   30,590    31,378

Reinsurance provided by: COMPANION LIFE

Underwriting assumptions:
    This proposal is based on the following enrollment:

|  |  | Single | Family |
|---|---|---|---|
| Medical | Single: | 1,020 | Family: 294 |
| Dental | Single: | 1,020 | Family: 294 |
| Prescription Drugs | Single: | 1,020 | Family: 294 |

MBA 00137

# J. ALLAN HALL & ASSOCIATES, INC.

February 4, 2000

Mr. Don Merrill
MBA of Salt Lake City
1211 E. 3900 South, #C101
Salt Lake City, UT 84165

RE      :      San Benito Consolidated ISD - Stop Loss Policy

Dear Mr. Merrill:

Enclosed you will find the Reinsurance Agreement for the captioned account's stop loss coverage. One copy is for your records, and one is to forward on to the account. **Please review the contract carefully.** If the terms and conditions of the enclosed reflect accurately the result of our negotiation based on your records, please forward this Reinsurance Agreement to the account.

**Please also note we neglected to get the enclosed Companion Life Specific Excess Medical Expense Coverage Dec Form (Disclosure Form) filled out and signed by the employer. Since you will be meeting with them on Tuesday, please have the form signed and completed, and return the original to me.**

We acknowledge that there have been no amendments to the captioned group's Plan Document, effective January 1, 1998, and the said Plan Document applies to the current renewal contract term of January 1, 2000 through December 31, 2000.

If you or the account have any questions, please do not hesitate to contact me. We do appreciate your business.

Sincerely,

Jeanette L. Galvan
Office Assistant

Enclosures

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

09/17/99

DOUG ROUTH
THE CONSOLIDATED COMPANIES
100 ROWLAND WAY, SUITE 155
NOVATO, CA. 94945

Fax #: (415) 897-6649

RE: SAN BENITO CONS INDEP SCHOOLS
Proposed Effective Date: 10/01/99.

Dear DOUG,

We are pleased to present you with the attached proposal(s) for Excess Loss
Coverage provided by COMPANION LIFE.
We reserve the right to modify factors and/or premium rates quoted after our
review of the information requested on the following pages.

Our rates include 10.0% commission, unless noted otherwise, and the
quote is valid for 60 days from the date of this quote.

We thank you for providing us with the opportunity to serve you.
Please let us know of any questions or comments.
IF THIS OFFER IS ACCEPTED BY THE ACCOUNT, PLEASE HAVE AN OFFICER SIGN THE
ACCEPTANCE LINE BELOW, CIRCLE THE OPTION DESIRED ON PAGE 2 (EXCESS LOSS
PROPOSAL) AND INITIAL PAGE 2 AND PAGE 3 (CONTINGENCIES AND QUALIFICATIONS),
AND RETURN IT TO US WITH A DEPOSIT PREMIUM (ONE MONTH'S PREMIUM).

Sincerely,                              ACCEPTED

AL HALL                                 _Jos. D. Gonzales_  10-7-99
Underwriter

MBA 00139

TOTAL P.04

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)


EXCESS LOSS PROPOSAL

GROUP NAME: SAN BENITO CONS INDEP. SCHOOLS                 INITIAL *dun*

ADMINISTRATOR: THE CONSOLIDATED COMPANIES

DATE PREPARED: 09/17/99                    EFFECTIVE DATE: 10/01/99


Specific:

|  | Option1 | Option2 |
|---|---|---|
| Retention | $ 75,000 | $ 100,000 |
| Contract | 15/12 | 15/12 |
| L/T Maximum | 1,000,000 | 1,000,000 |

Rates:

|  | Option1 | Option2 |
|---|---|---|
| Single | $ 12.68 | $ 8.79 |
| Family | $ 31.79 | $ 23.47 |
| Composite | $ 16.81 | $ 11.75 |

Annual Premium   262,247     183,253

Aggregate Factor(s):

|  | Option1 | Option2 |
|---|---|---|
| Medical | $ 319.47 | $ 322.70 |
| MAAP* | 4,983,732 | 5,034,120 |
| Contract | 15/12 | 15/12 |
| Employee Rate | $ 1.07 | $ 1.07 |

*(RX & Dental)*   *see attach 75,000   Sg 244.42  Fam 591.65*

Annual Premium   16,692     16,692


Reinsurance provided by: COMPANION LIFE

Underwriting assumptions:
    This proposal is based on the following enrollment:
              Medical   Single:   1,019   Family:   281

MBA 00140

J. ALLAN HALL & ASSOCIATES, INC.
55 MONUMENT CIRCLE, SUITE 1115
INDIANAPOLIS, INDIANA 46204-5910
(317) 264-0020 (VOICE)
(317) 264-9038 (FAX)

INITIAL _Dean_

## QUALIFICATIONS AND CONTINGENCIES

Our proposal is contingent and subject to change upon receipt and review
of the following information:
   ACTIVELY AT WORK PROVISIONS HAVE BEEN WAIVED.

* COVERAGE EXCLUDES PROCEDURES CONSIDERED TO BE EXPERIMENTAL, INVESTIGATIONAL
  OR NOT CONSIDERED TO BE REASONABLE OR NECESSARY ACCORDING TO THE HEALTH
  CARE FINANCING ADMINISTRATION (HCFA).

* THE MINIMUM AGGREGATE ATTACHMENT POINT IS 85% OF THE AMOUNT SHOWN ON THE
  PREVIOUS PAGE.

* SINGLE/FAMILY AGGREGATE FACTORS ARE $244.40/$591.68.

* MENTAL & NERVOUS, ALCOHOLISM & DRUG ADDICTION TREATMENT ARE LIMITED TO THE
  LESSER OF THE PLAN BENEFITS OR 10,000. STATE OR FEDERAL STATUTES MAY
  SUPERCEDE THIS LIMITATION.

* IN ADDITION TO THE RATES SHOWN, YOU MUST ADD THE APPROPRIATE STATE SURPLUS
  LINES TAX IF THE COVERAGE IS WRITTEN BY A NON-ADMITTED CARRIER.

* QUOTE ASSUMES THAT LARGE CASE MANAGEMENT WILL BE USED. THE LCM FIRM MUST BE
  APPROVED BY ALL PARTIES.

* QUOTE ASSUMES THAT PREADMISSION CERTIFICATION WILL BE USED AND PENALTIES
  WILL BE IMPOSED FOR FAILURE TO USE.

* QUOTE ASSUMES THE USE OF CONCURRENT HOSPITAL REVIEW.

* QUOTE ASSUMES THE USE OF DISCHARGE PLANNING.

* QUOTE IS BASED ON THE FULL UTILIZATION OF A PPO WHICH HAS BEEN APPROVED BY
  ALL PARTIES.


Please submit the above information within 60 days from the effective date
of coverage, if sold. Please make the premium check payable to J. Allan Hall
& Associates, Inc. or the carrier.

   ***   THIS IS NOT A CONTRACT OR BINDER OF INSURANCE   ***

The persons presenting this proposal to the client are agents of the client
and not of the insurer, reinsurer, or J. Allan Hall & Assoc.
This proposal is non-occupational and the Excess Reinsurance Agreement

# AMENDMENT #8

## San Benito Consolidated Independent School District
## Employee Medical Benefit Plan

The Plan Document, Employee Medical Benefit Plan for the Employees of San Benito Consolidated Independent School District, is hereby amended effective **January 1, 1999,** as follows:

<u>Reference:</u>    **Major Human Organ Transplants /**
             **Addition of <u>Per Transplant</u> to Plan Maximum**

*Type II Transplants* - Major human organ transplants subject to **a Plan Maximum Per Transplant of $150,000** per individual; Charges related to, but which are not a direct procedure of the transplant, will be covered under those benefits available elsewhere in the Plan:

Bone Marrow Transplants
Heart and Lung Transplants
Heart Transplants (mechanical, artificial or other
         than human heart transplants not covered)
Liver Transplants
Lung Transplants
Pancreas Transplants

Signed at _____, State of Texas, this

_____ day of _____, 199__.

                                        **San Benito Consolidated**
                                        **Independent School District**

Witness:                                 By: _____

_____            Title: _____

MBA 00142

J. ALLAN HALL & ASSOCIATES, INC.

# Companion Life Insurance Company

51 Clemson Road, Suite C
Columbia, SC  29223

## SPECIFIC EXCESS MEDICAL EXPENSE COVERAGE DECLARATION FORM

For: San Benito Consolidated Independent School District
Proposed Effective Date:  October 1, 1999

We agree that proposed coverage is subject to the terms and provisions of Companion Life Insurance Company.

We have listed below all individuals identified, as of the signature date, having a "serious claim" diagnosis.  The amount of claim payments on these individuals along with their current status has been indicated.

A "serious claim" is any claim known by Us (the Employer) or our Administrator which:

1.  Whether incurred or paid, has exceeded 50% of the Specific Deductible or $50,000 (whichever is less), as of the signature date below; or
2.  Might be expected to exceed the excess loss retention due to the nature of the illness or injury.

| Claimant | Diagnosis | Prognosis or Add'l Treatment Anticipated | Reported Paid Claims | Add'l Claims Paid or Pended |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

We acknowledge that J. Allan Hall & Associates, Inc., on behalf of  Companion Life Insurance Company, retains the right to re-underwrite any individual whose actual claims (paid or pending) are greater than the amounts reported (above or previously) to J. Allan Hall & Associates, Inc., by more than $20,000 as of the signature date below.  We acknowledge that any individual, known by Us (the Employer) or by our Third Party Administrator, who has incurred a "serious claim" may be excluded from coverage, unless disclosed by us and approved by J. Allan Hall & Associates, Inc.

EMPLOYER:  San Benito Consolidated Independent School District

By: _____    Date:_____

Title: _____

Circle Tower • 55 Monument Circle • Suite 1115
Indianapolis, IN 46204

MBA 00143

Companion Life Insurance Company, Columbia, South Carolina agrees to pay Excess Loss Insurance benefits under the provisions of this Contract to the Contractholder listed in the Schedule of Excess Loss Insurance.

## READ YOUR CONTRACT CAREFULLY

This Contract is legally binding between the Contractholder and Companion Life Insurance Company ("Company"). The consideration for this Contract includes, but is not limited to, the Application and the payment of premiums as provided hereinafter.

## AGREEMENT

The Company will pay the Aggregate and Specific Benefits provided in this Contract. Payment is subject to the conditions, limitations and exceptions of this Contract.

The Contractholder agrees to pay premiums when due and to comply with the Contract provisions.

The Contractholder understands the liability assumed under the portion of the employee benefit plan which he is self-insuring and further understands that he is exempted from Article 1.14-1 of the Texas Insurance Code only if a qualified employee benefits plan has been filed and meets the requirements of the Employees Retirement Income Security Act.

This is not a policy of workers' compensation insurance. The Contractholder does not become a subscriber to the workers' compensation system by purchasing this policy, and if the Contractholder is a non-subscriber, the Contractholder loses those benefits which would otherwise accrue under the workers' compensation laws. The Contractholder must comply with the workers' compensation law as it pertains to non-subscribers and the required notification that must be filed and posted.

This Contract takes effect on the Effective Date shown in the Schedule, which will be the date of issue, and terminates on the end of the Contract Period shown in the Schedule unless it is renewed. All periods indicated in the Contract begin and end at 12:01 A.M. standard time at the Contractholder's office.

This Contract Form is governed by the laws of the state of Texas.

The sections set forth on the following pages are a part of this Contract and take effect on the Effective Date.

IN WITNESS WHEREOF Companion Life Insurance Company has caused this Contract to be executed by its President and Secretary at Columbia, South Carolina.

_M. Edward Sellers_

_____
President

Policy Providing Excess Loss Insurance
Nonparticipating

COMPANION LIFE INSURANCE
51 CLEMSON ROAD, SUITE C
Columbia, SC 29223

**COMPANION LIFE INSURANCE COMPANY**
**SCHEDULE OF EXCESS LOSS INSURANCE**

1. Contract Number:  CLI-3044

2. Contractholder:  San Benito Consolidated Independent School District

3. Address:  240 North Crockett

   City: San Benito                              State:  TX              Zip Code:      78586

4. Subsidiary or affiliated companies (companies under common control through stock ownership, contract, or otherwise) to be included (list legal name and addresses):
    None

5. Name and address of Designated Third Party Administrator:
    Merrill Bostrom Associates, 1121 East 3900 South, #C101, Salt Lake City, Utah  84165-1109

6. Effective Date:  October 1, 1999

7. **GENERAL SCHEDULE OPTIONS:**

   (a)  Contract Period  10/01/99      to 10/01/2000

   (b)  Disabled Persons          ☒ are    ☐ are not covered.
        Retired Employees         ☒ are    ☐ are not covered.

   (c)  Aggregate Benefit          ☒ Yes  ☐ No

        Aggregate Contract Basis: Employee Benefit Plan Expenses must be
        Incurred from      07/01/99   through  09/30/2000  , and
        Paid from  10/01/99          through 09/30/2000  .
        Claims Incurred prior to the Contract Effective Date are limited to $    N/A    .

        Aggregate eligible expenses include:
        ☒ Medical            ☒ Prescription Card Service
        ☒ Dental Care        ☐ Weekly (Disability) Income
        ☐ Vision Care        ☐ Other _____

        Aggregate Monthly Factor per single Employee:        $ 244.40
                                            Family:          $ 591.68
                                            Composite:       $ 319.47
        Aggregate Payable Percentage (excess of Deductible):      100%
        Maximum Eligible Claim Expense Per Covered Person:   $ 75,000
        Minimum Aggregate Deductible:                        $ 4,236,172
        Maximum Aggregate Benefit (excess of Deductible):    $ 1,000,000

7. **GENERAL SCHEDULE OPTIONS: (Continued)**

(d)   Monthly Aggregate Accommodation     ☐ Yes    ☒ No

(e)   Terminal Liability                  ☐ Yes    ☒ No

(f)   Specific Benefit                    ☒ Yes    ☐ No
      Specific Contract Basis: Employee Benefit Plan expenses must be
          Incurred from   07/01/99   through  09/30/2000  .
          Paid from       10/01/99   through 09/30/2000   .

      Claims Incurred prior to the Contract Effective Date are
      limited to:                                    $  N/A

      Specific Eligible Expense:  **Medical Only**
      Specific Deductible (per person):               $ 75,000
      Specific Payable Percentage (excess of Deductible):   100%
      Maximum Specific Benefit (per person in excess of
          Specific Deductible):                       $ 925,000

8. **PREMIUMS:**

(a)   Aggregate Premium
          Premium Per Month Per Unit:                 $ 1.07
          Minimum Annual Aggregate Premium            $ 16,692

      Monthly Aggregate Accommodation
          Premium Per Month Per Unit:                 $ N/A
          Annual Premium in Advance:                  $ N/A

      Terminal Liability
          Premium Per Month Per Unit:                 $ N/A
          Annual Premium in Advance:                  $ N/A

(b)   Specific Premium
          Premium Per Month Per Single Employee:      $ 12.68
                                     Family:          $ 31.79
                                  Composite:          $ 16.81
          Minimum Monthly Specific Premium:           $ N/A

9. **SPECIAL RISK LIMITATIONS:**

Contract will be based upon the current employee benefits as defined in the Employee Benefit
Plan by reference or by attachment, except as noted below:

Specific:       None

Aggregate:      None

## I.    DEFINITIONS

As used in this Contract, the following definitions shall be applicable:

**Agent**, when referring to the Contractholder, means the Contractholder's representative, including but not limited to its Designated Agent, Broker, or Third Party Administrator.

**Aggregate Benefit** means the amount that the Company agrees to pay the Contractholder after the end of the Contract Period for eligible claims Paid by the Contractholder as set forth in the Schedule and pursuant to the terms, conditions and limitations of the Contract.

**Aggregate Contract Basis** identifies the dates during which Employee Benefit Plan expenses must be incurred and must be paid to be considered eligible for reimbursement as Aggregate Benefits.

**Aggregate Deductible Per Month** means the Aggregate Monthly Factor shown in the Schedule multiplied by the Number of Covered Units.

**Aggregate Deductible** means the sum of each Aggregate Deductible Per Month for each month during the Contract Period or fraction thereof.

**Minimum Aggregate Deductible** means the lowest possible Aggregate Deductible applicable to the Contract Period or fraction thereof.  This amount is set forth in the Schedule.

**Continuation Beneficiary** is a Covered Unit which elects to extend its group health coverage under the Employee Benefit Plan entitled under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA).

**Contract** means the entire agreement between the Contractholder and the Company, specifically including the Contract Application, the Contract Form, the Contract Addenda (if any), and a copy of the Contractholder's Employee Benefit Plan.

**Contract Month** means a period measured from the Effective Date of this Contract, while this Contract is in force.  Each new Contract Month will begin on a day which corresponds to the Effective Date.  If there is no such day in any applicable month, then the last day of the month will be used.

**Contract Period** is stated in the Schedule.

**Contractholder** is named in the Schedule.

**Covered Person** refers to each person, individually, who is a Covered Unit, or, in the case of a dependent, a member of a Covered Unit.  In no event will coverage for a dependent become effective before the Effective Date of Coverage of the plan participant under the Employee Benefit Plan.

**Covered Unit**, for purposes of calculation of the premiums and the Aggregate Deductible Per Month, means a plan participant, a plan participant with dependents, or such other defined unit as agreed upon between the Company and the Contractholder, provided such plan participant, dependents or such other defined unit is covered under the Employee Benefit Plan.

I.    **DEFINITIONS (Continued)**

**Dependent** means a person who is defined as a dependent under the Employee Benefit Plan.

**Disabled Person** is a plan participant not actively at work or, in the case of a dependent or Continuation Beneficiary, is by disability unable to perform his or her normal functions of a person of like sex and age on the Effective Date of this Contract or the date such person becomes eligible for coverage under the Employee Benefit Plan.

**Eligible Claims Payments** means expenses of the Employee Benefit Plan qualifying for coverage under the terms and conditions of this Contract.

**Employee** means a person who is defined as an employee under the Employee Benefit Plan.

**Employee Benefit Plan** means the master plan document of the Contractholder to provide medical expense benefits to the Contractholder's covered plan participants and dependents of such plan participants in effect on the Effective Date of this Contract, a copy of which is attached to and made a part of this Contract.

**Incurred** refers to the date on which a covered medical service was rendered, the date disability benefit payments become due, or a covered medical purchase was made for a Covered Person under the Employee Benefit Plan.

**Maximum Aggregate Benefit** means the amount set forth in the Schedule as the maximum total Aggregate Benefit payable under the terms, conditions and limitations of this Contract during the Contract Period.

**Maximum Eligible Claim Expense Per Person,** as it relates to aggregate coverage, means the maximum dollar value of claims Paid on any one Covered Person that can apply toward satisfaction of an Aggregate Deductible, or that can apply toward the calculation of the Aggregate Benefit for a Contract Period.

**Maximum Specific Benefit** means the amount set forth in the Schedule that is the maximum total Specific Benefit payable under the terms, conditions and limitations of this Contract during the period an individual is a Covered Person under the Employee Benefit Plan, regardless of the number of years the Covered Person is eligible under the Employee Benefit Plan and regardless of whether expenses for this Covered Person were Incurred and/or Paid during this Contract Period. In the context of the definition of Maximum Specific Benefit, references to "Employee Benefit Plan" include all predecessors and successors of the particular plan in effect on the Contract's Effective Date.

**Number of Covered Units** means the total number of Covered Units existing in any Contract Month.

**Paid** means that funds are actually disbursed by the Contractholder or his Agent. Payment of a claim is the unconditional and direct payment of a claim to a Covered Person or their health care providers. Payment will be deemed made on the date that both (1) the payor directly tenders payment by mailing (or otherwise delivering) a draft or check, and (2) the account upon which the payment is drawn contains, and continues to contain, sufficient funds to permit the check or draft to be honored.

CLXI POL                                                                                    MBA 00148

I.    **DEFINITIONS (Continued)**

Should the account upon which payment is drawn not contain sufficient funds to cover all outstanding checks and drafts on the account, then the Company may consider, in its sole discretion, any particular checks or drafts as not having been paid, but only to the total amount representing the difference between the funds in the account and the total of outstanding checks and drafts.

**Payable Percentage** means the percentage payable as shown in the Schedule.  The calculation of Specific Benefits may be subject to a different Payable Percentage than the calculation of Aggregate Benefits.

**Plan Participant** means an employee, a dependent or any other person who is eligible and who is covered under the Employee Benefit Plan.  No plan participant may be covered by this contract prior to the date his or her coverage is effective under the Employee Benefit Plan or after the date his or her coverage under the Employee Benefit Plan Ends.

**Proof of Loss** is the form authorized by the Company to be used for the submission of claims as well as the supporting documentation reasonably necessary for the Company's independent evaluation of the legitimacy and extent of the claim.   Claims for expenses not specifically identified in previously submitted Proofs of Loss must be accompanied by separate Proofs of Loss.

**Schedule** means the Schedule of Excess Loss Insurance.

**Specific Benefit** means the amount the Company will pay to the Contractholder for eligible claims Paid by the Contractholder over and above the Contractholder's Specific Deductible Per Person, and pursuant to the terms, conditions and limitations of the Contract.

**Specific Contract Basis** identifies the dates during which Employee Benefit Plan expenses must be Incurred and must be Paid to be considered eligible for reimbursement as Specific Benefits.

**Specific Deductible** means the per Covered Person deductible as shown in the Schedule.]

II.    **BENEFITS**

The Company will pay, subject to the terms, conditions and limitations of the Contract, the following benefits, if shown in the Schedule, to the Contractholder within a reasonable time upon receipt of a fully executed Proof of Loss:

1.    **Aggregate**

The Aggregate Benefit for the Contract Period, or fraction thereof, is the total of the Eligible Claim Payments, on an Incurred and/or Paid basis as shown in the Aggregate Contract Basis of the Schedule:

    a.    less the Aggregate Deductible or Minimum Aggregate Deductible, whichever is greater; and
    b.    less the amount of the claims Paid by the Contractholder in excess of the Maximum Eligible Claim Expense Per Person as shown in the Schedule; and
    c.    less amounts recovered from other sources;
    d.    multiplied by the Aggregate Payable Percentage.

CLXI POI

MBA 00149

II.   **BENEFITS (Continued)**

Aggregate Benefits are not payable until after the end of the Paid basis shown in the Aggregate Contract Basis of the Schedule.   If this Contract should terminate prior to the end of the Contract Period, the Company shall not be liable for Aggregate Benefits for expenses Incurred or Paid by the Contractholder after the termination date.

In no event will the Aggregate Benefit exceed the Maximum Aggregate Benefit shown in the Schedule.

2.   **Specific**

The Specific Benefit with regard to each Covered Person, is the total of the Eligible Claim Payments, on a Incurred and/or Paid basis as shown in the Specific Contract Basis of the Schedule;

a.   less the Specific Deductible; and
b.   less amounts recovered from other sources;
c.   multiplied by the Specific Payable Percentage.

The Contractholder shall not be entitled to any Specific Benefit unless and until the Contractholder has actually Paid the full amount of the Specific Deductible as set forth in the Schedule for the Covered Person(s) for which the Specific Benefit is sought.   The Contractholder shall only be entitled to a Specific Benefit up to the amount actually Paid by Contractholder over and above the Specific Deductible.

If this Contract should terminate prior to the end of the Contract Period, the Company shall not be liable for Specific Benefits for expenses Incurred or Paid by the Contractholder after the termination date.

In no event will the Specific Benefit with regard to any Covered Person exceed the Maximum Specific Benefit shown in the Schedule.

III.   **LIMITATIONS**

1.   This Contract will not pay the Contractholder for any loss or expense caused by or resulting from any of the following:

a.   Expenses incurred while the Employee Benefit Plan is not in force with respect to the Covered Person.

b.   Expenses resulting from weekly (disability) income, dental, vision or any prescription card service, unless shown in the Schedule.

c.   Liability assumed by the Contractholder under any contract or service agreement other than the Employee Benefit Plan.

d.   Expenses as the result of extra-contractual damages; compensatory damages; or punitive damages.

CLXLROI                                                   MBA 00150

### III.   LIMITATIONS (Continued)

e.   Expenses resulting from services which are billed in excess of the general level of charges being made by other providers of services in the locality where the service is rendered.

f.   Expenses for benefits for accidental bodily injury or sickness arising out of or in the course of any occupation for wage or profit, or for which the Covered Person would be entitled to benefits under any Worker's Compensation, U. S. Longshoremen and Harbor Worker's or other occupational disease legislation or policy, whether or not such policy is actually in force.

g.   Expenses which (1) are not accepted as standard medical treatment for the illness, disease or injury being treated by physicians practicing the suitable medical specialty; (2) are the subject of scientific or medical research or study to determine the item's effectiveness and safety; (3) have not been granted, at the time services were rendered, any required approval by a federal or state governmental agency, including without limitation, the Federal Department of Health and Human Services, Food and Drug Administration, or any comparable state governmental agency, and the Federal Health Care Finance Administration as approved for reimbursement under Medicare Title XVIII; or (4) are performed subject to the Covered Person's informed consent under a treatment protocol that explains the treatment or procedure as being conducted under a human subject study or experiment.

h.   Cost of the administration of claim payments or expense of litigation with individual claimants.

i.   Expenses for benefits to any Covered Person with coverage under any other plan, including Medicare, which, when combined with the benefits payable by such other plan, would cause the total to exceed 100% of the Covered Person's actual expenses.

j.   Payments under the Employee Benefit Plan arising out of or caused by or contributed to or in consequence of war, hostilities (whether war be declared or not), invasion or civil war.

2.   If the Schedule shows disabled persons are not covered, no benefits will be paid under the Contract for expenses Incurred or Paid under the Employee Benefit Plan for a Disabled Person until:

a.   if a plan participant, he or she returns to active, full-time employment for at least one (1) full working day; or

b.   if a dependent or Continuation Beneficiary, he or she is able to perform the normal functions of a person of like sex and age.

CLXLPOL

MBA 00151

**III.    LIMITATIONS (Continued)**

3.   Newborn children of plan participants who have previously enrolled and continue to cover their eligible dependents under the Employee Benefit Plan will be eligible under the Contract on the date of the child's birth.  Employees who have not previously enrolled for dependent coverage will be eligible for newborn child coverage as defined within the Employee Benefit Plan.

4.   Retired plan participants and their dependents, who are eligible under the Employee Benefit Plan, will be eligible for coverage under the Contract only if so indicated in the Schedule.

**IV.    CLAIMS PROVISIONS**

1.   **Payment of Claim:**  All benefits as they become payable under this Contract will be paid to the Contractholder.  All expenses as they become payable under the Employee Benefit Plan shall be Paid by the Contractholder.  The Company shall pay claim within a reasonable time after receiving fully executed Proofs of Loss and the documentation reasonably necessary to evaluate the eligibility and extent of the claim.

2.   **Warranty:**   Upon presentation of Proof of Loss to the Company for Aggregate[ or Specific] Benefits, the Contractholder warrants that all monies necessary to pay for services and supplies have been paid to the respective providers of medical services or supplies to which the claim for reimbursement relates.

3.   **Notice of Claim:**  The Contractholder shall give written notice of claims to the Company on the Company's customary notice (Proof of Loss form), within thirty (30) days of the date the Contractholder becomes aware of the existence of facts which would reasonably suggest the possibility that benefits will be incurred which are covered by this Contract and which are equal to or exceed fifty percent (50%) of the Specific Deductible.

In addition, the Contractholder shall notify the Company immediately of the expenses of any Covered Person which meet any of the following criteria:

a.   continuous hospitalization for more than one month, or
b.   a claim for any one of the following disabilities: mental disorder requiring hospitalization, brain injury, spinal injury resulting in real or suspected paralysis of the limbs, serious burns involving ten percent (10%) or more of the body with third degree burns or thirty percent (30%) or more of the body with second degree burns, multiple or serious fractures, crushing or massive internal injuries, premature births, Acquired Immune Deficiency Syndrome (AIDS).

The Contractholder shall submit on a timely basis proofs, reports, and supporting documents including, but not limited to, a monthly summary of all Eligible Claims Payments processed by the Contractholder.

9

## V.   CONTRACT TERMINATION

The Contract and all benefits hereunder will terminate upon the earliest of the following dates:

1.   The termination date specified in writing by the Contractholder provided that the Company is notified not less than 31 days in advance of the termination date.

2.   The end of any period for which premiums were paid and subsequent premiums are not paid.

3.   The end of the Contract Period.

4.   The date of termination of the Employee Benefit Plan.

5.   The date of cancellation of the administrative agreement between the Contractholder and the Designated Third Party Administrator, unless the Company has, prior to such cancellation, consented in writing to the Contractholder's designation of a successor Third Party Administrator.

6.   This Contract will automatically terminate if the Contractholder does not pay claims or make available funds to pay claims as required by the Contract.

## VI.   MISCELLANEOUS PROVISIONS

1.   **Liability:**  The Company will have neither the right nor the obligation under this Contract to directly pay any Covered Person [or provider of professional or medical services] for any benefit which the Contractholder has agreed to provide under the terms of the Employee Benefit Plan.  The Company's sole liability hereunder is to the Contractholder, subject to the terms, conditions and limitations of this Contract.  Nothing in this Contract shall be construed to permit a Covered Person to have a direct right of action against the Company.

2.   **Payment of Premiums:**  Each Premium for this Contract is payable on or before its due date as set forth in the Schedule to the Company or to this authorized representative.  Payment of a premium will not maintain this Contract in force beyond the period for which such premium is paid, except as otherwise stated in the Grace Period.

   If the Effective Date of this Contract is other than the first day of a calendar month, premiums payable under this Contract are due and payable on the first of each calendar month.

3.   **Grace Period:**  A Grace Period of thirty (30) days will be allowed for the payment of each premium after the first premium.  Should a premium otherwise due not be paid during the Grace Period, this Contract will terminate without further notice retroactive to the date for which premiums were last paid.  The liability of the Company will be limited to claims Paid by the Contractholder prior to the date of termination.  There will be no refund of any premium shown in the Schedule.

10

MBA 00153

**VI.  MISCELLANEOUS PROVISIONS  (Continued)**

4.  **Entire Contract:**  This Contract Form as issued to the Contractholder, together with the Contractholder's Application, Contract Addenda (if any), and a copy of the Contractholder's Employee Benefit Plan, constitute the entire contract.  The Company has relied upon the underwriting information provided by the Contractholder or the Contractholder's Agent, in the issuance of this Contract.  Should subsequent information become known which, if known prior to issuance of this Contract, would affect the rates, deductibles, terms or conditions for coverage hereunder, the Company will have the right to revise the rates, deductibles, terms or conditions as of the Effective Date of issuance, by providing written notice to the Contractholder.

5.  **Concealment, Fraud:**  This entire Contract will be void if, whether before or after a claim or loss, the Contractholder or its Agent has concealed or misrepresented any material fact or circumstance concerning this Contract or the subject thereof, including any claim thereunder or in any case of fraud by the Contractholder or its Agent relating thereto.

6.  **Clerical Error:**  Clerical error, whether by the Contractholder or by the Company, in keeping any records pertaining to the coverage, will not invalidate coverage otherwise validly in force nor continue coverage otherwise validly terminated.

7.  **Audits:**  The Company will have the right: (1) to inspect and audit all records and procedures of the Contractholder and Designated Third Party Administrator; and (2) to require, upon request, proof of records satisfactory to the Company that payment has been made to the Covered Person or the provider of such services or benefits which are the basis for any claim by the Contractholder hereunder.

8.  **Notice of Appeal:**  Any objection, notice of legal action, or complaint received on a claim process by the Contractholder or the Third Party Administrator, and on which it reasonably appears a benefit will be payable to the Contractholder under this Contract shall be brought to the immediate attention of the claims department of the Company.

9.  **Changes:**  Only the President or Executive Officer of the Company have the authority to alter this Contract, or to waive any of the Company's rights and then only in writing.  No such alteration of this Contract shall be valid unless endorsed on or attached to this Contract.  No Agent, Broker, or Third Party Administrator has the authority to alter this Contract or to waive any of its provisions.

10.  **Notice:**  For the purpose of any notice required from the Company under the provisions of this Contract, notice to the Contractholder's Designated Third Party Administrator shall be considered notice to the Contractholder.

CLXLPOL

MBA 00154

## VI.   MISCELLANEOUS PROVISIONS (Continued)

11. **Amendments to the Employee Benefit Plan:**  The Employee Benefit Plan shall not be changed while this Contract is in force without the prior written consent  of  the Company.  Notice of any amendment to the Employee Benefit Plan must be given to the Company or its authorized representative at least thirty (30) days prior to the Effective Date of the amendment.  The Company will have the sole option to accept the amendment to the Employee Benefit Plan, and if accepted, the Company reserves the right to revise the rates, deductibles, terms or conditions of the Contract as of the Effective Date of the amendment.  If such amendment is not agreed to in writing, the Company will be liable to pay benefits as if the Employee Benefit Plan was not changed.

12. **Responsibilities      of      the      Contractholder's      Designated      Third      Party Administrator:**  Without waiving any of its rights under this Contract, and without making the Designated Third Party Administrator a party to this Contract, the Company agrees to recognize the Designated Third Party Administrator as respects the normal administration of the Contractholder's Plan subject to:

    a.   The Third Party Administrator being responsible on behalf of the Contractholder for auditing, calculating and processing all claims eligible under the Employee Benefit Plan within a reasonable period of time, preparing periodic reports as required by the Company and maintaining and making available to the Company at all times such information as the Company may reasonably require for proof of payment of the claims(s) by the Contractholder;

    b.   The Third Party Administrator performing such other duties as may be reasonably required by the Company, including but not limited to, maintaining an accurate record of eligible Covered Persons of the Contractholder;

    c.   The Company will not be responsible for any compensation due the Designated Third Party Administrator for functions performed in relation to this Contract; and

    d.   This Contract will not be deemed to make the Company a party to any agreement between the Contractholder and the Designated Third Party Administrator.

13. **Hold Harmless:**

    a.   The Contractholder agrees to indemnify and hold the Company harmless for any legal expenses incurred, reasonable settlements made, or judgment(s) awarded, arising out of any dispute involving a plan participant or former plan participant of the Contractholder's Employee Benefit Plan provided such legal expenses, settlements, or judgments were not incurred as a result of the sole negligence or intentional wrongful acts of the Company.

    The Company, following any notification of its being, or likely to be, named as a defendant on any action concerning the aforementioned dispute will, within a reasonable time, in writing, notify the Contractholder of the dispute.  The Company will cooperate with the Contractholder in matters pertaining to the dispute, however, such cooperation with the Contractholder will not waive the right of the Company to solely defend or settle any action in a manner it deems prudent.

## VI.   MISCELLANEOUS PROVISIONS (Continued)

b.   The Contractholder shall be responsible for any State premium taxes incurred with respect to funds paid to or by the Contractholder under the Employee Benefit Plan. Taxes incurred with respect to premiums paid for the Contract will be the responsibility of the Company.

14. **Offset:**   The Company will be entitled to offset claim reimbursements to the Contractholder against premiums due and unpaid by the Contractholder.

15. **Assignments:**  The Contractholder shall not assign any of its rights under this Contract without the prior written consent of the Company, and any assignment without prior written consent shall be void.

16. **Subrogation:**   The Contractholder shall prosecute any and all valid claims that the Contractholder may have against third parties arising out of any occurrence resulting in a loss payment by the Contractholder and to account for any amounts recovered.  Should the Contractholder fail to prosecute any valid claims against third parties and the Company thereupon becomes liable to make payments to the Contractholder under the terms and conditions of this Contract, then the Company shall assume all the Contractholder's rights to prosecute any valid claims against third parties, and the Contractholder will be responsible for any reasonable legal expenses incurred in the course of the prosecution.

17. **Recoveries:**   The Company shall be entitled to recover first up to its full share of reimbursed claims before the Contractholder shares in any amount so recovered whether by way of subrogation or otherwise.

18. **Arbitration:**  Any controversy or claim arising out of or relating to this Contract, or the breach thereof, shall be settled by Arbitration in accordance with the rules of the American Arbitration Association, with the express stipulation that the arbitrator(s) shall strictly abide by the terms of this Contract and shall strictly apply rules of law applicable thereto.  All matters shall be decided by a panel of three (3) arbitrators.  Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  This provision shall survive the termination or expiration of this Contract.  The parties hereto may alter any of the terms of this provision only by express written agreement, although such alteration may be before or after any rights or obligations arise under this provision.

19. **Insolvency:**  The insolvency, bankruptcy, financial impairment, receivership, voluntary plan of arrangement with creditors, or dissolution of the Contractholder or the Contractholder's Designated Third Party Administrator shall not impose upon the Company any liability other than the liability defined in this Contract.  In particular, the insolvency of the Contractholder shall not make the Company liable to the creditors of the Contractholder, including Covered Persons.

20. **Severability Clause:**   Any clause deemed void, voidable, invalid, or otherwise unenforceable, whether or not such a provision is contrary to public policy, shall not render any of the remaining provisions of the Contract invalid.

21. **Renewal:**  Renewal is not automatic but is available if permitted by the Company. Renewal may be subject to new premium rates, new underwriting terms, and new Contract terms.

MBA 00156

VI.    **MISCELLANEOUS PROVISIONS (Continued)**

22. **Group Specifications - Changes:**   The Company reserves the right to revise rates, deductibles, terms or conditions of the Contract on any of the following dates:

    1.    When the Contractholder adds or deletes a subsidiary or affiliate;

    2.    When there is a change in the geographical area in which the Contractholder is located;

    3.    When there is a change in the nature of business in which the Contractholder is engaged;

    4.    When there is an increase or decrease in the number of Covered Units which exceeds 10% in any one month or 20% over any period of three consecutive months.

CLXLPOL

MBA 00157

# APPLICATION TO
# COMPANION LIFE INSURANCE COMPANY
## COLUMBIA, SC 29223
## FOR
# AGGREGATE AND SPECIFIC EXCESS LOSS INSURANCE

Application is hereby made to the Companion Life Insurance Company ("Company") for Excess Loss Insurance. This Application must be accepted and approved by the Company or its authorized representative prior to any Contract being in existence.

1. Full Legal Name of Applicant: __San Benito Consolidated Independent School District__

2. Address: _240 No. Crockett_

   City: San Benito _____    State: TX _____    Zip Code: _78586_

3. If employee benefit plans of subsidiary or affiliated companies (companies under common control through stock ownership, contract, or otherwise) are to be included, list legal name and addresses of such companies.

   _____ _NONE_ _____

4. Enter the full name of your Employee Benefit Plan(s) - (A copy of such Employee Benefit Plan(s) must be attached. _San Benito CISD Plans A, B: C_

5. Name and address of Designated Third Party Administrator:

   _MBA  1121 East 3900 South #C101  Salt Lake City, Utah 84165-1109_

6. Effective Date: _October 1, 1999_

7. Estimated Initial Enrollment (will be used as the Number of Covered Units during the first Contract Month):

   _1,019_ Singles and  _281_ Families (or)  _____ Composite

8. **GENERAL SCHEDULE OPTIONS:**

   (a)  Disabled Persons          [X] are  [ ] are not covered.
        Retired Employees         [X] are  [ ] are not covered.

   (b)  Aggregate Benefit         [X] Yes  [ ] No

   Aggregate Contract Basis: Employee Benefit Plan Expenses must be
   Incurred from _07/01/99_ through _09/30/2000_ , and
   Paid from _10/01/99_ through _09/30/2000_ .
   Claims Incurred prior to the Contract Effective Date are limited to $ _N/A_

CLXLAPP (TX)                        -1-                    Applicant Initials _____

MBA 00158

8.   **GENERAL SCHEDULE OPTIONS**: (Continued)

&#9587;   Aggregate eligible expenses include:
  [X] Medical              [X] Prescription Card Service
  [X] Dental Care          [ ] Weekly (Disability) Income
  [ ] Vision Care          [ ] Other _____

| | |
|---|---|
| Aggregate Monthly Factor per single Employee: | $                  244.40 |
| Family: | $                  591.68 |
| Composite: | $                  319.47 |
| Aggregate Payable Percentage (excess of Deductible): | 100% |
| Maximum Eligible Claim Expense Per Covered Person: | $ 75,000 |
| Minimum Aggregate Deductible: | $ 4,236,172 |
| Maximum Aggregate Benefit (excess of Deductible): | $ 1,000,000 |

(c )   Monthly Aggregate Accommodation          [ ] Yes   [X] No

(d)   Terminal Liability                        [ ] Yes   [X] No

(e)   Specific Benefit  [X] Yes     [ ] No
      Specific Contract Basis: Employee Benefit Plan expenses must be
           Incurred from  07/01/99   through  09/30/2000         .
           Paid from  10/01/99       through  09/30/2000         .
      Claims Incurred prior to the Contract Effective Date are
      limited to:                              $ N/A

      Specific Eligible Expense:  Medical Only
      Specific Deductible (per person):         $ 75,000
      Specific Payable Percentage (excess of Deductible):   100%
      Maximum Specific Benefit (per person in excess of
           Specific Deductible):                $ 1,000,000

9.   **PREMIUMS:**

(a)   Aggregate Premium
          Premium Per Month Per Unit:            $ 1.07
          Minimum Annual Aggregate Premium       $ 16,692

      Monthly Aggregate Accommodation
          Premium Per Month Per Unit:            $ N/A
          Annual Premium in Advance:             $ N/A

      Terminal Liability
          Premium Per Month Per Unit:            $ N/A
          Annual Premium in Advance:             $ N/A

(b)   Specific Premium
          Premium Per Month Per Single Employee: $ 12.68
          Family:                                $ 31.79
          Composite:                             $ 16.81
          Minimum Monthly Specific Premium:      $ N/A

MBA 00159

10. **SPECIAL RISK LIMITATIONS:**

Contract will be based upon the current employee benefits as defined in the Employee Benefit Plan by reference or by attachment, except as noted below:

Specific: _____ *None* _____

_____

Aggregate: _____ *None* _____

_____

11. **IT IS UNDERSTOOD AND AGREED, AS CONDITIONS PRECEDENT TO THE APPROVAL OF THIS APPLICATION, THAT:**

(a)     All documentation requested by the Company must be submitted prior to any approval of this Application and must be received by the Company within ninety (90) days of the requested Effective Date.

(b)     If the Schedule shows disabled persons are not covered, no benefits will be paid under the Contract for expenses Incurred or Paid under the Employee Benefit Plan for a disabled person until:

   (1)     if an employee, he or she returns to active, full-time employment for at least one (1) full working day; or

   (2)     if a dependent or Continuation Beneficiary, he or she is able to perform the normal functions of a person of like sex and age.

(c )     Issuance of the Contract is in reliance upon the information provided by the Applicant or its Agent. Should subsequent information become known which, if known prior to issuance of the Contract, would have affected the rates, deductibles, terms or conditions for coverage, the Company will have the right to revise the rates, deductibles, terms or conditions as of the Effective Date of issuance, by providing written notice to the Insured.

(d)     The Contract, if issued, may be void, if whether before or after a claim or loss, any material fact or circumstance was concealed or misrepresented on behalf of the Applicant, or if the Applicant or its Agent, committed fraud.

(e)     Receipt of a premium and its deposit in connection with the Application shall not constitute an acceptance of liability. In the event that Companion Life Insurance Company disapproves this Application, its sole obligation shall be to refund such sum to the Applicant.

(f)     If a Contract is issued and later rescinded, the sum of all benefits paid will be deducted from the sum of all premiums paid. If the result is positive, such amount will be paid by the Company to the Applicant. If the result is negative, such amount will be paid by the Applicant to the Company.

(g)     The initial premium will be paid on or before the Effective Date, and subsequent premiums are due no later than the first day of each calendar month during the Contract Period.

(h)     This Contract contains a binding arbitration provision. In making this Application, the Contractholder both acknowledges and accepts such a provision, and agrees it will be the basis upon which any controversy or claim, arising out of or relating to the Contract, shall be settled.

MBA 00160

11.  **IT IS UNDERSTOOD AND AGREED, AS CONDITIONS PRECEDENT TO THE APPROVAL OF THIS APPLICATION, THAT: (Continued)**

(i)  Applicant acknowledges that the Contract which is the subject of this Application is a reimbursement Contract. Applicant must first pay claims before submitting them for reimbursement.

(j)  Oral Statements not expressly incorporated herein are not part of this Contract. Only the President or Executive Officer of the Company may make changes to the Contract Form or Addenda on behalf of the Company. All changes to this Contract must be in writing and attached to this Contract.

(k)  NEITHER THIS APPLICATION NOR THE TERMS OF THIS APPLICATION MAY BE ALTERED.

In making this Application, the Applicant represents that, to the best of its knowledge and belief, such information accurately reflects the true facts and that the undersigned has authority to bind the Applicant to the proposed Contract. Accordingly, this Application will be a part of the Contract if accepted by the Company or its authorized representative.

Dated at _San Benito, TX_ this _23_ day of _Nov_, 19 _99_ .

Applicant: _San Benito School Consolidated Independent School District_

Tax ID # _74-6002224_

Witness: _____    By _Lorenzo L. Sanchez_ _11-22-99_
Signature of Licensed                                    (Officer/Partner)
Resident Agent                        Title: _Admin for Human Res + Risk Mgmt_
_authorized by Supt. to sign_
_by telephone call 11-22-9_
_@ 1:30 P.M._

Licensed Resident Agent: _WILLIAM R. GREER_
(Type or Print)

Address: _P.O. Box 1009_

City: _San Benito_    State: _TX_    Zip: _78586_

Social Security or Tax ID # _74-2609182_

**ACCEPTANCE**

Accepted on behalf of the Company, this _4th_ day of _February_, ~~19~~ _2000_

By: _____

Title: _President_

Contract No.: _CLI-3044_    Effective Date: _October 1, 1999_

MBA 00161

*7/1/99*

# APPLICATION TO
# COMPANION LIFE INSURANCE COMPANY
# COLUMBIA, SC  29223
# FOR
# AGGREGATE AND SPECIFIC EXCESS LOSS INSURANCE

Application is hereby made to the Companion Life Insurance Company ("Company") for Excess Loss Insurance. This Application must be accepted and approved by the Company or its authorized representative prior to any Contract being in existence.

1.  Full Legal Name of Applicant:   San Benito Consolidated Independent School District

2.  Address:   *240  No. Crockett*

City: San Benito            State: TX            Zip Code:

X  3.  If employee benefit plans of subsidiary or affiliated companies (companies under common control through stock ownership, contract, or otherwise) are to be included, list legal name and addresses of such companies.

*None*

X  4.  Enter the full name of your Employee Benefit Plan(s) - (A copy of such Employee Benefit Plan(s) must be attached.   *San Benito CISD Plans A, B & C*

X  5.  Name and address of Designated Third Party Administrator:

*MBA    1121 East 3900 South #C101    Salt Lake City, Utah 84165-1109*

6.  Effective Date:  October 1, 1999

7.  Estimated Initial Enrollment (will be used as the Number of Covered Units during the first Contract Month):

1,019 Singles and   281   Families (or)   _____  Composite

X  8.  **GENERAL SCHEDULE OPTIONS:**

    X (a)   Disabled Persons          [X] are   [ ] are not covered.
              Retired Employees          [X] are   [ ] are not covered.

    (b)   Aggregate Benefit          [X] Yes   [ ] No

    Aggregate Contract Basis: Employee Benefit Plan Expenses must be
        Incurred from 07/01/99  through  09/30/2000  , and
        Paid from  10/01/99  through  09/30/2000  .
        Claims Incurred prior to the Contract Effective Date are limited to  $  N/A

MBA 00162

CLXLAPP (TX)                     -1-                     Applicant Initials _____

8.    **GENERAL SCHEDULE OPTIONS**: (Continued)

Aggregate eligible expenses include:

[X] Medical              [X] Prescription Card Service
[X] Dental Care          [ ] Weekly (Disability) Income
[ ] Vision Care          [ ] Other _____

| | |
|---|---|
| Aggregate Monthly Factor per single Employee: | $ 244.40 |
| Family: | $ 591.68 |
| Composite: | $ 319.47 |
| Aggregate Payable Percentage (excess of Deductible): | 100% |
| Maximum Eligible Claim Expense Per Covered Person: | $ 75,000 |
| Minimum Aggregate Deductible: | $ 4,236,172 |
| Maximum Aggregate Benefit (excess of Deductible): | $ 1,000,000 |

(c)    Monthly Aggregate Accommodation                          [ ] Yes    [X] No

(d)    Terminal Liability                                       [ ] Yes    [X] No

(e)    Specific Benefit  [X] Yes    [ ] No
Specific Contract Basis: Employee Benefit Plan expenses must be
Incurred from  07/01/99  through  09/30/2000  .
Paid from  10/01/99  through  09/30/2000  .
Claims Incurred prior to the Contract Effective Date are
limited to:                                                     $ N/A

Specific Eligible Expense:  Medical Only
Specific Deductible (per person):                              $ 75,000
Specific Payable Percentage (excess of Deductible):            100%
Maximum Specific Benefit (per person in excess of
Specific Deductible):                                          $ 1,000,000

9.    **PREMIUMS:**

(a)    Aggregate Premium
Premium Per Month Per Unit:                            $ 1.07
Minimum Annual Aggregate Premium                       $ 16,692

Monthly Aggregate Accommodation
Premium Per Month Per Unit:                            $ N/A
Annual Premium in Advance:                             $ N/A

Terminal Liability
Premium Per Month Per Unit:                            $ N/A
Annual Premium in Advance:                             $ N/A

(b)    Specific Premium
Premium Per Month Per Single Employee:                 $ 12.68
Family:                                                $ 31.79
Composite:                                             $ 16.81
Minimum Monthly Specific Premium:                      $ N/A

MBA 00163

10. **SPECIAL RISK LIMITATIONS:**

Contract will be based upon the current employee benefits as defined in the Employee Benefit Plan by reference or by attachment, except as noted below:

Specific:_____ *None*_____

_____

Aggregate:_____ *None*_____

_____

11. **IT IS UNDERSTOOD AND AGREED, AS CONDITIONS PRECEDENT TO THE APPROVAL OF THIS APPLICATION, THAT:**

(a)    All documentation requested by the Company must be submitted prior to any approval of this Application and must be received by the Company within ninety (90) days of the requested Effective Date.

(b)    If the Schedule shows disabled persons are not covered, no benefits will be paid under the Contract for expenses Incurred or Paid under the Employee Benefit Plan for a disabled person until:

(1)    if an employee, he or she returns to active, full-time employment for at least one (1) full working day; or

(2)    if a dependent or Continuation Beneficiary, he or she is able to perform the normal functions of a person of like sex and age.

(c )    Issuance of the Contract is in reliance upon the information provided by the Applicant or its Agent. Should subsequent information become known which, if known prior to issuance of the Contract, would have affected the rates, deductibles, terms or conditions for coverage, the Company will have the right to revise the rates, deductibles, terms or conditions as of the Effective Date of issuance, by providing written notice to the Insured.

(d)    The Contract, if issued, may be void, if whether before or after a claim or loss, any material fact or circumstance was concealed or misrepresented on behalf of the Applicant, or if the Applicant or its Agent, committed fraud.

(e)    Receipt of a premium and its deposit in connection with the Application shall not constitute an acceptance of liability. In the event that Companion Life Insurance Company disapproves this Application, its sole obligation shall be to refund such sum to the Applicant.

(f)    If a Contract is issued and later rescinded, the sum of all benefits paid will be deducted from the sum of all premiums paid. If the result is positive, such amount will be paid by the Company to the Applicant. If the result is negative, such amount will be paid by the Applicant to the Company.

(g)    The initial premium will be paid on or before the Effective Date, and subsequent premiums are due no later than the first day of each calendar month during the Contract Period.

(h)    This Contract contains a binding arbitration provision. In making this Application, the Contractholder both acknowledges and accepts such a provision, and agrees it will be the basis upon which any controversy or claim, arising out of or relating to the Contract, shall be settled.

MBA 00164

11.   **IT IS UNDERSTOOD AND AGREED, AS CONDITIONS PRECEDENT TO THE APPROVAL OF THIS APPLICATION, THAT: (Continued)**

(I)   Applicant acknowledges that the Contract which is the subject of this Application is a reimbursement Contract.  Applicant must first pay claims before submitting them for reimbursement.

(j)   Oral Statements not expressly incorporated herein are not part of this Contract.  Only the President or Executive Officer of the Company may make changes to the Contract Form or Addenda on behalf of the Company.  All changes to this Contract must be in writing and attached to this Contract.

(k)   NEITHER THIS APPLICATION NOR THE TERMS OF THIS APPLICATION MAY BE ALTERED.

In making this Application, the Applicant represents that, to the best of its knowledge and belief, such information accurately reflects the true facts and that the undersigned has authority to bind the Applicant to the proposed Contract.  Accordingly, this Application will be a part of the Contract if accepted by the Company or its authorized representative.

Dated at _San Benito, Tx_   this  _23_  day of _Nov_ , 19 _99_ .

Applicant:   _San Benito School Consolidated Independent School District_

Tax ID # _____

Witness: _[signature]_   By _[signature]_ 11-22-99
Signature of Licensed        (Officer/Partner)
Resident Agent

Title: _Admn for Human Res + Risk Mgm_
_authorized by Supt. to sign._
_By telephone call 11-22-99_
_@ 1:30 P.M._

Licensed Resident Agent:   _WILLIAM R. GREER_
(Type or Print)

Address: _P.O. Box 1009_

City: _San Benito_   State: _Tx_   Zip: _78506_

Social Security or Tax ID # _74-2609182_

## ACCEPTANCE

Accepted on behalf of the Company, this _____ day of _____, 19_____.

By: _____

Title: _____

Contract No.:_____   Effective Date:_____

MBA 00165

02/07/2003 09:56 FAX 4356880354     STATE BANK BLOOMINGTON     ☑002

# ADMINISTRATIVE SERVICE AGREEMENT

THIS ADMINISTRATIVE SERVICE AGREEMENT, made and executed by and between San Benito Consolidated Independent School District a Texas Public Entity, hereinafter referred to as the "Plan Sponsor," and MBA of Wyoming, Inc., hereinafter referred to as the "Contract Administrator" for the provision of certain administrative and advisory services with respect to the Employee Medical Benefit Plan (the "Plan").

## RECITALS

The Contract Administrator is engaged in the business of performing services as Employee Benefit Advisors and Administrators. The Plan Sponsor hereby engages the services of the Contract Administrator to provide administration services for San Benito Consolidated Independent School District. For and in consideration of the mutual covenants and the monetary consideration herein recited, it is mutually agreed as follows:

    1. *Services to be Performed.* The Contract Administrator shall perform for the Plan Sponsor administrative and advisory services in conjunction with the administration and operation of the Plan. The administrative services to be performed by the Contract Administrator and Advisor are set forth in Exhibit "B," attached hereto and by reference made a part hereof for all purposes. The advisory services to be performed by the Contract Administrator are set forth in Exhibit "C", attached hereto and by reference made a part hereof for all purposes.

    (a) The services to be performed by the Contract Administrator shall be administerial in nature and shall be performed within the framework of policies, interpretations, rules, practices and procedures made or established by the Plan Sponsor. The Contract Administrator shall not have discretionary authority or discretionary controls respecting management or disposition of the assets of any trust fund and shall not have authority nor exercise any control respecting management or disposition of the assets of any trust fund and shall not render investment advice with respect to any money or other property of any trust fund.

    (b) The Contract Administrator will process and pay benefits in accordance with the plan or policy adopted by the Plan Sponsor. It is agreed that the Contract Administrator will incorporate sound business practices and be responsible for reasonable internal audits. Where an error exists, the Contract Administrator shall use reasonable efforts for recovery of any loss resulting therefrom, but will not be required to initiate legal process for any such recovery.

    2. *Limitation of Liabilities and Obligations.* The Contract Administrator shall have no responsibility, risk, liability or obligation for the funding of the Plan or for failure of the Plan or the Plan Sponsor to obtain or continue insurance coverage or payment of insured benefits. The responsibility and obligation for funding the Plan shall be solely and totally the responsibility of the persons or entities so provided in the Plan. Benefits under the Plan, whether or not fully or partially funded or insured, shall be provided solely by the Plan Sponsor or those persons named in the Plan. MBA shall not be liable for any damages resulting from its good faith application of Plan provisions, including those concerning eligibility, coverage, medical necessity, or benefits; or the failure of Plan participants or beneficiaries to obtain any particular health care as a result of MBA's services. MBA shall not be liable for any recommendations concerning insurance carriers or for the quality or nature of health care provided through health maintenance or preferred provider organizations, whether or not recommended, sponsored, or arranged for by MBA. Contract Administrator shall not be deemed an insurer, underwriter or guarantor with respect to any benefits under the Plan.

    3. *No Fiduciary Authority.* MBA shall not be deemed a Plan "fiduciary" under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). MBA's services shall not include any power to make any decisions as to Plan policy, interpretations, practices or procedures, but shall be limited to the performance of ministerial functions such as those types described by the Department of Labor in its Regulation § 2509.75-8, D-2 within a framework of policies, interpretations, rules, practices and procedures made or established by the Plan Sponsor. MBA shall have no final discretionary authority or control over Plan management, including authority or control over the management or disposition of any Plan assets, nor final discretionary authority over Plan administration. MBA's services with respect to the Plan shall be subject to review, modification, or reversal by the Plan Sponsor and/or Plan Administrator. Plan Sponsor shall have final authority in determining eligibility of claims. Plan Sponsor acknowledges that excess risk insurance purchased by Plan Sponsor will not provide coverage with respect to claims not eligible under the express terms and conditions of the Plan.

    4. *Independent Contractor.* It is understood and agreed that MBA is engaged to perform services under this agreement as an independent contractor. The Contract Administrator shall use its best efforts to implement such written instruction, if any, as to policy and procedures which may be given by the Plan Sponsor, provided that such instructions are consistent and compatible with the description of services to be performed by the Contract Administrator and Advisor and are not in violation of or contrary to any laws or regulations, including but not limited to the Employee Retirement Income Security Act of 1974, as amended.

    5. *Plan Sponsor.* Unless specified in writing otherwise, The Plan Sponsor shall be the Plan Administrator as such term is defined in section 3 (16) of ERISA. Unless the context requires otherwise, the term "Plan Sponsor" or "Plan Administrator" as used in this agreement shall include any corporation, partnership, committee, trustees of a trust, or other

entity or individual sponsoring or administering the Plan at the time of execution of this agreement and shall also include such additional or successor individuals or entities serving from time to time during the term of this Agreement; provided, however, that when this Agreement calls for direction or notice to be given to MBA by the Plan Sponsor or Plan Administrator, MBA shall be absolutely protected in relying upon any direction or notice received from the person executing this Agreement as Plan Sponsor or Plan Administrator.

6. **Term.**  The term of this Administrative Service Agreement is for the period of One year beginning October 1, 2000.  At the end of the Contract, if neither party requests a change, the Contract shall be automatically renewed.  The fees stated in the Fee Schedule Exhibit are subject to negotiation on the first anniversary date of the contract, or on any monthly due date after the initial one year period, providing the Contract Administrator has given timely notice of the intent to adjust the fees.  The new fees would then be in force for one year from the effective date.

(a) Either party shall have the right to terminate or re-negotiate the contract after the initial one year period by providing to the other party written notice at least thirty (30) days in advance of such termination or re-negotiation of the terms of the contract.  In the event that either party gives timely notice of intent to re-negotiate the terms of the contract, the contract shall continue until re-negotiated terms are approved in writing by both parties.  After the initial one year period, this contract may be terminated upon thirty (30) days written notice of termination by either party to the other.  In the event the Plan account contains a balance which is insufficient to meet the Plan and Plan Sponsor's obligation, the Contract Administrator may terminate this contract upon thirty (30) days written notice.  The Contract Administrator will have no further responsibility or obligation hereunder upon the termination of this contract.

(b) At any time during the initial term or subsequent terms of this agreement that the Plan Sponsor shall fail to meet the financial requirements of the plan, the Contract Administrator may terminate this contract.  Notice of intent to Terminate shall be given 30 days in advance of such termination.

(c) In the event of termination of this contract, if claims are to be processed after the termination date, the fees for services shall be either the specified percentage of claims or dollars per claim, based on the average of fees during the last two months of the contract, as follows:

100% of the average fees during the first month after termination, 75% the second month, 50% the third month, and 25% thereafter until no further claims are processed, or services required.

7. **Service Fees.**  The Plan Sponsor agrees to pay to the Contract Administrator for the  services to be performed hereunder the fees described in the attached Fee Schedule, **Exhibit A**

8. **Assignment.**  This Contract shall not be assigned by the Contract Administrator (its duties, obligations or responsibilities hereunder delegated) to any other person or entity without the prior written approval of the Plan Sponsor.

9. **Indemnification.**  During the continuance of this Agreement, the Contract administrator agrees to indemnify and hold the Plan Sponsor harmless against any and all loss, damage and expense with respect to any acts or omissions wherein it is finally adjudged or willfully acknowledged that the Contract Administrator is guilty of gross negligence, willful misconduct or lack of good faith, but only for those acts or omissions for which MBA is not entitled to indemnification under the following sentence, provided that MBA not be required to indemnify the Plan Sponsor if the Plan Sponsor's acts or omissions contributed to its loss.  The Plan Sponsor shall indemnify MBA against expense, loss, claim, or liability, including attorney's fees, arising out of or based upon (a) MBA's or the Plans alleged or actual status as an insurer or insurance company, or provider of benefits; or (b) MBA's alleged or actual status as a Plan fiduciary; (c) acts or omissions of the Plan Sponsor or Plan Administrator, as Plan fiduciaries or otherwise; (d) any acts or omissions of MBA in providing services under this Administrative Services Agreement if made in accordance with the directions of the Plan Sponsor or Plan Administrator in good faith.

10. **Entire Agreement: Exhibits and Standard Terms and Conditions.**  This agreement, the standard terms and conditions and all schedules, exhibits and amendments [sic] hereto, constitutes the entire Agreement among the parties and supersedes all prior proposals, discussions, and writings by and between the parties and related to the subject matter of this agreement.  This Agreement may be modified, amended, or supplemented, but only by a written instrument executed by all parties, except that fee adjustments proposed by MBA and not objected to by either the Plan Administrator or Plan Sponsor shall also constitute a binding amendment.  The parties acknowledge that the Plan or the Plan Sponsor may have entered into separate agreements with affiliates of MBA for other types of services, but such agreements shall be construed and enforced separately from this agreement.

11. **Separability.**  If any provision if this agreement is held to be illegal or unenforceable, the remaining provisions shall nevertheless remain in full force and effect.  In addition, the illegal or unenforceable provision shall be modified so as to conform to the greatest extent legally permissible, to the original intent of such provision.

12. **Governing Law; Jurisdiction and Venue.**  To the extent not preempted by ERISA or other federal law, this Agreement shall be governed by and construed under the laws of the State of Utah.  By entering into this Agreement, the Plan Administrator and Plan Sponsor subject themselves to personal jurisdiction in the courts of the State of Utah and agree that Utah is the Only appropriate venue for any action brought to interpret or enforce any provision of this Agreement, or which may otherwise arise under or relate to the subject matter of this Agreement.

**MBA**

MBA 00167

**13.** *Arbitration.*

(a) If the parties hereto cannot settle grievances or disputes between themselves in an informal and expeditious fashion, each party agrees, upon the motion of the other, to arbitration by the American Arbitration Association (AAA). The Arbitration proceedings shall take place in the city of the responding party. The parties agree that the decision of the arbitrator shall be final and binding with regard to each of them.

(b) The parties shall share equally the AAA administrative fee as well as the arbitrator's fee, if any, unless otherwise assessed by the arbitrator. The administrative fee shall be advanced by the initiating party subject to final apportionment by the arbitrator in his award. The arbitrator's award may be enforced in any court having jurisdiction thereof by the filling of a petition to enforce said award. Costs of filing may be recovered by the party which initiates such action to have the award enforced.

(c) Each party hereto agrees to notify the other at the time a lawsuit is initiated concerning any dispute with any third person or entity that is relevant to any rights, obligations or other responsibilities or duties provided for under this Agreement.

**14.** *Other Applicable Agreements.* The following agreements are, by this reference incorporated in this agreement:

| Form Number | Plan Sponsor's Initials | Title of Agreement | Date |
|---|---|---|---|
| Exhibit A | _____ | Fee Schedule | 10/01/2000 |
| Exhibit B | _____ | Admin. Services Provided by MBA | 10/01/2000 |
| Exhibit C | Not Included | Advisory Services | 10/01/2000 |
| Exhibit D | _____ | HIPAA Administration | 10/01/2000 |

The effective date of this contract specified in Paragraph 6. "Term" shall be the effective date unless otherwise specified here by the Contract Administrator:_____

Plan Sponsor  San Benito Consolidated Independent School District

By _____   Title _____   Date 10-10-00

**MBA of Wyoming, Inc./MBA of Wyoming, Inc.**

By _____   Title  Vice Pres   Date 10-10-00

**MBA**

02/07/2003 09:58 FAX 4356880354          STATE BANK BLOOMINGTON                          ☑005

## Standard Terms and Conditions

1.    *Records and Files.* The Contract Administrator shall maintain all records in conjunction with the administrative services to be performed hereunder. The confidentiality of such records shall be maintained by the Contract Administrator and the information therein shall not be divulged or disclosed or made available to persons other than the Plan Sponsor without the prior written approval of the Plan Sponsor or a court of competent jurisdiction. In the event of the termination of this Contract, the Contract Administrator shall deliver to the Plan Sponsor, upon written request, at a time period mutually agreeable, but not to exceed six months from date of termination, the information on all claims histories for the past two years. If the claim history is requested, the Plan Sponsor will pay all costs incurred by the Contract Administrator in providing such information, (including the production of same), cost of programming, computer charges, mailing costs, etc. The Contract Administrator shall be entitled to retain copies of any such records at his own expense.

2.    *Legal and Accounting Services.* MBA's services shall not include the provision of legal services or the services or independent certified public accountants. MBA shall have no liability for the quality or cost of any services so provided, whether or not services provided by professional advisors were recommended, sponsored, or arranged for by MBA.

3.    *Enforcement.* MBA shall have no responsibility or obligation to take action, legal or otherwise, against any employer or employees or other persons to enforce provision of the Plan. In the event that the Plan Sponsor desires to engage in the services of the Contract Administrator for such purposes, such services shall be engaged and rendered only pursuant to a separate written agreement between the parties.

4.    *Investments.* MBA shall not be responsible or obligated for the investment of any assets or funds of the Plan. However, the Contract Administrator agrees to prepare and maintain records of the investment of the assets or fund of the Plan if the Plan Sponsor requests the Contract Administrator to do so and provides the information and documents necessary to prepare and maintain such records. MBA shall not render any investment advice with respect to Plan assets or have any authority or responsibility to do so.

5.    *Costs and Expenses; Taxes.*
      (a) As a part of the services to be performed by the Contract Administrator, the Contract Administrator and Advisor shall maintain and operate an administrative office for such purposes and to pay all normal costs and expenses for such maintenance and operation (except as herein set forth).
      (b) The Contract Administrator shall employ a sufficient staff of employees or others to provide the administrative and advisory services to be performed by the Contract Administrator hereunder. However, the Contract Administrator will not provide or be responsible for the expenses and cost of legal counsel, actuaries, consulting physicians or dentists, certified public accountants, investment counselors, investment analysts or similar type services performed for the Plan Sponsor; the Contract Administrator shall not be authorized to engage such services or incur any expense or cost thereof.
      (c) The Plan or the Plan Sponsor shall be responsible for all other costs and expenses of Plan establishment and administration including legal, accounting and other professional fees. The Plan or the Plan Sponsor shall also be responsible for the payment or reimbursement to MBA of any and all taxes relating to the Plan, including any sales or use taxes or taxes in lieu thereof, and any related penalties, interest or expenses of MBA, imposed upon or incurred, or required to be collected by MBA.

6.    *Tax, ERISA, and COBRA Compliance.* MBA shall not be responsible for establishing or maintaining the Plan or the Plan Sponsor in compliance with federal or state taxing statutes, ERISA, COBRA, or other applicable state or federal laws or regulations, or for obtaining any tax benefits that may be available to the Plan Sponsor, the Plan, or the Plan participants. MBA may provide, whether or not so specified under the Description of Services Exhibit, Plan documents, summary Plan descriptions, and/or administrative forms, but makes no representations or warranties as to their legal sufficiency. The Plan Sponsor or Plan Administrator shall have the final authority and responsibility for approving the form and content of all Plan documents and forms.

7.    *Plan and Fee Changes.* Any changes in the Plan, found to be compatible with existing systems and procedures and approved by the Contract Administrator which requires additional programming, reports or services, will be at the expense of the Plan Sponsor. The Plan Sponsor agrees to make changes in benefits only at the beginning of the Plan Year, allowing thirty (30) days prior notice to the Contract Administrator. Exceptions must be agreed upon by the Contract Administrator.

**MBA**

02/07/2003 09:58 FAX 4356880354          STATE BANK BLOOMINGTON                    ☑006

# EXHIBIT A

### Fee Schedule

For: San Benito Consolidated Independent School District
Effective: October 1, 2000

**Administrative Fees to Cover:**

| | | | |
|---|---|---|---|
| Life Insurance | [X] | Short Term Disability | [ ] |
| Medical | [X] | Pre-Cert (Critique) | [X] |
| | | Other: | |
| Dental | [X] | HIPAA | [X] |
| Vision Care | [ ] | COBRA | [X] |
| | | Document Changes (off anniversary date) | [ ] |

Fee Method and schedule:

MBA Administration Fees are $ 12.60/ee/month. HIPAA Administration Fees are $ .25/ee/month. Reinsurance Broker Fees $ 2.00/ee/month. Ethix Southwest PPO Fees are $ 3.20/ee/month. Lonestar Interlocal 2 million excess is $ 1.00/ee/month.

| **Amended** | **Date** | **Schedule** |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

MBA 00170



DATE 10-10-00 BY

# EXHIBIT B

### Administrative Services Provided By MBA

Administrative Services For:  San Benito Consolidated Independent School District
Effective:  October 1, 2000

1.  Provide an automated Computer System for the processing of health claims.

2.  Furnish standard administrative internal forms to include:

    A.  Standard Explanation of Benefits.
    B.  Standard Claim Form.
    C.  Standard Enrollment Forms.

3.  Coordinate with the Plan Sponsor the custom design and printing of other supplies specifically for the Plan Sponsor. These will be at the Plan Sponsor's expense.  Including but not limited to the following:

    A.  Bank Drafts or Checks and Deposit Slips.
    B.  Employee Identification Cards.
    C.  Employee Plan Booklets.

4.  Provide a standard monthly plan premium billing satisfactory to meet the needs of the Plan Sponsor.

5.  Provide the Plan Sponsor with instructions for reporting employee eligibility.

6.  Provide Customer Service for the Plan Sponsors employees.

7.  Provide assistance in the preparation of Plan Document and Summary Plan Description

8.  Review, coordinate and process all claims.  Prepare all checks or drafts for disbursement from the fund with documentation to support these disbursements.  The Plan Sponsor elects to have these disbursements _____

9.  Provide standard claims analysis reports.

    Monthly Reports:_____

        A.  Claims Experience Report.
        B.  Monthly Fund Report.
        C.  Monthly Check Register.

    Special Reports to be provided:

| Name of Report | Frequency |
| --- | --- |
| A.  Fund & Claims Report | Quarterly |
| B. | |
| C. | |

10.  Provide appropriate renewal documentation and financial analysis.

11.  Provide the necessary data to the Plan Sponsor for preparation of ERISA reports and filings.

12.  Attend meetings with the Plan Sponsor as necessary for proper administration of the Plan.

**MBA**

DATE 10-10-0  BY

02/07/2003 09:58 FAX 4356880354          STATE BANK BLOOMINGTON                    ✪008

# EXHIBIT C

### Advisory Services

For: San Benito Consolidated Independent School District
Effective: October 1, 2000

1.    Advise and assist in the design of client administrative forms.

2.    Provide a review of marginal or questionable claims.

3.    Provide information relative to the Plan alternatives.

4.    Advise as to the contribution levels for the present benefits.

5.    Provide evaluation and underwriting relative to contract provisions and changes.

6.    Counsel with the Plan Sponsor concerning the financial status of the Plan to assure proper accumulation of reserves.

7.    Provide medical cost data and medical cost trends which would aid in plan benefit design.

8.    Coordinate with legal counsel and others in regards to ERISA requirements and information.

9.    Provide competitive bidding of various insured plans.

10.   Act as "Agent of Record" on the following coverage:

_____

_____

_____

_____

**MBA**

MBA 00172

## EXHIBIT D

### HIPAA Administration

For: San Benito Consolidated Independent School District
Effective: October 1, 2000

This exhibit constitutes an amendment to the Administrative Service Agreement between MBA of Wyoming, Inc. as of the date subscribed herein subject to the terms and conditions set forth in the Administrative Service Agreement in force at the date of this agreement.

**Certificate of Coverage Administration:**

Includes administrative processing, set up, preparation and mailing of Certificates of Coverage to all individuals who lose coverage under the medical plan or COBRA.

| | |
|---|---|
| As a fee per employee per month for HIPAA | $ .35/Ee/Mo |
| As a fee per employee per month for COBRA | $ 21.50/Certificate |

The undersigned elects to have MBA provide HIPAA Administration Services, as limited in the specifications above, and agrees to defend and hold MBA harmless from and against all claims, damages, or losses, including but not limited to all cost of defense and attorney fees, which are a result of clients' inaccuracy, delay or failure to provide all information necessary for MBA to properly administer the above.

_San Benito Consolidated Independent School District_        _10-10-00_
Plan Sponsor                                                Date

_[signature]_
Authorized Signature

_Asst Supt. for Finance/Human Res._
Title

**MBA**

DATE _10-10-00_    BY _[signature]_

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

SAN BENITO CISD                        §
                                       §
vs.                                    §     CIVIL ACTION NO. B-003-047
                                       §
COMPANION LIFE INSURANCE, ET AL        §

# Exhibit "B"



**AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY**
A Capital Stock Company (herein called the "Company")

175 Water Street
New York, N.Y. 10038

A Member Company
of American
International Group, Inc.

POLICY NUMBER:   *279-84-78*                 RENEWAL OF:   *874-20-67*

### THIS IS A CLAIMS MADE POLICY–PLEASE READ IT CAREFULLY

### THIRD PARTY ADMINISTRATORS PROFESSIONAL LIABILITY INSURANCE POLICY

**NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION.**

**NOTICE: THE LIMITS OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. FURTHER NOTE THAT AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT.**

### DECLARATIONS

Item 1.  **Named Insured:** *MBA OF WYOMING, INC.*
*(SEE ADDITIONAL NAMED INSUREDS)*

Address:  *P.O. BOX 98*
*809 RAILWAY AVENUE*
*WORLAND, WY 82401*

Item 2.  **Policy Period:**   From: *September 22, 2002*   To: *September 22, 2003*
(12:01 A.M. standard time at the address stated in Item 1)

Item 3.  Limits of Liability: (inclusive of **defense expense**):

*$1,000,000*   each **wrongful act** or series of continuous, repeated or interrelated **wrongful acts**

*$1,000,000*   aggregate

Item 4.  Deductible:  *$50,000*   each **wrongful act** or series of continuous, repeated or interrelated **wrongful acts**

Item 5.  Premium:  *$22,070*

Item 6.  **Retroactive Date:**  *September 22, 1991*

Producer:  *CAPITOL SPECIAL RISKS*

Address:  *1899 POWERS FERRY ROAD*
*SUITE 100*
*ATLANTA, GA 30339*

*661867*      *Sep 25, 2002*



**Authorized Representative**
Or Countersignature (in states where applicable)

JAN 2 8 2003

**AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY**
(a capital stock company, herein called the "Company")

**NOTICE: THIS IS A CLAIMS MADE FORM. EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS LIMITED GENERALLY TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY WHILE THE POLICY IS IN FORCE. PLEASE REVIEW THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.**

### THIRD PARTY ADMINISTRATORS PROFESSIONAL LIABILITY INSURANCE POLICY

In consideration of the payment of the premium, and in reliance upon the statements in the application and Declarations attached hereto and made a part hereof, and subject to the limits of liability stated in Item 3 of the Declarations and the terms and conditions contained herein, (American International Specialty Lines Insurance Company) agrees as follows:

**I.    INSURING AGREEMENTS**

**A.    PROFESSIONAL LIABILITY**

To pay on behalf of the **Insured** all sums the **Insured** shall become legally obligated to pay as damages resulting from any **claim** or **claims** first made against the **Insured** and reported in writing to the Company during the **policy period** or during the extended reporting period (if applicable) for any **wrongful act** of the **Insured** or of any other person for whose actions the **Insured** is legally responsible, but only if such **wrongful act** occurs on or after the **retroactive date** and before the end of the **policy period** and solely in the performance of **professional services** for others for compensation.

**B.    DEFENSE EXPENSES**

With respect to any **wrongful act** for which insurance is afforded by this policy, the Company shall, as part of and subject to the applicable limit of liability, have the right and duty to defend any **claim** against the **Insured** alleging such **wrongful act** and seeking damages which are payable under the terms of this policy, even if any of the allegations of the **claim** are groundless, false or fraudulent. The Company may make such investigation and, with the written consent of the **Insured**, such settlement of any **claim** as it deems expedient. If the **Insured** refuses to consent to any settlement recommended by the Company and acceptable to the claimant, the Company's duty to defend the **Insured** shall then cease and the **Insured** shall thereafter at his own expense negotiate or defend such **claim** independently of the Company and the Company's liability shall not exceed the amount for which the **claim** could have been settled if such recommendation was consented to plus **defense expense** incurred up to the date of such refusal to consent.

The Company will pay, as part of and subject to the applicable limit of liability:

1.    all expenses incurred by the Company in any **claim** defended by the Company, all costs taxed against the **Insured** in any such **claim** and all interest on the entire amount of any judgment against the **Insured** which does not exceed the Company's limit of liability and which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon;

2.    premiums on appeal bonds, and bonds to release attachments, in penal amounts which do not exceed the Company's limit of liability and are required in any **claim**

**–1–**

52949 (1/92)

defended by the Company, but without any obligation to appeal or to apply for or furnish such bonds;

3.  reasonable expenses, other than loss of earnings, incurred by the **Insured** at the Company's request.

The Company shall not be obligated to pay any judgments or settlements or to undertake or continue the defense of any **claim** after the applicable limit of the Company's liability has been exhausted by payment of judgments, settlements or **defense expense**.

## II.  DEFINITIONS

A.  **Bodily Injury** means physical injury, sickness or disease sustained by any person, including mental anguish, emotional distress or death resulting therefrom at any time.

B.  **Claim** means (1) any adjudicatory proceeding commenced against the **Insured** seeking money damages in which the **Insured** may be subjected to a binding adjudication of liability for such damages, or (2) receipt by the **Insured** of a written threat from an attorney at law to commence such an adjudicatory proceeding.

C.  **Committee person(s)** means any individual(s) formally authorized by an **Insured** to conduct **utilization review,** and including any alternate serving in place of such individual in his absence.

D.  **Contingent medical malpractice** means a **Wrongful Act** in referring a covered person of a client company to health care provider or in restricting, denying or terminating medical or hospitalization benefits to a covered person of a client company.

E.  **Credentialing** means the verification of a health care provider's credentials.

F.  **Defense expense** means the items set forth in Insuring Agreement B., paragraphs 1 to 3.

G.  **Insured** means the **Named Insured** and any present or former employee, partner, officer, director or stockholder thereof solely while acting in his or her capacity as such. **Insured** includes the medical director or **committee person** appointed by the **Named Insured** to conduct **utilization review,** solely while acting in his or her capacity as such in the conduct of **utilization review.**

H.  **Named Insured** means the person or organization designated in Item 1 of the Declarations.

I.  **Peer review** means the assessment of the quality of services rendered by any person or organization acting as a health care provider.

J.  **Policy period** means the period commencing on the effective date shown in Item 2 of the Declarations and ending on the earlier of the expiration date shown in Item 2 of the Declarations or the effective date of cancellation of this policy.

K.  **Professional services** means only the specific services designated in the Schedule of Professional Services annexed to this policy as Endorsement #1 and made a part hereof.

L.  **Retroactive date** means the date specified as such in Item 6 of the Declarations.

M.  **Subsidiary** means a corporation of which the **Named Insured** owns more than 50% of the voting stock.

–2–

**N.** **Utilization review** means the review of the necessity, appropriateness, cost, type or utilization of health care services and **credentialing** of health care service providers.

**O.** **Wrongful act** means any actual or alleged negligent act, error or omission.

## III. EXCLUSIONS

This policy does not apply to any **claim:**

**A.** arising out of any criminal, dishonest, malicious or fraudulent act or error or omission; or arising out of the **Insured's** gaining in fact any profit or advantage to which it is not legally entitled;

**B.** arising out of a **wrongful act** committed with knowledge that it was a **wrongful act;**

**C.** for:

    **(1)** **bodily injury,** except if resulting from **contingent medical malpractice;** or,

    **(2)** mental anguish or emotional distress sustained by any person unless caused by physical injury or physical sickness or physical disease or death resulting from **contingent medical malpractice;** or

    **(3)** damage to or destruction of any tangible property, including loss of use thereof;

**D.** arising out of defamation or violation of a right of privacy, except as such **claim** arises out of the unauthorized disclosure of medical information;

**E.** arising out of unlawful discrimination on any basis, including but not limited to race, creed, religion, ethnic background, age, handicap, sex or sexual orientation except if such **claim** arises from **contingent medical malpractice;**

**F.** for fines, penalties, punitive or exemplary or the multiplied portion of multiplied damages, non-pecuniary relief, or any matter which may be deemed uninsurable under the law pursuant to which this policy is construed;

**G.** arising out of the failure to effect or maintain any insurance or bond;

**H.** **1)** arising out of any dispute involving the **Insured's** fees, charges or commissions for any **professional service** rendered or required to be rendered by the **Insured;**

    **2)** arising out of the failure to meet any express warranty or guarantee of performance relating to the quality of **professional services** to be provided by the **Insured;**

    **3)** arising out of liability assumed by the **Insured** under any oral or written contract or agreement except where such liability would otherwise exist apart from such contract or agreement and which is otherwise covered by this policy;

**I.** arising out of the breach of fiduciary duty, responsibility or obligation of the **Insured** in connection with any "employee pension benefit plan" and/or "employee welfare benefit plan" as those terms are defined in the Employee Retirement Income Security Act of 1974 (more commonly referred to as "ERISA") and its amendments, or any regulation or order issued pursuant thereto, or any similar provisions of any state or

52949 (1/92)

JAN 2 8 2003

federal statutory law or common law; however, this exclusion shall apply to such plans only if they are established solely for the benefit of employees of:

1)   the **Named Insured** and/or

2)   any employer affiliated with the Named Insured through common majority ownership or control,

and their beneficiaries;

J.   brought by or on behalf of any governmental, quasi-governmental or self-regulatory entity, whether directly or indirectly, and whether brought in its capacity as receiver, conservator, liquidator, security holder or assignee of the **Insured**, its security holders, its depositors or its creditors or in any other capacity and whether brought in its own name or in the name of any other entity; however, this exclusion shall not apply to any **claim** by any such entity to enforce its rights as a client or customer of the **Insured**;

K.   arising out of the insolvency, receivership, bankruptcy, liquidation or financial inability to pay of the **Insured**, or any insurer, self-insurer, trust, insurance plan or other vehicle or instrumentality which provides services;

L.   (1)   brought by one **Insured** against another **Insured**, or

     (2)   brought by or on behalf of any **Insured** or any business enterprise which is owned, managed or operated directly or indirectly, in whole or in part by any **Insured**, or brought by or on behalf of:

           (a)   any parent, **subsidiary**, successor or assign of any **Insured** or such business enterprise, or

           (b)   anyone affiliated with any **Insured** or such business enterprise through common majority ownership or control,

     against any **Insured**;

M.   for premium, return premiums, commissions, brokerage fees or tax monies, or arising out of any commingling, deposit or investment of funds, or failure of any investment(s) to perform as expected or desired;

N.   arising out of any actuarial act, error, omission or assumption;

O.   arising out of **peer review**;

P.   arising out of any obligation for which the **Insured** or any carrier as its insurer may be held liable under any workers compensation, unemployment compensation or disability benefits law or under any similar law;

Q.   arising out of unauthorized access to or malfunction of the **Insured's** electronic data processing system;

R.   arising out of any obligation assumed by the **Insured** as an insurer, self-insurer or reinsurer;

S.   brought by subrogation, assignment or otherwise, by or on behalf of or in the right of any other insurer providing hospital or surgical or medical or similar or related first

**-4-**

52949 (1/92)

party benefits coverage to any client of the **Insured,** to recoup all or a portion of any amounts paid by such insurer;

T.    arising out of a **wrongful act** which any **Insured,** prior to the effective date of this **policy period,** knew or could reasonably foresee would give rise to a **claim;**

U.    arising out of the same or related **wrongful act** alleged in any **claim,** or in any notice of circumstances which might give rise to a **claim,** which has been reported under any policy of which this is a renewal or replacement or which it succeeds in time;

V.    arising out of:

(1)    the actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or

(2)    any direction or request to test for, monitor cleanup, remove, contain, treat, detoxify or neutralize pollutants;

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes but is not limited to medical waste, and materials to be recycled, reconditioned or reclaimed.

## IV.    LIMITS OF LIABILITY

A.    Regardless of the number of **Insureds, claims,** or claimants, the limit of liability stated in Item 3 of the Declarations as applicable to "each **wrongful act** or series of continuous, repeated or interrelated **wrongful acts**" is the total liability of the Company for all amounts payable hereunder in satisfaction of judgments, settlements and **defense expense** arising out of the same **wrongful act** or series of continuous, repeated or interrelated **wrongful acts.** If additional **claims** are subsequently made which arise out of the same **wrongful act** or series of continuous, repeated or interrelated **wrongful acts** as a **claim** already made and reported to the Company, all such **claims** whenever reported shall be considered first made within the **policy period** or the extended reporting period (if applicable) in which the earliest **claim** arising out of such **wrongful act** or series of continuous, repeated or interrelated **wrongful acts** was first made and reported to the Company and all such **claims** shall be subject to one such limit of liability.

B.    Regardless of the number of **Insureds, claims** or claimants, the total liability of the Company for all amounts payable hereunder in satisfaction of judgments, settlements and **defense expense** shall not exceed the limit of liability stated in Item 3 of the Declarations as "aggregate". The aggregate limit of liability for the extended reporting period shall be part of, and not in addition to, the aggregate limit of liability for the **policy period.**

C.    **Defense expense** paid by the Company, as well as amounts paid by the Company in satisfaction of judgments and settlements, are subject to the applicable limit of liability.

D.    If two or more policies of professional liability insurance issued by the Company or any other member company of American International Group, Inc. covering any **Insured(s)**, as defined in this policy, apply to any **claim** or **claims** in connection with the same, continuous repeated or interrelated **wrongful act(s)** for which the **Insured(s)** is (are) jointly or severally liable, the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability under this policy bears to the total of the applicable limits of liability under all such applicable policies;

–5–

52949 (1/92)

JAN 2 8 2003

however, the total amount payable under all such policies shall not exceed the highest applicable limit of liability under any one policy.

**V.    DEDUCTIBLE**

The Company shall only be liable for those amounts payable hereunder in satisfaction of judgments, settlements and **defense expense** which are in excess of the deductible stated in Item 4 of the Declarations.  The deductible shall apply to each **claim** and shall be borne by the **Insured** and remain uninsured.  For purposes of the deductible, claims arising out of the same **wrongful act** or out of a series of continuous, repeated or interrelated **wrongful acts** shall be considered as arising out of one **wrongful act,** and only one deductible amount shall apply thereto.

**VI.    EXTENDED REPORTING PERIOD**

A.    If the Company cancels this policy for any reason other than non-payment of premium or refuses to renew it, or if the **Insured** cancels or refuses to renew this policy, the **Insured** shall have the right to an extended reporting period in which to give written notice to the Company of **claims** first made against the **Insured** during such extended reporting period for any **wrongful act** occurring on or after the **retroactive date** and before the end of the **policy period** and otherwise covered by this policy.

B.    (1)    If the **Named Insured** has not purchased any other insurance to replace this insurance and which applies to a **claim** otherwise covered hereunder, the extended reporting period shall be sixty (60) days from the effective date of cancellation or nonrenewal.  The Company may not cancel this Extended Reporting Period and no premium is payable for it; or

(2)    If the **Named Insured** makes a written request to the Company and pays the additional premium for an Extended Reporting Period Endorsement within thirty (30) days after the end of the **policy period,** the extended reporting period will be twelve (12) months from the effective date of cancellation or nonrenewal.  The additional premium shall be 75% of the whole annual premium for this policy, and shall be fully earned upon the effective date of the Endorsement.   The Extended Reporting Period Endorsement may not be canceled.

**VII.    CONDITIONS**

**1.    POLICY TERRITORY**

This policy applies to **wrongful acts** occurring in the United States of America, its territories or possessions or Canada, but only if **claim** is made and brought in the United States of America, its territories or possessions, or Canada.

**2.    NOTICE OF CLAIM**

The **Insured** shall, as a condition precedent to the availability of the rights provided under this policy, give written notice to the Company or any of its authorized agents as soon as practicable during the **policy period,** or during the extended reporting period (if applicable), of any **claim** made against the **Insured.**

If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

-6-

52949 (1/92)

JAN 2 8 2003

3.    **SPECIAL REPORTING CLAUSE**

If during the **policy period** or during the extended reporting period (if applicable) the **Insured** shall become aware of circumstances which may reasonably be expected to give rise to a **claim** against the **Insured** for a **wrongful act** which took place on or after the **retroactive date** and prior to the end of the **policy period**, and the **Insured** gives written notice to the Company during the **policy period** or the extended reporting period (if applicable) of the nature and specifics of the possible **wrongful act**, any **claim** which is subsequently made against the **Insured** arising out of such **wrongful act** shall be considered as a **claim** made during the **policy period** or during the extended reporting period (if applicable) in effect when such written notice was given to the Company.

If mailed, the date of mailing of such notice shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

4.    **METHOD OF NOTICE**

Notice of **claim** or circumstances which may reasonably be expected to give rise to a **claim** hereunder shall be given in writing to A.I. Management and Professional Liability Claims Adjusters, P.O. Box 1000, New York, NY 10268.

5.    **ASSISTANCE AND COOPERATION OF THE INSURED**

The **Insured** shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits or proceedings, and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the **Insured**. The **Insured** shall attend hearings, trials and depositions and shall assist in securing and giving evidence and obtaining the attendance of witnesses. The **Insured** shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense.

6.    **OTHER INSURANCE**

Such insurance as is provided by this policy shall apply only as excess over any other valid and collectible insurance.

7.    **ACTION AGAINST COMPANY**

No action shall lie against the Company unless as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability nor shall the Company be impleaded by the **Insured** or his legal representative. Bankruptcy or insolvency of the **Insured** or the **Insured's** estate shall not relieve the Company of any obligation hereunder.

8.    **SUBROGATION**

In the event of any payment under this policy, the Company shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization, and the

**–7–**

52949 (1/92)

**Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** shall do nothing to prejudice such rights.

## 9. CHANGES

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy.

## 10. CANCELLATION

This policy may be canceled by the **Named Insured** by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This policy may be canceled by the Company by mailing to the **Named Insured** at the address shown in this policy written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels this policy because the **Named Insured** has failed to pay a premium when due, this policy may be canceled by the Company by mailing a written notice of cancellation to the **Named Insured** at the address shown in this policy stating when, not less than 10 days thereafter, such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. If the period of limitation for the giving of such notice by the Company is longer under controlling law, then the number of days of notice stated above is deemed to be amended to comply with the minimum requirements of such law.

The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **policy period.** Delivery of such written notice either by the **Named Insured** or by the Company shall be equivalent to mailing. If the **Named Insured** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure; however, a minimum of 25% of the annual premium stated in the Declarations shall be deemed fully earned on the inception date of this policy. If the Company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

## 11. SOLE AGENT

The **Named Insured** first named in Item 1 of the Declarations shall act on behalf of all the **Insureds** with respect to giving and receiving notice of cancellation, payment of premiums and the receipt of any return premiums that may become due under this policy, the acceptance of any endorsement issued to form a part of this policy, and exercising or declining to exercise any right to an extended reporting period.

## 12. DECLARATIONS AND APPLICATION

By acceptance of this policy the **Named Insured** agrees that the statements in the Declarations and the application are its representations, that they shall be deemed material and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between itself and the Company, or any of its agents, relating to this insurance.

–8–

52949 (1/92)

13. **ASSIGNMENT**

Assignment of interest under this policy shall not bind the Company until its consent is endorsed hereon; however, subject otherwise to the terms hereof, this policy shall cover the estate, heirs or legal representatives of the **Insured** in the event of the **Insured's** death, bankruptcy, insolvency or being adjudged incompetent.

14. **SERVICE OF SUIT**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

It is further agreed that service of process in such suit may be made upon General Counsel, Legal Department, American International Specialty Lines Insurance Company, 70 Pine Street, New York, N.Y. 10270, or his representative, and that in any such suit so instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose in the statute, or his successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Insured** or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its President and a Secretary and signed on the Declarations page by a duly authorized representative of the Company.

*Elizabeth M. Tuck*                  *L. H. Lulley*

      **SECRETARY**                        **CHAIRMAN OF THE BOARD AND CEO**

52949 (1/92)

## ENDORSEMENT# *1*

JAN 2 8 2003

This endorsement, effective *12:01 am    September 22, 2002*    forms a part of
policy number    *279-84-78*
issued to *MBA OF WYOMING, INC.*
        *(SEE ADDITIONAL NAMED INSUREDS)*

by    *American International Specialty Lines Insurance Company*

### Professional Services

With regard to the definition of Professional Services, Definition II, K of the policy which this endorsement is made a part of, designated means an "X" appears in the box next to the

enumerated area or capacity, thus:    [ X ]

### Areas of Capacities

[ ]    1.    Acting as a notary public;

[ X ]    2.    Acting as an insurance agent or broker, or otherwise rendering advice
            or recommendations regarding insurance;

[ X ]    3.    Premium collection and billing services;

[ ]    4.    Electronic data processing and collection services.  Electronic data consulting
            including software design, development or customization;

[ ]    5.    The development or customization of computer software sold or provided to
            a third party outside the normal operations of the insured as a TPA;

[ X ]    6.    Acting as an administrator for Single Employer Benefit Plans;

[ ]    7.    Acting as an administrator for Multiemployer benefit plans (Taft-Hartley
            Trusts);

[ ]    8.    Acting as an administrator for Multiple Employer Welfare Arrangements
            (MEWA's);

**END 001**

**ENDORSEMENT# *1***    (continued)

☐    9.    Acting as an administrator for Multiple Employer Trusts (MET'S);

☐    10.    Administration of Pension Plans;

☐    11.    Providing Actuarial Services;

☒    12.    Providing Utilization Review Services;

☐    13.    Acting as an administrator for Employee Assistance Plans (EAP);

☐    14.    Acting as a direct provider of Employee Assistance Plans (EAP);

☐    15.    Providing employee "wellness" or other health related program literature or correspondence;

☒    16.    Providing Cost Containment services;

☒    17.    Providing Case Management services;

☐    18.    Acting as an administrator for Credentialing services; (verification of a health care provider's credentials)

☐    19.    Other

_____
AUTHORIZED REPRESENTATIVE
Or Countersignature (in states where applicable)

*END 001*

## ENDORSEMENT# 2

This endorsement, effective *12:01 am     September 22, 2002*    forms a part of
policy number   *279-84-78*
issued to    *MBA OF WYOMING, INC.*
              *(SEE ADDITIONAL NAMED INSUREDS)*

by     *American International Specialty Lines Insurance Company*

### THIRD PARTY ADMINISTRATOR ENDORSEMENT

In consideration of the premium charged, it is hereby understood and agreed that solely for claims arising out of a Wrongful Act in the provision of services as specified in Endorsement #1, the following policy revisions apply:

It is hereby understood and agreed that the following definitions shall be added to the policy:

(5) Contingent Medical Malpractice means a Wrongful Act in referring a covered person of a client company to a health care provider or in restricting, denying or terminating medical or hospitalization benefits to a covered person of a client company;

(6) Utilization Review means the review of the necessity, appropriateness, cost, type or utilization of health care services and credentialing of health care service providers;

(7) Credentialing means the verification of a health care provider's credentials;

(8) Peer Review means the assessment of the quality of services rendered by any person organization acting as a health care provider.

It is also understood and agreed that Exclusion (b) and (c) shall be deleted in their entity and replaced with the following:

(b) to any claim arising out of (1) false arrest, detention or imprisonment; (2) arising out of libel, slander, defamation or violation of right of privacy, except as such claim arises out of the unauthorized disclosure of medical information; (3) discrimination, except if such claim arises from contingent medical malpractice.

(c) -to any claim arising out of bodily injury to, or sickness, disease or death of any person,
except if resulting from contingent medical malpractice; or to any claim arising out of mental anguish or emotional distress sustained by any person unless caused by physical injury or physical sickness or physical disease or death resulting from contingent medical malpractice; or to any claim arising out of damages to or destruction of any property including the loss of use thereof.

It is further understood and agreed that the Section entitled Exclusions, shall be amended to include the following additional exclusions:

(j) arising out of the failure to meet any express warranty or guarantee of performance relating to the quality of professional services to be provided by the Insured;

**END 2**

**ENDORSEMENT# *2*    (Co..cinued)**

This endorsement, effective *12:01 am    September 22, 2002*    forms a part of
policy number *279-84-78*
issued to    *MBA OF WYOMING, INC.*
            *(SEE ADDITIONAL NAMED INSUREDS)*

by    *American International Specialty Lines Insurance Company*

(k) arising out of liability  assumed by the Insured under any written or oral contract or
    agreement except where such liability would  otherwise exist apart from such  contract
    or agreement and which is otherwise covered by this policy;

(l) arising out of the breach of fiduciary duty,  responsibility or obligation of the Insured in
    connection with any "employee pension  benefit plan" and/or "employee  welfare
    benefit plan" as those  terms are defined in  the Employee Retirement  Income Security
    Act of  1974 (more  commonly referred  to as "ERISA") and its  amendments, or any
    relation or  order  issued pursuant thereto,  or any similar  provisions  of any state or
    federal statutory law or common law; however, this exclusion shall apply to such plans
    only if they are established solely for the benefit of employees of:

    (1) the Named Insured
    (2) any  employer affiliated  with  the  Named Insured  through  common  majority
        ownership or control, and their beneficiaries;

(m)arising out of the insolvency,  receivership, bankruptcy, liquidation or financial inability
    to pay of the Insured, or any insurer,  self-insurer, trust, insurance plan or other vehicle
    or instrumentality which provides services;

(n) for premiums, return premiums, commissions, brokerage fees or tax monies,  or arising
    out of any commingling, deposit or investment of funds, or failure of any  investment(s)
    to perform as expected or desired;

(o) arising out  of any obligation for  which the Insured or any  carrier as its insurer may  be
    held
    liable under any workers Compensation, unemployment compensation or disability
    benefits law or under any similar law;

(p) arising out of any obligation  assumed by the Insured as an insurer, self-insurer or
    reinsurer;

(q)  arising out of Peer Review.

(r) to  any  claim arising out  of  or connected  with the  performance or  failure to  perform
    services
    for any person or entity;

        (1)    which is owned by or controlled by any Insured; or

*END 2*

**ENDORSEMENT# 2**     **(Co...inued)**

This endorsement, effective  *12:01 am*     *September 22, 2002*     forms a part of
policy number   *279-84-78*
issued to    *MBA OF WYOMING, INC.*
              *(SEE ADDITIONAL NAMED INSUREDS)*

by      *American International Specialty Lines Insurance Company*

 

(2)     which owns or controls any Insured; or,

(3)     which is affiliated with any Insured through any common ownership or
control; or,

(4)     in which any Insured is a director, officer, partner or principal stockholder.

(s) to any claim(s) arising out of a Wrongful Act committed with the knowledge that it
was a Wrongful Act;

(t)  to any claim arising out of:

(1)     the actual, alleged or threatened discharge, dispersal, release or escape of
pollutants, or

(2)     any direction or request to test for, monitor, clean up, remove, contain,
treat, detoxify or neutralize pollutants.

Pollutants includes (but is not limited to) any solid, liquid, gaseous or thermal irritant or
contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.
Waste includes (but is not limited to) materials to be recycled, reconditioned or reclaimed.

All other terms, conditions, exclusions, and endorsements of this policy shall remain
unchanged.

**END 2**

## ENDORSEMENT# *3*

IAN 2 8 200?

This endorsement, effective *12:01 am*        *September 22, 2002*      forms a part of
policy number    *279-84-78*
issued to    *MBA OF WYOMING, INC.*
            *(SEE ADDITIONAL NAMED INSUREDS)*

by      *American International Specialty Lines Insurance Company*

### ERISA Civil Fines & Penalties Endorsement

In consideration of the premium charged, it is hereby understood and agreed that damages shall be deemed to include the five percent (5%) civil penalties imposed on an Insured as a fiduciary under Section 502(i) of the Employee Retirement Income Security Act of 1974 (Public Law 93-406, more commonly known as "ERISA") or its amendments, for violations of Section 406 of ERISA,as amended, or the twenty-percent (20%) penalty imposed on an Insured as a fiduciary under Section 502(l) of ERISA, as amended, but only if such violations arise in the conduct of Professional Services as stated in Endorsement #1, "Schedule of Professional Services."

It is further understood and agreed that EXCLUSIONS F. and J. of the policy shall not apply with respect to the aforesaid penalties.

All other terms, conditions, and exclusions remain the same.

**END 3**

<u>ENDORSEMENT#</u> *4*

This endorsement, effective  *12:01 am*    *September 22, 2002*    forms a part of
policy number  *279-84-78*
issued to  *MBA OF WYOMING, INC.*
           *(SEE ADDITIONAL NAMED INSUREDS)*

by    *American International Specialty Lines Insurance Company*

### INTELLECTUAL PROPERTY EXCLUSION

In consideration of the premium charged, it is hereby understood and agreed that the
**EXCLUSIONS** section of the policy is amended to include the following:


This policy does not apply:


to any claim arising out of any misappropriation of trade secret or infringement of patent,
copyright, trademark, trade dress or any other intellectual property right;


All other terms, conditions and exclusions remain unchanged.

**END 4**

**ENDORSEMENT# *5***

This endorsement, effective *12:01 am*　　*September 22, 2002*　　forms a part of
policy number　*279-84-78*
issued to　*MBA OF WYOMING, INC.*
　　　　　　*(SEE ADDITIONAL NAMED INSUREDS)*

by　　*American International Specialty Lines Insurance Company*

### Additional Insured Endorsement

In consideration of the premium charged, it is hereby understood and agreed that the
definition of "you, your or insured" is amended to also mean:

Managed Benefits Administrative and Insurance Consultants Inc. (MBA)
Critique (Utilization Review)
P.O. Box 651109 or 3625 W. Temple Suite 200
Salt Lake City, UT　84165
Retro Date of September 22, 2000

Mountain Benefits Associated　(MBA)
Mountain States Review (Utilization Review)
P.O. Box 98 or 809 South Railway Avenue
Worland, WY 82401
Retro Date of September 22, 2000

Claims Data Outsourcing Technologies, Inc. (CDO)
P.O. Box 571123 or 3625 W. Temple Suite 201
Salt Lake City, UT　84157
(CDO engages in all aspects of computer and systems services for managing employee
benefit plans and claims and related services).
Retro Date of September 22, 2001

And any past present or future officer, director, trustee or employee thereof.

Wrongful act means any actual or alleged negligent act, or error or omission, misstatement
or misleading statement committed solely in your performance of professional services on
behalf of or at the direction of the named insured or any subsidiary thereof.

All other terms, conditions and exclusions remain unchanged.

*END 5*

AUTHORIZED REPRESENTATIVE

IAN 2 8 2003

# NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.

## CLAIM REPORTING INFORMATION SHEET

Reported Under Policy/Bond Number:_____

Type of Coverage:_____

Insured Name, As Given On Policy Declarations (Face Page)_____

_____

Contact Persons:_____

Title:_____

Phone:_____

Case or Claimant Name:_____

·If The Party Involved Is Different From "Insured" Name (As Given On Policy
Declarations) State Relationship:_____

_____

Insurance Broker/Agent:_____

Addres:_____

Contact Person:_____

Phone:_____

Name Of Underwriter (If Known)_____

_____

Please Provide The Information Requested Above So That We May Expedite Our
Service To You.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.