United States District Court
Southern District of Texas
FILED

OCT 0 1 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT § § § | |
| vs. § | CIVIL ACTION No. B-03-047 |
| COMPANION LIFE INSURANCE COMPANY, MANAGED BENEFITS ADMINISTRATOR AND INSURANCE CONSULTANTS, INC., J. ALLAN HALL & ASSOCIATES, INC., and MBA OF WYOMING, INC. § § § § § § | |

## PLAINTIFF'S DESIGNATION OF EXPERT WITNESSES

TO THE HONORABLE UNITED STATES DISTRICT COURT:

NOW COMES Plaintiff, SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, and designates the following expert witnesses.

1. Plaintiff hereby designates Mr. Tony Schrader, Mr. Peter Monrad, and Mr. Lester Wyatt as experts retained by Plaintiff to give testimony in this case. Attached hereto as Exhibit "A" is the report of Mr. Schrader, and the other information required to be disclosed by Rule 26. Attached hereto as Exhibit "B" is the report of Mr. Monrad and Mr. Wyatt, together with the other information requested by Rule 26.

2. While not retained to give testimony at the trial of this case, Mr. Stephen E. Walraven, Mr. Otto S. Good and Mr. Norton Colvin, who are counsel for Plaintiff in this case are expected to provide testimony, post-verdict, concerning attorney's fees. They are expected to testify as to the work that was performed in representing San Benito Consolidated Independent School District in this case, that the work was reasonable and necessary for the prosecution of this case, and as to the reasonable and necessary attorney's fees incurred by Plaintiff. It is expected that they will give testimony as to the number of hours which have been performed through that date, and that a

reasonable and necessary attorney's fees for performing such work is $200 per hour. They are also expected to testify as to the reasonable and necessary attorney's fees on appeal.

    Respectfully submitted,

    LAW OFFICES OF RENE RAMIREZ
    Celeste Guerra
    1906 Tesoro
    Pharr, Texas 78577
    Telephone: 956/783-7880
    FAX # 956/783-7884
    AND
    SHADDOX, COMPERE, WALRAVEN
      & GOOD, P.C.
    1250 N. E. Loop 410, Suite 725
    San Antonio, Texas 78209
    Telephone: 210/822-2018
    FAX: 210/822-4068

    By: _____
       Stephen E. Walraven
       State Bar No. 20796800
    **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the foregoing instrument has been served on counsel listed below on this 29th day of September, 2003.

**ATTORNEYS FOR DEFENDANT**
**COMPANION LIFE INSURANCE COMPANY**
Mr. Shelby J. Bush
PIPER RUDNICK
1717 Main Street, Suite 4600
Dallas, Texas 75201-4605

**ATTORNEYS FOR DEFENDANT**
**J. ALLAN HALL & ASSOCIATES, INC.**
Ms. Roberta J. Hegland
BRACEWELL & PATTERSON, L.L.P.
2000 One Shoreline Plaza, South Tower
800 North Shoreline Boulevard
Corpus Christi, Texas 78401-3700

**ATTORNEYS FOR DEFENDANTS**
**MBA OF WYOMING, INC., AND MANAGED BENEFITS**
**ADMINISTRATOR AND INSURANCE CONSULTANTS, INC.**
Ms. Cindy A. Garcia
THE GARCIA LAW FIRM, P.C.
201 North 1st Street
Harlingen, Texas 78550

                                              _____
                                              STEPHEN E. WALRAVEN

# Tony Schrader, P.C.

Tony Schrader*
Attorney/Arbitrator
*Licensed in IA & TX

816 Congress Avenue - Suite 1100
Austin, Texas 78701

Office (512) 473-3619
FAX (512) 255-6627

John F. Hamje
Of Counsel

E-Mail Address:
TLSchrader@aol.com

September 25, 2003


Stephen E. Walraven
Shaddox, Compere, Walraven & Good
The North Frost Center
1250 N.E. Loop 410, Suite 725
San Antonio, Texas 78209


RE:  Civil Action No. B-03-047; San Benito Consolidated Independent School District v. Companion Life Insurance Company, et al; In The United States District Court Southern District Of Texas Brownsville Division


Dear Mr. Walraven;

    Enclosed you will find a copy of my curriculum vitae, which outlines my background and qualifications. You will also find enclosed a listing of the cases where I have testified as an expert, either by deposition or trial testimony, within the preceding four years. This will confirm that I am being paid at the rate of $200.00 per hour to study materials and $300.00 per hour to testify, either by deposition or at trial, in the above caption matter.

    You have asked me to review materials and render my opinion in the above captioned case. In forming my opinions I have reviewed the following materials:

1. Oral Deposition of Lorenzo Sanchez taken June 26, 2003, with exhibits (Nos. 1-15)
2. Oral Deposition of Janie Gonzalez taken June 26, 2003, with exhibits (Nos. 16-26)
3. Oral Deposition of Don Merrill, taken July 21, 2000
4. Oral Deposition of Phyllis Merrill, Vol. I and II, taken July 21 & 22
5. Deposition Exhibits (Nos. 27-55)
6. Oral Deposition of William Larry Blagg, taken on July 31, 2003
7. Oral Deposition of James Allan Hall, taken on July 31, 2003
8. Oral Deposition of Roy Franklin Hutchison, taken on August 13, 2003
9. Documents regarding renewal of policy (with BCS)

# EXHIBIT "A"

My opinions are as follows.

1. Managed Benefits Administrators & Insurance Consultants, Inc, and MBA of Wyoming, Inc., hereinafter referred to as the TPA (third party administrator), breached it's duty by failing to act as a reasonable TPA would. It failed to meet the minimum standards for a TPA in the state of Texas. A TPA really runs the insurance program for a group insured program such as that of the San Benito Consolidated Independent School District. As such the TPA is called upon to do more then merely pay claims as they come in. The TPA has an overall supervisory responsibility and as such owes a duty to the group insured to keep it appraised of the contractual terms and appraised as to how those contractual terms are applying to the factual situation. The TPA in this litigation did not do so.

2. The TPA did not appropriately explain the contractual provisions to the insured. It did not stress the importance of contractual provisions which caused the group insured to be responsible for claims at the end of the contractual period. It did not stress the importance of timely claims handling and claims payment to the contract. Here the claims in question could easily have been paid had the group insured known of the contractual provisions.

3. The TPA did not call to the attention of the group insured the fact that money had to be remitted to cover existing claims so that those claims would be payable by the insurance carrier. The failure to do this caused the group insured to be exposed to liability for those claims which were not paid during the policy period.

4. The TPA did not pay the claims as it was required to do under the contract. This is the most basic duty that a TPA can have. This is the essence of the function of a TPA. By failing to make these claims payments the TPA exposed the group insured to liability which was totally unnecessary.

5. The group insured was reasonable in relying upon the TPA to provide the services in question. The services (explaining the contract and notifying the contractors of important issues as they develop factually) were in fact the services that had been contracted for by the contract between the group insured and the TPA. This sort of contract is relatively common and the duties contemplated by the contract were also the duties that are contemplated by the custom and practice in the insurance industry. The TPA failed to read, comprehend, and comply with the contract.

My opinions are based on the materials that were provided to me. Should I be provided with new and different materials that are relevant those opinions may change.

Sincerely yours,

Tony Schrader

TS/mjs

enclosures

# CURRICULUM VITAE

**TONY SCHRADER**  512-473-3619 - Office
**TONY SCHRADER, P. C.**  512-255-6627 - Fax
**816 Congress Avenue - Suite 1100**
**Austin, Texas 78701**

| | |
|---|---|
| 1990 | December 1990 to the Present<br>Private law practice in Austin, Texas |
| 1988 | Admitted to the Texas Bar |
| 1988 | Designation of Certified Insurance Examiner conferred by the Insurance Regulatory Examiners Society |
| 1988 | Employed by the Texas State Board of Insurance; Austin, Texas |
| | 1988-90  Special Deputy Commissioner, Director, Market Conduct Division. Supervising Claims and Complaints, Advertising, and Market Conduct Examinations sections. |
| 1972 | Employed by the Iowa Department of Insurance; Des Moines, Iowa |
| | 1972-74  Complaints Attorney - Handling consumer's insurance complaints and insurance agent prosecutions for licensing violations. |
| | 1974-75  Senior Insurance Analyst - Doing all of the above duties, plus life and health policy forms review. |
| | 1976-80  Director of the Public Services Division (later called the Prosecutions Division). Doing all of the above duties plus supervising the three lawyers and their staff doing essentially the above duties. |
| | 1980-88  Bureau Chief / Doing the above duties plus supervising the Agents Licensing Section. |
| | 1980-88  Deputy Insurance Commissioner |
| 1973 | Admitted to the Iowa Bar |
| 1972 | Graduated - University of Iowa / College of Law; Iowa City, Iowa<br>Juris Doctorate |
| 1969 | Graduated - William Penn College (Now William Penn University); Oskaloosa, Iowa<br>Bachelor of Arts Degree - Major in Economics / Minor in Political Science |
| 1966 | Graduated - Sigourney High School; Sigourney, Iowa |

**Committee work for the National Association of Insurance Commissioners.**

| | |
|---|---|
| 1974-76 | Iowa member on the Market Conduct Surveillance task force developing a Uniform Complaint Handling Database. |
| 1976-77 | Iowa representative on the Task Force on Unfair Discrimination in Insurance and the handicapped. |
| 1983-88 | Iowa representative on the Market Conduct Surveillance Task Force dealing with various Conduct issues including: |

  1. Collision Damage Waivers in Automobile Rental.
  2. Misrepresentation in Estate Conservation.
  3. Debtor Coercion to purchase Life Insurance as a precedent to obtaining a Government Guaranteed Student Loan.

| | |
|---|---|
| 1984-88 | Chaired the Working Group to develop a Uniform Central Licensing System, i.e.: a nationwide system for agent licensure. |
| 1988-90 | Texas representative on the Working Group to revise the Model Unfair Trade Practices and Unfair Claims Practices Act. |

**Writings**

1. Author of the Insurance Department of Iowa Regulation concerning Unfair Discrimination Against the Blind and Partially Blind and Physically Handicapped.

2. Author of the Iowa Continuing Education Regulation Chapter 11; 510 Iowa Administrative Code.

3. Co-Author of the new Continuing Education Regulation and the Insurance Agent Licensing Regulation both effective November 15, 1984.

4. Supervising the drafting of all questions on the Iowa Insurance Agents Licensing Exam.

5. *Tort Ramifications of the Insurance and Unfair Trade Practices Act*, "Insurance Law and Practice" November 1981, University of Iowa Continuing Legal Education Program.

6. *When Buying Insurance Shop Around*, "The Iowa Insurance Quarterly" Volume 2, Fall 1986.

7. *Insurance Law*, "11th Annual General Practices Review Seminar" December 1986, Drake University.

8. *Insurance Agent's Most Common Questions*, "Viewpoint" Volume 5, Issue 1, January 1987. The publication of the Independent Insurance Agents of Iowa.

9. *The Twelve Most Asked Questions*, "The Iowa Insurance Interpreter" Volume 44, Issue 2, February 1987, the magazine of the Professional Insurance Agents of Iowa.

10. *The Disciplinary Process Reviewed*, "The Iowa Insurance Quarterly" Volume 3, Spring 1987.

11. *Common Consumer Questions*, "The Iowa Insurance Quarterly" Volume 4, Summer 1987.

12. *Linked Products: A Poor Match*, "Best's Review", Life/Health Edition, Volume 88, No. 3, July 1987.

13. *Linked Products: A Poor Match*, "The Iowa Insurance Quarterly" Volume 5, Fall 1987.

14. *Collision Damage Waiver: Buyer Beware*, "The Iowa Insurance Quarterly" Volume 6, Winter 1987.

15. *Proposition 103: Watershed or Waterloo?* "The Regulator" February 1989, the magazine of the Insurance Regulatory Examiners Society.

16. *Computerizing Complaints*, "The Texas Insuror" July/August 1989.

17. *How a Company Becomes a Target of a Market Conduct Examination*, a paper presented at the November 28/29, 1990 seminar "Latest Trends in Market Conduct Examinations of Insurance Companies", Executive Enterprises, New York, New York.

18. *How To Deal With a Bad Examination Report*, a paper presented at the May 20/21, 1991 seminar "Preparing For Market Conduct Examinations of an Insurance Company", Executive Enterprises, New York, New York.

19. *Texas Insurance Reform: Enforcing Insurance Claims Practices*, FORC (Federation of Regulatory Counsel. Inc.) Quarterly Newsletter, Vol. IV, Edition 1, March 24, 1992.

20. *Texas Department of Insurance, What Information is Available; How To Get It*, a paper presented at the May 13th & 20th 1993 seminars "Insurance Law", sponsored by the University of Houston Law Foundation.

21. *Texas Department of Insurance, What Information is Available; How To Get It*, a revised paper presented at the May 20th & 27th 1994 seminars "Insurance Law", sponsored by the University of Houston Law Foundation.

22. *The use and abuse of market conduct exams*, a paper co-authored with Dan McKay, Attorney At Law, The Woodlands, Texas, "The Regulator", July 1994, the magazine of the Insurance Regulatory Examiners Society.

23. *Congratulations, your company has just been selected for a market conduct exam...*, a paper co-authored with Paul Lamb, FLMI, CLU, ChFC, AIE, Austin, Texas, "Insurance News - Texas Edition", fall 1995.

24. *Cooperation needed when preparing for market conduct exam*, a paper co-authored with Paul Lamb, FLMI, CLU, ChFC, AIE, Austin, Texas, "Insurance News - Texas Edition", April 1996.

25. *Strategy needed for market conduct examination process*, a paper co-authored with Paul Lamb, FLMI, CLU, ChFC, AIE, Austin, Texas, "Insurance News - Texas Edition", July 1996.

26. *What's In A Name?*, a paper co-authored with Don Hanson, Jr., law clerk and 3rd year law student at Drake University, Des Moines, Iowa, "The Regulator", July 1996, the magazine of the Insurance Regulatory Examiners Society.

27. *The Texas Interim Procedures For Banks Selling Insurance: A Response to the Barnett Bank Decision*, a paper co-authored with Drew Bagot, JD & Steve Clemons, JD, attorneys with Vial Hamilton Koch & Knox, "FORC" (Federation of Regulatory Counsel Inc.) Quarterly Newsletter, Vol. III, Edition 4, December 14, 1996.

28. *Public Records and Insurance: Goin' Fishin' at the Texas Department of Insurance*, a paper co-authored with John Hamje, Attorney At Law, "Journal Of Texas Insurance Law", Winter 2000 Volume 2, Number 1.

29. *Sharing Commissions With Unlicenced Entities In Texas: The Wisdom Of Solomon V. Greenblatt*, a paper co-authored with John Hamje, Attorney At Law, "FORC" (Federation of Regulatory Counsel Inc.) Quarterly Newsletter, Vol. XII, Edition I, Edition 4, March 11, 2000.

**Teaching**

| | |
|---|---|
| 1977-83 | Taught in the Paralegal Program at the Des Moines Area Community College. Course titles included: Business Law, Corporate Law, Insurance Law, Administrative Law, and Debtor/Creditor Law. |
| 1983-88 | Taught two short courses per year for the Des Moines Independent School District. The course taught was on an Agent's Responsibility. |
| 1983-88 | The above course was also taught to the Professional Insurance Agents of Iowa. |
| 1990 | Taught a short course for the November 28/29, 1990 seminar "Latest Trends in Market Conduct Examinations of Insurance Companies", sponsored by Executive Enterprises, New York, New York. The course was entitled "How a Company Becomes a Target of a Market Conduct Examination?" |
| 1991 | Taught two short courses and chaired the May 20/21, 1991 seminar "Preparing For Market Conduct Examinations of an Insurance Company", sponsored by Executive Enterprises, New York, New York. The courses taught were entitled "How a Company Becomes a Target of a Market Conduct Examination" and "How to Deal With a Bad Examination Report.. |

| | |
|---|---|
| 1993 | Taught a course at the May 13th & 20th 1993 seminars "Insurance Law", sponsored by the University of Houston Law Foundation, title of the course being, "Texas Department of Insurance, What Information is Available; How To Get It". |
| 1994 | Taught a course at the May 20th & 27th 1994 seminars "Insurance Law", sponsored by the University of Houston Law Foundation, title of the course being, "Texas Department of Insurance, What Information is Available; How To Get It". |

**Professional Certifications and Activities**

1. Member of the Insurance Regulatory Examiners Society

2. Certified Insurance Examiner (CIE)

3. Editor of "The Regulator", the newsletter for the Insurance Regulatory Examiners Society, from 1988 thru July 1991.

4. Commercial Panel, the American Arbitration Association

5. April 1991, appointed to the Governor's Task Force on Small Employer Health Insurance.

6. Member of the Federation of Regulatory Counsel.

7. The Insurance Regulatory Examiners Society began in 1994 to bestow an annual award for meritorious service called the Schrader-Nelson Award. This award was named for Governor Ben Nelson of the State of Nebraska and myself.

8. In 1989 The Iowa Insurance Foundation established a scholarship program whereby one or two scholarships are granted to sophomore students attending an Iowa College and studying in the area of insurance. The scholarship is named Tony Schrader Scholarship as an honor to me for starting the annual insurance commissioner's golf tournament which is the major fund raiser for this fund.

## Cases Where I Have Been Deposed Or Testified, With Jurisdiction, Within The Prec

### Party #1

Kraft Foods, Inc
Colonial County Mutual Ins Co
Custom Day Care Learning Center
Jean Definnis and Darius Definnis
Service Guard Ins Agency
Mary Helen Drury
James R Austin, Conservator of the Estate of Willis Rozenberg et al
General Diagnostics Inc
Mark D Crawford
Teri L Coffey
Hang Em High Saloon
Sweezy Construction Inc, et al
Eric Henry
Karen Holroyd Bult, et al
William C Pickle III
Flynn Construction
Joseph Edward Sloan, et al
Kathryn Snider
Tamarack Capital, LLC et al
Peoples Benefit Life Ins Co
William C Talen and Farmers Savings Bank and Trust - Vinton
Gene Sloan and Caroline Sloan
Donald L Watkins Jr and Bridget Watkins et al
Brooke Corporation
CGU Successor-In-Interest to American Employer's Ins Co
Ora Ruffin
Husky Drilling and Trevor Herrera
Larue T Pistocco
Brian Branch et al
Joyce M Hanson
Meadowcreek Municipal Utility District
Theodore Hasson
New Era of Networks Inc
John F. Crimmins, Cathy Crimmins
Bryan Ramsey
Clayton Shelburne and Lilia Shelburne

### Party #2

Home Indemnity Co., Cigna P&C Ins Co et al
Georgetown Transportation Inc, Pedro Perez, individually et al
Markel Insurance Company and Hibbs Hallmark & Co et al
Richard F. Allen; State Farm Mutual Automobile Ins Co, et al
Warranty Automobile Inc, New Hampshire Ins Co et al
National Group Life Insurance
American Family Mutual Insurance Company, et al
Hartford Casualty Insurance Company
Security First Group, Inc. et al
Progressive Northen Insurance Company et al
Acceptance Insurance Company, et al vs. Jason C Spence
Mcafee Insurance Agency, et al
Allstate Insurance Company, et al
Chad S Metcalfe, USAA, et al
Metropolitan Life Ins Co and Kanawha Health Care Solutions Inc
Hartford Casualty and Time Ins
State Farm Mutual Automobile Ins Co, et al
American Travelers Life Insurance Company
Access HealthSource Inc
Dale Larson and Phyllis Larson
EMC Insurance Company and Minnesota Fore & Casualty Company
State Farm Lloyds and Mike Leon
State Farm Fire & Casualty Co et al
James Lette and Alicia Lette et al
The Gillette Company, Successor-In-Fact et al
Wisconsin Physicians Services
Valley Forge Ins Co & CNA Ins Co
New England Life Ins Co
Farmers Insurance Company of AZ
Mutual of Omaha Insurance Co
Mid-Continent Casualty Company
Great Northern Ins Co, Federal Ins Co, Hartford Fire Ins Co
Lanna Pai and B Lanna, Inc vs H International Distributors et al
American National Life Ins Co of TX, Robert Vanderbilt, et al
Civil Service Employees Insurance Company et al
Keith Linhardt....Jackson National Life Ins Co et al

# THE MONRAD
# CONSULTING GROUP, LTD.
### QUALITY CLAIMS SERVICES, INC.
#### A NETWORK OF CLAIM SERVICES AFFILIATES

September 25, 2003

Mr. Stephen E. Walraven
Attorney at Law
Shaddox Compere Walraven & Good
1250 N. E. Loop 410 Suite 725
San Antonio, TX 78209

Re: San Benito Consolidated

Dear Mr. Walraven:

In accordance with our discussions, here is our report. If you have any questions please do not hesitate contact us.

## BACKGROUND

September 9, 2003 Stephen E. Walraven, Attorney At Law retained The Monrad Consulting Group, Ltd. (Monrad Consulting). Monrad Consulting was furnished certain documents having to do with the Civil Action of San Benito Consolidated Independent School District (San Benito) v. Companion Life Insurance Company (Companion), et al.

San Benito's Employee Benefit Plan was administered by Managed Benefits Administrator and Insurance Consultants, Inc., and MBA of Wyoming, Inc. (MBA). San Benito's stop coverage was placed with Companion through its Managing General Underwriter, J. Allan Hall & Associates (Hall) and The Consolidated Companies (Consolidated). A stop loss Policy was issued by Companion.

Companion denied approximately $900,000 of San Benito's Specific claims using the reason that they were not paid as required by the terms and provisions of the Companion Policy. San Benito's administrator, MBA appears to have administered this plan as if it had made an arrangement with Hall called "advance specific funding" where it was not necessary to first pay these claims in order to be reimbursed by Companion.

Monrad Consulting was asked for its opinion as to what MBA should have done. It is also understood that we may be requested to review the claims in question to determine whether they are reimbursable.

SUITE 100, 11205 WEST 106TH STREET, OVERLAND PARK, KANSAS 66214
(913) 438-3463 • FAX (913) 438-3664 • TOLL FREE (888) 666-7231 • monrad1@aol.com

**EXHIBIT "B"**

## PRIVILEGED AND CONFIDENTIAL 2

### DOCUMENTS REVIEWED

Monrad Consulting was furnished with exhibits 1 through 5, 8 through 51, 54 and 55. We also received documents regarding policy renewal with BCS and the audit performed by NiiS/Apex.

Monrad Consulting was also furnished the following depositions.
1. Lorenzo Sanchez
2. Janie Gonzalez
3. Don Merrill
4. Phyllis Merrill
5. William Blagg
6. J. Allan Hall
7. Roy Hutchison

### FINDINGS

1. The Policy issued by Companion did not include advance specific funding in its schedule page nor was the Policy endorsed to include advance specific funding. When Consolidated mailed Companion's stop loss agreement to Don Merrill of MBA on January 12, 2001 the transmittal letter admonished him, in bold print, to "Please review the contract carefully".

    The letter then instructs MBA to forward this Stop loss Agreement to the account *if the terms and conditions reflect accurately the result of our negotiation based on your records* (emphasis added). It is apparent that Mr. Merrill did not read this stop loss agreement.

2. MBA's Administrative Service Agreement (ASA) provides, in part that "The Contract Administrator will process and pay benefits in accordance with the plan or policy adopted by the Plan Sponsor." In order to fulfill this obligation it is necessary for the appropriate personnel to know the terms of the plan and the policy. In order to accomplish this it is necessary to read the Plan and the Policy. It is the responsibility of the administrator to know the provisions of the Plans and Policies that he administers.

3. Phyllis Merrill's deposition (starting on page 50) describes a meeting at San Benito in July 2001 with herself, Don Merrill and Mr. Sanchez where she alleges "We were instructed to hold the checks in anticipation of the refund." The lack of response from MBA and lack of proper instructions at that meeting from MBA would have given San Benito the impression that their claims need not be funded in order to receive reimbursement from Companion. This deposition goes on to indicate MBA was working under the impression that advance funding was in place. It is again apparent that MBA did not read Companion's stop loss policy when it was received from Consolidated.

### MBA SHOULD HAVE:

1. Taken all actions necessary to protect the interest of its client, San Benito.

**THE MONRAD CONSULTING GROUP, LTD.**

**PRIVILEGED AND CONFIDENTIAL** 3

2. Obtained written assurance from Hall, Consolidated, et al during the negotiations for the San Benito excess loss policy regarding any advance specific funding agreements that were made.

3. Read the excess loss policy and noticed the absence of any advance specific funding language.

4. Immediately, MBA should have questioned Hall, Consolidated, et al about this discrepancy. This should have been done in writing (dated correspondence) before forwarding the policy to San Benito.

5. Requested, in writing, instructions from Hall as to the proper procedures for filing advance specific funding claims and then followed these procedures when filing specific claims requesting an advance.

6. Processed claims in a timely manner and submitted all specific claims to Hall in a timely manner.

7. Made certain that Hall understood the claims in question were submitted for advance specific funding and followed up with Hall daily.

8. Should have had a procedure in effect to routinely compare a stop loss policy when it is received against the Plan Document, sales and other pertinent files to ensure the agreement that was delivered is consistent with what MBA arranged.

9. When it came to the end of San Benito's Plan year, August 31, 2001, with an absence of reimbursement activity on approximately $900,000.00 of specific claims, MBA was negligent. MBA should have:

    - released all checks before August 31 and,
    - notified San Benito to fund the account.

Sincerely,

THE MONRAD CONSULTING GROUP, LTD.

*[signature: Peter Monrad]*

Peter O. Monrad, President

POM: bhs

CC Lester Wyatt

### PETER O. MONRAD

Mr. Monrad began his consulting and auditing practice in 1989 after more than 30 years of group insurance experience.

He began his claim experience with a major insurance company where one of his responsibilities was to design the initial Group Internal and Field Office Claim Audit procedures. He later supervised all quality measurement and training activities and eventually was appointed to Director of the Group Claims Department. He has also held the position of Chief Operating Officer for two Third Party Administrators and an insurance company. Immediately prior to becoming a consultant he was President and Chief Executive Officer of a life and health insurance company.

Mr. Monrad is an alumnus of the University of Nebraska.

### MARGARET A. DUNCANSON

Ms. Duncanson joined The Monrad Consulting Group, Ltd. after many years of statistical audit and employee benefit experience both in this country and in Canada. Prior to this she was an Auditor, Assistant Claim Manager and Internal Claim Operations Analyst for a major Canadian insurance company.

Ms. Duncanson was initially trained as a nurse. This background is of great value during health care plan operational audits, particularly in the area of medical necessity.

### LESTER WYATT, ALHC, DIPLOMATE ICA

Mr. Wyatt has over 12 years of employee benefit consulting and auditing experience specializing in specific and aggregate stop loss reinsurance. Prior to becoming a consultant he held the position of Vice President, Claims for two major insurance companies, a Third Party Administrator and a Managing General Underwriter.

Mr. Wyatt is an alumnus of Northeast Louisiana University.

### THE MONRAD CONSULTING GROUP, LTD.

Sep 09 03 01:14p THE MONRAD CONSULTING GROUP 913-438-3664 p.3
Case 1:03-cv-00047 Document 31 Filed in TXSD on 10/01/2003 Page 16 of 17

2

### MATTHEW E. MONRAD, ALHC, HIA

Mr. Monrad serves as a Consultant to our Group with a specialty in insurance related Information Technology as well as all aspects of claim operations.

He has over 15 years of experience both in health insurance administration and complex insurance systems technology. He began his insurance career in the claims department of a Third Party Administrator and later became Manager of the Claim Department. Following that he was named the Chief Administrative Officer of a local insurance company where he was responsible for the Underwriting, Policyholder Service and Claims Departments. Immediately prior to joining our Group he was employed as an Account Executive and Consultant with an international firm that provides Information Technology services and solutions to the insurance industry.

He received his Bachelor's Degree in Liberal Arts and Sciences from the University of Kansas.


### ANDREW C. MONRAD, RPh.

Mr. Monrad serves as a specialist in pharmacy claim processing and as a Consultant to our Group.

Mr. Monrad has over 17 years of experience both as a registered pharmacist and in pharmacy benefit management. He continues to be employed as a registered pharmacist and remains current in all aspects of the dispensing and management of pharmaceutical medications.

He received his Bachelor's Degree in Pharmacy from the University of Kansas.

## PRIOR TESTIMONY OF MR. MONRAD AND MR. WYATT

Central Parking System v. Anthem Health and Life Insurance Co.

Cavalier Homes v. The Hartford, Group Resources, Inc.

Southern Food Services Management v. Group Resources, Inc.