United States District Court
Southern District of Texas
FILED

APR 1 4 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

SAN BENITO CONSOLIDATED §
INDEPENDENT SCHOOL DISTRICT §
§
VS. § CIVIL ACTION NO. B-03-047
§
COMPANION LIFE INSURANCE COMPANY, §
MANAGED BENEFITS ADMINISTRATOR §
AND INSURANCE CONSULTANTS, INC., §
J. ALLAN HALL & ASSOCIATES, INC., §
and MBA OF WYOMING, INC. §

## JOINT PRETRIAL ORDER

COME NOW Plaintiff, SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, and Defendants, COMPANION LIFE INSURANCE COMPANY, MANAGED BENEFITS ADMINISTRATOR AND INSURANCE CONSULTANTS, INC., J. ALLAN HALL & ASSOCIATES, INC., AND MBA OF WYOMING, INC., pursuant to this Court's Scheduling Order, and respectfully submit their Joint Pretrial Order as follows:

### COUNSEL OF RECORD

1. Plaintiff, San Benito Consolidated Independent School District
Stephen E. Walraven
Otto S. Good
Shaddox, Compere, Walraven & Good, P.C.
1250 N. E. Loop 410, Suite 725
San Antonio, Teas 78209
Telephone: 210/822-2018
AND
Celeste Guerra
LAW OFFICES OF RENE RAMIREZ
1906 Tesoro
Pharr, Texas 78577
Telephone: 956/783-7880
AND
Norton A.Colvin, Jr.
Rodriguez & Colvin
1201 E. Van Buren St.
P. O. Box 2155
Brownsville, Texas 78522
Telephone: 956/542-7441

2.      Defendant, Companion Life Insurance company
        Shelby J. Bush
        Piper Rudnick, L.L.P.
        1717 Main Street, suite 4600
        Dallas, Texas 75201
        Telephone: 214/743-4500

3.      Defendant, J. Allan Hall & Associates, Inc.
        Roberta J. Hegland
        Joseph A. Stallone
        Bracewell & Patterson, L.L.P.
        2000 One Shoreline Plaza-South Tower
        800 North Shoreline Blvd.
        Corpus Christi, Texas 78401-3700
        Telephone: 361/882-6644

4.      Defendants, Managed Benefits Administrator and Insurance Consultants, Inc. and
        MBA of Wyoming, Inc.
        Cindy A. Garcia
        The Garcia Law Firm, P.C.
        201 North 1st Street
        Harlingen, Texas 78550
        Telephone: 956/412-7055

## STATEMENT OF THE CASE

In the mid-1990s, San Benito Consolidated Independent School District set up a program to self-insure the health care benefits it was providing to its employees. Under this program, the School District was responsible for paying the first $75,000 in covered medical costs for each employee, or an insured dependent, each year. For claims which exceeded the $75,000 amount in any one year, the School District purchased an insurance policy called a stop-loss policy. For the year at issue in this case, 2000-2001, the stop-loss policy was purchased from Companion Life Insurance Company, a company out of Columbia, South Carolina.

The administration of the School District's health care claims was handled by a company named MBA of Wyoming, Inc., located in Salt Lake City, pursuant to a written contract. Health care providers, such as doctors or hospitals, submitted their claims directly to MBA of Wyoming, Inc., who agreed to make certain that the appropriate amounts owing under the plan were calculated, and to pay the bills. While MBA of Wyoming, Inc., was the party to the contract, most of the work was done by an affiliated company called Managed Benefit Administrators & Insurance Consultants, Inc. MBA of Wyoming, Inc., and MBAICI share the same offices and employees, in Salt Lake City.

In addition to paying the health care providers, MBA of Wyoming, Inc., and MBAICI

assisted in the procurement of the stop-loss insurance from Companion Life, and also handled the filing of claims under the stop-loss insurance policy, for the amounts over $75,000.

For the policy year in question, MBA contacted a broker named Mr. Doug Routh of the Consolidated Group to assist in the procurement of stop-loss insurance, and Mr. Routh in turn contacted J. Allan Hall & Associates, Inc., of Indianapolis, Indiana.

J. Allan Hall & Associates, Inc., is a managing general agent or managing general underwriter. As an MGAU J. Allan Hall accepts stop-loss insurance applications, decides whether a stop-loss insurance policy should be issued, decides the amount of premium to charge, collects the premiums, and reimburses the claims in accordance with its contract with the stop-loss insurance company. In this case, J. Allan Hall performed all of those functions on behalf of the stop-loss insurance company, Companion Life. All of Companion Life's business is handled through MGUs such as J. Allan Hall.

This lawsuit arises from health claims for four individuals insured by the School District's plan and whose claims exceeded the $75,000 deductible amount. Together, these claims total over $850,000, and were paid by the School District. The School District sought to be reimbursed by J. Allan Hall and Companion Life, but it was not.

Companion Life and J. Allan Hall have refused to pay those claims, and say the claims are not owed because they were not paid as required by the contract within the policy year. MBA says the claims were handled exactly the way J. Allan Hall said they should be handled. The School District is seeking to recover that amount from the party or parties responsible. If MBA mishandled the claims, the School District believes MBA should reimburse it in that amount. If the claims were properly handled by MBA, then Companion Life should pay the claims. If the claims were mishandled by MBA because J. Allan Hall provided the wrong information on how to handle the claims, then the School District believes that J. Allan Hall should have to pay.

## JURISDICTION

This Court has jurisdiction of all the parties and issues in this case, pursuant to 28 U.S.C.A. § 1332. There is complete diversity of the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. There are no unresolved jurisdictional questions.

### PENDING MOTIONS

Current pending motions to be resolved by the Court include a Motion for Summary Judgment filed by Companion Life Insurance Company, a Motion for Summary Judgment filed by MBA of Wyoming, Inc., and Managed Benefits Administrator and Insurance Consultants, Inc., a Motion for Sanctions filed by J. Allan Hall & Associates, Inc., Companion Life Insurance Company, and San Benito Consolidated Independent School District; Motions in Limine will be filed by all parties, and Motions for Admission Pro Hac Vice by Plaintiff and J. Allan Hall.

### CONTENTIONS OF THE PARTIES

#### *Contentions of the Plaintiff*

San Benito Consolidated Independent School District contacted MBA to purchase stop-loss insurance. MBA represented that it was an expert in stop-loss insurance, both in purchasing it, as well as processing claims for stop-loss insurance. Plaintiff contracted with MBA to purchase the stop-loss insurance involved in this case, and also entered into a contract with MBA to process stop-loss insurance claims.

MBA went to a stop-loss insurance broker, Mr. Douglas Routh with the Consolidated Group. Mr. Routh in turn contacted J. Allan Hall, to buy the stop-loss insurance at issue in this case. Companion Life was the stop-loss insurance company which issued the policy.

In 1999, MBA met with Mr. J. Allan Hall at MBA's offices, to discuss stop-loss insurance, and the administration of stop-loss claims. According to MBA, both the express representations of Mr. Hall, as well as the custom and practice between MBA and J. Allan Hall, were to treat health insurance bills as paid, once the check was written. The date on the check was considered the date that MBA paid" the claim.

The stop-loss insurance reimburses the San Benito School District for claims it has paid, once they have been "paid." MBA asserts that the claims were considered paid, once the checks were written, with the date on the check indicating the date the claim was "paid." J. Allan Hall and Companion Life assert that a claim is not "paid" until the check has been placed in the mail. Claims must be "paid" within the policy period to be reimbursable. The stop-loss claims in this case are based on checks that were written and dated prior to the end of the policy period, but not placed in

the mail until after the policy period had expired.

Plaintiff contends that Companion Life owes these claims, because they were "paid" in accordance with the custom and practice of the parties and the express representations of J. Allan Hall. If Companion Life does not owe these stop-loss claims pursuant to its contract, then J. Allan Hall misrepresented the terms of the stop-loss policy. Those misrepresentations by J. Allan Hall were made on behalf of itself and Companion Life, for which they are both responsible. Those representations were made to MBA, which was the School District's agent with respect to the purchase and processing of stop-loss claims.

Plaintiff also contends that MBA was negligent in not reading the policy, in not clarifying the interpretation of the term "paid," and in not handling the disputed claims so as to obtain reimbursement from Companion Life.

Plaintiff contends that any condition precedent to payment under the policy has been waived, and/or Defendants are estopped to assert such condition, by reason of their custom and practice.

San Benito School District also denies that it instructed MBA to hold checks past the end of the policy period, or to do anything else to jeopardize the reimbursability of its stop-loss claims.

Plaintiff also contends MBA also misrepresented to the School District that these claims would be reimbursed by Companion Life; and then later misrepresented that these claims would be reimbursed by the stop-loss carrier for the following year, BCS.

### Contentions of Defendants, Companion Life Insurance Company and J. Allan Hall & Associates, Inc.

In general, Defendants claim:

1.      Defendant, J. Allan Hall observed and complied with all terms and conditions of the stop-loss contact at issue.

2.      Plaintiff, San Benito Consolidated Independent School District and/or MBA failed to comply with the terms and conditions of the stop-loss contract at issue.

3.      Plaintiff SBCISD and/or MBA failed to comply with all conditions precedent.

4.      Plaintiff SBCISD and/or MBA failed to timely submit the claims at issue.

5.      The stop-loss insurance contract is a reimbursement contract wherein Plaintiff must first pay claims before submitting them for reimbursement.

6.      Payment was not made on the claims at issue within the effective dates of the contract.

7.      Without payment under the stop-loss contract, the claims at issue were not owed by Defendant, Companion Life.

8.      Payment under the stop-loss contract is not deemed made until both (a) the payor directly tenders payment by mailing (or otherwise delivering) a draft or check, and (b) the account upon which the payment is drawn contains, and continues to contain, sufficient funds to permit the check or draft to be honored.

9.      Plaintiff SBCISD, through its own actions or through the actions of Defendant MBA, did not timely tender payment.

10.     "Stop-Loss" coverage and reinsurance are synonymous.

11.     SBCISD purchased reinsurance from Defendant Companion Life.

12.     Defendant J. Allan Hall was the agent of Companion Life.

13.     At all relevant times, Defendant J. Allan Hall acted within the scope of its agency relationship with Companion Life.

14.     As an agent within the course and scope of its authority, Defendant J. Allan Hall has no independent liability to Plaintiff SBCISD.

15.     Defendant J. Allan Hall, the agent, had no authority to adjust and settle the claims at issue in this case, and thus it cannot be held in any way responsible for Companion Life's ultimate decision with respect to the handling of San Benito's claims.

16.     Defendant J. Allan Hall did not misrepresent the terms of the stop-loss insurance contract.

17.     Defendant J. Allan Hall did not misrepresent material facts or provisions related to the stop-loss insurance contract.

18.     Defendant J. Allan Hall had no direct contact with Plaintiff SBCISD regarding the terms of the stop-loss insurance contract.

19.     Defendant J. Allan Hall did not make untrue statements of a material fact regarding the stop-loss insurance contract.

20.     Defendant J. Allan Hall did not fail to state a material fact necessary to make other statements not misleading.

21.     Defendant J. Allan Hall did not make any statement in such a manner as to mislead a reasonably prudent person to a false conclusion of material fact.

22.     Plaintiff SBCISD received exactly what it bargained for under the stop-loss contract at issue.

23.     Neither Plaintiff SBCISD nor Defendant MBA requested that advanced funding be included in the stop-loss contract at issue.

24.     MBA has secured advanced funding for its clients when it was properly requested and paid for.

25.     Defendant J. Allan Hall did not knowingly violate Article 21.21 of the Texas Insurance Code.

26.     Defendant J. Allan Hall did not make any statement or representation whatsoever regarding the terms of the stop-loss insurance contract to Plaintiff SBCISD.

27.     Plaintiff SBCISD did not rely on any representation made by Defendant J. Allan Hall.

28.     Plaintiff SBCISD does not have standing to assert a negligent misrepresentation claim against Defendant J. Allan Hall and Companion Life.

29.     Defendant J. Allan Hall did not make a negligent misrepresentation to Plaintiff SBCISD.

30.     Defendant J. Allan Hall did not make a negligent misrepresentation to Defendant MBA.

31.     Defendant J. Allan Hall did not supply false information for the guidance of either SBCISD or MBA in their business.

32.     Defendant J. Allan Hall exercised reasonable care and/or competence in obtaining and/or communicating information to SBCISD and/or MBA.

33.     Neither Plaintiff SBCISD nor Defendant MBA justifiably relied on any representation allegedly made by Defendant J. Allan Hall regarding the terms of the stop-loss insurance contract.

34.     No act or omission of Defendant J. Allan Hall resulted in harm to Plaintiff SBCISD.

**Contentions of Defendant, MBA of Wyoming, Inc. and Managed Benefits Administrator and Insurance Consultants, Inc.**

It is MBA's position that it acted in good faith at all relevant times and complied with all its obligations.

MBA met with J. Allan Hall in July 1999 and was informed by J. Allan Hall that it administratively handled claims on an advanced funding basis. That is, so long as the deductible amounts had actually been paid, J. Allan Hall would reimburse the School District even if the actual checks had not been mailed to the service providers. Based upon the representations of J. Allan Hall, on behalf of Companion Life, and its experience with other stop loss carriers, MBA handled the claims made the basis of the lawsuit appropriately. It is further MBA's position that it informed the School District that it was holding checks and the School District did not authorize release of those checks until after August 31, 2001.

With respect to the School District's claims regarding the 2000-2001 policy, it is MBA's position that it was under no contractual obligation to procure insurance and relied upon the School District to provide all the necessary information. It is further MBA's position that had all the information been supplied in a timely fashion, the claims made the basis of the lawsuit would still not be covered under the 2001-2002 policy.

With respect to the Plaintiff's Insurance Code claims, it is MBA's position that those claims are barred by the Texas Civil Practice and Remedies Code. As set forth in MBA's Motion for Partial Summary Judgment, Section 172.001, *et seq.*, of the Local Government Code, removes a governmental entity's health benefit plans from the purview of the Texas Insurance Code. With respect to Plaintiff's negligent misrepresentation claim, it is MBA's position, as set forth in its Motion for Partial Summary Judgment, that the cause of action does not exist because all the obligations arose from a contract and if such an obligation exists, Plaintiff cannot establish all the requisite elements.

It is further MBA's position that Plaintiff was responsible for the incident made the basis of the lawsuit in that it failed to read the policy of insurance and failed to authorize the release of the checks. It is further MBA's position that it is entitled to indemnification from Plaintiff pursuant to the agreement between the parties because all of MBA's actions were made in accordance with the

directions of the School District in good faith.

It is further MBA's position that Managed Benefits Administrator and Insurance Consultants, Inc. is not a proper party to the lawsuit in that it had no contract with the Plaintiff and engaged in no real activity.

### ADMISSIONS OF FACT

1.     The SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT is a governmental entity.

2.     MBA of Wyoming, Inc., is a corporation duly organized and existing under the laws of a state other than Texas with its principal place of business located in a state other than the State of Texas. MBA of Wyoming, Inc., is licensed as a third-party administrator by the Texas Department of Insurance.

3.     Managed Benefits Administrator and Insurance Consultants, Inc., is a corporation duly organized and existing under the laws of a state other than Texas with its principal place of business located in a state other than the State of Texas. MBAICI holds no insurance licenses issued by the State of Texas.

4.     Companion Life Insurance company is a corporation duly organized and existing under the laws of a state other than Texas with its principal place of business located in a state other than the State of Texas.

5.     Since the mid-1990s, San Benito Consolidated Independent School District has been self-insured with regard to health insurance benefits which it provides to its employees and their dependents.

6.     In 1995, San Benito Consolidated Independent School District entered into an Administrative Service Agreement with MBA of Wyoming, Inc., regarding its health benefit plan.

7.     MBAICI personnel performed the functions and services called for under the Administrative Service Agreement between San Benito Consolidated Independent School District and MBA of Wyoming, Inc., for the 2000-2001 contract period.

8.    In 2000, San Benito Consolidated Independent School District entered into a second Administrative Service Agreement with MBA of Wyoming, Inc., regarding the School District's health benefit plan.

9.    San Benito Consolidated Independent School District's health plan was established in accordance with Chapter 172.000, et seq., of the Local Government Code.

10.    In July 1999, representatives of MBA of Wyoming, Inc., met with Mr. J. Allan Hall and Mr. Doug Routh to discuss the services and products provided by J. Allan Hall & Associates, Inc.

11.    For the 2000-2001 school year, San Benito Consolidated Independent School District purchased stop-loss insurance from Companion Life Insurance Company.

12.    Prior to the expiration of the 2000-2001 Companion Life policy, MBA received the claims made the basis of the lawsuit and prepared checks for payment of those claims.

13.    The Companion Life stop-loss contract period ended on August 31, 2001.

14.    MBA filed a claim with J. Allan Hall & Associates, Inc., seeking reimbursement for San Benito Consolidated Independent School District for the claims made the basis of the lawsuit.

15.    The amount of the claims, submitted for reimbursement and rejected for reimbursement by H. Allan Hall & Associates, Inc., and Companion Life, total $907,126.88. (All parties agree to the preceding number except MBA and MBAICI who have requested additional documentation on this issue.)

### CONTESTED ISSUES OF FACT

1.    Whether or not it was the custom and practice of MBA and J. Allan Hall to process all stop-loss claims, as an administrative matter, on the basis that advanced funding was being provided, regardless of any contract language to the contrary.

2.    Whether or not J. Allan Hall and Companion Life waived compliance with a policy requirement that checks be mailed with sufficient funds on deposit, prior to the end of the policy year, to be reimbursable.

3.    Whether or not J. Allan Hall and Companion Life are estopped to assert the breach of the condition precedent, that checks be mailed, with sufficient funds on deposit, prior to the end of the policy period, to be reimbursable.

4.    Whether or not MBAW and MBAICI are a "single business enterprise."

5.    Whether or not MBA of Wyoming, Inc., breached its contract to process health benefit claims, exceeding the $75,000 deductible, in a manner for them to be reimbursable under the Companion Life stop-loss policy.

6.    Whether or not MBAW was negligent in the processing of stop-loss claims, which negligence proximately caused damages to the San Benito Consolidated Independent School District.

7.    Whether or not MBAICI was negligent in the processing of health care claims, which negligence proximately caused damages to the San Benito Consolidated Independent School District.

8.    Whether or not MBAW was negligent in failing to read and understand the Companion Life stop-loss policy, and determine that the terms were as J. Allan Hall represented and as MBA expected, which negligence proximately caused damages to the San Benito Consolidated Independent School District.

9.    Whether or not MBAICI was negligent in failing to read and understand the Companion Life stop-loss policy, and determine that the terms were as J. Allan Hall represented and as MBA expected, which negligence proximately caused damages to the San Benito Consolidated Independent School District.

10.    Whether or not J. Allan Hall misrepresented the terms of the Companion Life policy, which misrepresentation was a producing cause of damages to the San Benito Consolidated Independent School District.

11.    Whether or not J. Allan Hall misrepresented material facts pertinent to the Companion Life policy, concerning the administrative handling of claims consistent with advanced funding, which was a producing cause of damages to the San Benito Consolidated Independent School District.

12.    Whether or not MBAW misrepresented the terms of the 2001-2002 stop-loss policy, as covering the claims being denied by Companion Life, which representation was a producing cause of damages to the San Benito Consolidated Independent School District.

13.    Whether or not MBAICI misrepresented the terms of the 2001-2002 stop-loss policy, as covering the claims being denied by Companion Life, which representation was a producing cause of damages to the San Benito Consolidated Independent School District.

14.    Whether or not J. Allan Hall negligently misrepresented that for all of its stop-loss policies it would process claims on an advanced funding basis, which representation was false, and which representation was relied on by San Benito Consolidated Independent School District and its agents, proximately causing damages to the San Benito Consolidated Independent School District.

15.    Whether or not MBAW and/or MBAICI was acting as the agent of the School District regarding the purchase of the stop-loss insurance at issue in this case, the representations made regarding that stop-loss insurance, and administering the stop-loss insurance program.

16.    What are the reasonable and necessary attorney's fees and expenses incurred by the San Benito Consolidated Independent School District in bringing this case, through trial, and what are the reasonable and necessary attorney's fees and expenses which will, in all probability, be incurred should this case be appealed.

17.    Whether or not J. Allan Hall & Associates, Inc., is a corporation duly organized and existing under the laws of a state other than Texas with its principal place of business located in a state other than the State of Texas, and whether J. Allan Hall & Associates does not hold a managing general agents license from the Texas Department of Insurance.

18.    Whether or not J. Allan Hall is admitted by Secretary of State certificate of admission to do business in the State of Texas, and, whether in the State of Texas, a general agent's license is only required for property and casualty insurance, not for other types of insurance as that at issue here.

19.    Whether or not at all relevant times, J. Allan Hall & Associates, Inc., was acting as the managing general underwriter and agent of Companion Life Insurance Company with respect to the policies of stop-loss insurance and claims at issue in this case.

20.    Whether or not J. Allan Hall & Associates, Inc., and Companion Life Insurance Company refused to reimburse San Benito Consolidated Independent School District for the claims made the basis of the lawsuit.

21.    Whether or not the amount of claims, submitted for reimbursement and rejected for reimbursement by J. Allan Hall & Associates, Inc., and Companion Life Insurance Company total $907,126.88.

22.    Whether or not the only reason for J. Allan Hall & Associates, Inc., and Companion Life Insurance Company's decision not to reimburse those $907,126.88 in claims, is the failure by San Benito Consolidated Independent School District to satisfy, as a condition precedent, the requirement of the term "paid," as set forth in the stop-loss policy.

23.    Whether or not the balance in the School District's account on which MBA personnel wrote checks to pay health insurance claims to health care providers, for the period of August 23 through August 31, 2001, at all times contained $736,570.52, or more, and whether that sum represented the balance of that account as of August 31, 2001.

24.    Whether or not at all relevant time periods, San Benito Consolidated Independent School District had sufficient funds available in one or more checking accounts to pay the entire $907,126.88 in health care claims.

### AGREED PROPOSITION OF LAW

1.    This lawsuit is governed by Texas law.

2.    If Plaintiff recovers on a cause of action for breach of contract, it is also entitled to recover its reasonable attorney's fees.

### CONTESTED ISSUES OF LAW

1.    A number of contested issues of law are raised by the three Motions for Summary Judgment filed by the three Defendants. The parties anticipate that those Motions will be resolved prior to trial, and anticipate no remaining material issues of law. In the event there are remaining issues of law once the Motions for Summary Judgment have been disposed of, the parties request leave to supplement this topic.

2.      Whether or not if Plaintiff recovers from Companion Life for breach of the stop-loss insurance policy, in addition to its actual contract damages, it is entitled to recover its reasonable and necessary attorney's fees and expenses, plus 18 percent penalty, pursuant to Art. 21.55 of the TEXAS INSURANCE CODE.

3.      Whether or not if Plaintiff is entitled to recover for misrepresentations of the insurance policy, in violation of Art. 21.21 of the TEXAS INSURANCE CODE, Plaintiff is entitled to recover, in addition to its damages, its reasonable and necessary attorney's fees incurred in bringing this action.

4.      Whether the stop-loss contract at issue is a contract for reinsurance.

5.      Whether "stop-loss" coverage and reinsurance are synonymous.

6.      Whether Defendant J. Allan Hall, as an agent within the course and scope of its authority, has any independent liability to Plaintiff SBCISD.

7.      Whether a person, including SBCISD, has any rights against a reinsurer that are not specifically set forth in the contract of reinsurance or in a specific agreement between the reinsurer and the person. TEX. INS. CODE ANN. arts. 310(h), 5.75-1(g) (Vernon Supp. 2003).

8.      Whether only contract claims can be brought against a reinsurer.

9.      Whether there can be a cause of action against the agent of the reinsurer under the TEXAS INSURANCE CODE.

10.      Whether the TEXAS INSURANCE CODE does not provide a private right of action against the Manager/agent of a reinsurer if it is alleged, as here, that the reinsurance intermediary "materially misrepresented the terms or effect of any contract of insurance or reinsurance, or engaged in any fraudulent transaction." TEXAS INS. CODE Art. 21.07-7 § 3(e) (Vernon Supp. 2003).

11.      Whether Plaintiff SBCISD has a viable negligence cause of action against a reinsurer's manager/agent.

12.      Whether Plaintiff SBCISD has standing to assert a negligent misrepresentation claim against Defendants J. Allan Hall and Companion Life.

### EXHIBITS

Each of the parties has attached four copies of their Exhibit Lists.

### WITNESSES

Stated on a separate form, attached hereto, each party attaches four copies of listing the names and addresses of its witnesses who may be called at trial, together with a brief statement of the nature of their testimony.

### SETTLEMENTS

A mediation in this case was convened on December 11, 2003, in Brownsville, Texas. The parties were not able to settle the case that day. The parties do not agree that all reasonable settlement efforts have been exhausted. Settlement talks continue between the Plaintiff and some of the Defendants.

### TRIAL

It is estimated that the trial of this case will take seven to ten trial days. Some of Plaintiff's witnesses, and all of the witnesses of the Defendants are from out of town. No other logistical problems are anticipated at this time. The parties have agreed, and request the agreement of the Court, to refer to certain employees of the San Benito Consolidated Independent School District who received medical treatment, by assumed names. This request is made to respect the privacy of those individuals and their families. Those individuals will be referred to as "John Doe," "Jane Doe," etc.

### ATTACHMENTS

Each party is filing as a separate document, captioned, signed by counsel, with service certified, proposed questions for voir dire examination and a proposed charge, including instructions, definitions, and special interrogatories, with authority.

SIGNED this _____ day of _____, 2004, at Brownsville, Texas.


_____
HILDA G. TAGLE
UNITED STATES DISTRICT JUDGE

APPROVED:
LAW OFFICES OF RENE RAMIREZ
Celeste Guerra
1906 Tesoro
Pharr, Texas 78577
Telephone: 956/783-7880
FAX # 956/783-7884
AND
SHADDOX, COMPERE, WALRAVEN & GOOD, P.C.
Stephen E. Walraven
State Bar No. 20796800                          Stephen E. Walraven
1250 N. E. Loop 410, Suite 725                  Date: *Apr. 12, 2004*
San Antonio, Texas 78209
Telephone: 210/822-2018
FAX: 210/822-4068
**ATTORNEYS FOR PLAINTIFF**


Mr. Shelby J. Bush                              *Shelby J. Bush by SEW*
State Bar No. 03497045                          Date: *Apr 12 2004*    *w/ permission*
PIPER RUDNICK, L.L.P.
1717 Main Street, Suite 4600
Dallas, Texas 75201-4605
Telephone: 214/743-4500
FAX: 214/743-4545
**ATTORNEYS FOR DEFENDANT**
**COMPANION LIFE INSURANCE COMPANY**


Ms. Roberta J. Hegland                          *Roberta J. Hegland by SEW*
State Bar No. 09375000                          Date: *Apr. 12, 2004*    *w/ permission*
BRACEWELL & PATTERSON, L.L.P.
2000 One Shoreline Plaza, South Tower
800 North Shoreline Boulevard
Corpus Christi, Texas 78401-3700
Telephone: 361/882-6644
FAX: 361/903-7000
**ATTORNEYS FOR DEFENDANT**
**J. ALLAN HALL & ASSOCIATES, INC.**


Ms. Cindy A. Garcia                             *Cindy A. Garcia by SEW*
State Bar No. 07631710                          Date: *Apr 12, 2004*    *w/ permission*
Ms. Lesslie Eanes
State Bar No. 24036513
THE GARCIA LAW FIRM, P.C.
201 North 1st Street
Harlingen, Texas 78550
Telephone: 956/412-7055
FAX: 956/412-7105
**ATTORNEYS FOR DEFENDANTS**
**MBA OF WYOMING, INC., AND MANAGED BENEFITS**
**ADMINISTRATOR AND INSURANCE CONSULTANTS, INC.**


Page 16 of 16

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

SAN BENITO CONSOLIDATED                §
INDEPENDENT SCHOOL DISTRICT            §
                                       §
VS.                                    §        CIVIL ACTION NO. B-03-047
                                       §
COMPANION LIFE INSURANCE COMPANY,      §
MANAGED BENEFITS ADMINISTRATOR         §
AND INSURANCE CONSULTANTS, INC.,       §
J. ALLAN HALL & ASSOCIATES, INC.,      §
and MBA OF WYOMING, INC.               §

---

**PLAINTIFF'S PROPOSED VOIR DIRE**

---

Plaintiff requests the Court to ask the members of the jury panel the following questions on voir dire:

1. The parties to this lawsuit are:

  The San Benito Consolidated Independent School District of San Benito, Texas;

  Companion Life Insurance Company of Columbia, South Carolina;

  J. Allan Hall & Associates, Inc., of Indianapolis, Indiana;

  MBA of Wyoming, Inc., of Salt Lake City, Utah; and

  Managed Benefits Administrator & Insurance Consultants, Inc., also of Salt Lake City, Utah.

Are any of you familiar with any of the entities, have business with them, or have had any other personal dealings with them? If so, would you please raise your hand; and when called upon, tell the Court how you know them or what your dealings with them have been.

2. The attorneys in this case are:

  Stephen E. Walraven and Otto S. Good of the San Antonio law firm of Shaddox, Compere, Walraven & Good, P.C.;

  Norton Colvin with the Brownsville law firm of Rodriguez, Colvin & Chaney;

Cindy Garcia with the Harlingen law firm of The Garcia Law Firm;

Roberta Hegland with the Corpus Christi law firm of Bracewell & Patterson;

Shelby Bush with the Dallas law firm of Piper Rudnick.

Do any of you know any of these individuals, or have had any prior dealings with any of them? If so, would you please raise your hand; and when called upon, explain how you know them.

3.      I am going to read you a list of the names of the people who have been involved in the events made the basis of this lawsuit, many of whom may be testifying as witnesses in this case. As these names are read, if you know or have had any dealings with any of these individuals, please raise your hand. You will be called upon to tell us how you know these individuals:

Oscar de la Fuente, who is President of the Board of Trustees of San Benito Consolidated Independent School District;

Joe D. Gonzales, Superintendent of the San Benito Consolidated Independent School District;

Lorenzo Sanchez, who was the Assistant Superintendent for Finance and Human Resources at the San Benito School District, and now works for the Brownsville School District;

Janie Gonzales, Insurance Coordinator for the San Benito School District;

Don Merrill who is Vice President of MBA of Wyoming, Inc., and President of Managed Benefits Administrator & Insurance Consultants, Inc.;

Phyllis Merrill who is Chief Operations Officer of Managed Benefits Administrator & Insurance Consultants, Inc.;

J. Allan Hall who is President of J. Allan Hall & Associates, Inc., of Indianapolis;

William Larry Blagg who is Vice President and Chief Operating Officer with J. Allan Hall & Associates, Inc.;

Carol Fransden who at one time processed health care benefit claims at Managed Benefits Administrator & Insurance Consultants, Inc., for the San Benito School District;

Glade Nixon, the employee of Managed Benefits Administrator & Insurance Consultants, Inc., who processed stop-loss claims at Managed Benefits Administrator & Insurance Consultants, Inc.;

Doug Routh, who participated in the purchase of the insurance policy at issue in this case;

Peter Monrad, who may give expert testimony in this case;

Lester Wyatt, who may give expert testimony in this case;

James Harty, who may give expert testimony in this case

4.      Do any of you feel that you have any specialized knowledge or experience concerning health care claims, the payment of health care claims, health insurance or stop-loss insurance? If so, please raise your hand; and when called upon, please explain how you have come to have such specialized knowledge.

5.      Do any of you have any specialized knowledge or experience concerning the insurance field, in any capacity? If so, please raise your hand; and when called upon, please explain how you have come to have such specialized knowledge or experience.

6.      Do any of you have any close friends or relatives who work for or with either the San Benito Consolidated Independent School District, on the one hand; or, on the other hand, in the field of insurance and/or the payment of health insurance claims? If so, please raise your hand; and when called upon, please explain how the nature of that relationship.

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

SAN BENITO CONSOLIDATED                §
INDEPENDENT SCHOOL DISTRICT             §
                                        §
VS.                                     §          CIVIL ACTION NO. B-03-047
                                        §
COMPANION LIFE INSURANCE COMPANY,       §
MANAGED BENEFITS ADMINISTRATOR          §
AND INSURANCE CONSULTANTS, INC.,        §
J. ALLAN HALL & ASSOCIATES, INC.,       §
and MBA OF WYOMING, INC.                §

---

## FINAL JURY INSTRUCTIONS

---

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you and you are not to be concerned with the wisdom of any rule of law contained in these instructions. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made or question I have asked during the course of trial or statement I make in these instructions, as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the Parties' contentions. If there is any difference between the attorneys' statements on the law and the rules of law contained in these instructions, you are to follow the law contained in these instructions.

Answer each question from the facts as you find them. Your answers and your verdict must be unanimous.

This case should be considered and decided by you as an action between persons of equal. standing in the community, or equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial at your hands as a private individual. All persons and

corporations stand equal before the law, and are to be dealt with as equals in a court of justice.

Corporations and school districts may not only act on their own behalf, but may act through agents. That is, a corporation or a school district may agree with another person or corporation to act on their behalf. You are instructed that J. Allan Hall & Associates, Inc., and Companion Life Insurance Company agreed that J. Allan Hall & Associates, Inc., would act on behalf of Companion Life Insurance Company, with respect to all of the matters at issue in this case. Secondly, you are instructed that the San Benito Consolidated Independent School District agreed with MBA of Wyoming, Inc., that MBA of Wyoming, Inc., would act on its behalf with respect to the purchase of stop-loss insurance and the processing of stop-loss claims. Thirdly, you are also instructed that MBA of Wyoming, Inc., agreed with Managed Benefit Administrators & Insurance Consultants, Inc., that MBAICI would act on behalf of MBA of Wyoming, Inc., with respect to all matters at issue in this lawsuit. When an act is done by an agent, it should be considered the act of the party for whom the agent is acting; when something is said by an agent, it should be considered as having been said by the party for whom the agent is acting; and when something is said to an agent, it should be considered as having been said to the party for whom the agent was acting.

Unless specifically instructed otherwise, you must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them and all exhibits received in evidence, regardless of who may have produced them. If the evidence fails to establish any essential part of one or more of the Plaintiff's claims by a preponderance of the evidence, you should find for the Defendant as to that claim or those claims.

During the trial I sustained objections to certain questions. You must disregard those questions. Do not speculate as to what the witness would have said if permitted to answer the

question. Your verdict must be based solely on the legally admissible evidence and testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence - such as testimony of an eyewitness. The other is indirect or circumstantial evidence - the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a prepondemnce of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury a person who has special training or experience in that technical field - he is called an expert witness - is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness; you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors . Notes are not entitled to any great weight than the recollection or impression of each juror about the testimony.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your presiding juror and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you on your conduct during the trial. After you have reached your unanimous verdict, your presiding juror is to fill in on the verdict form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the marshal, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the. attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case

unless the Court orders otherwise. After the attorneys have given their closing arguments, you may retire to the jury room to conduct your deliberations.

DONE at Brownsville, Texas, this _____ day of _____, 2004.


_____
HILDA G. TAGLE
UNITED STATES DISTRICT JUDGE

## ABBREVIATED TERMS AND DEFINITIONS

The following terms are identified and abbreviated as follows in these instructions and questions:

1. The "School District" refers to the Plaintiff, San Benito Consolidated Independent School District.

2. "Companion Life" refers to Companion Life Insurance Company.

3. "J. Allan Hall" refers to J. Allan Hall & Associates, Inc.

4. "MBAW" refers to MBA of Wyoming, Inc.

5. "MBAICI" refers to Managed Benefit Administrator & Insurance Consultants, Inc.

6. "Advanced Funding" refers to the practice of a stop-loss insurance company reimbursing claims under the stop-loss insurance without first requiring that the insured to have first mailed the check to the health care provider.

7. "Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order for there to be a proximate cause, the conduct complained of must have been such that a person using ordinary care would have foreseen that the damaging event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.[1]

8. "Producing cause" means an efficient, exciting or contributing cause that, in the nature sequence, produced the damages, if any. There may be more than one producing cause.[2]

---

[1]TEXAS PATTERN JURY CHARGE, Vol. 1, 2.04.

[2]TEXAS PATTERN JURY CHARGE, Vol. 4, 102.01.

## BREACH OF CONTRACT BY COMPANION LIFE

The School District has brought a claim against Companion Life for breach of the stop-loss insurance policy. The School District claims, pursuant to that contract, that Companion Life should have reimbursed it for the health care benefits it paid, over the $75,000 per employee deductible. Companion Life asserts that it did not have to pay those sums, because MBA failed to put those checks in the mail prior to the end of the policy period.

You have heard conflicting testimony concerning whether or not it was the custom and practice, between MBA and J. Allan Hall, as agents for the School District and Companion Life, respectively, for J. Allan Hall to go ahead and reimburse the School District, without MBA having first mailed those checks. As you have heard, this practice has been referred to as advanced funding.

You are instructed that if you find that advanced funding was the custom and practice between MBA and J. Allan Hall, prior to August, 2001; and if you find that MBA reasonably relied on this custom and practice in not mailing the claims payments for which reimbursement is being sought in this lawsuit, then MBA and the School District are excused from that requirement that the checks first be mailed. That is, if you find that advanced funding was the custom and practice between MBA and J. Allan Hall, and that MBA reasonably relied on the availability of advanced funding when it did not insure the mailing of checks prior to August 31, 2001, then you shall find that that requirement has been excused, and that Companion Life did breach its contract with the School District to pay those sums.[1]

## QUESTION NO. 1

Did Companion Life breach its contract to reimburse the School District for the stop-loss claims at issue in this lawsuit?

Answer: "Yes" or "No"

ANSWER: _____

---

[1] *Southland Life Insurance Co. v. Lawson*, 153 S.W.2d 953, 956-57 (Tex. 1941); *Dairyland County Mutual Insurance Co. of Texas v. Mason*, 460 S.W.2d 481, 484-85 (Tex.Civ.App.-Beau. 1970, n.r.e.).

## MISREPRESENTATIONS OF THE INSURANCE POLICY

### QUESTION NO. 2

Did J. Allan Hall engage in any false, misleading, or deceptive act or practice that was a producing cause of damages to the School District.

"False, misleading, or deceptive act or practice" means any of the following:

Representing that an agreement confirms or involves rights that it did not have or involve [or]

making or causing to be made any statement misrepresenting the terms, benefits, or advantages of an insurance policy.[1]

ANSWER: "Yes" or "No"

ANSWER: _____

---

[1] TEXAS PATTERN JURY CHARGE, Vol. 4, 102.01, 102.04, 102.16.

## QUESTION NO. 3

Negligent misrepresentation occurs when:

(1)     A defendant makes a representation of existing fact in the course of its business or in a transaction in which it has pecuniary interest;

(2)     The representation supplies false information for the guidance of others in the business;

(3)     The defendant making the representation did not exercise reasonable care or competence in obtaining or communicating the information; and

(4)     The plaintiff justifiably relied on the representation and thereby suffered a monetary loss.[1]

"Reasonable care" means that degree of care which would be used by a person of ordinary prudence under the same or similar circumstances.

Did J. Allan Hall make a negligent representation on which MBA justifiably relied, and did the School District thereby suffer a monetary loss?

ANSWER: "Yes" or "No"

ANSWER: _____

---

[1] TEXAS PATTERN JURY CHARGE, Vol. 4, 105.16.

## QUESTION NO. 4

Did MBAW fail to comply with the terms of its agreement with the School District regarding the processing of stop-loss claims, which failure was a proximate cause of monetary damages to the School District?[1]

ANSWER: "Yes" or "No"

ANSWER: _____

## QUESTION NO. 5

Did the negligence, if any, of MBAW, proximately cause monetary damages to the School District?

"Negligence" means the failure to use ordinary care; that is, failing to do what a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary Care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.[1]

ANSWER: "Yes" or "No"

ANSWER: _____

---

[1]TEXAS PATTERN JURY CHARGE, Vol. 1, 2.03 and 4.01.

## QUESTION NO. 6

Did the negligence, if any, of MBAICI, proximately cause monetary damages to the School District?

"Negligence" means the failure to use ordinary care; that is, failing to do what a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary Care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.[1]

ANSWER: "Yes" or "No"

ANSWER: _____

---

[1]TEXAS PATTERN JURY CHARGE, Vol. 1, 2.03 and 4.01.

## QUESTION NO. 7

At all times material to the stop-loss claims at issue in this lawsuit, were MBA of Wyoming, Inc., and MBAICI acting as a single business enterprise?[1]

You are instructed that corporations can be liable as a single business enterprise when the corporations are not operated as a separate enterprise but rather integrate their resources to achieve a common business purpose. You may consider but are not limited to the following:

A.      Common shareholders of the stock of both companies;

B.      Same telephone number for both companies;

C.      The same address for both companies;

D.      Common offices;

E.      Centralized accounting;

F.      Common employees;

G.      One business paying the wages of the other business' employees;

H.      Common business name;

I.      Services rendered by the employees of one business on behalf of the other business;

J.      Undocumented transfers of funds between them;

K.      An unclear allocation of profits.

ANSWER: "Yes" or "No"

ANSWER: _____

---

[1]*Hall v. Timmons*, 987 S.W.2d 248, 252 (Tex.app. Beau. 1999); *Paramount Petroleum Corp. v. Taylor Rental Center*, 712 S.W.2d 534, 536 (Tex.App.-Houston [14th District] 1986, n.r.e.).

## INSTRUCTIONS FOR QUESTIONS ON DAMAGES

If the School District has carried its burden of proof on one or more of its claims against one or more of the Defendants, you must determine the damages, if any, to which the School District is entitled. You should not interpret the fact that I have given instructions about damages as an indication in any way that I believe that one or more of the Defendants should or should not be held liable or that the School District is or is not entitled to damages. I am instructing you on damages only so that you will have guidance in the event you decide that one or more of the Defendants is liable to the School District and the School District is entitled to recover money from one or more of the Defendants.

If you answer questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of the instructions in or your answers to any of the other questions about damages. Do not add interest to any past damages. Do not s peculate about what the School District's ultimate recovery may or may not be. Any recovery will be determined by the Court when it applies to the law to your answers at the time of judgment.

## QUESTION NO. 8

What sum of money, if paid now in cash, would fairly and reasonably compensate the School District for its damages, if any, resulting from Companion Life's failure to comply with its agreement, if it did fail?[1]

ANSWER IN DOLLARS AND CENTS.

ANSWER: $_____

---

[1]TEXAS PATTERN JURY CHARGE, Vol. 4, 110.02.

## QUESTION NO. 9

What sum of money, if paid now in cash, would fairly and reasonably compensate the School District for its damages, if any, resulting from J. Allan Hall's misrepresentations, if any, regarding the stop-loss insurance policy?[1]

ANSWER IN DOLLARS AND CENTS.

ANSWER: $_____

---

[1]TEXAS PATTERN JURY CHARGE, Vol. 4, 110.10.

## QUESTION NO. 10

What sum of money, if paid now in cash, would fairly and reasonably compensate the School District for its damages, if any, resulting from J. Allan Hall's negligent misrepresentations, if any, regarding the stop-loss insurance policy?[1]

ANSWER IN DOLLARS AND CENTS.

ANSWER: $_____

---

[1]TEXAS PATTERN JURY CHARGE, Vol. 4, 110.21.

## QUESTION NO. 11

What sum of money, if paid now in cash, would fairly and reasonably compensate the School District for its damages, if any, resulting from the negligence of MBAW?[1]

ANSWER IN DOLLARS AND CENTS.

ANSWER: $_____

---

[1]TEXAS PATTERN JURY CHARGE, Vol. 4, 110.05.

## QUESTION NO. 12

What sum of money, if paid now in cash, would fairly and reasonably compensate the School District for its damages, if any, resulting from the negligence of MBAICI?[1]

ANSWER IN DOLLARS AND CENTS.

ANSWER: $_____

---

[1] TEXAS PATTERN JURY CHARGE, Vol. 4, 110.05.

## VERDICT OF THE JURY

We, the jury, have answered the foregoing questions in the manner indicated in this verdict form, and return these answers into Court as our verdict.

_____
PRESIDING JUROR

Date: _____

IN THE UNITED STATEES DISTRICT COURT
SOUTHERN DISTRRICT OF TEXAS
BROWNSVILLEE DIVISION

| | | |
|---|---|---|
| SAN BENITO CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 003-047 |
| | § | |
| COMPANION LIFE INSURANCE | § | |
| COMPANY, MANAGED BENEFITS | § | |
| ADMINISTRATOR AND | § | |
| INSURANCE CONSULTANTS, INC., | § | |
| J. ALLAN HALL & ASSOCIATES, | § | |
| INC., AND MBA OF WYOMING, INC. | § | |

**DEFENDANT J. ALLAN HALL & ASSOOCIATES, INC.'S REQUESTED VOIR
DIRE QUESSTIONS**

Defendant J. Allan Hall & Associateies, Inc., by and through its undersigned attorneys, hereby submits the following voir diriire questions.

1.    Have any of you heard of this case e before, and do you have any personal knowledge of J. Allan Hall & Associates, MMBA of Wyoming, Inc., Managed Benefits Administrator and Insurance Consultants, Inc., ., Companion Life Insurance Company, San Benito Consolidated Independent School Distririct, or the facts?

2.    Are there any jurors who know each otbther, work together, or have served on jury panels together?

3.    During the trial of this case, the followwing witnesses may be called to testify on behalf of the parties:

Lorenzo Sanchez

Janie Gonzalez

Don William Merrill

Phyllis K. Merrill

J. Allan Hall

William Larry Blagg

Roy Franklin Hutchinson

Glade C. Nixon

Carol Frandsen

Douglas C. Routh

Michael Sweatnam

Have any of you ever heard of or been otherwisise acquainted with any of these people? If so, how?

4.    Have any of you or any member of yourir family or anyone close to you at any time been employed by or provided services tcto (voluntary or otherwise) San Benito Consolidated Independent School District? IfIf so, when and in what capacity were you (they) employed by SBCISD?

5.    Have any of you or any member of younir family or anyone close to you at any time been employed by or provided services to (\(voluntary or otherwise) any other school district? If so, please identify the district for wlwhom you (they) were employed, when, and in what capacity you (they) were employed.

6.    Have any of you or any member of younir family or anyone close to you at any time received medical, dental, and/or life benefits ununder San Benito Consolidated Independent School District's benefits plan? If so, please exexplain.

7.    Have any of you or any member of younir family or anyone close to you at any time had health care insurance with an employer whwho was self-insured? Did you (they) have a good experience? Bad experience? Please expxplain.

8.    Do any of you or any member of younur family or anyone close to you currently have children who attend school in the San n Benito Consolidated Independent School District system? If so, does that fact cause yiyou to believe that you might be biased in favor of the plaintiff, making it hard for you to o sit as a fair juror on this type of a case?

9.    Do any of you or any family member cuxurrently live in the San Benito Consolidated Independent School District?

10.    Is there anyone here who believes that ıt they could not say no to or decide against the San Benito Consolidated Independerent School District, regardless of the circumstances?

11.    Have any of you or any member of youour family or any of your close friends ever had any connection with or dealings with J. AAllan Hall & Associates, Inc.? Have any of

you or any member of your family ever had aman unpleasant experience with J. Allan Hall & Associates, Inc.? If so, please explain.

12.    Are there any of you who do not believe're you would be able to independently reach your own decisions without being influenced b by other jurors? I am assuming from your silence that each one of you is telling me ; that you believe you would be able to independently reach your own decisions withouout being influenced by other jurors.

13.    Would anyone on this panel feel uncommfortable in expressing an opinion contrary to the opinions of other jurors? Would any of ycyou be hesitant to do so, or feel pressured?

14.    Has any person here previously sat as a a juror on a civil case? If so, what was the case nature and outcome?

15.    Has anyone ever sat previously as a jururor in a criminal case? If so, what was the case nature and outcome?

16.    Have any of you ever been discharged d or excused from jury service? If so, for what cause?

17.    Have any of you previously served on a a Grand Jury, either Federal or State?

18.    For those of you who indicated that ) you had prior jury experience, was there anything about those prior jury experiences thaiat would lead you to feel that you may have some prejudices for either the plaintiff or the e defense? Was there anything about these prior jury experiences that would make it uncoromfortable for you to sit as a juror again?

19.    Has anyone on the panel, your close fririends or relatives, ever had any experience or education in the legal field? If so, have ycyou (they) ever handled cases dealing with employment disputes?

20.    Have any of you, your relatives or c|close friends ever worked in the field of investigation, settlement and/or adjustment ofif insurance claims? If so, have you (they) ever handled cases dealing with insurance dispiputes?

21.    Have any of you, your relatives or ｒ close friends ever worked for or as an administrator of medical, dental, and/or life berenefits plan?

22.    Is anyone familiar with a type of insuraˌance known as "stop-loss" insurance?

23.    Is anyone familiar with self-insured heiealth care plans? What experience? How did you become knowledgeable?

24.    Is anyone familiar with "reinsurance"? ' How? What experience?

25.    Have any of you, your close friends ( or relatives, ever been denied insurance coverage (in whole or in part) for what was belielieved to be a covered claim? If so, please explain why this occurred, how long ago this hahappened, who the parties were.

26.    Have any of you, your close friends or re relatives, ever sued or filed charges against an insurance company or its agent for any reascson? If so, please explain the reason for the suit, the parties involved, and the outcome. WWere you (they) satisfied with the outcome? Do you think your (their) experiences might t cause you to be sympathetic toward the plaintiff in this case?

27.    Even if no suit or charges were ever fililed, is there anyone on the panel who feels they, or someone close to them, has been unfaiairly treated by an insurance company or its agent that I have not already mentioned? If scso, did you (they) ever feel any legal rights were being violated? Please explain. Do you tt think your (their) experiences might cause you to be sympathetic toward the plaintiff in thihis case?

28.    Is there anyone on the panel who is c currently dissatisfied with your insurance company or its agent? If so, do you feel you u are being treated unfairly for any reason? Do you think your  (their) experiences mightht cause you to be sympathetic toward the plaintiff in this case?

29.    Is there anyone on the panel who feels tt that because of your own experiences with insurance companies, their agents, and/or anyıy insurance related disputes, you might be biased in favor of the plaintiff, making it hard f. for you to sit as a fair juror on this type of a case?

30.    Has anyone ever been a party to a contrraract? Did you read contract before signing?

31.    Does anyone believe that failure to reaead a contract before signing should excuse the parties from following the contract ?

32.    Is there anyone here who believes thdhat both parties should not be required to observe the terms and requirements of a writteren contract?  Why?

33.    Is there anyone who thinks that  each p party to a contract should not observe the written terms of the contract?  Why?

34.    Does anyone believe that it is not neccecessary to read the provisions of a written contract before signing it?    Does anyone thtthink that if you do not read the terms of a written contract that it excuses you from complplying with the contract you have signed?

35.    Is there anyone who believes that an 1 insurance company should pay all claims presented to it regardless of the terms of the pooolicy?

36.    Is there anyone who thinks that an inststsurance company should not be entitled to require that people should follow the terms of tt the contract policy?

37.    Is there anyone who thinks that if an inststsurance company does not pay a claim, that it should be punished, regardless of the circumstststances?

38.    Is each one of you willing to honor the e written terms of the contract in dispute in this case?

39.    Is there anyone here who does NOT fecèel that they can enforce a written contract agreement?   Anyone think that they could NQOT require all parties to follow  a written contract agreement?

40.    Does everyone understand the meaningng of the term "reimbursement."   Is there anyone who does not understand that term?

41.    Has anyone of you ever  misunderstoodd someone in conversation?   Ever confuse another person's words?

42.    Anyone who believes that a party shoulddld be punished for a misunderstanding?

43.    Have any members of this panel ever t been sued or threatened with a lawsuit by someone, not already discussed?  If so:

         What was the nature of this?

         How long ago did this occur?

         Did the case go to trial, and if so ɔ what was the outcome?

         How did you feel about the matteter? Were you satisfied with the outcome?

         Was there anything about thinis experience which would affect your objectivity on this case?

44.    Have any of you ever filed a lawsuit, ⸴ not already discussed, or taken action on your own to receive compensation for damageses?  If so:

         What was the nature of the claim'n?

         How long ago did this occur?

         Did the case go to trial, and if so ɒ what was the outcome?

         How did you feel about the matteter?  Were you satisfied with the outcome?

Was there anything about thisis experience which would affect your objectivity on this case?

45.    Is there anyone here who believes thanat simply because a plaintiff has filed a lawsuit against an organization, this organizatiition must have done something wrong, or violated some legal right?

46.    As you sit here at this very moment arere there any of you who feel that J. Allan Hall & Associates did something wrong or elsese we all wouldn't be here?  In other words, do any of you believe that "where there's smokıke, there's got to be fire?"

47.    During the trial, the attorneys may be e required to object to the introduction of certain evidence.  This is a professional respomnsibility they have.  They are doing this to have the court rule on whether the evidence in a question belongs in this case; it is not done to hide proper evidence from you or to delay tl the trial.  Would any of you be angered or irritated by this procedure to such an extent thatat you would hold it against either party?

48.    The judge will tell you that you are not t permitted to decide this case on the basis of sympathy, bias or prejudice.  Are there anıny of you who feel that you could not or would not set aside your own personal feelinŋngs about either party and decide this case only on the facts and the law as the judge will iı instruct you?

49.    You will be directed to apply the law as ıs it is given to you.  And being good jurors, you probably want to do this.  But everyone hanas feelings and biases, and you cannot help these.  Is there anyone sitting here who feels u uncomfortable right now, who wants to do the right thing, but feels pulled in two directionıns because of the issues in this case?

50.    Is there anyone on the panel who for relèligious, ethical or moral reasons would find it difficult to sit on this case or who feels uncommfortable rendering judgment on another?

51.    Can you think of any other matter whiɪich you should call to our attention which may affect your ability to sit comfortably as a jı juror in this case?

52.    Is there any member of this panel who,o, because of the stress of business, family obligations, or other matters, would simply raththter not sit as a juror at this time?

53.    Is there anyone who, after thinking thdhe matter over carefully, would rather not serve on this panel due to the nature of the casese?

54.    If your friend were in the position of J. ∕ Allan Hall & Associates in this case, would you feel comfortable having a juror with yourıır present state of mind sitting on this panel and deciding your friend's case?

Dated: April 12, 2004                    Respectfitfully submitted,


BRACEWELL & PATTERSON,        Roberta a J. Hegland
L.L.P.                        State Basar No. 09375000
                              Federal II I.D. No. 6842
                              Joseph A A. Stallone
                              State Basar No. 00797485
                              Federal II I.D. No. 22343
                              2000 On)ne Shoreline Plaza - South Tower
                              800 Norbrth Shoreline Blvd.
                              Corpus C Christi, Texas 78401-3700
                              Telephoıone No.: (361) 882-6644
                              Telecopipier No.: (361) 903-7000
                              **ATTORNNEYS FOR DEFENDANT**
                              **J. ALLAıAN HALL & ASSOCIATES, INC.**

OF COUNSEL:

Albert George
55 Monument Circle, Suite 1115
Indianapolis, IN 46204
Telephone No.: (317) 264-0020
Facsimile No.: (317) 264-9038

## <u>CERTIFICATE OOF SERVICE</u>

I hereby certify that a true and correct cocopy of the above and foregoing instrument has been forwarded to the parties listed below o on this the 12th day of April, 2004:

Celeste Guerra
**LAW OFFICES OF RENE RAMIREZ**
1906 Tesoro
Pharr, Texas  78577

Stephen E. Walraven
Otto S. Good
**SHADDOX, COMPERE, WALRAVEN & GOOOD, P.C.**
1250 N. E. Loop 410, Suite 725
San Antonio, Texas  78209

Cindy A. Garcia
Lesslie L. Eanes
**THE GARCIA LAW FIRM, P.C.**
201 North First Street
Harlingen, Texas  78550

Shelby J. Bush
**PIPER RUDNICK, L.L.P.**
1717 Main Street, Suite 4600
Dallas, Texas  75201

RRoberta J. Hegland
JcJoseph A. Stallone

| UNITED STATES DISTRICT COURT | * | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| | |
|---|---|
| SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT<br>VERSUS<br>COMPANION LIFE INSURANCE COMPANY, | CIVIL ACTION NO. 003-047 |
| MANAGED BENEFITS ADMINISTRATOR AND INSURANCE CONSULTANTS, INC.,<br>J. ALLAN HALL & ASSOCIATES, INC.,<br>AND MBA OF WYOMING, INC. | WITNESS LIST |
| JUDGE HILDA G. TAGLE | Case Manager: Stella Cavazos<br>Court Reporter: Breck Record |

| LIST OF PLAINTIFF'S WITNESSES | Proceeding | Date |
|---|---|---|

1.  William Larry Blagg, J. Allan Hall & Associates, Circle Tower, 55 Monument Circle, Suite 1115, Indianapolis, Indiana 46204. Mr. Blagg is expected to testify about the changes in procedures, beginning in 2001, concerning advanced funding.

2.  Norton Colvin, Rodriguez & Colvin, 1201 E. Van Buren, Brownsville, Texas 78522, is expected to provide testimony concerning attorneys' fees, the work performed in preparing and trying this case, the reasonableness and necessity for such work, the reasonableness of the fees charged therefor, and reasonable attorney's fees should this case be appealed.

3.  Janie Gonzales, San Benito Consolidated Independent School District, 240 North Crockett, San Benito, Texas 78586. Mr. Gonzales is expected to testify about the School District's health benefits program, the purchase and administration of stop-loss insurance, the administration of claims by MBA, representations made by MBA to her, the School District's reliance on those representations, and other conversations she has had with MBA representatives.

4.  Joe G. Gonzales, Superintendent of San Benito Consolidated Independent School District, 240 North Crockett, San Benito, Texas 78586. Mr. Gonzales is expected to testify about the adoption of the School District's self-insured health benefits program, the purchase of stop-loss insurance, and the agreement with MBAW to provide claims handling services.

5.  J. Allan Hall, J. Allan Hall & Associates, Circle Tower, 55 Monument Circle, Suite 1115, Indianapolis, Indiana 46204, is expected to testify about his meetings with representatives of MBA, and his recollection of those meetings.

6.  Jose Koepke, San Benito Consolidated Independent School District, 240 North Crockett, San Benito, Texas 78586. Mr. Koepke is expected to testify concerning the funding of self-insured health care benefits by the School District, and his conversations with representatives of MBA concerning that funding. Mr. Keopke is also expected to testify concerning the

banking records of the School District, and the funds it had on deposit in 2001.

7.  Don Merrill, MBA, 3625 So. West Temple, Salt Lake City, Utah 84115. Mr. Merrill is expected to testify concerning his course of dealing with J. Allan Hall, representations made to him by J. Allan Hall, his reliance on those representations and that course of dealing, and the administration of health care claims regarding the stop-loss insurance.

8.  Peter O. Monrad, The Monrad Consulting Group, 11205 W. 106th Street, Suite 100, Overland Park, Kansas 66214, is expected to testify concerning third-party administration of health care benefits, the importance of insuring the proper handling of stop-loss claims, and the negligence of MBAW and MBAICI. Mr. Monrad may also testify in rebuttal to opinions offered by Defendants' expert, James T. Harty, at the trial of this case.

9.  Mr. Glade Nixon, MBA, 3625 So. West Temple, Salt Lake City, Utah 84115. Mr. Nixon is expected to testify concerning the filing and processing of stop-loss claims, the custom and practice between MBA and J. Allan Hall in providing advanced funding for stop-loss claims, and his reliance on that practice and custom and representations concerning the availability of advanced funding of stop-loss claims.

10. Doug Routh, 530 Donald Street, Sonoma, California 95476. Mr. Routh is expected to testify concerning the practice and custom of J. Allan Hall to provide advanced funding benefits with respect to stop-loss insurance, and his dealings with MBA.

11. Tony Schrader, 816 Congress Avenue, Suite 1100, Austin, Texas 78701, is expected to testify concerning third-party administration of health care benefits, the importance of insuring the proper handling of stop-loss claims, and the negligence of MBAW and MBAICI. Mr. Schrader may also testify in rebuttal to opinions offered by Defendants' expert, James T. Harty, at the trial of this case.

12. Lorenzo Sanchez, San Benito Consolidated Independent School District, 240 North Crockett, San Benito, Texas 78586. Mr. Sanchez is expected to testify about the School District's health benefits program, the purchase and administration of stop-loss insurance, the purchase and administration of claims by MBA, representations made by MBA to him, the School District's reliance on those representations, and other conversations he has had with MBA representatives, and the banking arrangements of the School District.

13. Stephen E. Walraven and/or Otto S. Good, Shaddox, Compere, Walraven & Good, P.C., 1250 N. E. Loop 410, Suite 725, San Antonio, Texas 78209. Mr. Walraven and/or Mr. Good are expected to provide testimony concerning attorneys' fees, the work performed in preparing and trying this case, the reasonableness and necessity for such work, the reasonableness of the fees charged therefor, and reasonable attorney's fees should this case be appealed.

14. Lester Wyatt, 855 Hill Street, Many, Louisiana 71449, is expected to testify concerning third-party administration of health care benefits, the importance of insuring the proper handling of stop-loss claims, and the negligence of MBAW and MBAICI. Mr. Wyatt may

also testify in rebuttal to opinions offered by Defendants' expert, James T. Harty, at the trial of this case.

15.    Roy Franklin Hutchinson, Companion Life Insurance Company, Parklane Road, Columbia, South Carolina 29223 and/or c/o Shelby Bush, PIPER RUDNICK, 1717 Main Street, Suite 4600, Dallas, Texas 75201-4605. Mr. Hutchinson is expected to testify concerning the relationship between J. Allan Hall & Associates, Inc., and Companion Life Insurance Company, the nature of Companion Life Insurance Company's business, the policies and procedures concerning handling stop-loss claims under stop-loss insurance policies issued by Companion Life, changes in those policies and procedures, and the handling of the San Benito School District's claims in particular.

16.    Michael N. Swetnam, Swetname Insurance Services, P. O. Box 1008, San Benito, Texas 78586; telephone: 956/399-4190. Mr. Swetnam is expected to testify concerning the purchase of stop-loss insurance by the San Benito School District, and the representations made to the School District in connection with that insurance.

17.    William Greer, Smith-Reagan Life & Health Insurance Agency, Inc., 148 N. Sam Houston Blvd., San Benito, Texas 78586; telephone: 956/399-1353. Mr. Greer is expected to testify concerning the purchase of stop-loss insurance by the San Benito School District, and the representations made to the School District in connection with that insurance.

18.    Arnie Olivarez, Insurance Associates of the Valley, 521 S. 77 Sunshine Strip, Harlingen, Texas 78550; telephone: 956/423-0490. Mr. Olivarez is expected to testify concerning the purchase of stop-loss insurance by the San Benito School District, and the representations made to the School District in connection with that insurance.

| UNITED STATES DISTRICT COURT | * | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| | |
|---|---|
| SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT<br>VERSUS<br>COMPANION LIFE INSURANCE COMPANY, MANAGED BENEFITS ADMINISTRATOR AND INSURANCE CONSULTANTS, INC.,<br>J. ALLAN HALL & ASSOCIATES, INC.,<br>AND MBA OF WYOMING, INC. | CIVIL ACTION NO. 003-047 |
| | EXHIBIT LIST |
| JUDGE HILDA G. TAGLE | Case Manager: Stella Cavazos<br>Court Reporter: Breck Record |
| LIST OF PLAINTIFF'S EXHIBITS | Proceeding                     Date |

| NO. | DESCRIPTION | ADM | EXD |
|---|---|---|---|
| 1 | Application for stop-loss insurance dated November 21, 2000. Deposition Exhibit 7. | | |
| 2 | Companion Life stop-loss policy for the 2001-2002 policy year. Deposition Exhibit 8. | | |
| 3 | Letter from Clifford B. Chappell to Celeste Guerra, dated February 14, 2002. Deposition Exhibit 13. | | |
| 4 | Letter from Randy Scott to Lorenzo Sanchez dated November 7, 2001. Deposition Exhibit 14. | | |
| 5 | Administrative Service Agreement between MBA of Wyoming, Inc., and the San Benito Consolidated Independent School District, dated October 10, 2000. Deposition Exhibit 15. | | |
| 6 | Letter from Douglas C. Routh to Don Merrill dated January 12, 2001. Deposition Exhibit 17. | | |
| 7 | Letter from Carolyn Gale to Jani Gonzales, dated January 23, 2001. Deposition Exhibit 17. | | |
| 8 | Excess stop-loss insurance policy issued by Clarendon National Insurance Company of New York, for the 2001-2002 policy year. Deposition Exhibit 19. | | |
| 9 | Administrative Service Agreement between Merrill Bostrom & Associates and the San Benito Consolidated Independent School District, dated October 16, 1995. Deposition Exhibit 27. | | |

| NO. | DESCRIPTION | ADM | EXD |
|-----|-------------|-----|-----|
| 42 | San Benito Consolidated ISD's accounting records showing health benefits it paid, for which it sought reimbursement from J. Allan Hall and Companion Life, but were not reimbursed. | | |
| 43 | Policy of stop-loss insurance issued by the Union Labor Life Insurance Company to Kerr County, for the January 1, 2001 through January 1, 2002 policy year. | | |
| 44 | Specimen stop-loss policy issued by Sun Life Assurance of Canada. | | |

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRRICT OF TEXAS
BROWNSVILLEE DIVISION

| | | |
|---|---|---|
| SAN BENITO CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 003-047 |
| | § | |
| COMPANION LIFE INSURANCE | § | |
| COMPANY, MANAGED BENEFITS | § | |
| ADMINISTRATOR AND | § | |
| INSURANCE CONSULTANTS, INC., | § | |
| J. ALLAN HALL & ASSOCIATES, | § | |
| INC., AND MBA OF WYOMING, INC. | § | |

**DEFENDANT J. ALLAN HALLL & ASSOCIATES, INC.'S
WITNESSS LIST**

1.   W. Larry Blagg
     Vice President & CFO
     J. Allan Hall & Associates
     55 Monument Circle, Suite 1115
     Indianapolis, IN 46204
     317.264.0020
     317.264.9038 (fax)
     (Knowledge of application for reinsnsurance, contract and claims and industry
     practices.)

2.   J. Allan Hall
     President
     J. Allan Hall & Associates
     55 Monument Circle, Suite 1115
     Indianapolis, IN 46204
     317.264.0020
     317.264.9038 (fax)
     (Knowledge of application for reinsnsurance, contract and claims and industry
     practices.)

Corpus Christi\667332 1

3.       James T. Harty
         5881 Hollow Oak Trail
         Carmel, Indiana 46033
         317.848.2714
         317.848.2714 (fax)
         (Mr. Harty may testify regarding ; "stop loss insurance" industry practices,
         contracts/policies, underwriting, andnd other matters more fully set out in his
         report and C.V.)

4.       Janie Gonzalez
         San Benito Consolidated Independerent School District
         240 N. Crockett
         San Benito, Texas 78586
         956.361.6186
         (Knowledge of application for reieinsurance, contract, and claims and the
         absence of any misrepresentations byby J. Allan Hall to SBCISD)

5.       Lorenzo Sanchez
         San Benito Consolidated Independerent School District
         240 N. Crockett
         San Benito, Texas 78586
         956.361.6186
         (Knowledge of application for reieinsurance, contract, and claims and the
         absence of any misrepresentations byby J. Allan Hall to SBCISD)

6.       Defendant J. Allan Hall reserves s the right to use any and all witnesses
         identified by any other party and alldlowed by the Court.

Dated:  April 12, 2004

Respectfitfully submitted,

BRACEWELL & PATTERSON,
L.L.P.

Roberta J. Hegland
State Bar No. 09375000
Federal I. I.D. No. 6842
Joseph AA. Stallone
State Barar No. 00797485
Federal I. I.D. No. 22343
2000 Onme Shoreline Plaza - South Tower
800 Nortrth Shoreline Blvd.
Corpus C Christi, Texas  78401-3700
Telephorone No.:  (361) 882-6644
Telecopipier No.:  (361) 903-7000
**ATTORMNEYS FOR DEFENDANT
J. ALLAIAN HALL & ASSOCIATES, INC.**

OF COUNSEL:

Albert George
55 Monument Circle, Suite 1115
Indianapolis, IN  46204
Telephone No.:  (317) 264-0020
Facsimile No.:  (317) 264-9038

## CERTIFICATE C OF SERVICE

I hereby certify that a true and correct cccopy of the above and foregoing instrument has been forwarded to the parties listed below o on this the 12th day of April, 2004:

Celeste Guerra
**LAW OFFICES OF RENE RAMIREZ**
1906 Tesoro
Pharr, Texas  78577

Stephen E. Walraven
Otto S. Good
**SHADDOX, COMPERE, WALRAVEN & GOOOD, P.C.**
1250 N. E. Loop 410, Suite 725
San Antonio, Texas  78209

Cindy A. Garcia
Lesslie L. Eanes
**THE GARCIA LAW FIRM, P.C.**
201 North First Street
Harlingen, Texas  78550

Shelby J. Bush
**PIPER RUDNICK, L.L.P.**
1717 Main Street, Suite 4600
Dallas, Texas  75201

R Roberta J. Hegland
J Joseph A. Stallone

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRRICT OF TEXAS
BROWNSVILLEE DIVISION

| | | |
|---|---|---|
| SAN BENITO CONSOLIDATED | § | |
| INDEPENDENT SCHOOL DISTRICT | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 003-047 |
| | § | |
| COMPANION LIFE INSURANCE | § | |
| COMPANY, MANAGED BENEFITS | § | |
| ADMINISTRATOR AND | § | |
| INSURANCE CONSULTANTS, INC., | § | |
| J. ALLAN HALL & ASSOCIATES, | § | |
| INC., AND MBA OF WYOMING, INC. | § | |

DEFENDANT J. ALLAN HALLL & ASSOCIATES, INC.'S
EXHIBITT LIST

| No. | Description ı | Adm | Exd |
|---|---|---|---|
| 1. | Bid proposal packet prepared by Insurance Assosociates of the Valley | | |
| 2. | Qualifications and Contingencies from J. Allan h Hall & Associates | | |
| 3. | Letter dated October 2, 2000, from Lorenzo SrSanchez addressed to Don Merrill, MBA | | |
| 4. | Application to Companion Life from San Benitoto C.I.S.D. for 99-2000 year period | | |
| 5. | Application to Companion Life from San Benitoto C.I.S.D for '00-01 year period | | |
| 6. | Contract between Companion Life and San ı Benito C.I.S.D. for excess loss benefits for '00-01 year period | | |
| 7. | Plan Document effective October 1, 1995 | | |
| 8. | Letter dated November 16, 2000, from Don n W. Merrill, MBA, addressed to Lorenzo Sanchez | | |
| 9. | Proposal from J. Allan Hall & Associates to Sanan Benito C I.S.D. dated 10/16/00 | | |
| 10. | Letter from Don W. Merrill to Lorenzo Sanchchez, re: renewal projections dated September 1, 2001 | | |
| 11. | Letter dated February 14, 2002, from Compapanion Life addressed to Celeste Guerra | | |
| 12. | Letter dated November 7, 2001, from J. Allallan Hall & Associates to Lorenzo Sanchez, re: San Benito CISD Specific Claim RıRequests | | |
| 13. | Administrative Service Agreement | | |
| 14 | Signature page of Plan Document | | |
| 15. | Letter dated January 31, 2001, from Carolyn Gaʒale addressed to Janie Gonzales | | |

| No. | Description | Adm | Exd |
|---|---|---|---|
| 44. | 3/27/02 letter to Celeste Guerra from Phyllis Mederrill with attachments | | |
| 45 | 4/18/02 letter to Celeste Guerra from Phyllis Mederrill | | |
| 46. | General Managers Agreement | | |
| 47. | E-mail to Hall from Routh | | |
| 48. | J Allan Hall Sales and Marketing Agreement | | |
| 49. | W Larry Blagg Texas Department of Insurance Ŀ License | | |
| 50 | Specific Advancement Rider | | |
| 51. | Documents evidencing the commission paymentnts to MBA | | |
| 52 | Summary of coverage documents | | |
| 53. | Stop loss claims documents | | |
| 54 | Possible Specific Excess Reporting Form First N Notice | | |
| 55. | Notification of Claim form | | |
| 56. | Specific Claim Reimbursement Form | | |
| 57 | J Allan Hall & Associates, Inc. Claim Form | | |
| 58. | J. Allan Hall & Associates, Inc. Continuing Claiaim Form | | |
| 59. | Letter from Lea M. Poirier to Glade Nixon dateded 10/17/01 | | |
| 60. | Fax to Glade Nixon from Gloria Brisco dated 10l0/3/2001 | | |
| 61. | Claim documents | | |
| 62. | Letter to Glade Nixon from Terri Gist dated 9/1 l1/01 with attachments | | |
| 63. | Page 2 of a document dated 11/20/01 | | |
| 64 | Various documents beginning with note from GlGloria Brisco dated 8/2/01 | | |
| 65. | Document with heading "Specific Claims Revieiewed" | | |
| 66. | August 2001 spec checks held lists | | |
| 67. | Breakdown of nonreimbursable claims dated 11/ 1/28/01 | | |
| 68 | Breakdown of nonreimbursable claims dated 11/ 1/26/01 | | |
| 69. | Audit dated 11/15/01 | | |
| 70. | | | |
| 71. | | | |
| 72. | | | |
| 73. | | | |
| 74. | | | |
| 75 | | | |

Dated: April 12, 2004

Respectfitfully submitted,

BRACEWELL & PATTERSON,
L.L.P.

Roberta J. Hegland
State Barar No. 09375000
Federal I I.D. No. 6842
Joseph AA. Stallone
State Barar No. 00797485
Federal I. I.D. No. 22343
2000 Onine Shoreline Plaza - South Tower
800 Nortrth Shoreline Blvd.
Corpus C Christi, Texas  78401-3700
Telephorone No.:  (361) 882-6644
Telecopipier No.:  (361) 903-7000
**ATTORNNEYS FOR DEFENDANT**
**J. ALLAIAN HALL & ASSOCIATES, INC.**

OF COUNSEL:

Albert George
55 Monument Circle, Suite 1115
Indianapolis, IN  46204
Telephone No.:  (317) 264-0020
Facsimile No.:  (317) 264-9038

Corpus Christi\667318 1

## CERTIFICATE C OF SERVICE

I hereby certify that a true and correct cccopy of the above and foregoing instrument has been forwarded to the parties listed below o on this the 12th day of April, 2004:

Celeste Guerra
**LAW OFFICES OF RENE RAMIREZ**
1906 Tesoro
Pharr, Texas  78577

Stephen E. Walraven
Otto S. Good
**SHADDOX, COMPERE, WALRAVEN & GOOOD, P.C.**
1250 N. E. Loop 410, Suite 725
San Antonio, Texas  78209

Cindy A. Garcia
Lesslie L. Eanes
**THE GARCIA LAW FIRM, P.C.**
201 North First Street
Harlingen, Texas  78550

Shelby J. Bush
**PIPER RUDNICK, L.L.P.**
1717 Main Street, Suite 4600
Dallas, Texas  75201

R Roberta J. Hegland
J Joseph A. Stallone